1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE DISTRICT OF HAWAII

 3
                                 )
 4   UNITED STATES OF AMERICA,    )  CR 00-00145 SOM
                                  )
 5                   Plaintiff,   )  Honolulu, Hawaii
           vs.                    )  June 10, 2003
 6                                )  June 12, 2003
     ALICIA VELORIA,              )  June 13, 2003
 7                                )
                     Defendant.   )  Jury Communications;
 8   _____  )  Verdict

 9
                  TRANSCRIPT OF JURY TRIAL
10         BEFORE THE HONORABLE SUSAN OKI MOLLWAY
                UNITED STATES DISTRICT JUDGE
11

12   APPEARANCES:

13   For the Government:         THOMAS J. BRADY, ESQ.
                                 Office of the U.S. Attorney
14                               PJKK Federal Bldg.
                                 300 Ala Moana Blvd., Ste. 6100
15                               Honolulu, HI 96850

16   For the Defendant:          WINSTON D. M. LING, ESQ.
                                 P. O. Box 700406
17                               Kapolei, HI 96709

18   Official Court Reporter:    Debra Kekuna Chun, RPR, CRR
                                 United States District Court
19                               300 Ala Moana Blvd., Ste. C285
                                 Honolulu, HI 96850
20                               (808) 534-0667

21

22

23

24
     Proceedings recorded by machine shorthand, transcript
25   produced with computer-aided transcription (CAT).
```



EXHIBIT "D"

```
 1                    I N D E X
```

| CAPTION | Page |
|---|---|
| Tuesday, June 10, 2003 | 3 |
| Thursday, June 12, 2003 | 7 |
| Friday, June 13, 2003 | 12 |

| GOVERNMENT WITNESSES | DIRECT | CROSS | REDIRECT | VOIR DIRE |
|---|---|---|---|---|
|  |  |  |  |  |

DEFENDANT'S WITNESSES

| EXHIBIT NO. | FOR IDENTIFICATION | IN EVIDENCE | WITHDRAWN OR REJECTED |
|---|---|---|---|
| (None) |  |  |  |

```
 1    TUESDAY, JUNE 10, 2003              10:55 O'CLOCK A.M.
 2         (Conference call in chambers on the record:)
 3         (Discussion off the record.)
 4         THE CLERK:  Criminal 00-145 SOM, United States
 5    of America versus Alicia Veloria.  This case has been
 6    called to address a note from the jury.
 7         Counsel, please make your appearances for the
 8    record.
 9         MR. BRADY:  Good morning.  Assistant United
10    States Attorney Tom Brady on behalf of the United States.
11         MR. LING:  Good morning, Your Honor.  Winston
12    Ling on behalf of Alicia Veloria.  We ask the court to
13    waive her presence for this hearing.
14         THE COURT:  All right.  Her presence is waived.
15         We have two notes from the jury.  The first note
16    contains questions that are numbered 1 through 7 from the
17    jury.  And by agreement the parties will have me respond in
18    writing to the jurors as follows:
19         In response to questions 1, 2, 4, 6, and 7 the
20    court instructs you that these are not matters on which
21    evidence was presented.  You may not consider these matters
22    in determining whether Alicia Veloria is not guilty or
23    guilty.  The court further instructs you that new evidence
24    cannot be submitted to you during your deliberations.
25         In response to questions 3 and 5 the court
```

1    instructs you that you are the sole judges of the facts and
2    the court is unable to determine for you what the evidence
3    did or did not show.

4         Can that be given by agreement in writing to the
5    jury?

6         MR. BRADY:  Yes, Your Honor.

7         MR. LING:  Yes, Your Honor.

8         THE COURT:  Okay.  Then we have note number 2
9    from the jury, which has questions numbered 1 and 2 on it
10   from the jury.  And the parties have agreed that both
11   questions can be answered with the following response to be
12   sent to the jury in writing:

13         As stated on page 8 of the instructions,
14   knowledge or presence in a particular place is not by
15   itself sufficient to establish possession.  A person has
16   possession of something if she both (a) knows of its
17   presence and (b) has physical control of it or if she both
18   (a) knows of its presence and (b) has the power and
19   intention to control it.

20         Can that be sent to the jury in writing by
21   agreement?

22         MR. BRADY:  Yes, Your Honor.

23         MR. LING:  Yes, Your Honor.

24         THE COURT:  Okay.  Then I will do that.

25         And I'm going to send this in in writing, but I

1    would fax you both what is sent to the jury so you can

2    have a record.  So, Mr. Ling, what fax number should I use

3    just to send you this just for your records?

4            MR. LING:  672-6252.

5            THE COURT:  Okay.  Thank you very much.  I will

6    do that.

7            MR. BRADY:  Thank you, Your Honor.

8        (Court recessed at 11:25 A.M., until 3:18 P.M.)

9        (Conference call in chambers on the record:)

10       (Discussion off the record.)

11           LAW CLERK:  Criminal Number 00-145 SOM, U.S.A.

12   versus Alicia Veloria.  This case has been called to

13   address note number 3 from the jury.

14           THE COURT:  Okay.  You want to put your

15   appearances on the record.

16           MR. BRADY:  Yes.  Good afternoon.  Assistant

17   United States Attorney Tom Brady on behalf of the United

18   States.

19           MR. LING:  Good afternoon, Your Honor.  Winston

20   Ling on behalf of Alicia Veloria.  We ask the court to

21   waive her presence.

22           THE COURT:  Her presence is waived.

23           We have a note from the jury which ends with the

24   question, quote, Do you want us to continue deliberating,

25   closed quote.  And I propose to respond by saying, "Yes.

