# ORIGINAL

## United States District Court

## District of Hawaii

### CV08  00019 SOM BMK

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 09 2008

at __ o'clock and __ min. __ M.
SUE BEITIA, CLERK

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **Crim. No.00-00145** |
| ) | **Civil No.** |
| **Plaintiff-Respondent** ) | **HON.  SUSAN OKI MOLLWAY** |
| ) | |
| **Vs.** ) | |
| ) | |
| **ALICIA VELORIA** ) | **MEMORANDUM IN SUPPORT** |
| ) | **OF 2255 MOTION** |
| **Defendant-Movant** ) | |

Nunc Pro Tunc: 12/26/07

RECEIVED
CLERK U.S. DISTRICT COURT

DEC 26 2007

DISTRICT OF HAWAII

\*    \*    \*    \*    \*    \*    \*    \*    \*

**COMES NOW DEFENDANT-MOVANT, ALICIA VELORIA, Pro Se** and submits the following memorandum in support of her motion pursuant to 28 USC § 2255.  This memorandum includes and incorporates by reference the Section 2255 Model Court Form as well as the information contained within Ms. Veloria exhibits and incorporated by reference therein.

### STATEMENT OF FACTS

The relevant facts of the motion and of this memorandum are set forth and pleaded in the Section 2255 Model Court Form and the 35 exhibits submitted in Support of Ms. Veloria's claims.  This Court should accept the allegations of Ms. Veloria as true where they are not conclusively contradicted by "files and records of the case" for purposes of determining whether Ms. Veloria has stated a prima facie claim for relief and is therefore entitled to an  evidentiary

1

hearing. [1]  Since the Court must necessarily review the allegations of the 2255 motion for

sufficiency, Ms. Veloria will not repeat those allegations in this memorandum except as

necessary.

---

[1] *See United States v. Dawson,* 857 F 24 923, 927-928 (3rd Cir. 1988) and *United States v. Rodriguez-Rodriguez,* 929 F2d 747,
752 (1st Cir. 1991).

## TABLE OF CONTENTS

**CLAIM**                                                                      **PAGE**

**CLAIM NUMBER 1**                                                              31
**EXCULPATORY POLICE REPORT WITHHELD FROM DEFENSE
RESULTING IN A VIOLATION OF MS. VELORIA'S FIFTH
AMENDMENT DUE PROCESS RIGHTS AND HER SIXTH
AMENDMENT RIGHT TO CONFRONTATION**

**CLAIM NUMBER 2**                                                              35
**COUNSEL FAILED TO OBTAIN POLICE REPORT THEREBY
VIIOLATING MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE
PROCESS OF LAW AND HER SIXTH AMENDMENT RIGHT TO
CONFRONTATION AND TO HAVE AFFECTIVE ASSISTANCE OF
COUNSEL**

**CLAIM NUMBER 3**                                                              38
**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EQUAL
PROTECTION WAS VIOLATED WHEN THE GOVERNMENT
ENGAGED IN SELECTIVE PROSECUTION BY ONLY CHARGING,
INVESTIGATING AND PROSECUTING MS. VELORIA WHEN OTHERS
WERE "SIMILARLY SITUATED"**

**CLAIM NUMBER 4**                                                              42
**MS. VELORIA'S FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO
EQUAL PROTECTION UNDER THE DUE PROCESS CLAUSE WAS
VIOLATED UPON THE POST ARREST/PRE-INDICTMENT DELAY
BECAUSE OF PREJUDICIAL UNAVAILABILITY OF A KEY DEFENSE
WITNESS**

**CLAIM NUMBER 5**                                                              47
**MS. VELORIA'S FOURTH AMENDMENT RIGHT TO BE FREE FROM
UNLAWFUL SEARCH AND SEIZURE WAS VIOLATED WHEN
COUNSEL WAS INEFFECTIVE BY FAILING TO FILE A PRE-TRIAL
MOTION TO SUPPRESS THE SEIZURE OF MS. VELORIA'S TRUCK
AND TO CONFRONT THE SEIZING OFFICERS WITH THEIR
INCONSISTENT TESTIMONY AT TRIAL**

**CLAIM NUMBER 6**                                               52
**MS. VELORIA'S WAIVER OF HER FIFTH AMENDMENT RIGHT
AGAINST SELF-INCRIMINATION WAS UNKNOWING, AS COUNSEL
INCORRECTLY INFORMED HER OF THE STATEMENTS USE TO
THE GOVERNMENT AT TRIAL**

**CLAIM NUMBER 7**                                               60
**MS. VELORIA'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN HER
FEDERAL   PUBLIC   DEFENDER   WAS   INEFFECTIVE   IN   HIS
UNDERSTANDING   AND   ADVICE   REGARDING   A   PROFFERED
STATEMENT AND ITS LIMITATION AT TRIAL**

**CLAIM NUMBER 8**                                               64
**MS. VELORIA'S FIFTH AMENDMENT RIGHT AGAINST SELF
INCRIMINATION AND HER SIXTH AMENDMENT TO EFFECTIVE
ASSISTANCE OF COUNSEL WERE VIOLATED WHEN DEFENSE
COUNSEL WAS INEFFECTIVE IN RAISING MS. VELORIA'S
UNKNOWING WAIVER ISSUE**

**CLAIM NUMBER 9**                                               69
**THE COURT FAILED TO REMEDY MS. VELORIA'S UNKNOWING
WAIVER OF HER FIFTH AMENDMENT RIGHT BEFORE TRIAL
THERBY RESULTING IN THE VIOLATION OF MS. VELORIA'S SIXTH
AMENDMENT RIGHT TO CONFRONTATION**

**CLAIM NUMBER 10**                                              75
**MS. VELORIA'S FIFTH AMENDMENT RIGHTS TO DUE PROCESS OF
LAW   AND   FUNDAMENTAL   FAIRNESS,   AND   HER   SIXTH
AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL
AND TO CONFRONT WITNESSES AGAINST HER WERE VIOLATED
WHEN THE COURT REFUSED TO RULE ON MS. VELORIA'S
UNKNOWING WAIVER ISSUE UNTIL THE END OF HER TRIAL
THEREBY   PREJUDICING   ALL   OF   THE   DEFENSES   CROSS
EXAMINATIONS**

**CLAIM NUMBER 11**                                              78
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF
LAW WAS VIOLATED WHEN THE GOVERNMENT FAILED TO
PROVIDE DISCOVERY AFTER BEING ORDERED BY THE COURT TO
DO SO**

**CLAIM NUMBER 12**                                                                          80
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF
LAW WAS VIOLATED BY MEMORANDUM OF INTERVIEW
CONTAINING BLATANTLY FALSE STATEMENTS**

**CLAIM NUMBER 13**                                                                          87
**MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS
UNDER *BRADY* WERE VIOLATED WHEN THE GOVERNMENT
FAILED TO PRODUCE DISCOVERY WHICH FORMED BASIS OF
INTRICATE DIAGRAM**

**CLAIM NUMBER 14**                                                                          92
**MS. VELORIA'S CONSTITUTIONAL RIGHTS WERE VIOLATED
WHEN DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO
CONFRONT THE GOVERNMENT REGARDING A DIAGRAM THAT
WAS LIKELY A RESULT OF AN ILLEGAL WIRETAP OR
UNAUTORIZED SURVEILLANCE PERPETRATED ON MS. VELORIA
THEREBY VIOLATING HER PRIVACY RIGHTS**

**CLAIM NUMBER 15**                                                                          98
**MS. VELORIA WAS DENIED DUE PROCESS OF LAW WHEN HER
PROSECUTOR INTENTIONALLY MISLED THE COURT IN
RELATION TO ADMISSION OF PREJUDICIAL "PRIOR BAD ACTS"
EVIDENCE**

**CLAIM NUMBER 16**                                                                          100
**DEFENSE COUNSEL WAS INEFFECTIVE IN RELATION TO
GOVERNMENT'S INTRODUCTION OF 404 (b) EVIDENCE IN
VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO
EFFECTIVE ASSISTANCE OF COUNSEL**

**CLAIM NUMBER 17**                                                                          103
**MS. VELORIA'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL
WAS DENIED WHEN COURT APPOINTED[2] COUNSEL FAILED TO
SUBMIT A MOTION REQUESTING CERTAIN EVIDENCE BE
EXCLUDED FROM USE AGAINST HER AT TRIAL.**

**CLAIM NUMBER 18**                                                                          107
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND
SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL WAS VIOLATED WHEN EXCULPATORY RENT RECEIPT
SEIZED DURING SEARCH WAS NOT INTRODUCED AT TRIAL**

---

.

**CLAIM NUMBER 19**                                                                    110
**MS. VELORIA WAS DENIED HER SIXTH AMENDMENT RIGHT TO
OFFER THE TESTIMONY OF FAVORABLE WITNESSES AT TRIAL**

**CLAIM NUMBER 20**                                                                    113
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND
HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND TO
HAVE EFFECTUVE ASSISTANCE OF COUNSEL WERE VIOLATED
WHEN COURT APPOINTED COUNSEL FAILED TO MOVE THE
COURT FOR DISCLOSURE OF THE IDENTITY OF THE
CONFIDENTIAL INFORMANT AGAINST HER**

**CLAIM NUMBER 21**                                                                    116
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND
SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL WERE VIOLATED WHEN PROSECUTOR FAILED TO
CORRECT GOVERNMENT WITNESS TESTIMONY KNOWN TO BE
FALSE**

**CLAIM NUMBER 22**                                                                    118
**MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL AND TO CONFRONT THE WITNESSES
AGAINST HER WERE DENIED WHEN HER ATTORNEY FAILED TO
RECOGNIZE AND ARGUE THE APPROPRIATE HEARSAY
EXCEPTION TO QUESTION A WITNESS ABOUT HIS PRIOR
STATEMENT**

**CLAIM NUMBER 23**                                                                    121
**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COURT
APPOINTED DEFENSE COUNSEL FAILED TO ASSERT 609 (A)(2)
FEDERAL RULES OF EVIDENCE TO INTRODUCE CONVICTIONS
FOR CRIMES OF DISHONESTY FOR BOTH GOVERNMENT
WITNESSES WHO TESTIFIED AGAINST HER AT TRIAL THEREBY
DENYING MS. VELORIA'S RIGHT TO CONFRONTATION**

**CLAIM NUMBER 24**                                                                    124
**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COURT
APPOINTED DEFENSE COUNSEL FAILED TO ASSERT 609 (A)(2)
FEDERAL RULES OF EVIDENCE TO INTRODUCE CONVICTIONS
FOR CRIMES OF DISHONESTY FOR BOTH GOVERNMENT
WITNESSES WHO TESTIFIED AGAINST HER AT TRIAL THEREBY
DENYING MS. VELORIA'S RIGHT TO CONFRONTATION**

**CLAIM NUMBER 25**                                                                127
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND
HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND
EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN
THE GOVERNMENT FAILED TO DISCLOSE THE FACT THAT THEIR
WITNESS' (BARCENA) RECEIPT OF AN UNLIKELY DEFERRED
ACCEPTANCE PLEA WAS A RESULT OF HER COOPERATION
AGAINST MS VELORIA**

**CLAIM NUMBER 26**                                                                133
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND
SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF
COUNSEL WERE VIOLATED WHEN SUSPICIOUS DATES REPORTED
ON BARCENA'S "RAP SHEET" WERE NOT INQUIRED INTO DURING
TRIAL THEREBY VIOLATING MS. VELORIA'S RIGHT TO
CONFRONTATION**

**CLAIM NUMBER 27**                                                                137
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND
HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND
EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN
KEY GOVERNMENT WITNESS COMMITTED PERJURY DURING
HER GRAND JURY TESTIMONY**

**CLAIM NUMBER 28**                                                                140
**PROSECUTOR ALLOWED GOVERNMENT WITNESS BARCENA TO
TESTIFY FALSELY REGARDING CIRCUMSTANCES OF REDUCED
CHARGE THEREBY VIOLATING MS. VELORIA'S RIGHT TO
CONFRONT THE WITNESSES AGAINST HER WITH EFFECTIVE
ASSISTANCE OF COUNSEL**

**CLAIM NUMBER 29**                                                                144
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF
LAW AND HER SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WERE VIOLATED WHEN GOVERNMENT
WITNESS BARCENA'S "RULE 35"  DIRECTLY RELATED TO MS.
VELORIA'S INDICTMENT TWO DAYS LATER WAS NOT DISCLOSED
NOR DISCOVERED WITH REASONABLE INVESTIGATION THEREBY
VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION**

**CLAIM NUMBER 30**                                                    150
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF
LAW AND SIXTH AMENDMENT RIGHT TO COUNSEL WERE
VIOLATED WHEN COUNSEL FAILED TO EXPLORE GOVERNEMNT
WITHNESS' MOTIVATION BEHIND THE INFORMATION PROVIDED
TO LAW ENFORCEMENT OFFICERS, THREFORE DENYING MS.
VELORIA HER RIGHT TO CONFRONTATION**

**CLAIM NUMBER 31**                                                    153
**MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS WERE
VIOLATED WHEN PROSECUTION WITHHELD DURING TRIAL FACT
THAT KEY GOVERNMENT WITNESS HAD TWO SEPARATE
CHARGES FOR CRIMES OF DISHONESTY PENDING AGAINST HER,
ONE OF WHICH OCCURRED JUST TWO WEEKS BEFORE MS.
VELORIA'S TRIAL THERBY VIOLATING HER RIGHT TO
CONFRONTATION**

**CLAIM NUMBER 32**                                                    157
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF
LAW WAS VIOLATED WHEN GOVERNMENT FAILED TO DISCLOSE
FACT THAT THEIR WITNESS HAD A KNOWN MENTAL ILLNESS
THEREBY VIOLATING MS. VELORIA'S RIGHT TO
CONFRONTATION**

**CLAIM NUMBER 33**                                                    160
**MS. VELORIA'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF
LAW, FUNDAMENTAL FAIRNESS, CONFRONTATION AND
EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED BY THE
OBJECTIVELY UNREASONABLE PERFORMANCE OF TRIAL
COUNSEL**

**CLAIM NUMBER 34**                                                    163
**IT WAS A VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT
CONSTITUTIONAL RIGHT TO A TRIAL BY AN IMPARTIAL JURY
WHEN A DOCUMENTED ALLEGATION OF JUROR MISCONDUCT
WAS NOT THOROUGHLY INVESTIGATED**

**CLAIM NUMBER 35**                                                    165
**THE COURT FAILED TO PROTECT MS. VELORIA'S SIXTH
AMENDMENT RIGHT TO A VERDICT BY AN IMPARTIAL JURY,
THEREBY RESULTING IN A FUNDAMENTAL MISCARRIAGE OF
JUSTICE**