```
 1   Please continue deliberating."
 2             Any objection, Mr. Brady?
 3             MR. BRADY:  No objection.
 4             THE COURT:  Mr. Ling.
 5             MR. LING:  No objection, Your Honor.
 6             THE COURT:  Then that is what we will do, and
 7   then we'll wait to hear from them again.
 8             Thank you very much.
 9             MR. BRADY:  Thank you.
10             MR. LING:  Thank you.
11        (Court recessed at 3:22 P.M., until called.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1   THURSDAY, JUNE 12, 2003              10:20 O'CLOCK A.M.
2         (Conference call in chambers on the record:)
3              THE COURT:  Let's call the case.
4              THE CLERK:  Criminal 00-145 SOM, United States
5   of America versus defendant Alicia Veloria.  This case has
6   been called for a Jury Question.
7              MR. BRADY:  Good morning.  Assistant U.S.
8   Attorney Tom Brady on behalf of the United States.
9              MR. LING:  Good morning, Your Honor.  Winston
10  Ling on behalf of Alicia Veloria.  She's not present.  We
11  ask the court to waive her presence.
12             THE COURT:  Her presence is waived.
13             We're here to respond to notes from the jury.
14  The first note asks for -- I guess it's the fourth note
15  we've received but the first note today.
16             The first one we received today asks for two sets
17  of the court reporter's transcripts for five witnesses.
18  And the parties have agreed that I may respond in writing
19  as follows, quote:
20             "The court has received a note from the jury
21  requesting two sets of the court reporter's transcripts of
22  the testimony five witnesses.  The court responds to this
23  note by instructing the jurors to rely on their collective
24  recollection of the testimony.  The court reporter has not
25  prepared final transcripts of testimony in this case.  What
```

1    the court reporter has prepared so far is only a rough

2    transcript that would require hours to correct before it

3    could be shown to the jury for its -- I'm sorry.  Before it

4    could be shown to the jurors.  The court will not submit

5    rough transcripts to the jury for its review, and it would

6    be extremely time consuming to have the court reporter read

7    back lengthy testimony and make oral corrections as the

8    testimony is read."

9            And that will be by agreement of the parties; is

10   that right?

11            MR. BRADY:  Correct.

12            MR. LING:  Correct.

13            THE COURT:  We also have a request by the jury to

14   see exhibit 10's contents.  And I will respond in writing

15   by agreement of the parties as follows:

16            "The court has also received a note from the jury

17   asking to see the physical items depicted in the photograph

18   that is in evidence as exhibit 10.  Those physical items

19   are not themselves in evidence, and new evidence may not be

20   submitted to you during your deliberations."

21            Is that by agreement of the parties?

22            MR. BRADY:  Yes.

23            MR. LING:  Yes.

24            THE COURT:  And, finally, the jury has asked for

25   clarification as to why it needs to answer questions 2 and

1    4 on the special verdict form if it answers guilty to

2    questions 1 and 3.

3              And by agreement I will respond as follows:

4              "Finally, the jury has asked for clarification of

5    the special verdict form.  The jury asks why it must

6    respond to questions 2 and 4, concerning drug amounts, if

7    it responds guilty to questions 1 and 3.  The court

8    responds by informing the jury that responses to questions

9    2 and 4 are required by law if the jury responds guilty to

10   questions 1 and 3."

11             And that will be by agreement; is that correct?

12             MR. BRADY:  Yes, Your Honor.

13             MR. LING:  Yes, Your Honor.

14             THE COURT:  Okay.  So just so the record is clear

15   we did not have deliberations on Wednesday, June 11th,

16   because that was a holiday in this district.  And so the

17   jury went home I think close to 4:00 P.M. on Tuesday and

18   resumed deliberating at nine o'clock this morning.  And it

19   is now close to 10:30.

20             Okay?  So we'll communicate back with you.  I

21   will fax copies of what we give to the jury, which will be

22   exactly what I read in the record here.  And then the next

23   time you hear from us there'll either be another jury

24   question or there'll be a verdict.  Okay?

25             MR. BRADY:  Thank you.

1          MR. LING:  Thank you, Judge.

2          THE COURT:  Thank you.  Goodbye.

3       (Court recessed at 10:24 A.M., until 11:55 A.M.)

4       (Conference call in chambers on the record:)

5          THE COURT:  Okay.  We have what I think is the

6   sixth note from the jury, which asks what physical control

7   means in the context of the instruction on page 8.

8          And the parties have agreed in our discussions

9   off the record that I may send a written response to the

10  jurors that states, quote, "To have physical control over

11  something means to have control over where it is or what is

12  done with it."

13         Is that by agreement, Mr. Brady?

14         MR. BRADY:  Yes, Your Honor.

15         THE COURT:  Mr. Ling?

16         MR. LING:  That's fine.

17         THE COURT:  Okay.  Then I'll send this in, and

18  we'll see how many more questions the jury could possibly

19  have.  I don't know what to think.

20         Okay.  Thank you very much.

21         MR. BRADY:  All right.  Judge, the jury's out to

22  lunch at this time; is that correct?

23         THE COURT:  Yes.  So what happened was the

24  question had come while I was in a hearing, and so since I

25  was not at a point that was convenient to interrupt the

1    jury went to lunch.

2              MR. BRADY:  They're coming back at what time?

3              THE COURT:  I think around one-ish, I think.

4    Close to 1:00.

5              MR. BRADY:  All right.

6              THE COURT:  Because this question came to us at

7    somewhere close to -- although it's file-stamped 11:45, it

8    bears the juror's time of 10:50.

9              11:30, I think, is when we learned about it

10   because I was in the courtroom at the time.  Okay?

11             MR. BRADY:  All right.  Thank you, Judge.

12             THE COURT:  Okay.  Thank you.

13             MR. LING:  Could I have a copy of that, too?

14             THE COURT:  Yes, I'll fax you copies of

15   everything.

16             Okay.  Thank you.  Bye.

17        (Court recessed at 11:58 A.M., until called.)

18

19

20

21

22

23

24

25