**CLAIM NUMBER 36**                                                     168
**MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WAS VIOLATED WHEN DEFENSE
COUNSEL WAS INEFFECTIVE IN PURSUING JUROR MISCONDUCT
ISSUE AS IT WOULD REQUIRE HIM TO ACKNOWLEDGE HIS
ERRORS AS COUNSEL**

**CLAIM NUMBER 37**                                                     169
**MS. VELORIA'S SIXTH AMENDMENT RIGHTS TO EFFECTIVE
ASSISTANCE OF COUNSEL AND TO AN IMPARTIAL JURY WERE
VIOLATED WHEN COUNSEL FAILED TO REQUEST AN ALLEN
CHARGE WHEN MS. VELORIA'S JURY INDICATED THEY WERE
DEADLOCKED THREE DAYS BEFORE CONVICTING MS. VELORIA.**

**CLAIM NUMBER 38**                                                     171
**MS. VELORIA'S PRESENCE WAS WAIVED WITHOUT HER
KNOWLEDGE IN VIOLATION OF HER SIXTH AMENDMENT RIGHT
TO BE PRESENT AT ALL PROCEEDINGS**

**CLAIM 39**                                                            174
**THE COURT CONTRIBUTED TO THE DENIAL OF MS. VELORIA'S
FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW BY
CONSISTENTLY FAILING TO CONSTRUE CIRCUMSTANCES IN
LIGHT MOST FAVORABLE TO DEFENDANT AS WELL AS
INTENTIONALLY GIVING INACCURATE SPELLING AND
CITATIONS FOR CASES THAT WOULD HAVE ASSISTED THE
DEFENSE DURING TRIAL AND ON APPEAL**

**CLAIM NUMBER 40**                                                     176
**MS. VELORIA'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY
THE IMPOSITION OF A SENTENCE BASED ON CONDUCT NOT
FOUND BY HER JURY**

**CLAIM NUMBER 41**                                                     179
**MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH
AND SIXTH AMENDMENT WERE VIOLATED BY THE COURT'S
PARTICIPATION IN PLEA PROCEDURES IN HER CASE**

**CLAIM NUMBER 42**                                                     183
**THE COURT FAILED TO INTERVENE DURING MS. VELORIA'S
TRIAL WHEN COUNSEL APPOINTED TO DEFEND HER WAS
LACKING IN THE PERFORMANCE OF HIS DUTIES, ALL IN
VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO
CONFNRONTATION AND TO HAVE EFFECTIVE ASSISTANCE OF
COUNSEL IN HER DEFENSE**

**CLAIM NUMBER 43**                                              185
**MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH,**
**FIFTH, SIXTH, EIGHT, AND FOURTEENTH AMENDMENTS WERE**
**VIOLATED WHEN HER PROPERTY WAS UNLAWFULLY SEIZED**
**AND FORTEITED**

**CLAIM NUMBER 44**                                              189
**MS. VELORIA REQUESTS REDUCTION OF HER SENTENCE IN**
**LIGHT OF THE SUPREME COURT'S DECISION IN** *KIMBROUGH V.*
*UNITED STATES* **PROVIDING RELIEF FOR THE UNREASONABLE**
**100; 1 COCAINE BASE DISPARITY**

**CLAIM NUMBER 45**                                              190
**MS. VELORIA'S FIFTH AMENDMENT AND SIXTH AMENDMENT**
**RIGHTS WERE VIOLATED BY THE IMPOSITION OF AN ENHANCED**
**SENTENCE UNDER UNITED STATES SENTENCING GUIDELINES**
**BASED ON THE SENTENCING JUDGE'S DETERMINATION OF A**
**FACT (OTHER THAN A PRIOR CONVICTION) THAT WAS NOT**
**FOUND BY THE JURY OR ADMITTED BY THE DEFENDANT**

**CLAIM NUMBER 46**                                              192
**IT WAS A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT**
**RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO**
**EFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE WAS**
**UNLAWFULLY DENIED APPLICATION OF THE "SAFETY VALVE"**
**PROVISION**

**CLAIM NUMBER 47**                                              194
**MS. VELORIA WAS PREJUDICED BY THE OBJECTIVELY**
**UNREASONABLE PERFORMANCE OF COUNSEL DURING THE**
**PRETRIAL, TRIAL AND DIRECT APPEAL PROCESS**

**CLAIM NUMBER 48**                                              198
**MS. VELORIA WAS PREJUDICED BY THE CUMULATIVE IMPACT**
**OF MULTIPLE DEFICIENCIES OR ERRORS BY COUNSEL DURING**
**PRETRIAL, TRIAL AND DIRECT APPEAL PROCESS**

**CLAIM NUMBER 49**                                              199
**MS. VELORIA WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL**
**IN THE DIRECT APPEAL PROCESS WHEN COUNSEL FAILED TO**
**FILE MERITORIOUS ISSUES SUBMITTED BY MS. VELORIA**

## EXHIBIT LIST

| Exhibit Number | Description |
|---|---|
| 1 | HPD Police report written by S. Thomas on 11/12/96 |
| 2 | Evidence log |
| 3 | Photo log |
| 4A | Warrant of Arrest 96-15 |
| B | Disposition of arrest list |
| 5 | Waiver of Indictment and Complaint (97-203) |
| 6 | Motion and Order for Nolle Prosequi |
| 7 | B. Bolos Diagram |
| 8 | Veloria letter to Attorney Silvert, p.5, (11/1/00) |
| 9 | Investigator Leo Case memo (11/8/00) |
| 10 | Keau Miles Obituary |
| 11 | Veloria letter to Attorney Guerrero (7/1/02) |
| 12 | Veloria letter to Attorney Ling (10/21/02) |
| 13 | Veloria letter to Attorney Ling (11/7/02) |
| 14 | Veloria letter to Attorney Ling (end of 2002) |
| 15 | Previous statement of Wallace Iaukea |
| 16 | Waiver of Indictment and information (money laundering) |
| 17 | Cover letter for motion from paralegal dated 6/3/03 |
| 18 | Emergency Motion to Rescind Involuntary Waivers; Memorandum in Support of Alicia Veloria's Emergency Renewed Motion to Suppress Statements based upon the Motion to Rescind Involuntary Waivers |
| 19 | Emergency Motion in Limine, for Disclosure of Intent for a Hearing Outside the Presence of the Jury and to Exclude Certain Evidence |

| | |
|---|---|
| 20 | Emergency Motion to Disclose Identity of Confidential Informant; Memorandum of Points and Authorities in Support of Veloria's Emergency Motion to Disclose Identity of Confidential Informant |
| 21 | Defendant's Memorandum of Law in support of Request for an Order of Court Requiring the Government to Admit or Deny Whether They Violated Any Local, State or Federal Law in the Investigation and Prosecution of this Case |
| 22 | Affidavit of Aunamarie Veloria |
| 23 | Barcena Public "rap sheet" |
| 24 | Affidavit of Basilio Cruz, Jr. |
| 25A | Barcena CR. 99-002 Initial Complaint, filed 12/14/98 |
| B | Barcena CR 99-002 Amended Complaint, filed 2/11/99 |
| 26 | Barcena reduction of Charges Pursuant to Plea Agreement |
| 27A | Barcena Resentencing Transcript; Rule 35; |
| B | Hawaii Paroling Authority, Barcena Minimum Term |
| 28 | Withheld police report, HPD, S. Correia (7/13/96) |
| 29A | Veloria letter to Attorney Silvert, p.4 (11/1/00) |
| 29B | Veloria letter to Attorney Silvert, p. 2-3 (11/01/00) |
| 30A | Veloria FOIA/Privacy Act request |
| B | IRS response to Veloria's request |
| C | IRS Memorandum of Interview, p. 13 |
| 31A | Letter to Attorney Guerrero (6/28/02) |
| B | Letter to Attorney Guerrero (7/02/01) |
| 32A | Veloria letter to Attorney King (9/24/03) |
| B | Veloria letter to Attorney King (11/06/03) |
| C | Veloria letter to Attorney King (11/13/03) |
| D | Veloria letter to Attorney King (4/01/04) |
| E | Veloria letter to Attorney King (5/22/04) |
| F | Veloria letter to Attorney King (6/13/04) |
| G | Veloria letter to Attorney King (8/05/04) |
| H | Veloria letter to Attorney King (9/13/04) |

33          Veloria's response to Attorney King's Motion to Withdraw

34          Veloria letter to Attorney Luiz (12/27/04)

35          Veloria's Pro Se Appeal Brief

**ARGUMENT**

**I**

**THE CONVICTION AND/OR SENTENCE OF MS. VELORIA IS VIOLATIVE OF HER SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL**

**The Performance Of Counsel For Ms. Veloria Fell Below An Objective Standard of Reasonableness During Pretrial, Trial, And Direct Appeal.**

In *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed2d 674, 104 S. Ct. 2052 (1984), the Supreme Court established a two-prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel, the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id.* 466 U. S. at 688-689; *Williams v. Taylor,* 120 S. Ct. 1495, 1512-16; 2000 U. S. LEXIS 2837, **53-64; 146 L. Ed. 2d 389 (4-18-00); *Wiggins v. Smith,* 529 u. s. 510; 123 s. Ct. 2527, 2535; 156 L. Ed 2d 471; 2003 U. S. LEXIS 5014 (2003).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential," and added that "a court must indulge strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*

The Court clarified that this reference to "highly deferential scrutiny" referred only[1] to the first performance prong of the test and meant that,

> "…the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Strickland v. Washington, 466 U. S at 689-691*

---

[1] The Court stated that "factors which may actually have entered into counsel's selection of strategies and…may thus affect the performance inquiry…are irrelevant to the prejudice inquiry." *Strickland v. Washington,* 466 U. S. at 695.

- 1 -

The Court added that,

"…strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable decision that makes particular investigations unnecessary." *Id.*

Two years after its *Strickland decision*, the Court reaffirmed that this portion of the decision sets forth what test that can be made[2] in evaluating whether the performance of counsel was within the range of "reasonable professional assistance," or fell below an objective standard of reasonableness. *Kimmelman v. Morrison*, 477 U. S. 365, 385-387, 91 L.Ed. 2d 305, 106 S. Ct. 2574 (1986). See also: *Williams v. Taylor*, 120 S. Ct. 1495, 1512-16, 2000 U.S. LEXIS 2837, **53-64;146 L. Ed. 2d 389 (4-18-00); *Wiggins v. Smith*, 539 U. S. 510; 123 S. Ct. 2527, 2535; 156 L. Ed. 2d 471; 2003 U. S. LEXIS 5014 (2003).

The Supreme Court noted that, "…a single, serious error may support a claim of ineffective assistance of counsel." *Kimmelman v. Morrison*, 477 U. S. at 384. The Court added that this "single, serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance," even where, "counsel's performance at trial [was] generally creditable enough," even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U. S. at 386.[3]

---

[2] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Strickland v. Washington*, 466 U. S. at 691.
[3] *See also Murray v. Carrier*, 477 U. S. 478, 496, 91 L.Ed.2d 397, 106 S. Ct. 2639 (1986) ("The right to effective assistance of counsel…may in particular case be violated by even and isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F. Supp. 251, 255 & [.9] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in the PSR" but pointing out that "[t]he error was an innocent inadvertence and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects."); *United States v. Al King Jones*, 2001 U. S. Dist. LEXIS 1740 (E. D. LA 2-9-02) (same).

The government argued, and the Court agreed that the determining factor was whether or not counsel's "single, serious error" or "failure" was the result of, or attributable to, a trial "strategy." *Id* 477 U.S. 384-386; *Williams v. Taylor,* 120 S. Ct. 1495, 1512-16; 2000 U. S. LEXIS 2837, ** 53-64; 146 L. Ed 2d 389 (4-18-00); *Wiggins v. Smith* 539 U. S. 510; 123 S. Ct. 2527, 2535; 156 L. Ed 2d 471; 2003 U. S. LEXIS 5041 (2003).

The Court then found that not "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because counsel's failure was based "on counsel's mistaken belief" as to the laws governing discovery. *Id* 477 U. S. at 385.

The Supreme Court added:

> "Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference,' *ibid,* to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional norms. The justification Morrison's attorney offered for his omission betrayed a startling ignorance of the law – or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Kimmelman v. Morrison,* 477 U. S. at 385.

In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel.  From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of Strickland.  *See Kimmelman v. Morrison,,* 477 U. S. at 385-387; *Williams v. Taylor,* 120 S. Ct. 1495, 1512-16; 2000 U.S. LEXIS 2837, **53-64; 146 L. Ed. 2d 389 (4-18-00); *Wiggins v. Smith,* 539 U. S. 510; 123 S. Ct. 2527, 2535; 156 L. Ed. 2d 471;

2003 U. S. LEXIS 5014 (2003) (counsel's failure to investigate mitigating evidence could not be strategic "because the investigation supporting their choice was unreasonable").[4]

In short, no deference is due to counsel's actions, and the performance of counsel falls below the Strickland objective standard of reasonableness[5] if counsel's specific acts or omissions are not demonstrably[6] the result of actual strategic choices made between or among all plausible options "after thorough investigation of law and facts relevant to [the] options." Strickland, 466 U. S. at 691; *Kimmelman v. Morrison*, 477 U. S. at 385-387; *Williams v. Taylor*, 120 S. Ct. 1495, 1512-16; 2000 U. S. LEXIS 2837, ** 53-64; 146 L. Ed. 2d (4-18-00).[7]

---

[4] The decisions of the lower Courts have followed this unambiguous mandate from the Supreme Court. *See United States v. Stricklin*, 2002 U. S. App. LEXIS 9118 (5th Cir. 5-1-02) (counsel's performance below objective standard of *Strickland* due to counsel's failure to investigate guidelines and case law defining "mixture or substance" for sentencing for narcotics violations.); *United States v. Hylton*, 2002 U. S. app. LEXIS 12818 (DC Cir 6-28-02) (counsel's performance below objective standard of *Strickland* due to failure to investigate facts and law relevant to defense at trial); *Bruce v. United States*, 256 F. 3d 592; 2001 U. S. App. LEXIS 15054 (7th Cir. 2001); *Brown v. Myers*, 137 F. 3d 1154 (9th Cir 1998) (counsel failed to investigate and present available testimony supporting petitioner's alibi); *United States v. Kauffman*, 109 F. 3d 186 (3rd Cir. 1997) (failure to investigate law and facts relevant to plausible defense in effective assistance); *Williamson v. Ward*, 110 F. 3d 1508 (10th Cir. 1997) (same); *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir 1993) (failure to investigate law and facts relevant to plausible defense in effective assistance); *United States v. Headley*, 923 F. 2d 1079, 1083-84 (3rd Cir 1991) (same – sentence for "minor role"); *smith v. Stewart*,140 F. 3d 1263 (9th Cir) *cert. denied*, 525 U. S. 929 (1998) (failure to investigate mitigating evidence was ineffective); *Holsomsback v. White*, 133 F.3d 1382 (11th Cir. 1998) (failure to investigate was ineffective assistance of counsel).