```
 1    FRIDAY, JUNE 13, 2003                  9:10 O'CLOCK A.M.
 2        (In open court without the jury:)
 3            THE CLERK:  Criminal 00-145 SOM, the United
 4    States of America versus defendant Alicia Veloria.  This
 5    case has been called for Jury Question.
 6            MR. BRADY:  Good morning.  Assistant United
 7    States Attorney Tom Brady on behalf of the United States.
 8            MR. LING:  Good morning, Your Honor.  Winston
 9    Ling on behalf of Alicia Veloria.  She's not present.  We
10    ask the court to waive her presence.
11            THE COURT:  Her presence is waived.
12            I asked you here -- we didn't actually get a jury
13    question.  What we got was the security personnel -- and I
14    don't know which person it was -- was told by juror
15    number --
16            THE CLERK:  10.
17            THE COURT:  -- Mr. Kuramoto that he didn't mind
18    the heated arguments that were going on about the
19    deliberation issues; what he minded were having physical
20    threats made against him by Mr. Paulino, who is juror
21    number --
22            THE CLERK:  4.
23            THE COURT:  -- 4.
24            So what I thought we should do is bring Mr.
25    Kuramoto in first by himself and ask him exactly what is
```

 1    going on and then excuse him and, if it looks like there's

 2    really an issue, bring in Mr. Paulino by himself and figure

 3    out what's going on.  Then we can talk again to see if

 4    really this is going anywhere or not.  But, you know, the

 5    last thing we want is somebody to get punched because

 6    they're so upset.

 7              Is there a better proposal than that?

 8              MR. LING:  I never had anything like this before;

 9    so --

10              THE COURT:  Welcome to the excitement of a trial

11    in front of me, Mr. Ling.

12              MR. LING:  Twelve Angry Men.

13              THE COURT:  Have never happened before.  What do

14    you folks think about this proposal?

15              MR. LING:  It sounds okay.

16              MR. BRADY:  Judge, obviously, no one wants

17    physical violence happening in a courtroom or in a

18    deliberation room, but, one, we do not have a communication

19    from the jury; so what we're doing is initiating that

20    contact.

21              THE COURT:  So do you have an objection to that

22    because, you see, the alternative is to send the jury in to

23    deliberate.

24              MR. BRADY:  I thought they were already there.

25              THE COURT:  They are not deliberating now.  They

1    did not begin their deliberations today.  They came in this

2    morning.  And, you know, they gather in the juror lounge,

3    at which point one of the jurors went up to a security

4    officer -- court security officer, who's there to take them

5    up to the deliberation room, and said -- and that's why I

· 6    think we should ask -- something to the effect of, "I don't

7    mind the arguments, but I really don't like the physical

8    threats being made against me."

9              So it's true we don't have a note from the jury,

10    but I think this is serious enough that we ought to inquire

11    into it because to get a note from the jury would require

12    that I put the alleged threatener and the alleged victim of

13    the threat together in the deliberation since to deliberate

14    the jury cannot be separated.  And it was in the interest

15    of separating the jury that we did not send them to the

16    deliberation room, and one of the jurors, the one who says

17    he's been threatened, is now separated from the rest, who

18    are just sitting in the lounge, reading the paper and --

19              MR. BRADY:  That's already been done?

20              THE COURT:  Yes.  One of the jurors has been

21    taken to -- I think he's in the deliberation room, and the

22    rest of the jurors are in the lounge, talking and eating

23    breakfast and reading the newspaper.

24              MR. BRADY:  Well, my objection is that, unless we

25    hear from the jury, we've got 12 people.  I don't want to

1    say that I can tell what's going to happen, but to me every

2    jury will go through to some extent this kind of a

3    situation.

4            THE COURT:  Have you -- I'm like Mr. Ling.  I

5    have not previously had a jury in which one juror claimed

6    that another juror was physically threatening the first

7    juror.  I mean maybe you've had this situation, and, if you

8    have, I'd be delighted to have the wisdom of your

9    experience in how to deal with it.  I myself have not had

10   this.

11           MR. BRADY:  I object.  Let's go forward, though.

12   If you would like to voir dire the juror that you believe

13   has been threatened, let's go forward.  I don't know if you

14   want to do that outside the presence of counsel or if you

15   want us present.

16           THE COURT:  What would you like?  But you are

17   objecting to any questioning of any juror at this time.

18   You would like the jurors to begin their deliberations, and

19   you would like us to wait for a written communication from

20   the jurors; is that your position?

21           MR. BRADY:  Yes.  That is.

22           THE COURT:  Your position, Mr. Ling.

23           MR. LING:  My concern is that whether or not it

24   poisoned the other jurors by the court separating -- I

25   don't know.  They, obviously, think that something's up

1    right now, and they probably know what's going on.

2            THE COURT:  Well, I will tell you actually the
3    separation had been done before this was brought to my
4    attention.  The marshals made a decision that they should
5    separate this juror who felt that he had been threatened.
6    They felt this was a security issue, and so that's what
7    they did.

8            So this separation was not the result of a court
9    order.  It was the result of a security-related decision