[5] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison*, 477 U. S. at 365, 387, 390-91.

[6] *See Wiggins v. Smith*, 539 U. S. 510; 123 S. Ct. 2527, 2535; 156 L.Ed.2d 471; 2003 U. S. LEXIS 5014 (2003) (Court's "assumption" that counsel made reasonable investigation vacated when unsupported by the record); *United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989) (record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed*, 894 F 2d. 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which **counsel** does not offer") (citing *Kimmelman v. Morrison*, 477 U. S. at 386); *Moffet v. Kolb*, 930 F. 2d 1156, 1160-61 (7th Cir 1991) (counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*)' *United States v. Headley*, 923 F. 2d 1079, 1084 )3rd Cir. 1991) (remanding for hearing where there was "[no] rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice"'); *United States v. Acklen*, 47 F.3d 839, 743-44 (5th Cir 1995) (remanding for evidentiary hearing where was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson*, 857 F.2d 923, 929 (3rd Cir 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States*, 75 F 3d 1137 (7th Cir 1996) (same).

[7] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical" or "objectively reasonable," because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when s/he has not yet obtained the facts on which such a decision

Where a convicted defendant is making a claim of ineffective assistance of counsel, the defendant,

> "…must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

*Strickland v. Washington*, 466 U. S. at 690.

Additionally, the Supreme Court held in *Davis v. Alaska*, 415 U.S. 308 (1974) that counsel's performance may be found prejudicially deficient if he fails to subject prosecution to a meaningful adversarial challenge. A defendant's Sixth Amendments Confrontation Clause is violated when denied the right to cross examine witnesses regarding possible bias and prejudice.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC 2255 must hold an evidentiary hearing.[8] A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.[9]

In the instant case, Ms. Veloria has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

The allegations of Ms. Veloria as to the "performance" of counsel in violation of the Supreme Court's ruling in the above cited case law include the following:

---

could be made." *Gray, supra*, 878 F. 2d at 711 (citing *Strickland*, 466 U. S. at 690-91); *Holsomback v. White*, 133 F 3d 1382 (11th Cir 1998) (same); *Nichols v. United States*, 75 F. 3d 1137 (7th Cir 1996).
[8] *United States v. Burrows*, 872 F 2d 915, 918-919 (9th Cir 1989) and *United States v. Briggs*, 939 F.2d 222, 228 (5th Cir 1991); *United States v. Estrada*, 849 F.2d 1304, 1306-1307 (1st Cir 1988); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir 1994); *Shaw v. United States*, 24 F.3d 1040, 1043 98th Cir 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir 1994) (evidentiary hearing required unless 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Nichols v. United States*, 75 F.3df 1137 (7th Cir 1996) (same); *United States v. Witherspoon*, 231 F.3d 923; 2000 U. S. App. LEXIS 27778 (4th Cir 11-6-00) (petitioner entitled to evidentiary hearing when motion presented colorable claim and unclear whether counter affidavit disputed defendant's allegations.)
[9] *Smith v. McCormick*, 914 F.2d1153, 1170 (9th Cir. 1990); *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986); *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

### CLAIM NUMBER 2
COUNSEL FAILED TO OBTAIN POLICE REPORT THEREBY VIIOLATING MS.
VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND
HER SIXTH AMENDMENT RIGHT TO CONFRONTATION AND TO HAVE AFFECTIVE
ASSISTANCE OF COUNSEL

### CLAIM NUMBER 3
MS. VELORIA'S CONSTITUTIONAL RIGHT TO EQUAL PROTECTION WAS
VIOLATED WHEN THE GOVERNMENT ENGAGED IN SELECTIVE PROSECUTION
BY ONLY CHARGING, INVESTIGATING AND PROSECUTING MS. VELORIA
WHEN OTHERS WERE "SIMILARLY SITUATED"

### CLAIM NUMBER 4
MS. VELORIA'S FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO EQUAL
PROTECTION UNDER THE DUE PROCESS CLAUSE WAS VIOLATED UPON THE
POST ARREST/PRE-INDICTMENT DELAY BECAUSE OF PREJUDICIAL
UNAVAILABILITY OF A KEY DEFENSE WITNESS

### CLAIM NUMBER 5
MS. VELORIA'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL
SEARCH AND SEIZURE WAS VIOLATED WHEN COUNSEL WAS INEFFECTIVE
BY FAILING TO FILE A PRE-TRIAL MOTION TO SUPPRESS THE SEIZURE OF
MS. VELORIA'S TRUCK AND TO CONFRONT THE SEIZING OFFICERS WITH
THEIR INCONSISTENT TESTIMONY AT TRIAL

### CLAIM NUMBER 6
MS. VELORIA'S WAIVER OF HER FIFTH AMENDMENT RIGHT AGAINST SELF-
INCRIMINATION WAS UNKNOWING, AS COUNSEL INCORRECTLY INFORMED
HER OF THE STATEMENTS USE TO THE GOVERNMENT AT TRIAL

### CLAIM NUMBER 7
MS. VELORIA'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE
ASSISTANCE OF COUNSEL WAS VIOLATED WHEN HER FEDERAL PUBLIC
DEFENDER WAS INEFFECTIVE IN HIS UNDERSTANDING AND ADVICE
REGARDING A PROFFERED STATEMENT AND ITS LIMITATION AT TRIAL

### CLAIM NUMBER 8
MS. VELORIA'S FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION
AND HER SIXTH AMENDMENT TO EFFECTIVE ASSISTANCE OF COUNSEL
WERE VIOLATED WHEN DEFENSE COUNSEL WAS INEFFECTIVE IN RAISING
MS. VELORIA'S UNKNOWING WAIVER ISSUE

**CLAIM NUMBER 9**
THE COURT FAILED TO REMEDY MS. VELORIA'S UNKNOWING WAIVER OF
HER FIFTH AMENDMENT RIGHT BEFORE TRIAL THERBY RESULTING IN THE
VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO
CONFRONTATION


**CLAIM NUMBER 10**
MS. VELORIA'S FIFTH AMENDMENT RIGHTS TO DUE PROCESS OF LAW AND
FUNDAMENTAL FAIRNESS, AND HER SIXTH AMENDMENT RIGHTS TO
EFFECTIVE ASSISTANCE OF COUNSEL AND TO CONFRONT WITNESSES
AGAINST HER WERE VIOLATED WHEN THE COURT REFUSED TO RULE ON MS.
VELORIA'S UNKNOWING WAIVER ISSUE UNTIL THE END OF HER TRIAL
THEREBY PREJUDICING ALL OF THE DEFENSES CROSS EXAMINATIONS


**CLAIM NUMBER 11**
MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS
VIOLATED WHEN THE GOVERNMENT FAILED TO PROVIDE DISCOVERY
AFTER BEING ORDERED BY THE COURT TO DO SO


**CLAIM NUMBER 12**
MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS
VIOLATED BY MEMORANDUM OF INTERVIEW CONTAINING BLATANTLY
FALSE STATEMENTS


**CLAIM NUMBER 13**
MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS UNDER *BRADY*
WERE VIOLATED WHEN THE GOVERNMENT FAILED TO PRODUCE
DISCOVERY WHICH FORMED BASIS OF INTRICATE DIAGRAM


**CLAIM NUMBER 14**
MS. VELORIA'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN DEFENSE
COUNSEL WAS INEFFECTIVE BY FAILING TO CONFRONT THE GOVERNMENT
REGARDING A DIAGRAM THAT WAS LIKELY A RESULT OF AN ILLEGAL
WIRETAP OR UNAUTORIZED SURVEILLANCE PERPETRATED ON MS. VELORIA
THEREBY VIOLATING HER PRIVACY RIGHTS


**CLAIM NUMBER 15**
MS. VELORIA WAS DENIED DUE PROCESS OF LAW WHEN HER PROSECUTOR
INTENTIONALLY MISLED THE COURT IN RELATION TO ADMISSION OF
PREJUDICIAL "PRIOR BAD ACTS" EVIDENCE

### CLAIM NUMBER 16
**DEFENSE COUNSEL WAS INEFFECTIVE IN RELATION TO GOVERNMENT'S INTRODUCTION OF 404 (b) EVIDENCE IN VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL**

### CLAIM NUMBER 17
**MS. VELORIA'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS DENIED WHEN COURT APPOINTED[10] COUNSEL FAILED TO SUBMIT A MOTION REQUESTING CERTAIN EVIDENCE BE EXCLUDED FROM USE AGAINST HER AT TRIAL.**

### CLAIM NUMBER 18
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN EXCULPATORY RENT RECEIPT SEIZED DURING SEARCH WAS NOT INTRODUCED AT TRIAL**

### CLAIM NUMBER 19
**MS. VELORIA WAS DENIED HER SIXTH AMENDMENT RIGHT TO OFFER THE TESTIMONY OF FAVORABLE WITNESSES AT TRIAL**

### CLAIM NUMBER 20
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND TO HAVE EFFECTUVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN COURT APPOINTED COUNSEL FAILED TO MOVE THE COURT FOR DISCLOSURE OF THE IDENTITY OF THE CONFIDENTIAL INFORMANT AGAINST HER**

### CLAIM NUMBER 21
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN PROSECUTOR FAILED TO CORRECT GOVERNMENT WITNESS TESTIMONY KNOWN TO BE FALSE**

### CLAIM NUMBER 22
**MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO CONFRONT THE WITNESSES AGAINST HER WERE DENIED WHEN HER ATTORNEY FAILED TO RECOGNIZE AND ARGUE THE APPROPRIATE HEARSAY EXCEPTION TO QUESTION A WITNESS ABOUT HIS PRIOR STATEMENT**

---

## CLAIM NUMBER 23

**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COURT APPOINTED DEFENSE COUNSEL FAILED TO ASSERT 609 (A)(2) FEDERAL RULES OF EVIDENCE TO INTRODUCE CONVICTIONS FOR CRIMES OF DISHONESTY FOR BOTH GOVERNMENT WITNESSES WHO TESTIFIED AGAINST HER AT TRIAL THEREBY DENYING MS. VELORIA'S RIGHT TO CONFRONTATION**

## CLAIM NUMBER 24

**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COURT APPOINTED DEFENSE COUNSEL FAILED TO ASSERT 609 (A)(2) FEDERAL RULES OF EVIDENCE TO INTRODUCE CONVICTIONS FOR CRIMES OF DISHONESTY FOR BOTH GOVERNMENT WITNESSES WHO TESTIFIED AGAINST HER AT TRIAL THEREBY DENYING MS. VELORIA'S RIGHT TO CONFRONTATION**

## CLAIM NUMBER 24

**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COURT APPOINTED DEFENSE COUNSEL FAILED TO ASSERT 609 (A)(2) FEDERAL RULES OF EVIDENCE TO INTRODUCE CONVICTIONS FOR CRIMES OF DISHONESTY FOR BOTH GOVERNMENT WITNESSES WHO TESTIFIED AGAINST HER AT TRIAL THEREBY DENYING MS. VELORIA'S RIGHT TO CONFRONTATION**

## CLAIM NUMBER 25

**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN THE GOVERNMENT FAILED TO DISCLOSE THE FACT THAT THEIR WITNESS' (BARCENA) RECEIPT OF AN UNLIKELY DEFERRED ACCEPTANCE PLEA WAS A RESULT OF HER COOPERATION AGAINST MS VELORIA**

## CLAIM NUMBER 26

**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN SUSPICIOUS DATES REPORTED ON BARCENA'S "RAP SHEET" WERE NOT INQUIRED INTO DURING TRIAL THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION**

## CLAIM NUMBER 27
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN KEY GOVERNMENT WITNESS COMMITTED PERJURY DURING HER GRAND JURY TESTIMONY**

## CLAIM NUMBER 28
**PROSECUTOR ALLOWED GOVERNMENT WITNESS BARCENA TO TESTIFY FALSELY REGARDING CIRCUMSTANCES OF REDUCED CHARGE THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONT THE WITNESSES AGAINST HER WITH EFFECTIVE ASSISTANCE OF COUNSEL**

## CLAIM NUMBER 29
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND HER SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN GOVERNMENT WITNESS BARCENA'S "RULE 35" DIRECTLY RELATED TO MS. VELORIA'S INDICTMENT TWO DAYS LATER WAS NOT DISCLOSED NOR DISCOVERED WITH REASONABLE INVESTIGATION THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION**

## CLAIM NUMBER 30
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND SIXTH AMENDMENT RIGHT TO COUNSEL WERE VIOLATED WHEN COUNSEL FAILED TO EXPLORE GOVERNEMNT WITHNESS' MOTIVATION BEHIND THE INFORMATION PROVIDED TO LAW ENFORCEMENT OFFICERS, THREFORE DENYING MS. VELORIA HER RIGHT TO CONFRONTATION**

## CLAIM NUMBER 31
**MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED WHEN PROSECUTION WITHHELD DURING TRIAL FACT THAT KEY GOVERNMENT WITNESS HAD TWO SEPARATE CHARGES FOR CRIMES OF DISHONESTY PENDING AGAINST HER, ONE OF WHICH OCCURRED JUST TWO WEEKS BEFORE MS. VELORIA'S TRIAL THERBY VIOLATING HER RIGHT TO CONFRONTATION**

## CLAIM NUMBER 32
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS VIOLATED WHEN GOVERNMENT FAILED TO DISCLOSE FACT THAT THEIR WITNESS HAD A KNOWN MENTAL ILLNESS THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION**

### CLAIM NUMBER 33
**MS. VELORIA'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW, FUNDAMENTAL FAIRNESS, CONFRONTATION AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED BY THE OBJECTIVELY UNREASONABLE PERFORMANCE OF TRIAL COUNSEL**

### CLAIM NUMBER 34
**IT WAS A VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO A TRIAL BY AN IMPARTIAL JURY WHEN A DOCUMENTED ALLEGATION OF JUROR MISCONDUCT WAS NOT THOROUGHLY INVESTIGATED**

### CLAIM NUMBER 36
**MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN DEFENSE COUNSEL WAS INEFFECTIVE IN PURSUING JUROR MISCONDUCT ISSUE AS IT WOULD REQUIRE HIM TO ACKNOWLEDGE HIS ERRORS AS COUNSEL**