10   made by the United States Marshal's Office.  And after the
11   separation had occurred this was brought to the courtroom
12   manager's attention and then to mine.  The only thing I
13   then instructed the courtroom manager to do was to move the
14   juror who was claiming to have been threatened because the
15   marshals had placed that juror in the jury box, and so I
16   suggested that that person be placed in the deliberation
17   room instead.  But he had already been separated by the
18   time this was brought to my attention.

19           MR. LING:  I think what the court should do is at
20   least inquire of that particular juror what happened.

21           THE COURT:  Yeah, because suppose it's not really
22   that bad.

23           MR. LING:  Because, if it's bad, then what
24   happens is you might have to individually voir dire each
25   juror to see whether or not that would affect their, you

1   know, decision and stuff.  And it might.  I don't know.  It
2   might call for a motion or something like that.  I don't
3   know.

4           So I guess at least what the court should do is
5   inquire of that particular juror.

6           THE COURT:  So the defense position is to inquire
7   of the juror who's the alleged victim; is that right?

8           MR. LING:  Yes, Your Honor.

9           THE COURT:  Would you like that done with your
10  presence or would you like me to just do it privately with
11  him?

12          MR. LING:  I think it should be in our presence.
13  Let me think.  Let me think about that.

14          I think it should be in our presence.  I mean
15  wait.  I'll tell you what.  Maybe it should be done out of
16  our presence, but, if there's something that's warranted
17  that further action needs to be taken, then it should be
18  done in our presence.  Then we should have him come and say
19  something on the record or something.

20          But I think, initially, I think it should be done
21  out of the court's -- out of our presence with the court,
22  and, if there's anything further -- if there's nothing
23  really going on, then that's not a problem.  But, if
24  there's something that's going on that the court warrants
25  further action in, I think he should be brought in before

1  us and put that on the record what's going on.

2          THE COURT:  You want me to talk to him off the

3  record in my chambers without the presence of counsel.

4          MR. LING:  I think so.

5          THE COURT:  I actually think that's a good idea.

6          Mr. Brady, I know you object to any questioning,

7  but I'm going to go ahead and question this alleged victim.

8  And do you have a recommended procedure from your side,

9  given that I'm going to do that?

10         MR. BRADY:  I agree with counsel.

11         THE COURT:  Then why don't you folks stay here.

12  Let me ask my courtroom manager.

13         Can the juror be taken out of the deliberation

14  room through the neighboring courtroom so he doesn't see

15  them and then brought to my chambers?  Okay.  I'll do that.

16         So counsel stay here for a little while.

17         (Court recessed at 9:20 A.M., until 9:33 A.M.)

18         THE COURT:  Okay.  Here's what happened.

19         Mr. Kuramoto came into chambers.  I don't know if

20  you folks remember what he looks like, but I think he's in

21  his late 50s maybe.  He's a fairly large guy.  He said he

22  had some kind of a handicap, but I don't know what it is.

23  And he reported that the argument had been heated.  I told

24  him to be careful not to tell me the nature of the

25  argument, the nature of the deliberations, or the split or

1    who was on my side. And he complied and was careful not to
2    do that.

3              He said that at one point Mr. Paulino made an
4    obscene gesture, which caused him to respond with
5    obscenities. He asked me, "Do you want me to tell you
6    exactly what I told Mr. Paulino?" I said, "You may, but be
7    careful not to tell me anything about the substance of the
8    deliberations."

9              So he said, "All right. I'll tell you, Judge."
10   "What I told Mr. Paulino -- I don't know why I have to say
11   these words from the bench, but it happens all the time.
12   Mr. Silvert's case I had to do this same thing -- said,
13   quote, "Shut up, you big fat fuck, and shove it up your
14   ass," or something like that, closed quote. You can both
15   rush back to your colleagues and tell them how I had to say
16   this. Something to that effect.

17             And at that point Mr. Paulino got very angry,
18   stood up, and said, "Let's take it outside." And the
19   foreperson said, "I think we should take a break." And
20   that's when we got the note that said, "May we go home."
21   And so it's good that we said, "Yes, you may go home."

22             So I asked Mr. Kuramoto whether he felt that he
23   was too intimidated to deliberate. He said, "No, it won't
24   affect my deliberation, but I really -- I don't like being
25   threatened, and I'm not going to take it."

1          And I said, "Well, I could talk to Mr. Paulino,

2    or do you think things have calmed down?"  And he said that

3    he thought maybe they should just go in and resume

4    deliberations and he would have the foreperson send out a

5    note, if in fact he felt intimidated.  But he -- I asked

6    him whether there had been some physical movement toward a

7    fight, and he said -- I guess they were both on their feet

8    at that point, but, you know, I don't think anybody grabbed

9    him or I don't think any fists were raised.

10          So I'm kind of inclined to take Mr. Kuramoto's

11   suggestion:  just send him down to the lounge and have the

12   marshals take them up to the deliberation room and have

13   them resume deliberations.  I did tell Mr. Kuramoto I would

14   tell him what we were going to do since he's upstairs now

15   in the deliberation room.