### CLAIM NUMBER 37
**MS. VELORIA'S SIXTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO AN IMPARTIAL JURY WERE VIOLATED WHEN COUNSEL FAILED TO REQUEST AN ALLEN CHARGE WHEN MS. VELORIA'S JURY INDICATED THEY WERE DEADLOCKED THREE DAYS BEFORE CONVICTING MS. VELORIA.**

### CLAIM NUMBER 38
**MS. VELORIA'S PRESENCE WAS WAIVED WITHOUT HER KNOWLEDGE IN VIOLATION OF HER SIXTH AMENDMENT RIGHT TO BE PRESENT AT ALL PROCEEDINGS**

### CLAIM 39
**THE COURT CONTRIBUTED TO THE DENIAL OF MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW BY CONSISTENTLY FAILING TO CONSTRUE CIRCUMSTANCES IN LIGHT MOST FAVORABLE TO DEFENDANT AS WELL AS INTENTIONALLY GIVING INACCURATE SPELLING AND CITATIONS FOR CASES THAT WOULD HAVE ASSISTED THE DEFENSE DURING TRIAL AND ON APPEAL**

### CLAIM NUMBER 40
**MS. VELORIA'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY THE IMPOSITION OF A SENTENCE BASED ON CONDUCT NOT FOUND BY HER JURY**

## CLAIM NUMBER 41
**MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENT WERE VIOLATED BY THE COURT'S PARTICIPATION IN PLEA PROCEDURES IN HER CASE**

## CLAIM NUMBER 42
**THE COURT FAILED TO INTERVENE DURING MS. VELORIA'S TRIAL WHEN COUNSEL APPOINTED TO DEFEND HER WAS LACKING IN THE PERFORMANCE OF HIS DUTIES, ALL IN VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO CONFNRONTATION AND TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL IN HER DEFENSE**

## CLAIM NUMBER 43
**MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, EIGHT, AND FOURTEENTH AMENDMENTS WERE VIOLATED WHEN HER PROPERTY WAS UNLAWFULLY SEIZED AND FORTEITED**

## CLAIM NUMBER 44
**MS. VELORIA REQUESTS REDUCTION OF HER SENTENCE IN LIGHT OF THE SUPREME COURT'S DECISION IN *KIMBROUGH V. UNITED STATES* PROVIDING RELIEF FOR THE UNREASONABLE 100; 1 COCAINE BASE DISPARITY**

## CLAIM NUMBER 45
**MS. VELORIA'S FIFTH AMENDMENT AND SIXTH AMENDMENT RIGHTS WERE VIOLATED BY THE IMPOSITION OF AN ENHANCED SENTENCE UNDER UNITED STATES SENTENCING GUIDELINES BASED ON THE SENTENCING JUDGE'S DETERMINATION OF A FACT (OTHER THAN A PRIOR CONVICTION) THAT WAS NOT FOUND BY THE JURY OR ADMITTED BY THE DEFENDANT**

## CLAIM NUMBER 46
**IT WAS A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE WAS UNLAWFULLY DENIED APPLICATION OF THE "SAFETY VALVE" PROVISION**

## CLAIM NUMBER 47
**MS. VELORIA WAS PREJUDICED BY THE OBJECTIVELY UNREASONABLE PERFORMANCE OF COUNSEL DURING THE PRETRIAL, TRIAL AND DIRECT APPEAL PROCESS**

**CLAIM NUMBER 48**
**MS. VELORIA WAS PREJUDICED BY THE CUMULATIVE IMPACT OF MULTIPLE
DEFICIENCIES OR ERRORS BY COUNSEL DURING PRETRIAL, TRIAL AND
DIRECT APPEAL PROCESS**

**CLAIM NUMBER 49**
**MS. VELORIA WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN THE
DIRECT APPEAL PROCESS WHEN COUNSEL FAILED TO FILE MERITORIOUS
ISSUES SUBMITTED BY MS. VELORIA**

**II**

**MATERIAL EVIDENCE WITHHELD IN VIOLATION OF BRADY AMOUNTING TO
PROSECUTORIAL MISCONDUCT**

In *Brady v. Maryland*, the Supreme Court imposed on prosecutors a constitutional

obligation under the Due Process Clause of the Fifth and Fourteenth Amendments to disclose to

an accused all evidence that is "material" to either guilt or punishment "irrespective of the good

faith or bad faith of the prosecution."[11]  The Court noted that "[a] prosecution that withholds

evidence on demand of an accused which, if made available, would tend to exculpate him or

reduce the penalty helps shape a trial that bears heavily on the defendant." [12]

In a subsequent ruling, the Supreme Court, in *United States v. Agurs*,[13]extended its

holding in *Brady* to require disclosure of exculpatory material pursuant to a general request for

information or even no request at all if it was likely to lead to a different verdict or judgment.[14]

In *Giglio v. United States*,[15] and *United States v. Bagley*,[16]the High Court reached beyond

exculpatory evidence and included among the materials that must be disclosed under *Brady*

evidence that could impeach a witness.  The *Giglio* court concluded that any prosecutor's

---

[11] 373 US 83 (1963), aff'g 174 A2d 167 (Md. 1961)
[12] Id at 88
[13] 427 US 97 (1976)
[14] 105 US 150 (1972)
[15] 405 US 150 (1972)
[16] 473 US 667 (1985)

- 13 -

promise of leniency to a testifying witness during the course of an investigation or trial had to be disclosed because the witness' motivations and credibility could impact the outcome of the case.

In *Bagley*, Justice Harry Blackmun set out a materiality standard that has become central to any *Brady* analysis; namely that evidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. He defined "reasonable probability" as "a probability sufficient to undermine confidence in the outcome" of the case.[17]

The High Court, in *Kyles v. Whitley,* [18]further divided its *Brady* assessment into four parts. First, the Court formally adopted Justice Blackmun's standard of materiality. [19] Second, it held that the failure to disclose the favorable material had to undermine the case as a whole, and not just one particular aspect of it. Third, once a court found a constitutional breach, it did not have to conduct further review of the case to determine whether the error was harmless because such a finding necessarily exceeded the boundaries of harmless error and required a reversal.[20]

Last, all the suppressed *Brady* material had to be evaluated collectively, and the prosecution was required to "gauge the likely net effect of all such evidence and make disclosures when the point of 'reasonable probability' [was] reached."[21]

Prosecutors have a duty to disclose information possessed by government personnel who assist the prosecutor, including police officers and other investigators. *Kyles v. Whitley*, supra. However, while recognizing that rule, in *Jean v. Collins,*[22] an evenly divided Fourth Circuit, sitting en banc, agreed that the failure of police officers to disclose exculpatory evidence to a

---

[17] 473 US at 682
[18] 514 US 419 (1995)
[19] Id at 434
[20] Id at 435
[21] Id at 427 See also *Strickler v. Greene*. 527US 263 (1999), vacating in part, aff'g in part, *Strickler v. Pruett*, 149 F./3d 1170 (4th Cir. 1998)
[22] 221 F3d 656 (4th Cir. 2000).

prosecutor, and by extension to the defendant, did not render the officers individually liable under 42 USC § 1983, even though that nondisclosure by the prosecutor violated *Brady*.  Half of the en banc court distinguished the role of the police from that of the prosecutor, explaining that:

> The prosecutor must ask such lawyer's questions as whether an item of evidence has "exculpatory" or "impeachment" value and whether such evidence is "material."…To hold that the contours of the due process duty applicable to the police must be identical to those of the prosecutor's *Brady* duty would thus improperly mandate a one-size-fits-all regime.[23]  The other half of the court disagreed, reasoning that "*Brady's* compulsory disclosure requirement applies to all officials working in furtherance of the State's prosecution" because "[i]f the police allow the State's Attorney to produce evidence pointing to guilt without informing him of other evidence in their possession that contradicts this inference, [the] officers are practicing deception not only on the State's Attorney but on the court and the defendant."[24]  Courts have generally followed the latter approach as it clearly fits the intent of *Brady*.

The Court has often redressed violations of *Brady* by granting new trials on the merits. However, the U.S. District Court for the Northern District of California fashioned an additional remedy where it found that *Brady* violations amounted to prosecutorial misconduct.[25]

In *United States v. Sudikoff*[26] the trial court found that the *Brady* materiality standard established in *United States v. Bagley* applied in the context of appellate review "because *Brady* seeks to protect the quality and completeness of the evidence upon which the jury bases its

---

[23] Id. at 660.
[24] Id. at 664.
[25] *United States v. Basalo* 109 FSupp. 2d 1219 (N.D. Calif. 2000); *United States v. Sanderson* 110 FSupp. 2d 1221 (N.D. Calif. 2000)
[26] 36 FSupp. 2d 1196 (C.D. Calif. 1999).

verdict...[*Brady*]require[s] the disclosure of information that is likely to result in admissible evidence that would give the jury a more complete basis for judging guilt or punishment."[27]

Applying this standard to the case before it, the judge found that any variations in a witness' proposed testimony had to be the disclosed to the defense because they may be or may lead to admissible impeachment or exculpatory evidence.[28] He noted that information surrounding the negotiation process leading up to the leniency agreement could assist the defense in questioning the witness' motives.[29] At least two state courts recently adopted the Supreme Court ruling.[30]

Additionally, Court's have ruled that prosecutor's failure to notify defense counsel of material exculpatory evidence and arguing false evidence to the jury was misconduct serious enough to warrant the granting of a writ of habeas corpus. *Brown v. Borg* 1951 F 2d 1033 (9th cir. 1991)

Ms. Veloria's allegations of prosecutorial misconduct in violation of the Supreme Court and Circuit Courts rulings in the above mentioned cases are as follows:

### CLAIM NUMBER 1
**EXCULPATORY POLICE REPORT WITHHELD FROM DEFENSE RESULTING IN A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS AND HER SIXTH AMENDMENT RIGHT TO CONFRONTATION**

### CLAIM NUMBER 3
**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EQUAL PROTECTION WAS VIOLATED WHEN THE GOVERNMENT ENGAGED IN SELECTIVE PROSECUTION BY ONLY CHARGING, INVESTIGATING AND PROSECUTING MS. VELORIA WHEN OTHERS WERE "SIMILARLY SITUATED"**

---

[27] Id. at 1201.
[28] Id. at 1202.
[29] Id.
[30] See *Wilson v. Maryland* 768 A2d 675 (Md. 2001); *Jackson v. Delaware*, 2001 WI 421131 (Del. 2001).

## CLAIM NUMBER 4
**MS. VELORIA'S FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO EQUAL PROTECTION UNDER THE DUE PROCESS CLAUSE WAS VIOLATED UPON THE POST ARREST/PRE-INDICTMENT DELAY BECAUSE OF PREJUDICIAL UNAVAILABILITY OF A KEY DEFENSE WITNESS**

## CLAIM NUMBER 11
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS VIOLATED WHEN THE GOVERNMENT FAILED TO PROVIDE DISCOVERY AFTER BEING ORDERED BY THE COURT TO DO SO**

## CLAIM NUMBER 12
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BY MEMORANDUM OF INTERVIEW CONTAINING BLATANTLY FALSE STATEMENTS**

## CLAIM NUMBER 13
**MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS UNDER *BRADY* WERE VIOLATED WHEN THE GOVERNMENT FAILED TO PRODUCE DISCOVERY WHICH FORMED BASIS OF INTRICATE DIAGRAM**

## CLAIM NUMBER 15
**MS. VELORIA WAS DENIED DUE PROCESS OF LAW WHEN HER PROSECUTOR INTENTIONALLY MISLED THE COURT IN RELATION TO ADMISSION OF PREJUDICIAL "PRIOR BAD ACTS" EVIDENCE**

## CLAIM NUMBER 21
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN PROSECUTOR FAILED TO CORRECT GOVERNMENT WITNESS TESTIMONY KNOWN TO BE FALSE**

## CLAIM NUMBER 25
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN THE GOVERNMENT FAILED TO DISCLOSE THE FACT THAT THEIR WITNESS' (BARCENA) RECEIPT OF AN UNLIKELY DEFERRED ACCEPTANCE PLEA WAS A RESULT OF HER COOPERATION AGAINST MS VELORIA**

## CLAIM NUMBER 26
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN SUSPICIOUS DATES REPORTED ON BARCENA'S "RAP SHEET" WERE NOT INQUIRED INTO DURING TRIAL THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION**

## CLAIM NUMBER 27
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN KEY GOVERNMENT WITNESS COMMITTED PERJURY DURING HER GRAND JURY TESTIMONY**

## CLAIM NUMBER 28
**PROSECUTOR ALLOWED GOVERNMENT WITNESS BARCENA TO TESTIFY FALSELY REGARDING CIRCUMSTANCES OF REDUCED CHARGE THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONT THE WITNESSES AGAINST HER WITH EFFECTIVE ASSISTANCE OF COUNSEL**

## CLAIM NUMBER 29
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND HER SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN GOVERNMENT WITNESS BARCENA'S "RULE 35" DIRECTLY RELATED TO MS. VELORIA'S INDICTMENT TWO DAYS LATER WAS NOT DISCLOSED NOR DISCOVERED WITH REASONABLE INVESTIGATION THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION**

## CLAIM NUMBER 30
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND SIXTH AMENDMENT RIGHT TO COUNSEL WERE VIOLATED WHEN COUNSEL FAILED TO EXPLORE GOVERNEMNT WITHNESS' MOTIVATION BEHIND THE INFORMATION PROVIDED TO LAW ENFORCEMENT OFFICERS, THREFORE DENYING MS. VELORIA HER RIGHT TO CONFRONTATION**

## CLAIM NUMBER 31
**MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED WHEN PROSECUTION WITHHELD DURING TRIAL FACT THAT KEY GOVERNMENT WITNESS HAD TWO SEPARATE CHARGES FOR CRIMES OF DISHONESTY PENDING AGAINST HER, ONE OF WHICH OCCURRED JUST TWO WEEKS BEFORE MS. VELORIA'S TRIAL THERBY VIOLATING HER RIGHT TO CONFRONTATION**

**CLAIM NUMBER 32**
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS
VIOLATED WHEN GOVERNMENT FAILED TO DISCLOSE FACT THAT THEIR
WITNESS HAD A KNOWN MENTAL ILLNESS THEREBY VIOLATING MS.
VELORIA'S RIGHT TO CONFRONTATION**

**III**

**TRIAL COURT ERROR**

"The task of safeguarding the rights of criminal defendants ultimately rests with the
experienced men and women who preside in our district courts."[31] That a district judge's
responsibility does not end when he rules on objections and motions raised by the parties is
recognized by the doctrine of plain error,[32] which embodies the notions that there are some errors
that are so prejudicial and obvious the district judges must remedy them even without an
objection.[33] "Plain errors or defects affecting substantial rights may be noticed although they
were not brought to the attention of the court."[34] Where a district judge detects what he suspects
may be an error seriously affecting the rights of a criminal defendant, he must address the
problem.[35] This duty exists at all times,[36] but never more so than when the problem is such that
it is unlikely to be detected by an individual defendant[37].