16          So what are the views of counsel, given that

17   report?

18          MR. LING:  The one concern I have with Mr.

19   Kuramoto is whether or not it would solidify his position

20   against -- because he dislikes Mr. Paulino, maybe it will

21   solidify his position against Mr. Paulino.  That's my

22   concern.

23          THE COURT:  He did represent to me it would not

24   affect his deliberation.  But would you like me to call him

25   in so you could question him on that?

1          MR. LING:  Yeah, I think that would be prudent, I
2    think, to do that.

3          THE COURT:  Okay.  Mr. Brady.

4          MR. BRADY:  Well, Judge, it sounds like from your
5    colloquy with the juror it would not affect his ability to
6    go in.  In fact, that was his suggestion.  Again,
7    technically, we have not received any note from the jury,
8    and I would again request that it's -- that position has
9    been strengthened by the court's colloquy, and that we
10   should go forward and let the jury start to deliberate
11   again without any further questioning from the court.

12         THE COURT:  Okay.  Mr. Ling.

13         MR. LING:  Either way.  I mean whether or not the
14   court -- first of all, it was without the court's doing.  I
15   mean the marshals went ahead and separated these people.

16         THE COURT:  Well, they didn't see each other even
17   this morning.  Mr. Kuramoto said he did not see Mr. Paulino
18   at all anyway; so for all Mr. Paulino knows -- I think this
19   occurred before they had all gotten together in the lounge;
20   so Mr. Paulino may think Mr. Kuramoto is just late.

21         MR. LING:  Okay.

22         THE COURT:  Because I asked Mr. Kuramoto if he
23   had seen Mr. Paulino this morning because I wanted to
24   inquire what the nature of, you know, the reaction was.
25   And he said I didn't even see him this morning.

1          MR. LING:  Yeah, it's just that normal jurors

2    will say, "What's the hangup?  Where's the other juror?"

3    And they're going to say, "Where is Mr. Kuramoto?"  And the

4    other jurors probably know that he was separated.  That's

5    the only thing.  But --

6          THE COURT:  I don't know they know that.

7          MR. LING:  I don't know either.  But the thing is

8    that, nevertheless, it was brought up to the court and the

9    court had to investigate, I think, to at least find out

10   preliminary wise just what this was all about.

11         THE COURT:  We could tell him not even to

12   disclose to the other jurors --

13         MR. LING:  Right.

14         THE COURT:  -- that he had met with me.  I don't

15   mind telling him that.

16         MR. LING:  Right.  But my concern is that I don't

17   want him -- because of this incident I don't want it to

18   be -- his position to be polarized because, you know,

19   cemented down that this is -- "I don't like Mr. Paulino.

20   I'm going to go against his views."

21         THE COURT:  Okay.  I guess this is the concern I

22   have, and it's a little different concern from the one Mr.

23   Brady's raised.  I actually am not so concerned about Mr.

24   Brady's objection that, gee, we didn't get a note from the

25   jurors.  I mean suppose somebody said, "I'm afraid to go

1    in."  I wouldn't have a note from the jurors, but I

2    certainly wouldn't want to send that person in.

3           I have a different concern, and that is this:  If

4    we're so concerned that Mr. Paulino will be unwilling to

5    consider -- I'm sorry.  That Mr. Kuramoto will be unwilling

6    to consider Mr. Paulino's point of view, we should, I

7    suppose, have the same concern that Mr. Paulino is so angry

8    or intimidated or what have you by Mr. Kuramoto that Mr.

9    Paulino on his side isn't going to consider what Mr.

10   Kuramoto is saying.  And then I think that opens it up to

11   inquiring into everybody's state of mind.

12          I have the additional concern that the more we

13   question about whether someone will consider another

14   person's viewpoint the more danger there is that that --

15   who has which respective viewpoint will come out.  And at

16   all costs I want to avoid that.

17          You're nodding your head, Mr. Ling.

18          MR. LING:  I'm in somewhat agreement, but from

19   the looks of it it looks like it's going to be a hung jury

20   from what I can see.

21          THE COURT:  Possibly, but they haven't yet told

22   me --

23          MR. LING:  Right.

24          THE COURT:  -- we're unable to reach a verdict.

25   They haven't yet said that.  The most they said was, "We

1   have a conclusion, but it's not unanimous.  Do you want us

2   to continue deliberating?"

3           MR. LING:  Right.

4           THE COURT:  And that suggested, gee, you know,

5   should we try harder, and the answer was yes.  But they

6   have not told me we cannot reach unanimity, and so I'm not

7   prepared to declare this a hung jury.

8           MR. LING:  Right, right.  I understand what

9   you're saying.  And my position is I don't want a hung jury

10  in the first place, but --

11          THE COURT:  I think what I should do is I should

12  tell Mr. Kuramoto that we're just going to send him down to

13  the lounge, and then the whole jury can begin deliberations

14  but that he should not disclose to the other jurors that he

15  had a conversation with me.  If they ask him, "Where have

16  you been," he can just say I had to take care of some

17  personal matters or something to that effect.

18          MR. BRADY:  The government would agree with that

19  response.

20          MR. LING:  I would agree with that.  I just want

21  him -- that to be put on the record, though.  The court

22  reporter -- about the court advising him --

23          THE COURT:  Oh, you want him to come in now?

24          MR. LING:  No, no, no, no.  I mean it can be in

25  chambers with you but with the court reporter at least