District judges have direct experience with the policies and practices of the United States
Attorneys in their districts and have the opportunity to discern patterns of discrimination.[38] The

---

[31] *United States v Balough*, 820 F2d 1485, 1491 (9th Cir. 1987)
[32] Rule 52(b), Federal Rules of Criminal Procedure
[33] See *United States v Olano*, 934 F.2d 1425 at 1439 n.23 (9th Cir. 1991); *United States v Hernandez-Escarsega*, 886
F.2d 1560 at 1573 (9th Cir. 1989), cert. denied, 110 S. Ct.3237, 111 L. Ed. 2d 748, 58 U.S.L.W. 3817 (1990); *United
States v Bustillo*, 789 F.2d 1364 at 1367-68 (9th Cir. 1986)…
[34] Rule 52(b), Federal Rules of Criminal Procedure.
[35] *United States v. Redondo-Lemos*, 955 F.2d 1296 (9th Cir. 1992).
[36] "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is nto
given. The one or the other would be treason to the Constitution." *Cohens v Virginia*, 6 Wheat. 264, 404 (1821)
[37] *United States v Redondo-Lemos*, 955 F.2d 1296 (9th Cir. 1992).
[38] See *United States v. Redondo-Lemos*, 955 F.2d 1296, 1298, 1302 (9th Cir. 1992)

Ninth Circuit affirmed a district court's dismissal of indictments as a sanction for the government's failure to comply with her discovery order.[39]

With respect to ALL of the trial court errors Ms. Veloria has raised herein for review, she hereby asserts that the failure to preserve by objection or raise these issues on direct appeal should not be attributed to Ms. Veloria, but rather to counsel sworn to represent her.

Ms. Veloria is not the party responsible for the failure to raise these issues on direct appeal, as she prepared a pro se appeal brief (See Exhibit 35) containing these very issues therein.[40] Ms. Veloria asserts that during the preparation of her appeal, she repeatedly insisted, both verbally and in writing, that her court appointed appellate attorney preserve all of her appellant issues that are contained within her pro se brief.[41] Furthermore, Ms. Veloria's instance of specific issues being raised on direct appeal is documented in attorney Samuel P. King, Jr.'s motion to withdraw as counsel on appeal filed in the Ninth Circuit Court of Appeals,[42] as well as Ms. Veloria's pro se response to said motion (See Exhibit 33).[43]

In *Ratliff v. United States*,[44] cause was shown for purposes of a motion under 28 U.S.C. 2255 because counsel rebuffed petitioner's request to raise issue on direct appeal. Also, it should be noted that in October of 2004, Ms. Veloria was served with an order from a Ninth Circuit Court of Appeals Appellate Commissioner bearing the words "Appellant is advised that counsel is vested with the authority to decide which issues should be raised on appeal."[45] As such, Ms. Veloria should not be held accountable for her counsel's failure to raise the issues contained

---

[39] *United States v Redondo-Lemos*, 817 F. Supp. 812 (9th Cir. 1993).
[40] See Exhibit 35, Veloria pro se appeal brief, p. 64
[41] Ms. Veloria mailed a copy of her pro se opening brief on 12/27/04 to appellate counsel. This brief was comprehensive and in compliance with court rules. Appellate counsel also received a copy of said brief on disk well in advance of Ms. Veloria's opening brief deadline of 2/23/2005.
[42] 03-10626 *USA v. Veloria*, filed 10/8/04
[43] 03-10626 *USA v. Veloria*, filed 10/15/04
[44] *Ratliff v. US*, 999 f2D 1023, 1026 (6TH Cir. 1993)
[45] 03-10626 *USA v. Veloria*, filed 10/18/04

within written communications to counsel.  Claims of trial court errors affecting Ms. Veloria's

Constitutional rights are as follows:

## CLAIM NUMBER 9
**THE COURT FAILED TO REMEDY MS. VELORIA'S UNKNOWING WAIVER OF HER FIFTH AMENDMENT RIGHT BEFORE TRIAL THERBY RESULTING IN THE VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO CONFRONTATION**

## CLAIM NUMBER 34
**IT WAS A VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO A TRIAL BY AN IMPARTIAL JURY WHEN A DOCUMENTED ALLEGATION OF JUROR MISCONDUCT WAS NOT THOROUGHLY INVESTIGATED**

## CLAIM NUMBER 35
**THE COURT FAILED TO PROTECT MS. VELORIA'S SIXTH AMENDMENT RIGHT TO A VERDICT BY AN IMPARTIAL JURY, THEREBY RESULTING IN A FUNDAMENTAL MISCARRIAGE OF JUSTICE**

## CLAIM 39
**THE COURT CONTRIBUTED TO THE DENIAL OF MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW BY CONSISTENTLY FAILING TO CONSTRUE CIRCUMSTANCES IN LIGHT MOST FAVORABLE TO DEFENDANT AS WELL AS  INTENTIONALLY GIVING INACCURATE SPELLING AND CITATIONS FOR CASES THAT WOULD HAVE ASSISTED THE DEFENSE DURING TRIAL AND ON APPEAL**

## CLAIM NUMBER 41
**MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENT WERE VIOLATED BY THE COURT'S PARTICIPATION IN PLEA PROCEDURES IN HER CASE**

## CLAIM NUMBER 42
**THE COURT FAILED TO INTERVENE DURING MS. VELORIA'S TRIAL WHEN COUNSEL APPOINTED TO DEFEND HER WAS LACKING IN THE PERFORMANCE OF HIS DUTIES, ALL IN VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO CONFNRONTATION AND TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL IN HER DEFENSE**

**CLAIM NUMBER 45**
**MS. VELORIA'S FIFTH AMENDMENT AND SIXTH AMENDMENT RIGHTS WERE**
**VIOLATED BY THE IMPOSITION OF AN ENHANCED SENTENCE UNDER UNITED**
**STATES SENTENCING GUIDELINES BASED ON THE SENTENCING JUDGE'S**
**DETERMINATION OF A FACT (OTHER THAN A PRIOR CONVICTION) THAT WAS**
**NOT FOUND BY THE JURY OR ADMITTED  BY THE DEFENDANT**

**CLAIM NUMBER 46**
**IT WAS A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE**
**PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF**
**COUNSEL WHEN SHE WAS UNLAWFULLY DENIED APPLICATION OF THE**
**"SAFETY VALVE" PROVISION**

**IV**

**SPECIFIC CONSTITUTIONAL VIOLATIONS**

Ms. Veloria's conviction deprived her of her First Amendment right to Freedom of

Speech and to Petition the Court; Her Fourth Amendment right to be free from unreasonable

Search and Seizure; Her Fifth Amendment right against self incrimination and to have due

process of law; and Her Sixth Amendment right to effective assistance of counsel, to a trial by an

impartial jury, to confront witnesses against her, to present a defense and to have compulsory

process.

Ms. Veloria's constitutional rights under the Fifth and Sixth Amendments:  right to due

process, right to fundamental fairness, right to a trial by an impartial jury, right to confront

accusers, right to cross examine witnesses, right to testify, right to have witnesses and evidence

for her defense, right to counsel, and equal rights, were violated when her court appointed

attorney failed to exercise said rights in her defense.

Ms. Veloria's Eighth Amendment right to be free from cruel and unusual punishment was

violated on account of the severe cocaine base penalties, as well as the fact that her sentence was

enhanced, based on judge found facts rather than the decision of the jury.

Judicial constraints violated additional substantive rights by forcing Ms. Veloria to choose between substantive rights; to waive one substantive right in order to exercise another.

Actions taken, or not taken, by the government, defense counsel and the court, prevented the jury from fully exercising their function of assessing credibility of the government's witnesses. Ms. Veloria was denied her Constitutional right to probe government witnesses for prejudice and bias; cross examination was limited and the jury was prevented from hearing impeachment evidence. The jury did not hear testimony about the government witnesses' criminal records, including arrests and results of those arrests, notwithstanding their testimony that they received no deals, although escorted in custody, and anxious to begin a furlough from prison after their testimony.

Ms. Veloria was deprived of essential discovery, impeachment evidence and exculpatory evidence under Brady. Ms. Veloria was ambushed during trial on charges not made in the indictment, allowing the verdict to be influenced by uncharged offenses. Evidence was presented that jurors were threatened with physical violence during deliberation and counsel for Ms. Veloria failed to protect her Sixth Amendment right to an impartial jury.

Ms. Veloria received an unconstitutional sentence in violation of her right to a jury trial determination of the issues relied upon by the Court to impose a sentence outside the guidelines. Sentencing enhancement was based upon uncharged conduct, and the count of the indictment the jury acquitted her on.

Claims of specific violations of Ms. Veloria's Constitutional rights are as follows:

**<u>CLAIM NUMBER 1</u>**
**EXCULPATORY POLICE REPORT WITHHELD FROM DEFENSE RESULTING IN A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS AND HER SIXTH AMENDMENT RIGHT TO CONFRONTATION**

### CLAIM NUMBER 2
COUNSEL FAILED TO OBTAIN POLICE REPORT THEREBY VIIOLATING MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND HER SIXTH AMENDMENT RIGHT TO CONFRONTATION AND TO HAVE AFFECTIVE ASSISTANCE OF COUNSEL

### CLAIM NUMBER 3
MS. VELORIA'S CONSTITUTIONAL RIGHT TO EQUAL PROTECTION WAS VIOLATED WHEN THE GOVERNMENT ENGAGED IN SELECTIVE PROSECUTION BY ONLY CHARGING, INVESTIGATING AND PROSECUTING MS. VELORIA WHEN OTHERS WERE "SIMILARLY SITUATED"

### CLAIM NUMBER 4
MS. VELORIA'S FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO EQUAL PROTECTION UNDER THE DUE PROCESS CLAUSE WAS VIOLATED UPON THE POST ARREST/PRE-INDICTMENT DELAY BECAUSE OF PREJUDICIAL UNAVAILABILITY OF A KEY DEFENSE WITNESS

### CLAIM NUMBER 5
MS. VELORIA'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL SEARCH AND SEIZURE WAS VIOLATED WHEN COUNSEL WAS INEFFECTIVE BY FAILING TO FILE A PRE-TRIAL MOTION TO SUPPRESS THE SEIZURE OF MS. VELORIA'S TRUCK AND TO CONFRONT THE SEIZING OFFICERS WITH THEIR INCONSISTENT TESTIMONY AT TRIAL

### CLAIM NUMBER 6
MS. VELORIA'S WAIVER OF HER FIFTH AMENDMENT RIGHT AGAINST SELF-INCRIMINATION WAS UNKNOWING, AS COUNSEL INCORRECTLY INFORMED HER OF THE STATEMENTS USE TO THE GOVERNMENT AT TRIAL

### CLAIM NUMBER 7
MS. VELORIA'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN HER FEDERAL PUBLIC DEFENDER WAS INEFFECTIVE IN HIS UNDERSTANDING AND ADVICE REGARDING A PROFFERED STATEMENT AND ITS LIMITATION AT TRIAL

### CLAIM NUMBER 8
MS. VELORIA'S FIFTH AMENDMENT RIGHT AGAINST SELF INCRIMINATION AND HER SIXTH AMENDMENT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN DEFENSE COUNSEL WAS INEFFECTIVE IN RAISING MS. VELORIA'S UNKNOWING WAIVER ISSUE

**CLAIM NUMBER 9**
**THE COURT FAILED TO REMEDY MS. VELORIA'S UNKNOWING WAIVER OF HER FIFTH AMENDMENT RIGHT BEFORE TRIAL THERBY RESULTING IN THE VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO CONFRONTATION**


**CLAIM NUMBER 10**
**MS. VELORIA'S FIFTH AMENDMENT RIGHTS TO DUE PROCESS OF LAW AND FUNDAMENTAL FAIRNESS, AND HER SIXTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO CONFRONT WITNESSES AGAINST HER WERE VIOLATED WHEN THE COURT REFUSED TO RULE ON MS. VELORIA'S UNKNOWING WAIVER ISSUE UNTIL THE END OF HER TRIAL THEREBY PREJUDICING ALL OF THE DEFENSES CROSS EXAMINATIONS**


**CLAIM NUMBER 11**
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS VIOLATED WHEN THE GOVERNMENT FAILED TO PROVIDE DISCOVERY AFTER BEING ORDERED BY THE COURT TO DO SO**


**CLAIM NUMBER 12**
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS VIOLATED BY MEMORANDUM OF INTERVIEW CONTAINING BLATANTLY FALSE STATEMENTS**


**CLAIM NUMBER 13**
**MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS UNDER *BRADY* WERE VIOLATED WHEN THE GOVERNMENT FAILED TO PRODUCE DISCOVERY WHICH FORMED BASIS OF INTRICATE DIAGRAM**


**CLAIM NUMBER 14**
**MS. VELORIA'S CONSTITUTIONAL RIGHTS WERE VIOLATED WHEN DEFENSE COUNSEL WAS INEFFECTIVE BY FAILING TO CONFRONT THE GOVERNMENT REGARDING A DIAGRAM THAT WAS LIKELY A RESULT OF AN ILLEGAL WIRETAP OR UNAUTORIZED SURVEILLANCE PERPETRATED ON MS. VELORIA THEREBY VIOLATING HER PRIVACY RIGHTS**


**CLAIM NUMBER 15**
**MS. VELORIA WAS DENIED DUE PROCESS OF LAW WHEN HER PROSECUTOR INTENTIONALLY MISLED THE COURT IN RELATION TO ADMISSION OF PREJUDICIAL "PRIOR BAD ACTS" EVIDENCE**

## CLAIM NUMBER 16
**DEFENSE COUNSEL WAS INEFFECTIVE IN RELATION TO GOVERNMENT'S INTRODUCTION OF 404 (b) EVIDENCE IN VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL**

## CLAIM NUMBER 17
**MS. VELORIA'S RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS DENIED WHEN COURT APPOINTED[46] COUNSEL FAILED TO SUBMIT A MOTION REQUESTING CERTAIN EVIDENCE BE EXCLUDED FROM USE AGAINST HER AT TRIAL.**

## CLAIM NUMBER 18
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN EXCULPATORY RENT RECEIPT SEIZED DURING SEARCH WAS NOT INTRODUCED AT TRIAL**

## CLAIM NUMBER 19
**MS. VELORIA WAS DENIED HER SIXTH AMENDMENT RIGHT TO OFFER THE TESTIMONY OF FAVORABLE WITNESSES AT TRIAL**

## CLAIM NUMBER 20
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND TO HAVE EFFECTUVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN COURT APPOINTED COUNSEL FAILED TO MOVE THE COURT FOR DISCLOSURE OF THE IDENTITY OF THE CONFIDENTIAL INFORMANT AGAINST HER**