```
 1   putting it down what you're going to advise him to do.
 2            THE COURT:  Advise him -- you don't take my word
 3   for it?
 4            MR. LING:  No, no.  What I'm saying is he's going
 5   to tell you -- basically advise him is it going to
 6   affect -- ask him if it's going to affect his decision or
 7   not and then put on the record that he's going to say, no,
 8   it won't affect my, you know, and stuff and then tell him
 9   not to discuss this with the other jurors on the record.
10   But not here in front of us.  I mean --
11            THE COURT:  Why does it have to be on the record?
12   This juror's pretty, you know, had a pretty aggravating
13   experience already.  I mean, unless you think I'm going to
14   not do what I tell you I'm going to do or misreport it,
15   can't you take my word for it that I will tell him this?
16            MR. LING:  That's fine, Your Honor.  That's okay.
17            THE COURT:  I will tell him what I have said I
18   will tell him, which is, "Please go back and begin
19   deliberations.  Do not disclose to the other jurors that
20   you had a private discussion with me.  And, if asked, you
21   can say that you had to take care of some personal
22   matters."  Okay?
23            MR. LING:  That's fine.
24            MR. BRADY:  Thank you, Your Honor.
25            THE COURT:  Thank you very much.  We'll contact
```

1    you when we get our next communication, but stay close to

2    your telephones because I think it's likely we're going to

3    get a communication fairly soon one way or another.

4           I mean I'm not inclined to hold them over next

5    week, if, you know, it doesn't look hopeful at least.  But

6    we'll talk about it as we get closer to the end of the day.

7           MR. LING:  I should let the court know that I do

8    have military duty next week from the 15th to the 28th;

9    so --

10           THE COURT:  Okay.  Well, we'll see what happens.

11   I'll talk to you at the end of the day.  Thank you.

12           (Court recessed at 9:44 A.M., until 2:54 P.M.)

13           THE CLERK:  Criminal 00-145 SOM, United States of

14   America versus defendant Alicia Veloria.  This case has

15   been called for a Verdict.

16           Counsel, please state your names for the record.

17           MR. BRADY:  Good afternoon.  Assistant United

18   States Attorney Tom Brady on behalf of the United States

19   along with Task Force Agent Damien Freitas.

20           MR. LING:  Good afternoon, Your Honor.  Winston

21   Ling on behalf of Alicia Veloria, who is present.

22           THE COURT:  Okay.  We're going to bring the jury

23   in.

24       (Jury enters.)

25           THE COURT:  Could I have the foreperson rise.

1          Has the jury reached a verdict?

2          THE JUROR:  Yes, Your Honor.

3          THE COURT:  Is the verdict unanimous?

4          THE JUROR:  Yes, Your Honor.

5          THE COURT:  Could you please hand the verdict

6    form to the courtroom manager.

7          Okay.  At this time I am going to have the

8    courtroom manager publish the verdict.  What that means is

9    it will be read out loud.

10         Listen to what is read because after that we will

11   ask each of you if this is your verdict.

12         THE CLERK:  Criminal 00-145 SOM, United States of

13   America versus defendant Alicia Veloria.

14         As to count 1, we, the jury, find the defendant

15   Alicia Veloria guilty.

16         THE COURT:  Can you read the second question and

17   the answer.

18         THE CLERK:  Did the government prove beyond a

19   reasonable doubt that the amount of cocaine base involved

20   in count 1 was at least five grams?

21         THE CLERK:  Yes.

22         THE COURT:  As to count 2, we, the jury, find the

23   defendant Alicia Veloria not guilty.

24         THE COURT:  All right.  You may be seated at this

25   time.  I will have the courtroom manager poll the jurors.