## CLAIM NUMBER 21
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN PROSECUTOR FAILED TO CORRECT GOVERNMENT WITNESS TESTIMONY KNOWN TO BE FALSE**

## CLAIM NUMBER 22
**MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO CONFRONT THE WITNESSES AGAINST HER WERE DENIED WHEN HER ATTORNEY FAILED TO RECOGNIZE AND ARGUE THE APPROPRIATE HEARSAY EXCEPTION TO QUESTION A WITNESS ABOUT HIS PRIOR STATEMENT**

### CLAIM NUMBER 23
**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COURT APPOINTED DEFENSE COUNSEL FAILED TO ASSERT 609 (A)(2) FEDERAL RULES OF EVIDENCE TO INTRODUCE CONVICTIONS FOR CRIMES OF DISHONESTY FOR BOTH GOVERNMENT WITNESSES WHO TESTIFIED AGAINST HER AT TRIAL THEREBY DENYING MS. VELORIA'S RIGHT TO CONFRONTATION**

### CLAIM NUMBER 24
**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COURT APPOINTED DEFENSE COUNSEL FAILED TO ASSERT 609 (A)(2) FEDERAL RULES OF EVIDENCE TO INTRODUCE CONVICTIONS FOR CRIMES OF DISHONESTY FOR BOTH GOVERNMENT WITNESSES WHO TESTIFIED AGAINST HER AT TRIAL THEREBY DENYING MS. VELORIA'S RIGHT TO CONFRONTATION**

### CLAIM NUMBER 24
**MS. VELORIA'S CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN COURT APPOINTED DEFENSE COUNSEL FAILED TO ASSERT 609 (A)(2) FEDERAL RULES OF EVIDENCE TO INTRODUCE CONVICTIONS FOR CRIMES OF DISHONESTY FOR BOTH GOVERNMENT WITNESSES WHO TESTIFIED AGAINST HER AT TRIAL THEREBY DENYING MS. VELORIA'S RIGHT TO CONFRONTATION**

### CLAIM NUMBER 25
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN THE GOVERNMENT FAILED TO DISCLOSE THE FACT THAT THEIR WITNESS' (BARCENA) RECEIPT OF AN UNLIKELY DEFERRED ACCEPTANCE PLEA WAS A RESULT OF HER COOPERATION AGAINST MS VELORIA**

### CLAIM NUMBER 26
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN SUSPICIOUS DATES REPORTED ON BARCENA'S "RAP SHEET" WERE NOT INQUIRED INTO DURING TRIAL THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION**

### CLAIM NUMBER 27
**MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND HER SIXTH AMENDMENT RIGHTS TO CONFRONTATION AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED WHEN KEY GOVERNMENT WITNESS COMMITTED PERJURY DURING HER GRAND JURY TESTIMONY**

**CLAIM NUMBER 28**
PROSECUTOR ALLOWED GOVERNMENT WITNESS BARCENA TO TESTIFY
FALSELY REGARDING CIRCUMSTANCES OF REDUCED CHARGE THEREBY
VIOLATING MS. VELORIA'S RIGHT TO CONFRONT THE WITNESSES AGAINST
HER WITH EFFECTIVE ASSISTANCE OF COUNSEL

**CLAIM NUMBER 29**
MS. VELORIA'S  FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND
HER SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL
WERE VIOLATED WHEN GOVERNMENT WITNESS BARCENA'S "RULE 35"
DIRECTLY RELATED TO MS. VELORIA'S INDICTMENT TWO DAYS LATER WAS
NOT DISCLOSED NOR DISCOVERED WITH REASONABLE INVESTIGATION
THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION

**CLAIM NUMBER 30**
MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND
SIXTH AMENDMENT RIGHT TO COUNSEL WERE VIOLATED WHEN COUNSEL
FAILED TO EXPLORE GOVERNEMNT WITHNESS' MOTIVATION BEHIND THE
INFORMATION PROVIDED TO LAW ENFORCEMENT OFFICERS, THREFORE
DENYING MS. VELORIA HER RIGHT TO CONFRONTATION

**CLAIM NUMBER 31**
MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED
WHEN PROSECUTION WITHHELD DURING TRIAL FACT THAT KEY
GOVERNMENT WITNESS HAD TWO SEPARATE CHARGES FOR CRIMES OF
DISHONESTY PENDING AGAINST HER, ONE OF WHICH OCCURRED JUST TWO
WEEKS BEFORE MS. VELORIA'S TRIAL THERBY VIOLATING HER RIGHT TO
CONFRONTATION

**CLAIM NUMBER 32**
MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS
VIOLATED WHEN GOVERNMENT FAILED TO DISCLOSE FACT THAT THEIR
WITNESS HAD A KNOWN MENTAL ILLNESS THEREBY VIOLATING MS.
VELORIA'S RIGHT TO CONFRONTATION

**CLAIM NUMBER 33**
MS. VELORIA'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW,
FUNDAMENTAL FAIRNESS, CONFRONTATION AND EFFECTIVE ASSISTANCE
OF COUNSEL WERE VIOLATED BY THE OBJECTIVELY UNREASONABLE
PERFORMANCE OF TRIAL COUNSEL

## CLAIM NUMBER 34
**IT WAS A VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO A TRIAL BY AN IMPARTIAL JURY WHEN A DOCUMENTED ALLEGATION OF JUROR MISCONDUCT WAS NOT THOROUGHLY INVESTIGATED**

## CLAIM NUMBER 35
**THE COURT FAILED TO PROTECT MS. VELORIA'S SIXTH AMENDMENT RIGHT TO A VERDICT BY AN IMPARTIAL JURY, THEREBY RESULTING IN A FUNDAMENTAL MISCARRIAGE OF JUSTICE**

## CLAIM NUMBER 36
**MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN DEFENSE COUNSEL WAS INEFFECTIVE IN PURSUING JUROR MISCONDUCT ISSUE AS IT WOULD REQUIRE HIM TO ACKNOWLEDGE HIS ERRORS AS COUNSEL**

## CLAIM NUMBER 37
**MS. VELORIA'S SIXTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO AN IMPARTIAL JURY WERE VIOLATED WHEN COUNSEL FAILED TO REQUEST AN ALLEN CHARGE WHEN MS. VELORIA'S JURY INDICATED THEY WERE DEADLOCKED THREE DAYS BEFORE CONVICTING MS. VELORIA.**

## CLAIM NUMBER 38
**MS. VELORIA'S PRESENCE WAS WAIVED WITHOUT HER KNOWLEDGE IN VIOLATION OF HER SIXTH AMENDMENT RIGHT TO BE PRESENT AT ALL PROCEEDINGS**

## CLAIM 39
**THE COURT CONTRIBUTED TO THE DENIAL OF MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW BY CONSISTENTLY FAILING TO CONSTRUE CIRCUMSTANCES IN LIGHT MOST FAVORABLE TO DEFENDANT AS WELL AS INTENTIONALLY GIVING INACCURATE SPELLING AND CITATIONS FOR CASES THAT WOULD HAVE ASSISTED THE DEFENSE DURING TRIAL AND ON APPEAL**

## CLAIM NUMBER 40
**MS. VELORIA'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY THE IMPOSITION OF A SENTENCE BASED ON CONDUCT NOT FOUND BY HER JURY**

### CLAIM NUMBER 41
**MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENT WERE VIOLATED BY THE COURT'S PARTICIPATION IN PLEA PROCEDURES IN HER CASE**

### CLAIM NUMBER 42
**THE COURT FAILED TO INTERVENE DURING MS. VELORIA'S TRIAL WHEN COUNSEL APPOINTED TO DEFEND HER WAS LACKING IN THE PERFORMANCE OF HIS DUTIES, ALL IN VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO CONFNRONTATION AND TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL IN HER DEFENSE**

### CLAIM NUMBER 43
**MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, EIGHT, AND FOURTEENTH AMENDMENTS WERE VIOLATED WHEN HER PROPERTY WAS UNLAWFULLY SEIZED AND FORTEITED**

### CLAIM NUMBER 44
**MS. VELORIA REQUESTS REDUCTION OF HER SENTENCE IN LIGHT OF THE SUPREME COURT'S DECISION IN *KIMBROUGH V. UNITED STATES* PROVIDING RELIEF FOR THE UNREASONABLE 100; 1 COCAINE BASE DISPARITY**

### CLAIM NUMBER 45
**MS. VELORIA'S FIFTH AMENDMENT AND SIXTH AMENDMENT RIGHTS WERE VIOLATED BY THE IMPOSITION OF AN ENHANCED SENTENCE UNDER UNITED STATES SENTENCING GUIDELINES BASED ON THE SENTENCING JUDGE'S DETERMINATION OF A FACT (OTHER THAN A PRIOR CONVICTION) THAT WAS NOT FOUND BY THE JURY OR ADMITTED BY THE DEFENDANT**

### CLAIM NUMBER 46
**IT WAS A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE WAS UNLAWFULLY DENIED APPLICATION OF THE "SAFETY VALVE" PROVISION**

### CLAIM NUMBER 47
**MS. VELORIA WAS PREJUDICED BY THE OBJECTIVELY UNREASONABLE PERFORMANCE OF COUNSEL DURING THE PRETRIAL, TRIAL AND DIRECT APPEAL PROCESS**

## CLAIM NUMBER 48
**MS. VELORIA WAS PREJUDICED BY THE CUMULATIVE IMPACT OF MULTIPLE DEFICIENCIES OR ERRORS BY COUNSEL DURING PRETRIAL, TRIAL AND DIRECT APPEAL PROCESS**

## CLAIM NUMBER 49
**MS. VELORIA WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN THE DIRECT APPEAL PROCESS WHEN COUNSEL FAILED TO FILE MERITORIOUS ISSUES SUBMITTED BY MS. VELORIA**

## CLAIM NUMBER 1

**EXCULPATORY POLICE REPORT WITHHELD FROM DEFENSE RESULTING IN A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS AND HER SIXTH AMENDMENT RIGHT TO CONFRONTATION**

Pursuant to Local Rule 16.1 in the District of Hawaii, there is a standing order for routine discovery in criminal cases.

Local Rule 16.1 (a) orders the Government to provide to a defendant information which falls into any of 10 different subparagraphs, within seven (7) days after arraignment.

Specifically, Crim LR 16-1 (a) 7 orders the Government to provide the following discovery to a criminal defendant:

Brady material, as it shall be presumed that defendant has made a general *Brady v. Maryland*, 373 U.S. 83 (1963) request.

Therefore, the Government was required to provide Ms. Veloria with a copy of exhibit 28 within seven (7) days of her arraignment, which occurred on October 10, 2000. The intentional withholding of exhibit 28 prejudiced Ms. Veloria during pre-trial and on appeal.

In May of 2007, Ms. Veloria mailed a Freedom of Information and Privacy Act request to the chief of police, Hawaii Police Department, requesting "All police reports relating to [the] arrest on July 10, 1996, having a master report number of F-00877." After sending payment of

$25.40 for fees in relation to said FOIA request, a manila envelope was mailed to Ms. Veloria, at Carswell Federal Medical Center.

Among the copies of the various police reports received on 7/3/2007,[47] Ms. Veloria discovered a report written by Steven Correia on 7/13/1996, containing information which would have been considered exculpatory and of great use to Ms. Veloria in her criminal trial (See Exhibit 28). This police report had never before been disclosed.

Ms. Veloria was first charged for offenses relating to this arrest by the State of Hawaii in 1996. Ms. Veloria retained private attorney Brian J. Delima to represent her. Pursuant to the state prosecution of this case, Ms. Veloria was given copies of all documents within her file through Mr. Delima. Steven Correia's police report was not within said discovery packet.

Four years later, Ms. Veloria was federally indicted, arrested and given pretrial release. Ms. Veloria immediately sent (via FedEx) a copy of the state discovery, provided to her four years prior in the state case, to the Federal Public Defender's Office.[48] When Mr. Silvert (F.P.D.) received discovery from AUSA Mr. Brady, he kindly forwarded a copy to Ms. Veloria for her records and asked her whether there appeared to be anything additional within the federal discovery. Ms. Veloria responded by mailing Mr. Silvert a letter comparing both state and federal discovery, listing additional and/or missing items from both sets of documents.[49] However, STEVEN CORREIA'S REPORT DID NOT APPEAR IN EITHER FEDERAL OR STATE DISCOVERY.

June of 2007 is the first time Ms. Veloria has ever viewed the police report written by Steven Correia. This police report establishes that the Hawaii Police Department and the

---

[47] It should be noted that Ms. Veloria initially received a redacted version of the report, with some of the critical descriptive information excised, HPD citing "invasion of personal privacy" as their reason for excision.
[48] This can be verified by records within defense counsel's files, as well as the cover letter itself (in Ms. Veloria's possession) sent with the packet.
[49] A copy of the letter containing the list is available upon request.

Government both were in possession of information that established another female suspect in this case related to the drugs recovered from the house at 69 Mauna Loa Street on 7/10/1996.

It should also be noted that this exculpatory police report was written on 7/12/1996, three days after the search of the house; unlike the other inculpatory reports suspiciously written more than four months later, on 11/12/1996 (See Exhibit 1).

Throughout trial, in an attempt to shift suspicion from the three males arrested with Ms. Veloria at 69 Mauna Loa Street, the Government repeatedly elicited testimony regarding the female clothes in "bedroom #1,"[50] which is the room found to have contained the cocaine base. Additionally, on several occasions, testimony was placed before the jury by the Government which is contradictory to the information contained within Steven Correia's police report. An example of such testimony is when the Government posed the following question to Sam Thomas: "Now, do you have any intelligence that someone other than Ms. Veloria was living at 69 Mauna Loa Street?" The response given by the chief investigator in the case was "No."[51]

Not only is this testimony contradictory to evidence recovered from the house at 69 Mauna Loa Street,[52] it directly conflicts with the police report routed to S. Thomas, written by an officer who was present during the search of said house (See Exhibit 28).

The Supreme Court ruled in *Kyles v. Whitely*,[53] that undisclosed evidence favorable to an accused is material and results in Constitutional error when there is a "reasonable probability" that if the evidence had been disclosed to the defense, the results of the proceeding would have been different. In their opinion, the Court specifically stated, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in

---

[50] TR 6/4/03, p. 71, L. 9; TR 6/5/03, p. 86, l. 2
[51] TR 6/4/03, p. 70, L. 8
[52] Evidence/property list items: #12, #13, #22, #23; and Exhibit 3 Photographic record items: #11, #17, #24
[53] 514 U.S. 419, 131 L.Ed. 2d. 508

the case, including the police."[54]  Additionally, courts have found *Brady* violations when

prosecutors were unaware of and consequently did not disclose favorable evidence even though

said evidence was withheld from the prosecutor by the police.[55]

Disclosure of this police report would have provided the defense with information which

could have been used in pretrial motions.  This police report would have afforded the defense an

opportunity to weigh the potential testimony of Myles Kurashige for both trial and pretrial

hearings.