```
 1              THE CLERK:  Is the verdict so read your verdict?
 2              Juror number 1?  Is the verdict so read your
 3   verdict?
 4              THE JUROR:  Yes.
 5              THE CLERK:  Juror number 2?
 6              THE JUROR:  Yes.
 7              THE CLERK:  Juror number 3?
 8              THE JUROR:  Yes.
 9              THE CLERK:  Juror number 4?
10              THE JUROR:  Yes.
11              THE CLERK:  Juror number 5?
12              THE JUROR:  Yes.
13              THE CLERK:  Juror number 6?
14              THE JUROR:  Yes.
15              THE CLERK:  Juror number 7?
16              THE JUROR:  Yes.
17              THE CLERK:  Juror number 8?
18              THE JUROR:  Yes.
19              THE CLERK:  Juror number 9?
20              THE JUROR:  Yes.
21              THE CLERK:  Juror number 10?
22              THE JUROR:  Yes.
23              THE CLERK:  Juror number 11?
24              THE JUROR:  Yes.
25              THE CLERK:  Juror number 12?
```

1            THE JUROR:  Yes.

2            THE COURT:  All right.  At this time, then,

3   ladies and gentlemen, I thank you for your work as jurors,

4   and you are discharged.  What that means is that you have

5   completed your service.  This was a great civil duty that

6   you performed, and we are very grateful to you.

7            If you have time, I would like to speak with the

8   jurors in my chambers; so, if you have time, go up to the

9   deliberation room, gather anything personal that you may

10  have left there, and then my law clerk will take you to my

11  chambers for those of you who have time.  But you are not

12  required to do this.  Only if you would like to.  And in

13  any event you cannot leave the court house without turning

14  in your juror badge to the jury clerk.

15           All right.  So at this time we're going to excuse

16  you.

17           Do any of you need to go back to the deliberation

18  room to get anything?  No?  Okay.  Then my law clerk will

19  take those of you who have time to my chambers.  Thank you

20  very much.

21           All rise for the jurors.

22       (Jury excused.)

23           THE COURT:  Mr. Brady.

24           MR. BRADY:  Your Honor, at this time the

25  government would like to file in open court the

1    Government's Motion to Detain the Defendant Pending

2    Sentencing.  We are relying on 18 USC 3143(a)(2).  We

3    believe that the circumstances are such that as a matter of

4    law the defendant should be held pending sentencing.

5            THE COURT:  Okay.  Mr. Ling.

6            MR. LING:  Your Honor, basically, this is a very

7    old case.  It's about almost seven years old.  And what

8    we're saying, Your Honor, is this case is that Miss Veloria

9    has been making her appearances, she's been -- in fact,

10   she's been in Alaska or out of the state for a number of

11   years.  And during this time she has went to college.  She

12   got almost a 4.0 average.  I think she just about

13   graduated.

14            And, basically, Your Honor, we would like to be

15   able to have her out of this case pending sentencing at

16   least, Your Honor.  She do need -- she hasn't seen her

17   father for a long time.  She's actually been with the

18   father for a long time.  She would like to be able to see

19   her father and take care of matters.

20            THE COURT:  Well, my concern is that, even though

21   she has been out on bail for a long time and has complied

22   with the conditions of bail, that the circumstance of being

23   found guilty may well change her state of mind.  When

24   people are awaiting trial, they often are anticipating that

25   they will be acquitted of charges, and so working toward

1    the day of trial they may not feel motivated to flee or

2    otherwise violate conditions of bail.  But that is not the

3    mindset that people who have been found guilty can have

4    anymore, and that's my concern.

5              MR. LING:  Yes, Your Honor.  I think you have to

6    take each case by itself case by case and you have to look

7    at that person actually.  She, basically, has, you know,

8    fulfilled everything that -- the conditions of her release

9    for a long time, and --

10             THE COURT:  Okay.  I also in this case, though,

11   do have the circumstance of the letter that did come into

12   evidence in which Miss Veloria appeared to be seeking to

13   get other witnesses to say things for her that were not

14   true.  And that letter, as I recall, was sent -- was in

15   2001.

16             MR. LING:  2002?

17             THE COURT:  2002.

18             MR. BRADY:  I believe it was 2001, Judge.

19             MR. LING:  2001, Your Honor; so --

20             MR. BRADY:  Judge, if I may, I'll file this

21   motion.

22             THE COURT:  Yes.  I'll look at it.  I'll be happy

23   to look at it.  Can you also make sure you give a copy to

24   Mr. Ling.

25             You can be seated.

1          MR. BRADY:  Your Honor, the government's position

2     is that --

3          THE COURT:  You can sit down.

4          MR. BRADY:  We don't even go and address the

5     issue of flight or dangerousness.

6          If you go to 3143(a)(2) there are two

7     circumstances this court must find to allow Miss Veloria to