Steven Correia's police report documents that Mr. Kurashige arrived at 69 Mauna Loa

Street and indicated that he was "looking for the tall, skinny girl who lives here."  When Steven

Correia specifically asked Mr. Kurashige if he was looking for "Alicia," Mr. Kurashige's

response was "No."  Mr. Kurashige reportedly attempted to purchase marijuana from Steven

Correia and was arrested (See Exhibit 28).

This police report would have given the defense two important arguments at trial  The

first argument is that the Hawaii Police Department was aware that a female (other than Alicia

Veloria) was known to live in the house on Mauna Loa Street.  The second argument or issue

arising from this report is that Mr. Kurashige was seeking "the tall, skinny girl" in hopes of

purchasing illegal drugs, and when Steven Correia specifically asked if Mr. Kurashige was

looking for Alicia, he indicated he was not.  This police report is unquestionably exculpatory and

its use to the defense during the trial cannot be denied.  This police report effectively establishes

another female suspect for the charge for which Ms. Veloria was convicted.

Disclosure of this police report would have resulted in the defense calling Mr. Kurashige

as a witness during trial.  Additionally, the information contained within the police report would

---

[54] Ibid, at 508
[55] *McMillian v. Johnson*, 88 F. 3d 1554, 1568-69 (11th Cir. 1996)

have allowed the defense to impeach[56] the testimony of Sam Thomas when he stated that the H.P.D. had no information "that someone other than Alicia Veloria was living at 69 Mauna Loa Street." Also, testimony establishing another female suspect would have explained the presence of female clothes in the bedroom in which the cocaine base was found.

Hence, "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[57] There can be no doubt as to this exculpatory police report's value to Ms. Veloria's defense at trial. It is reasonable to consider that the jury may have arrived at a different conclusion after having been given the information contained within Steven Correia's police report.

Courts have previously granted relief for petitioners on a 2255 Motion upon claims of prosecutorial suppression of exculpatory evidence and the withholding of police reports.[58] Additionally, claims of police suppression of evidence have been found to be cognizable on a 2255 Motion and cause for granting relief to petitioners.[59]

Ms. Veloria requests reversal of her conviction and hereby requests an evidentiary hearing into circumstances regarding this withheld police report and to determine whether any additional exculpatory material is within the possession of the Government or the Hawaii Police Department.

## CLAIM NUMBER 2

### COUNSEL FAILED TO OBTAIN POLICE REPORT THEREBY VIOLATING MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND HER SIXTH AMENDMENT RIGHT TO CONFRONTATION AND TO HAVE AFFECTIVE ASSISTANCE OF COUNSEL

---

[56] Steven Correia's police report itself bears the words "I request that this case be left continuing and that a copy of this report be routed to the chief investigator (Detective Thomas) for his review and final disposition."
[57] *Kyles v. Whittley*, 514 U.S. 419, 434 (1995)
[58] *Walker v. Lockhart*, 763, F. 2d 942 (8th Cir. 1985); *White v. Helling*, 194 F. 3d 937 (8th Cir. 1999); *U.S. v. Weintraub*, 871 F. 2d 1257 (5th Cir. 1989); *Boyette v. LeFerve*, 246 F. 3d 76 (2nd Cir. 2001)
[59] *McDowell v. Dixon*, 858 F. 2d 945 (4th Cir. 1988)

Upon receipt and review of the federal discovery documents in November of 2000, Ms. Veloria followed up with a letter to Mr. Silvert pointing out that Detective Sam Thomas' report notes that "a Miles Kurashige attempted to purchase marijuana from vice officer Steven Correia" (See Exhibit 29). Ms. Veloria requested that Mr. Silvert obtain and review this report to weigh its potential exculpatory value to Ms. Veloria's defense.[60]

In June of 2002, Ms. Veloria again wrote a follow-up letter to Emmanuel Guerrero, her then attorney, urging him to "find a man named Miles Kurashige," notifying him that Mr. Kurashige "needs to be called as a witness to testify as to who was dealing out of the house," (See Exhibit 31A). Ms. Veloria also noted within this letter that she had previously "requested that police report several times from Mr. Silvert, but never received it."[61]

In response to a phone conversation Ms. Veloria had with Mr. Guerrero on July 2, 2002, she once again wrote another letter which she faxed to him along with the page of the police report (F-00877) containing Myles Kurashige's name and report number (See Exhibit 31B). Once again Ms. Veloria attempted to draw her attorney's attention to the importance of this missing police report by writing, "This report should be requested prior to trial.  We might find something of value."

However, despite Ms. Veloria's continued appeals to her attorneys, Steven Correia's report of arrest of Myles Kurashige at the house at 69 Mauna Loa Street was NEVER requested. Although Ms. Veloria made clear to her defense counsels that she believed this report would contain information which would help her in trial, three different attorneys failed to follow up on

---

[60] P. 4 of letter to F.P.D. Silvert dated 11/7/00
[61] Exhibit 11, letter to Mr. Guerrero, once again shows that Ms. Veloria was insisting that her counsel pursue this issue.

this in preparation for Ms. Veloria's trial. Exhibits 11, 29, 31A and 31B prove that counsel

appointed to represent Ms. Veloria intentionally ignored Ms.Veloria's repeated requests.

Disclosure of this police report would have provided the defense with information which

could have been used in pretrial motions. This police report would have afforded the defense an

opportunity to weigh the potential testimony of Myles Kurashige for both trial and pretrial

hearings.

Steven Correia's police report documents that Mr. Kurashige arrived at 69 Mauna Loa

Street and indicated that he was "looking for the tall, skinny girl who lives here." When Steven

Correia specifically asked Mr. Kurashige if he was looking for "Alicia," Mr. Kurashige's

response was "No." Mr. Kurashige reportedly attempted to purchase marijuana from Steven

Correia and was arrested (See Exhibit 28).

This police report would have given the defense two important arguments at trial  The

first argument is that the Hawaii Police Department was aware that a female (other than Alicia

Veloria) was known to live in the house on Mauna Loa Street.  The second argument or issue

arising from this report is that Mr. Kurashige was seeking "the tall, skinny girl" in hopes of

purchasing illegal drugs, and when Steven Correia specifically asked if Mr. Kurashige was

looking for Alicia, he indicated he was not.  This police report is unquestionably exculpatory and

its use to the defense during the trial cannot be denied.  This police report effectively establishes

another female suspect for the charge for which Ms. Veloria was convicted.

Disclosure of this police report would have resulted in the defense calling Mr. Kurashige

as a witness during trial.  Additionally, the information contained within the police report would

have allowed the defense to impeach[62] the testimony of Sam Thomas when he stated that the

---

[62] Steven Correia's police report itself bears the words "I request that this case be left continuing and that a copy of this report be routed to the chief investigator (Detective Thomas) for his review and final disposition."

H.P.D. had no information "that someone other than Alicia Veloria was living at 69 Mauna Loa Street." Also, testimony establishing another female suspect would have explained the presence of female clothes in the bedroom in which the cocaine base was found.

Hence, "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[63] There can be no doubt as to this exculpatory police report's value to Ms. Veloria's defense at trial. It is reasonable to consider that the jury may have arrived at a different conclusion after having been given the information contained within Steven Correia's police report.

Ms. Veloria requests that her conviction be vacated.

## CLAIM NUMBER 3

### MS. VELORIA'S CONSTITUTIONAL RIGHT TO EQUAL PROTECTION WAS VIOLATED WHEN THE GOVERNMENT ENGAGED IN SELECTIVE PROSECUTION BY ONLY CHARGING, INVESTIGATING AND PROSECUTING MS. VELORIA WHEN OTHERS WERE "SIMILARLY SITUATED"

With respect to Count 1, relating to the July 10, 1996 search of the house on 69 Mauna Loa Street, Benton Bolos' six-page police report (written more than four months after the date of search, on November 12, 1996) indicates that three others were arrested with Ms. Veloria on July 10, 1996 (See Exhibit 1). In addition to those who were arrested there that day, the police evidence/property report (See Exhibit 2) and the photographic record (See Exhibit 3) clearly indicate that evidence was recovered during the execution of the search warrant establishing that other people were known to occupy the unlocked house in which Ms. Veloria was found sleeping on the living room floor, wherein the bedroom containing the cocaine had a bed.

---

[63] *Kyles v. Whittley*, 514 U.S. 419, 434 (1995)

Although three others were arrested on July 10, 1996 in relation to the search warrant or other allegations[64] at the premises on 69 Mauna Loa Street, Ms. Veloria was the only one to be charged and prosecuted, first in state court (See Exhibits 4, 5, and 6) and then years later charged and prosecuted in federal district court. With respect to both Zachary Smith,[65] who was asleep on the floor next to Ms. Veloria, and Ignacio Andres,[66] the evidence/property report and photographic record illustrate that the H.P.D. and the government were in possession of items of personal property indicating that they had more than a tenuous connection to the house and the contents therein.

Ms. Veloria was prejudiced by the decisions of the H.P.D. and the government, violating her right to equal protection because she was the sole person ever to be charged, put in jeopardy of liberty, and convicted of any charges relating to this incident. Ms. Veloria's own jury panel clearly questioned this behavior in their first note from the jury wherein they asked, "Was Zachary Smith arrested or facing charges?"[67]

In relation to Count 2, occurring on November 22, 1996, the H.P.D. and the government again engaged in unconstitutional selective prosecution when Wallace Iaukea, also an occupant of the Ford Ranger, was never charged or prosecuted. Wallace Iaukea was "similarly situated" to Ms. Veloria and he was never charged or prosecuted. It cannot be said that this decision was based on Iaukea's cooperation, as the record clearly reflects that Iaukea declined to provide helpful information to the H.P.D. on November 22, 1996. Nor did Iaukea provide a statement to H.P.D. when they arrested and attempted to question him three days later on November 25, 1996.

---

[64] Ignacio Andres was found sleeping in a closet with a crack pipe in hand and was arrested for PROM DANG DRUG and DRUG PARA, but never prosecuted. Myles Kurashige allegedly arrived at the scene and attempted to purchase marijuana from a police officer; he was arrested for PROM DETRI DRUG, but never prosecuted (See Exhibits 1and 28).
[65] Evid/property list #12, Papers for Ford Bronco II, photographic record #24, State ID on kitchen counter
[66] Evid/property list #22, Inmate Property Receipt, photographic record #17, jail receipt paper
[67] Dkt. 129 Note from Jury #1, question #2

In fact, Iaukea was listed as a suspect, along with Ms. Veloria, in H.P.D. reports relating to the seizure of the truck.[68]  It was not until July of 2002, five and a half years later, that Iaukea, while serving a sentence at Kulani Correctional Facility, allegedly called Detective Marshall Kanehailua "requesting to be interviewed" about the incident.[69]

Iaukea subsequently testified for the government at Ms. Veloria's trial, admitting that the digital scale found with the cocaine belonged to him,[70] but denying responsibility for anything else.  Iaukea further testified that he "made up"[71] a story about a dog to mislead police prior to his decision to cooperate.  Ultimately, Iaukea testified that his reason for helping the police was because they told him that Ms. Veloria was saying that the cocaine was his and he didn't "want to plead guilty to something I never do."[72]

H.P.D. and the government's decision to only charge and prosecute Ms. Veloria in relation to this offense constitutes selective prosecution and is prohibited by the Constitution under the Fifth Amendment which guarantees equal protection.  Iaukea openly admitted to wrongdoing under oath but expressed no concern about repercussions.  Iaukea denied receiving any benefit in relation to his testimony implicating himself, although the record clearly reflects that 1) he was with Ms. Veloria in the vehicle that H.P.D. seized and in which cocaine was found, 2) he admits to possessing the digital scale which was located with the cocaine in the seized vehicle, 3) for a period from November 22, 1996 until July 17, 2002, Iaukea declined invitations to speak with H.P.D., instead leaving them with his "made up" story.

---

[68] H.P.D. police report F-12443, Mitchell Kanehailua
[69] Report written by Marshall Kanehailua on 7/17/2002
[70] TR 6/4/03, p. 87 L. 7
[71] TR 6/4/03, p. 114 L. 7
[72] TR 6/4/03 p. 109 1. 15

Ms. Veloria was prejudiced by the intentional selective prosecution in this case. Again, Ms. Veloria's own jury was also concerned with this when they asked the question, "What is Wallace Iaukea in prison for, and was it related to Alicia Veloria?"[73]

Presumption of disparate treatment arises if others who were found to be "similarly situated" are not prosecuted. In Ms. Veloria's case, many others who were similarly situated were never charged nor prosecuted for their obvious role in the alleged offense. The trial record reflects that in relation to the investigation and prosecution of Ms. Veloria, allegedly no individual received immunity, had charges against them dropped, or was able to negotiate a plea bargain. Ms. Veloria was selected on some impermissible grounds to face charges alone. The categories in which Ms. Veloria differs from the others are 1) Age: Ms. Veloria was age 19 and 20 at the time of the respective arrests. Others arrested varied in age at the time from 30 to 44 years. 2) Gender: Ms. Veloria is female. All others arrested were males. 3) Race: Ms. Veloria is white/Caucasian. All others arrested were part Hawaiian ethnicity or a mixture of ethnicities not including white/Caucasian.

In addition, the fact that Ms. Veloria was indicted singularly on federal charges also bears mention. It is a rare occurrence when the federal government does not make an attempt at indicting everyone even remotely connected to drug distribution. In this case, it is clear that Ms. Veloria was the only person to be indicted. In comparison to other drug distribution indictments in federal district courts, Ms. Veloria's indictment and prosecution warrants scrutiny.

Ms. Veloria asserts that she attempted to persuade her counsel to raise the issue of selective prosecution for the Court's consideration upon her federal indictment, and for some time after, to no avail. Ms. Veloria also requested that her trial counsel craft an argument relating to selective prosecution to further illustrate the circumstances for the jury's

---

[73] Dkt. 129 Note from Jury # 1, question #1

consideration. However, the issue went undeveloped throughout Ms. Veloria's trial, thereby resulting in the denial of a constitutional guarantee.

Ms. Veloria believes that she has made a prima facie showing of cause and prejudice for this issue to be considered on a motion under 28 U.S.C. § 2255 in light of the following facts: 1) she attempted to persuade her attorneys to raise the issue prior to trial and on appeal, 2) the issue has constitutional implications, and 3) the questions from her jury illustrate how she was prejudiced by selective prosecution.