8     walk out of the courtroom.  One is there is a substantial

9     likelihood that a motion for acquittal or new trial would

10    be granted; (2) the government would recommend no sentence

11    of imprisonment.  I can state unequivocally the government

12    cannot anticipate a situation where it will not ask for

13    jail time for Miss Veloria.  The only other alternative

14    then is if there's a substantial likelihood that the motion

15    for acquittal or new trial would be granted.  And again

16    knowing the facts and circumstances of this case I would

17    submit that as a matter of law that would not be likely.

18         THE COURT:  Okay.  Give me a moment here.

19    (Court reviewing government's motion.)

20         THE COURT:  Okay.  Mr. Ling, have you had a

21    chance to look at it?

22         MR. LING:  Yes, Your Honor.

23         THE COURT:  Do you need more time?

24         MR. LING:  No.  I'm fine.

25         THE COURT:  Okay.  Do you want to respond to the

1    written submission?

2        MR. LING: Yes, Your Honor. Basically is like

3    the prosecutor is saying that 18 U.S.C. 3143 -- first of

4    all, he just said there's two different or three different

5    conditions which you have to find -- oh, two different

6    conditions you have to find in order to detain Miss

7    Veloria. And one is that whether or not there is a

8    substantial likelihood that motion for acquittal or new

9    trial will be granted.

10        There's some appealable issues, but I think what

11    the government is saying also in the same line is that an

12    attorney for the government has recommended that no

13    sentence of imprisonment be imposed on this person and

14    they're saying, well, we'll be asking for imprisonment.

15    But they also have to show that and the judicial officer by

16    clear and convincing evidence that the person is not likely

17    to flee or pose a danger to any other person or the

18    community.

19        Basically is in this case Miss Veloria doesn't

20    have any criminal record, as I understand, and she -- like

21    I said, this was occurred when she was 19 years old, about

22    seven years ago. And during this time she had -- her

23    behavior has not -- she has not done anything wrong and she

24    has not committed any crimes during the time that she was

25    out on release. I don't think there's any likelihood that

1    she would flee or pose any danger to any other person or

2    the community.   There is no instances where she has any

3    indication that she is prone to any violence or has tried

4    to enact any violence in any other person.

5           I don't believe that -- I believe that there may

6    be some, Your Honor, appealable issues in this case.

7    There's some question as to the results being entered into

8    evidence, but there are other things also, Your Honor.  But

9    the problem is that --

10          THE COURT:  Which results?  I'm sorry.

11          MR. LING:  The drug results, Your Honor.  I'm not

12   sure whether or not foundation has been satisfied to allow

13   the drug results to enter into evidence.  That's a possible

14   issue.  But there are other things, Your Honor.  But what

15   I'm trying to tell the court is that I believe that in this

16   case here that Miss Veloria is not a danger to any person

17   and not -- there is no indication that she would flee.  I

18   would ask the court to have her be released -- still be on

19   status release prior to sentencing.

20          THE COURT:  Well, I'm going to grant the

21   government's motion to detain Miss Veloria.  I don't see a

22   substantial likelihood that a motion for acquittal or new

23   trial will be granted.  The government is clearly seeking a

24   sentence of imprisonment, and indeed, unless the government

25   moves for a downward departure, one is required by law.

1    And I do, in addition, say that I cannot find by clear and

2    convincing evidence that Miss Veloria is not likely to flee

3    or that she is not posing a danger to any other person or

4    the community.  So, given that, I will have her detained

5    immediately, and she is now remanded to the custody of the

6    marshals.

7            I will have the courtroom manager announce a

8    sentencing date.

9            THE CLERK:  October 21st at 2:15.

10           THE COURT:  Okay.  So Miss Veloria is to be held

11   in custody immediately, and I will see everyone

12   October 21st.  Thank you.

13           MR. BRADY:  Thank you, Your Honor.

14           THE COURT:  I'll also have the courtroom manager

15   make sure that the alternates, who were only conditionally

16   discharged, are notified that they are now fully

17   discharged.  Thank you.

18           (Court adjourned at 3:11 P.M.)

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2              I, Debra Kekuna Chun, Official Court Reporter,

3    United States District Court, District of Hawaii, do hereby

4    certify that the foregoing is a correct transcript from the

5    record of proceedings in the above-entitled matter.

6              DATED at Honolulu, Hawaii, July 28, 2003.

7

8

9                              DEBRA KEKUNA CHUN

10                             RPR, CRR

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25