In *United States v. Cortez*,[74] the Ninth Circuit Court of Appeals ruled that a trial court may grant relief from selective prosecution after trial under Federal Rules of Criminal Procedure 12(f).

Ms. Veloria requests reversal of her conviction.

## CLAIM NUMBER 4

### MS. VELORIA'S FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO EQUAL PROTECTION UNDER THE DUE PROCESS CLAUSE WAS VIOLATED UPON THE POST ARREST/PRE-INDICTMENT DELAY BECAUSE OF PREJUDICIAL UNAVAILABILITY OF A KEY DEFENSE WITNESS

Ms. Veloria was arrested on the morning of 7/10/1996; H.P.D. jailed her for over 12 hours and then released her "pending further investigation" later that evening (See Exhibits 1 and 4B). Upon releasing Ms. Veloria, H.P.D. officers advised her to "make contact" with them and assist in their investigation of her older brother. Additionally, H.P.D. officers cautioned Ms. Veloria that if she did not cooperate with them and assist in their investigation by providing additional information, they would charge her with the drugs they recovered in the search that day.

---

[74] 973 F.2d 764, 766 (9th Cir. 1992)

Four months later, when H.P.D. vice officers realized the Ms. Veloria had no intention of contacting them and assisting in their investigation, police reports were finally written in relation to the search of the house on 69 Mauna Loa Street. Only two officers out of the six present during the search subsequently wrote reports. Surprisingly, both of them were written on the same day, 11/12/1996, more than four months after the search that resulted in Ms. Veloria's arrest. (See Exhibit 1).

On 12/18/1996, Ms. Veloria was arrested and charged with various drug offenses relating to the above mentioned search. Later that evening, Ms. Veloria was released on $4,250.00 bail, posted by her private attorney, Brian J. Delima. Less than a month later, at the scheduled preliminary hearing in the Third Judicial Circuit Court for the State of Hawaii, ALL charges were dismissed without prejudice. (See Exhibit 4B).

Six months later, on 7/16/1997, Attorney Brian J. Delima negotiated an agreement wherein Ms. Veloria waived indictment of criminal charges (relating to the 7/10/1996 arrest) in exchange for the State of Hawaii not requiring her to post bail (See Exhibit 5).

Over the course of a ten-month period, Ms. Veloria's attorney Brian J. Delima communicated several "deals" offered by the State, all of which were viewed as being unsatisfactory and subsequently rejected. Then on 5/18/1998, the State Attorney submitted a Motion for Nolle Prosequi which was granted (See Exhibit 6). Ms. Veloria's private counsel advised her to apply for a federal public defender in the event she was indicted in federal district court. This was in May 1998. However, it was not until nearly two years later that the federal government actually indicted Ms. Veloria. On 9/25/2000, Ms. Veloria was ONCE AGAIN arrested for the charge stemming from her arrest four years earlier. This was the third time Ms. Veloria was arrested for the same incident over a four-year period.

First Assistant Public Defender Alexander Silvert was appointed to represent Ms. Veloria. Mr. Silvert immediately began working on Ms. Veloria's defense and instructed his investigator to gather background information on potential witnesses (See Exhibit 9). One of the witnesses Ms. Veloria named was Keau Miles, (See Exhibit 8, p. 5 of a letter from Ms. Veloria to Mr. Silvert regarding case; second paragraph). At some point, Kristine Pagan (investigator with the Federal Public Defender's office) discovered that Mr. Miles had passed away the year before (See Exhibit 10). Ms. Veloria was unaware of this as she had been living in Alaska at the time.

Mr. Silvert informed Ms. Veloria that in light of the unavailability of a key witness, he would include a hampered litigation argument in his upcoming Motion to Suppress on account of the pre-indictment delay and the death of a witness. The Motion to Suppress was filed on 7/23/2001[75], but it did not include a hampered litigation argument as Ms. Veloria was informed and had expected. At the hearing on the motion, the witnesses the defense was able to present were not sufficient to persuade the court and the motion was denied.[76]

In *United States v. Marion*,[77] the Supreme Court ruled that the right to speedy trial attaches at the time of arrest or formal charge, whichever comes first. Exhibits 1, 4, 5, and 6 clearly establish that Ms. Veloria was arrested and charged in 1996, and subsequently waived indictment in 1997. All discovery and transcripts in Ms. Veloria's state and federal prosecution demonstrate that with respect to these drug charges, there was nothing to establish the presence of an ongoing investigation. The government had absolutely no reason to delay this prosecution for so long. As evidenced at her trial, Ms. Veloria's case was a simple one of possession with intent to distribute. All of the evidence needed to prosecute Ms. Veloria was seized in 1996.

---

[75] Dkt. 20 Motion to Suppress
[76] Dkt. 35 Motion denied 8/30/2001
[77] 404 U.S. 307, 313, 320 (1971)

The government's delay was not reasonable. If the government had sought an indictment upon the State's motion for Nolle Prosequi, Ms. Veloria would have had the opportunity to call Mr. Miles as a witness at her suppression hearing, and the Motion to Suppress would have likely been granted.

The post-arrest/pre-indictment delay in this case was unwarranted. The trial record reflects that the state/government possessed all of the evidence in 1996 and, for lack of a better term, chose to sit on it. The four-year delay between arrest and indictment could not have possibly impacted the government's case because they already had all of their evidence; therefore, this delay was clearly affected to gain a tactical advantage over Ms. Veloria by allowing her to believe her liberty was no longer in jeopardy on account of charges having been dismissed not once, but twice. Had the government followed up with an indictment in a timely manner, the testimony of a key witness for Ms. Veloria's defense would have been preserved. In fact, it is entirely possible that the government decided to indict Ms. Veloria on these charges only AFTER H.P.D. informed them of the death of a witness who was present during the unconstitutional seizure of Ms. Veloria's truck.

This unwarranted, extremely long pre-indictment delay prejudiced Ms. Veloria's ability to argue the merits of the illegal seizure, in addition to hampering her at trial. Exhibits 8, 9, and 10 show that Ms. Veloria immediately notified her counsel of this witness' potential testimony. Ms. Veloria should not be deprived of her Constitutional guarantees because of counsel's failure to include a hampered litigation argument in the Motion to Suppress when he indicated it was his intention to do so. In addition, Ms. Veloria can provide documentation that she attempted to persuade her ensuing attorneys to raise this issue prior to trial, but said attorneys disregarded her request (See Exhibit 11).

In *Ratliff v. United States*,[78] cause was shown because counsel rebuffed petitioner's request to raise this issue on direct appeal. (See Veloria pro se appeal brief, Exhibit 35, p. 73).

Ms. Veloria was prejudiced by the government's intentional delay because she was unable to call Mr. Miles as a witness for her defense. Ms. Veloria was unable to meet her burden at the "Franks" hearing on 8/30/2001.[79] Ms. Veloria's motion was denied. This denial was directly related to the post-arrest, pre-indictment delay. Ms. Veloria was subsequently tried on a two-count indictment (rather than one count, had the motion been granted.)

After four days of deliberations, after sending out a jury communication indicating they were deadlocked,[80] after being a part of and/or witnessing a heated argument accompanied by physical threats, Ms. Veloria's jury returned with a compromised verdict on Count 1. This case was obviously a difficult one for the jury. It cannot be said with certainty that absent Count 2, the jury would have still returned the same verdict.

This claim is cognizable on a Section 2255 Motion because the prejudicial post-arrest/pre-indictment delay involves a "fundamental defect which resulted in a complete miscarriage of justice."[81] Ms. Veloria believes that through the allegations set forth within this 2255, she has established cause and prejudice satisfying the requirements in *United States v. Frady*.[82] Ms. Veloria should not be deprived of her constitutional rights on account of her counsel's ineffective assistance.

Ms. Veloria requests reversal.

---

[78] 999 F.2d 1023, 1026 (6th Cir 1993).
[79] Dkt. 35 Motion to Suppress evidence construed as Franks Hearing denied, 8/30/01
[80] Dkt. 133 Note from Jury #3, filed 6/10/03
[81] *Davis v. U.S.*, 417 U.S. 333, 346 (1974)
[82] Supra

## CLAIM NUMBER 5

**MS. VELORIA'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNLAWFUL SEARCH AND SEIZURE WAS VIOLATED WHEN COUNSEL WAS INEFFECTIVE BY FAILING TO FILE A PRE-TRIAL MOTION TO SUPPRESS THE SEIZURE OF MS. VELORIA'S TRUCK AND TO CONFRONT THE SEIZING OFFICERS WITH THEIR INCONSISTENT TESTIMONY AT TRIAL**

Under the Fourth Amendment, every search and seizure by a government agent must be reasonable. In general, searches and seizures are unreasonable and invalid unless based on probable cause and executed pursuant to a warrant. [83]

The record demonstrates that on November 22, 1996, Ms. Veloria's person and vehicle were seized by Hawaii Police Department officers beginning at 5:30 pm until the time H.P.D. decided to call the detention a "dog alert," which was reportedly around 5:50 pm. This detention was unwarranted, as Ms. Veloria was not violating any law by sitting in her vehicle preparing to leave a public park with a valid driver's license in a registered and insured vehicle. Both Ms. Veloria and passenger were frisked upon being commanded out of the truck.

On several occasions during the detention, Mrs. Veloria expressed a desire to leave, and at the very least, to phone attorney Brian J. Delima who was representing her and advised her not to speak with any law enforcement officers. All requests were denied and two of the officers (who are brothers- Marshall and Mitchell Kanehailua) proceeded to repeatedly badger Ms. Veloria regarding alleged drug distribution activities of her brother.

Ultimately, the seizing officers directed Ms. Veloria to stand aside as a "dog sniff" was conducted. Ms. Veloria did not consent to the "dog sniff." Numerous areas of Ms. Veloria's trail transcripts support the claim that Ms. Veloria felt she was being harassed and protested to the officers that she had "been through this before." [84] Logic would indicate that if Ms. Veloria was

---

[83] Katz v. U.S., 389 US 347, 357 (1967); Johnson v. U.S., 333 U.S. 10, 14-15 (1948)
[84] Tr. 6/5/03, p. 227 L. 18

"protest[ing]"[85] the detention and search, then it is highly unlikely that she agreed to a "canine sniff" of her vehicle. Exhibit 8 Supports Ms. Veloria's claim that she informed counsel of these facts in an attempt to persuade him to submit a suppression motion Exhibit 8 is a letter Ms. Veloria wrote to defense counsel one month after Ms. Veloria's arrest.

Counsel for Ms. Veloria should have submitted a motion to suppress the seizure of the truck on the following grounds:

1.) Hawaii police officer's initial approach upon Ms. Veloria was nothing more than chance – she was a licensed driver, without any warrants and was, at that time, operating a registered, insured vehicle. Ms. Veloria was not actively involved in any identifiable crimes.

2.) Ms. Veloria was detained for over 20 minutes, during which time she repeatedly expressed a desire to leave and/or to phone her criminal defense attorney because she felt she was being harassed and "protested" [86] the encounter. The mere fact, that she was prevented from making use of her cellular phone (seized from vehicle during search) supports the contention that she was not free to leave, or make any voluntary movements.

3.) If somehow consent was assumed to have been given by Ms. Veloria to "screen the exterior," how did that extend into consent for the handler to open the truck door allowing for a canine alert of "biting and scratching" along the interior panel of truck?

4.) Due to length of Pre indictment delay, a key witness who was present at Kea'au Park died before Ms. Veloria could secure a statement regarding the illegal opening of the truck door. (see exhibit 9 & 10)

---

[85] Tr. 6/5/06, p. 227 L. 18
[86] Tr. 6/5/03, p. 227 L. 18

Further, Counsel was ineffective by failing to conduct investigation and pretrial discovery by considering the following:

      1.) The truck was evidence. Counsel should have inspected and made record of the absence of bite and scratch marks as well as the extreme height o the truck to show the impossibility of canine being able to reach the interior panel

      2.) Canine training and alert records. Counsel should have moved the court for an order calling for the production of the canines certification, training and alert records.

*Strickland V. Washington*,[87] outlines reasonable expectations of counsel's duties:

> "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Ibid. Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery. Such a complete lack of pretrial preparation puts a risk both the defendant's right to an " 'ample opportunity to meet the case of the prosecution,'"[88] and the reliability of the adversarial testing process.

In *Kimmelman V. Morrison*,[89] the Supreme Court ruled that counsel's failure to conduct any pre trail discovery and failure to file a timely suppression motion was prejudicial and below prevailing professional norms.

Counsel was ineffective for not presenting several arguments pertaining to the canine search. First, defense counsel offered no questioning as to the training or previous alert record of Malia, the canine used in the search. Additionally, he provided no demonstration that Malia's physical stature alone would have made it impossible for her to have bitten and scratched at the interior panel of the door, as the vehicle was in excess of 54 inches off the ground.

---

[87] 466 US 668
[88] id., at 685, see 466 US at 688
[89] 477 US 365

- 49 -

Counsel not only failed to contest the officers' testimony with the fact that Ms. Verloria did not consent to the search, he did not shed light on the fact that even _if_ she had given consent as officer Marshall Kanehailua states on page 229 of 06/05//03 trial transcripts, he had only asked to "run a canine screen on the exterior of the vehicle". (See 6/05/03 trial transcript P. 228 L.15) A "dog sniff" of the interior door panel obviously have not been agreed to in an _exterior_ search, yet counsel did not prevent this blatant violation of Ms. Veloria's Constitutional right against unlawful searches.

Conflicting testimony as to how the dog actually alerted was presented by Officers Marshall Kanehailua and Mitchell Kanehailua. Counsel did not challenge the differences in the officer's statements, which definitely would have led the jury to question the validity of the canine actual "alert". On page on 232 of 06/05/03 trial transcripts at lines 5 and 7, Marshall Kanehailua explained Malia goes as he is "directing" her and that she leads as he follows behind. In stark contrast to his brother's testimony, Mitchell Kanehailua answers counsel's inquiry of, "It was the officer pulling the dog to the passenger side, right?" To which he responded with, "It was the process of him leading the dog around."[90]

Further, trial counsel failed to zealously advocate for his client when Officer Marshall Kanehailua states Ms. Veloria pushed him as the canine was alerting. (TR. 6/5/03, P. 234, L. 6-9). As would be apparent to the jury, Ms. Veloria would have been no physical match for Officer Kanehailua, and it would have been short of plain stupidity for her to have aggressively approached an officer with a trained police dog at his side, uncertain as to how either would have reacted to the threats to physical harm. Presenting his client in a more truthful account of the situation, trial counsel should have countered the witness' testimony with a proper line of questioning to show that the officer was searching in an area where he should not have been.

---

[90] TR. 6/6/03, P. 31, L. 8-11