because it would have afforded them the opportunity to effectively impeach Barcena, thereby rendering her testimony suspect.

The Supreme Court has ruled, in no uncertain terms, that bias of a testifying witness is always relevant to the jury's fact finding quest in a criminal trial. The ineffectiveness of Ms Veloria's trial counsel denied her jury relevant knowledge of bias which would place Barcena's testimony at question. If the jury had been privy to the unknown factor which caused Barcena to provide the information against Ms. Veloria, they may have voted to acquit.

The trial record reflects that this case was a close one for Ms. Veloria's jury; they deliberated for four days and sent out eight separate communications, one of which indicated they could not come up with a unanimous decision. In addition to the jury's various questions that were unanswered, there was a verbal altercation at the close of the day, on the day immediately preceding the verdict.

If counsel for Ms. Veloria had made a reasonable attempt to uncover the unknown factor and place it squarely before the jury for their consideration, it cannot be said with certainty that the jury would have arrived at the same verdict. Barcena was not just "served with a subpoena" after officers asked her a "couple of questions" as she testified to a front of the jury during Ms. Veloria's trial. Barcena's actions were motivated by an unknown factor and that factor should have been disclosed to the defense and submitted to Ms. Veloria's jury for their consideration.

It was a violation of Ms. Veloria's constitutional right to effective assistance of counsel when defense counsel failed to impeach Ann Barcena with the above mentioned circumstances. Exposure of testimony under these conditions have shed light on Barcena's well established pattern of dishonesty as they all reflect on her veracity, and thus, propensity towards untruthfulness when it suits her.

Defense counsel's performance fell below an objective standard of reasonableness when he failed to acknowledge Barcena's self interest so the jury, the triers of fact, could effectively weigh her testimony against her proven propensity to be dishonest. It is reasonable to expect that a defense attorney would familiarize himself with the ways in which to attack witness credibility. It is painfully evident that defense counsel was unaware, or at worst, unconcerned with his responsibility to investigate and uncover bias and self interest of a testifying Witness.. It cannot be presumed that this was a choice resulting from defense counsel's trial strategy.

These errors prejudiced the outcome in Ms. Veloria's trial because Barcena's testimony was essential to the government, as they had no direct evidence of Ms. Veloria's connection to the drugs recovered from the unlocked house on Mauna Loa Street. Hawaii Police Department's testimony admitted that they entered an unlocked front door and found Ms. Veloria asleep on the floor in the living room, immediately upon entering the house.[376] There were no fingerprints found on the evidence introduced, nor did the Assistant United States Attorney produce testimony implicating Ms. Veloria from any one of the three others arrested at the Mauna Loa Street house that day.

In the absence of direct evidence, the jury was asked to consider circumstantial evidence linking Ms. Veloria to the cocaine base found in a bedroom of a house that was accessible by anyone walking through the unlocked front door. Barcena's testimony was not relevant to the July 10, 1996 search. Instead, she testified that she had purchased cocaine from Ms. Veloria "sometime in the summer of 1996."[377] This was not evidence linking Ms. Veloria to what the Hawaii Police Department seized from a bedroom on the morning of July 10, 1996, but simply

---

[376] TR 6/3/03, p. 220-221
[377] TR 6/5/03, p. 99

testimony given with the intention of misleading the jury. It would have taken minimal effort and experience for defense counsel to discredit Barcena, had he chosen to do so.

If government witness Barcena's propensity towards dishonesty had been revealed during trial, it cannot be said with certainty that the jury would have arrived at the same conclusion. Barcena's was the key testimony the government offered contributing to the jury making a finding that Ms. Veloria, rather than the three others arrested that day, was the individual in possession of the cocaine. The allowing of such an extremely dishonest witness, such as Barcena, to testify unchecked, undermined the fundamental fairness of Ms. Veloria's trial and the subsequent guilty verdict.

Exhibits 32 A, C, E, F, and G establish that Ms. Veloria made numerous attempts at this issue raised in her direct appeal. However, Counsel appointed to represent Ms. Veloria's interest ignored all correspondence and provided discovery, choosing to raise only the issues he saw fit, disregarding all of the defendant's requests in relation to her upcoming appeal. Ms. Veloria requests reversal.

<u>**CLAIM NUMBER 31**</u>

**MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS WERE VIOLATED WHEN PROSECUTION WITHHELD DURING TRIAL FACT THAT KEY GOVERNMENT WITNESS HAD TWO SEPARATE CHARGES FOR CRIMES OF DISHONESTY PENDING AGAINST HER, ONE OF WHICH OCCURRED JUST TWO WEEKS BEFORE MS. VELORIA'S TRIAL THERBY VIOLATING HER RIGHT TO CONFRONTATION**

On the day of Government witness Barcena's testimony (6/5/03), the prosecution handed the defense counsel a copy of Barcena's rap sheet.[378] This sheet did not include information

---

[378] Similar to Exhibit 23, except that the most recent three convictions were not listed, as Exhibit 23 was printed more than ten months after Ms. Veloria's trial.

- 153 -

regarding Barcena's arrest on 12/21/02 for THEFT 3 or her 5/18/03 arrest for SHOPLIFTING, nor did the Government inform the defense that Barcena had these cases pending against her.

The fact that, at the time of her testimony, Barcena was continuing with a pattern of law-breaking behavior[379] should have been disclosed to the defense. The withholding of this relevant information by the prosecution violates *Brady*. Additionally, Barcena was being held "in custody" during the time of her testimony; the prosecution failed to mention this to the defense as well.

Barcena was on probation at the time of her testimony against Ms. Veloria and had been in violation of the terms and conditions of said probation since 2002. The fact that Barcena was arrested and charged with shoplifting a mere two weeks before her testimony and was being held on those charges, or as a material witness, could tend to show bias or self-interest in relation to the testimony she gave against Ms. Veloria.

At the time of Ms. Veloria's trial, the defense could have argued that Barcena's recent arrests and incarceration coupled with her past history of chronic drug use would motivate her to give testimony in hope of gaining favor from the authorities and quick release.[380]

It was a violation of Ms. Veloria's constitutional right to effective assistance of counsel when defense counsel failed to impeach Ann Barcena with the above mentioned circumstances. Exposure of testimony under these conditions have shed light on Barcena's well established pattern of dishonesty as they all reflect on her veracity, and thus, propensity towards untruthfulness when it suits her.

---

[379] At the time of her testimony, Barcena had been convicted of the following:  Shoplifting, Unauthorized Entry Into a Motor Vehicle, Burglary 1, two Theft 2, Criminal Trespass, two DANC Violations, Forgery 2, Theft 3, and Revoked Probation on three separate cases.

[380] Quick release giving her access to the very thing she lives for, as evidenced by her history:  drugs.

Defense counsel's performance fell below an objective standard of reasonableness when he failed to acknowledge Barcena's self interest so the jury, the triers of fact, could effectively weigh her testimony against her proven propensity to be dishonest. It is reasonable to expect that a defense attorney would familiarize himself with the ways in which to attack witness credibility. It is painfully evident that defense counsel was unaware, or at worst, unconcerned with his responsibility to investigate and uncover bias and self interest of a testifying witness. It cannot be presumed that this was a choice resulting from defense counsel's trial strategy.

These errors prejudiced the outcome in Ms. Veloria's trial because Barcena's testimony was essential to the government, as they had no direct evidence of Ms. Veloria's connection to the drugs recovered from the unlocked house on Mauna Loa Street. Hawaii Police Department's testimony admitted that they entered an unlocked front door and found Ms. Veloria asleep on the floor in the living room, immediately upon entering the house.[381] There were no fingerprints found on the evidence introduced, nor did the Assistant United States Attorney produce testimony implicating Ms. Veloria from any one of the three others arrested at the Mauna Loa Street house that day.

In the absence of direct evidence, the jury was asked to consider circumstantial evidence linking Ms. Veloria to the cocaine base found in a bedroom of a house that was accessible by anyone walking through the unlocked front door. Barcena's testimony was not relevant to the July 10, 1996 search. Instead, she testified that she had purchased cocaine from Ms. Veloria "sometime in the summer of 1996."[382] This was not evidence linking Ms. Veloria to what the Hawaii Police Department seized from a bedroom on the morning of July 10, 1996, but simply

---

[381] TR 6/3/03, p. 220-221
[382] TR 6/5/03, p. 99

- 155 -

testimony given with the intention of misleading the jury. It would have taken minimal effort and experience for defense counsel to discredit Barcena, had he chosen to do so.

If government witness Barcena's propensity towards dishonesty had been revealed during trial, it cannot be said with certainty that the jury would have arrived at the same conclusion. Barcena's was the key testimony the government offered contributing to the jury making a finding that Ms. Veloria, rather than the three others arrested that day, was the individual in possession of the cocaine. The allowing of such an extremely dishonest witness, such as Barcena, to testify unchecked, undermined the fundamental fairness of Ms. Veloria's trial and the subsequent guilty verdict.

In *United States v. Abel*, The Supreme Court ruled that proof of bias is often relevant because "the jury, as finder of fact and weigher of credibility, has historically been able to assess all evidence which may bear on the accuracy and truth of a witness' testimony."[383] Further, the trial court has wide discretion regarding admissibility of bias during cross-examination. Therefore, had the prosecution disclosed the circumstances by which they were able to secure Barcena's testimony,[384] defense counsel could have placed this issue squarely before the Court for its review and ruling.

Ms. Veloria requests reversal.

---

[383] 469 U.S. 45 at 52
[384] Her arrest on 5/18/03 for shoplifting

## CLAIM NUMBER 32

## MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW WAS VIOLATED WHEN GOVERNMENT FAILED TO DISCLOSE FACT THAT THEIR WITNESS HAD A KNOWN MENTAL ILLNESS THEREBY VIOLATING MS. VELORIA'S RIGHT TO CONFRONTATION

Documents filed in the Third Circuit Court for the State of Hawaii in Barcena's criminal cases reflect the fact that she has a history of mental illness.[385] This illness was not disclosed to the defense prior to or during trial. The defense was not aware of Barcena's history with respect to her mental illness during Ms. Veloria's trial.

The Hilo Police Station has, on many occasions, documented Barcena's condition; records indicate she has been on suicide watch while being detained there. Barcena's probation officer, Ruth Mizuba, was aware of Barcena's behaviors and medication associated with her mental illness. Furthermore, Barcena's attorney (who negotiated Barcena's grand jury testimony and subsequent deals) initialed the "mental illness" on the guilty plea for Barcena (See Exhibit 26).

In addition to documents filed in the Third Circuit Court establishing Barcena's mental illness, testimony is found within the transcripts of proceedings in state court indicating that Barcena "shopped medical professionals in order to find one who would give her what she wanted."[386]

The criminal case against Ms. Veloria was built up by the officers operating out of the Hilo Police Station. Ms. Veloria, at one time, faced the same charges in the same courtroom Barcena was sentenced and re-sentenced in.

The Sixth Amendment's Confrontation Clause provides a criminal defendant the right to cross-examine adverse witnesses. By guaranteeing these rights, the Confrontation Clause serves

---

[385] These documents have been obtained on behalf of Ms. Veloria
[386] *State of Hawaii v. Barcena*, TR 4/11/00, p. 4, l. 19

to "ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing" in an adversarial proceeding.[387] The Government denied Ms. Veloria the ability to cross-examine Barcena regarding a known mental illness. Ms. Veloria's due process rights were violated on account of the Government's failure to disclose crucial information about their key witness.[388]

It was a violation of Ms. Veloria's constitutional right to effective assistance of counsel when defense counsel failed to impeach Ann Barcena with the above mentioned circumstances. Exposure of testimony under these conditions have shed light on Barcena's well established pattern of dishonesty as they all reflect on her veracity, and thus, propensity towards untruthfulness when it suits her.

Defense counsel's performance fell below an objective standard of reasonableness when he failed to acknowledge Barcena's self interest so the jury, the triers of fact, could effectively weigh her testimony against her proven propensity to be dishonest. It is reasonable to expect that a defense attorney would familiarize himself with the ways in which to attack witness credibility. It is painfully evident that defense counsel was unaware, or at worst, unconcerned with his responsibility to investigate and uncover bias and self interest of a testifying Witness.. It cannot be presumed that this was a choice resulting from defense counsel's trial strategy.

These errors prejudiced the outcome in Ms. Veloria's trial because Barcena's testimony was essential to the government, as they had no direct evidence of Ms. Veloria's connection to the drugs recovered from the unlocked house on Mauna Loa Street. Hawaii Police Department's testimony admitted that they entered an unlocked front door and found Ms. Veloria asleep on the

---

[387] *Maryland v. Craig*, 497 U.S. 836, 845 (1990)
[388] *Benn v. Lambert*, 283 F. 3d 1040, 1054-1060 (9th Cir., 2002)

floor in the living room, immediately upon entering the house.[389]  There were no fingerprints found on the evidence introduced, nor did the Assistant United States Attorney produce testimony implicating Ms. Veloria from any one of the three others arrested at the Mauna Loa Street house that day.

In the absence of direct evidence, the jury was asked to consider circumstantial evidence linking Ms. Veloria to the cocaine base found in a bedroom of a house that was accessible by anyone walking through the unlocked front door.  Barcena's testimony was not relevant to the July 10, 1996 search.  Instead, she testified that she had purchased cocaine from Ms. Veloria "sometime in the summer of 1996."[390]  This was not evidence linking Ms. Veloria to what the Hawaii Police Department seized from a bedroom on the morning of July 10, 1996, but simply testimony given with the intention of misleading the jury.  It would have taken minimal effort and experience for defense counsel to discredit Barcena, had he chosen to do so.

If government witness Barcena's propensity towards dishonesty had been revealed during trial, it cannot be said with certainty that the jury would have arrived at the same conclusion. Barcena's was the key testimony the government offered contributing to the jury making a finding that Ms. Veloria, rather than the three others arrested that day, was the individual in possession of the cocaine.  The allowing of such an extremely dishonest witness, such as Barcena, to testify unchecked, undermined the fundamental fairness of Ms. Veloria's trial and the subsequent guilty verdict.

If Barcena's significant history of mental illness had been disclosed to the jury, her testimony may have been viewed skeptically, and the jury may have arrived at a different

---

[389] TR 6/3/03, p. 220-221
[390] TR 6/5/03, p. 99

- 159 -

verdict. The Supreme Court ruled in *Giles v. Maryland* [391] that prosecutorial suppression of evidence relevant to credibility, including prior history of medical illness, violates *Brady*.

Ms. Veloria requests reversal.

## CLAIM NUMBER 33

**MS. VELORIA'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW, FUNDAMENTAL FAIRNESS, CONFRONTATION AND EFFECTIVE ASSISTANCE OF COUNSEL WERE VIOLATED BY THE OBJECTIVELY UNREASONABLE PERFORMANCE OF TRIAL COUNSEL**

Counsel for Ms. Veloria failed to take the appropriate actions that would have allowed her to present a defense. Actions should have been taken to allow for the introduction of the rent receipt, the 1984 Ford Ranger that was seized from Ms. Veloria and the jewelry contained within the truck. The truck could have been used to demonstrate that 1) the canine "Malia" would not have been able to "bite and scratch" the door panel as the stature of the dog and extreme height of the vehicle would not allow for it; and 2) The absence of bite and scratch marks on the door panel of the vehicle would have demonstrated to the jury that the "dog alert" was fabricated to justify the unconstitutional seizure.

Additionally, counsel should have inspected and introduced the seized jewelry to determine whether the government's key witness could identify or describe any of Ms. Veloria's jewelry as any which she reportedly traded for cocaine.

In flagrant violation of Ms. Veloria's constitutional right to confront the witnesses against her, trial counsel failed to object when B. Boles testified that food stamps found at 69 Mauna Loa Street on 7/10/96 belonged to Ms. Veloria. [392] There was absolutely no evidence to support this statement and counsel's failure to make a clear objection and confront this officer with his many speculative contentions was an error that prejudiced the outcome in Ms. Veloria's case.

---

[391] 386 U. S. 66 (1967)
[392] Tr. 6/5/03, P. 84, L. 14

Also unsettling was the testimony of a State of Hawaii criminalist who reported "on the job training".[393]  Mr. Koge testified on direct examination that he was able to retrieve identifiable fingerprints.  Only "a very small percentage of the time".[394]  This testimony is particularly questionable in light of the surfaces of the items reportedly seized on 7/10/96.  Police reports and the evidence log both indicate that several plastic baggies were seized (see exhibit 1 and 2).  Students in Criminal Investigation 101 classes can retrieve latent prints off of smooth surfaces such as those items seized (plastic baby wipe container, plastic digital scale and plastic baggies) as they have an even surface that usually retains prints upon contact.  Criminalist Koge's testimony about the frequent inability to lift prints should not have gone unchallenged.

Additionally, Criminalist Koge testified that he believed he checked "all exhibits for latents" but does not "specifically"[395] remember if he did or not.  Failing to check all seized items for lateens prevented Ms. Veloria from being able to demonstrate to the jury the absence of her prints and/or provide proof of the possibility that someone other than Ms. Veloria had left prints on the seized items.

To make matters even worse, with regard to Ms. Veloria's defense of the charges stemming from the search on the house, trial counsel actually posed the following question to a testifying witness.:

"[R]egarding the search that was done one July 10th 1996, at Alicia Veloria's, I guess, place of residence..."

Counsel's Statement was not advanced based on anything Ms. Veloria had informed him of.  In fact, Ms. Veloria consistently informed all of her defense attorneys that 69 Mauna Loa

---

[393] Tr. 6/5/03, P. 137 L.2, Testimony of Brian Koge
[394] Ibid. L.15
[395] Tr. 6/5/03, p. 146 L.18

Street was not her residence, she was not listed anywhere on the rental agreement and had no more of a connection to the house than the three others arrested there that day.

This statement was highly prejudicial to Ms. Veloria's defense. If the jury believed defense counsel's statement that 60 Mauna Loa Street was Ms. Veloria's residence, then their obvious verdict would have been to vote guilty on that count. Counsel's Statement by its very essence, stipulated that the dwelling the cocaine was found in was "Alicia Veloria's place or residence." No other testimony came in regarding the house being any other's residence, therefore this single error could have, by itself, affected the verdict.

The length of deliberations, the eight jury communications, and the note from the jurors indicating they were deadlocked all demonstrate that the verdict convicting Ms. Veloria was not easily reached. But for counsel's unprofessional errors, the jury would have acquitted

Ms. Veloria is not the party responsible for the failure to raise this issue on direct appeal, as she prepared a pro se appeal brief (See Exhibit 35) containing this very issue therein.[396] Ms. Veloria asserts that during the preparation of her appeal, she repeatedly insisted, both verbally and in writing, that her court appointed appellate attorney preserve all of her appellant issues that are contained within her pro se brief.[397] Furthermore, Ms. Veloria's instance of specific issues being raised on direct appeal is documented in attorney Samuel P. King, Jr.'s motion to withdraw as counsel on appeal filed in the Ninth Circuit Court of Appeals,[398] as well as Ms. Veloria's pro se response to said motion (See Exhibit 33).[399]

In *Ratliff v. United States*,[400] cause was shown for purposes of a motion under

---

[396] See Exhibit 35, Veloria pro se appeal brief. p. 64
[397] Ms. Veloria mailed a copy of her pro se opening brief on 12/27/04 to appellate counsel. This brief was comprehensive and in compliance with court rules. Appellate counsel also received a copy of said brief on disk well in advance of Ms. Veloria's opening brief deadline of 2/23/2005.
[398] 03-10626 *USA v. Veloria*, filed 10/8/04
[399] 03-10626 *USA v. Veloria*, filed 10/15/04
[400] *Ratliff v. US* , 999 f2D 1023, 1026 (6TH Cir. 1993)

28 U.S.C. ' 2255 because counsel rebuffed petitioner's request to raise issue on direct appeal.

Also, it should be noted that in October of 2004, Ms. Veloria was served with an order from a

Ninth Circuit Court of Appeals Appellate Commissioner bearing the words "Appellant is advised

that counsel is vested with the authority to decide which issues should be raised on appeal."[401]

As such, Ms. Veloria should not be held accountable for her counsel's failure to raise the issues

contained within written communications to counsel, as well as those within her pro se appeal

brief.

Ms. Veloria requests reversal.

<u>CLAIM NUMBER 34</u>

**IT WAS A VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT
CONSTITUTIONAL RIGHT TO A TRIAL BY AN IMPARTIAL JURY WHEN A
DOCUMENTED ALLEGATION OF JUROR MISCONDUCT WAS NOT
THOROUGHLY INVESTIGATED**

**A juror, who threatened another juror during deliberations, was not interviewed to
determine whether his impartiality had been affected, or whether his conduct was in
violation of 18 U.S.C. § 245 (b)(1)(D).**

During the fourth day of jury deliberations, on June 13, 2003, one of the jurors, Mr.

Kuramoto, juror number 10, reported to security that, as the District Judge summarized, "[H]e

didn't mind the heated arguments that were going on about the deliberation issues, what he

minded were having PHYSICAL THREATS made against him by Mr. Paulino, who is juror

number…4."[402]    Defense counsel waived Defendant's presence[403], in spite of the fact that both

counsel and the Court had been very sensitive to Defendant's desire to be present for all trial

matters.[404]  The Court proposed talking to Mr. Kuramoto to see if there was a problem, and

---

[401] 03-10626 *USA v. Veloria*, filed 10/18/04
[402] TR 6/13/03.
[403] Id.
[404] TR 6/3/03, pp. 22-24, 37, 43, 73, 81-82, 119-120, and 160; TR 6/4/03, pp. 59-60, 117, 121, and 143; TR 6/5/03, pp. 29-30, and 102-104 (judge advises Defendant that if she wants to participate in the bench conference, the jury

perhaps talk with Mr. Paulino if necessary or appropriate[405]. Defense counsel proposed that the

Court talk with Mr. Kuramoto in chambers, out of the presence of counsel initially, "but, if

there's something that's warranted that further actions needs to be taken, then it should be done

in our presence."[406] The Court proceeded as defense counsel suggested, and the US Attorney

concurred, and reported back to counsel that Mr. Paulino had made an "obscene gesture, which

caused him [Kuramoto] to respond with obscenities."[407] Specifically, Mr. Kuramoto told Mr.

Paulino, "Shut up, you big fat fuck, and shove it up your ass."[408] The Court then reported, "And

at that point Mr. Paulino got very angry, stood up, and said, 'Let's take it outside.' And the

foreperson said, 'I think we should take a break.' And that's when we got the note that said

'May we go home?' And so it's good that we said, 'Yes, you may go home.'"[409] The Court

said that Mr. Kuramoto did not feel too intimidated to deliberate and that what had happened

would not affect his deliberation, and that Mr. Kuramoto said, "[B]ut I really – I don't like being

threatened, and I'm not going to take it."[410] The Court then said:

> And I said, "Well, I could talk to Mr. Paulino, or do you think things have calmed
> down?" And he said that he thought they should just go in and resume deliberations and
> he would have the foreperson send out a note, if, in fact, he felt intimidated. But he – I
> asked him whether there had been some physical movement toward a fight, and he said –
> I guess they were both on their feet at that point, but, you know, I don't think anybody
> grabbed him or I don't' think fists were raised.
>     The court did not speak to the juror who allegedly did the threatening. Instead,
> she sent the jury back to deliberate and they returned a verdict that same day.
>     Title 18 U.S.C.§ 245 provides in pertinent part.
>         (b) Whoever, whether or not acting under color of law, by force or
>         threat of force willfully injures, intimidates or interferes with, or
>         attempts tinjury, intimidate or interfere with–

---

will be excused); TR 6/6/03, pp. 4 (presence of Defendant at settling of jury instructions), 69-70 (question of
Defendant regarding decision not to testify), and 73-80 (Defendant present during handling of problem with juror
number 12. Mr. Loeffler, who may have been sleeping during the trial and may have had alcohol on his breath)
[405] Id pp. 12-16.
[406] Id p. 17, and pp. 17-18.
[407] Id p. 19
[408] Id.
[409] Id.
[410] Id.

(1) Any person because he is or has been, or in order to intimidate such person or any other person or any class of persons from-
(D) Serving, or attending upon any court in connection with possible service, as a grand or petit juror in any court of the United States.

Therefore, in violation of 18 U.S.C.§ 345 (b)(1)(D), threats were made during deliberations of Ms. Veloria's trial, and the court failed to make an adequate inquiry of the impartiality of the other juror involved in the altercation. A juror, who as reported by another juror, was in violation of the above cites statute by making threats to a juror deliberating as to Ms. Veloria's guilt or innocence.

It was a violation of Ms. Veloria's Sixth Amendment Constitutional right to have a verdict by an impartial jury when the Court erred by failing to make even a cursory inquiry into whether Mr. Paulino could remain impartial after the altercation. Further, Court appointed defense counsel was ineffective in his representation of Ms. Veloria at the proceeding and subsequent litigation regarding this issue.

Ms. Veloria requests reversal.

## CLAIM NUMBER 35

### THE COURT FAILED TO PROTECT MS. VELORIA'S SIXTH AMENDMENT RIGHT TO A VERDICT BY AN IMPARTIAL JURY, THEREBY RESULTING IN A FUNDAMENTAL MISCARRIAGE OF JUSTICE

In regards to this jury misconduct issue, the Court initially articulated:

I have a different concern, and that is this: If we're so concerned that Mr. Kuramoto will be unwilling to consider…Mr. Paulino's point of view, we should, I suppose, have the same concern that Mr. Paulino is so angry or intimidated or what have you by Mr. Kuramoto that Mr. Paulino on his side isn't going to consider what Mr. Kuramoto is saying. And then I think that opens it up to inquiring into everybody's state of mind.[411]

Although the Court correctly raised this issue, it failed to follow through with its concern.

The Court erred in deciding not to inquire into Mr. Paulino's impartiality. According to the Ninth Circuit Jury Procedure Manual, 5.2 (c) communications with a deliberating jury: A

---

[411] TR 6/13/03

- 165 -

trial judge may examine each juror concerning the circumstances of alleged misconduct. This

should be done on the record and in the presence of counsel and the defendant.

It is clear from the transcript that the Court did not want her conversation with Mr.

Kuramoto placed on the record:

> Why does it have to be on the record? The juror's pretty, you know, had a pretty
> aggravating experience already. I mean, unless you think I'm going to not do what I tell
> you or misreport it, can't you take my word for it that I will tell him this? (TR.6-13-03,
> p.25)

Defense counsel's will was overborne and he simply replied, "That's fine, Your Honor.

That's okay." (Id p. 25).

In regards to the above mentioned remarks by the Court, Ms. Veloria unequivocally

makes claim, by and through this 28 USC § 2255 that she should not have to take anyone's

"word for it" when the issue at hand is directly intertwined with her life, liberty and

constitutional rights.

The record clearly reflects that 1) only the juror who reported having been threatened was

interviewed; 2) this interview was done off the record and outside the presence of counsel and

the defendant.[412]

Ms. Veloria further alleges that her court appointed trial counsel 1) did not inform her of

this incident;[413] 2) did not inform her of her right to be present during the proceedings; and 3)

therefore, waived her presence at the proceedings without her knowledge.[414]

Ms. Veloria further alleges that court appointed trial counsel was deficient in his

representation at this hearing, failing to advocate for what would be in the best interest of Ms.

---

[412] TR 6/13/03, p. 12-18.
[413] Although Ms. Veloria on several occasions, in the presence of Rhonda Marcy, made clear to defense counsel her desire to be informed of and involved in all aspects of her trial, defense counsel was also informed that Ms. Veloria would be in or around the Prince Kuhio Federal Building with her cell phone for the explicit purpose of being present in the event her case was called.
[414] TR 6/13/03, p. 12.

Veloria.[415]  This deficient performance prejudiced Ms. Veloria because a potentially biased juror

was left to continue deliberations.  The Court could have eliminated this concern by examining

Mr. Paulino, a decision which would have upheld the integrity of the verdict in light of the

reported jury misconduct.

It cannot be said with any degree of certainty that Ms. Veloria's jury was free from

potential bias as a result of this issue.  The Court effectively prevented anyone from reviewing

the alleged misconduct, as the proceedings were in chambers, off the record, and outside the

presence of Ms. Veloria and her counsel.  Although it can be argued that even if defense counsel

had been present, he would likely have been agreeable to anything the Court suggested.  This

cannot, however, negate the Court's responsibility to the integrity of the verdict.  It was plain

error to allow the continuation of deliberations without inquiring into Mr. Paulino's impartiality.

Ms. Veloria was prejudiced by this because a previously deadlocked jury [416] returned with a

verdict that same day. [417]  The fact that a verdict was returned that day lends credibility to the

possibility that some unfair prejudice was injected in deliberations.

Ms. Veloria requests reversal.

---

[415] The insistence of all proceedings on record, in the presence of counsel and Ms. Veloria; inquiring into whether Mr. Paulino's impartiality had been affected.
[416] Jury communication #3, filed on 6/10/03.
[417] According to the transcript, the Court recessed at 9:45 a.m. to once again speak with Mr. Kuramoto, off the record, outside of counsel and Ms. Veloria's presence, to tell him, "Please go back and continue deliberations.  Do not disclose to the other jurors that you had a private discussion with me..." (TR 6/13/03 p. 25).  Ms. Veloria was informed her jury had reached a verdict at 2:00 p.m. on 6/13/03.

## CLAIM NUMBER 36

## MS. VELORIA'S SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED WHEN DEFENSE COUNSEL WAS INEFFECTIVE IN PURSUING JUROR MISCONDUCT ISSUE AS IT WOULD REQUIRE HIM TO ACKNOWLEDGE HIS ERRORS AS COUNSEL

Ms. Veloria further asserts that when she learned of the juror misconduct issue,[418] she immediately insisted that court appointed defense counsel move the Court to declare a mistrial, on account of the evidence of Juror misconduct during deliberations. However, because of military duty[419] and other unknown reasons, court appointed defense counsel did not file a motion for a new trial as Ms. Veloria urged him[420] until 8/18/03, well over two months later, and only after he attempted to withdraw as counsel.[421] At the subsequent withdrawal hearing on 8/14/03 the Court admonished defense counsel for not having filed the motion for new trial and instructed him to do so immediately.

Ultimately, the motion that was filed on Ms. Veloria's behalf proved to be untimely, weak and unsupportive. Court appointed defense counsel refused to raise the argument Ms. Veloria instructed him to raise because it would require him to admit to the Court that he 1) waived Ms. Veloria's presence without her knowledge; 2) acknowledge that it would have been in Ms. Veloria's best interest to have all proceedings placed on the record; and 3) was negligent in his representation of Ms. Veloria when he failed to recognize the importance of interviewing the juror who did the threatening during deliberations in Ms. Veloria's case.

---

[418] Ms. Veloria learned of the juror misconduct issue when a friend in Alaska accessed her docket sheet on Web Pacer and informed her of the various entries, including the eight jury communications.
[419] See Motion to Extend Time to File Motion for New Trial filed 7/9/03 (Dkt. #150).
[420] While at the F.D.C. Honolulu, Ms. Veloria mailed defense counsel several letters with case law supporting this request.
[421] Motion to Withdraw filed 8/11/03.

Ms. Veloria further asserts that upon an evidentiary hearing, previous defense attorneys having represented her in this case will confirm that Ms. Veloria always expressed her desire to be informed of and involved in all proceedings, even though it was often evident that it was "not normal" and often unwelcome. [422]

Additionally, according to the Code of Professional Responsibility:

A lawyer should not withdraw without considering carefully and endeavoring to minimize the possible adverse effect on the rights of the client and the possibility of prejudice to the client as a result of the withdrawal.

Even when withdrawal is justifiable a lawyer should protect the welfare of the client by giving due notice of the withdrawal... and otherwise endeavoring to minimize the possibility of harm. (Ethical Consideration 2-32)

The record demonstrates defense counsel's unreasonable and unprofessional conduct during and after Ms. Veloria's trial. This issue should have been handles correctly during deliberations, and most certainly in a post verdict as Ms. Veloria pleaded for. Instead, she was brought before the court 70 days after the verdict, for an unexpected withdrawal.

Ms. Veloria requests reversal.

## CLAIM NUMBER 37

### MS. VELORIA'S SIXTH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL AND TO AN IMPARTIAL JURY WERE VIOLATED WHEN COUNSEL FAILED TO REQUEST AN ALLEN CHARGE WHEN MS. VELORIA'S JURY INDICATED THEY WERE DEADLOCKED THREE DAYS BEFORE CONVICTING MS. VELORIA.

On June 10, 2003, after two days of deliberations, Ms. Veloria's jury sent out Jury Communication Number Three bearing the words "If we have come to a conclusion that is not unanimous - All jurors have voted on all counts. Do you want us to continue deliberating?" The Court's response was, "Yes, please continue deliberating." (See Dkt #134)

However, as seen on page five of Ms. Veloria's Jury Communications and Verdict transcript, the Court fails to put on record the entire contents of the third note from the jury. The

---

[422] (TR 6/5/03, p. 103) Court dismissed jury to hold bench conference such that Ms. Veloria could participate.

Court conveniently left out the most critical part of the note and simply stated on the record, "We have a note from the jury which ends with the question, quote, Do you want us to continue deliberating, closed quote. And I propose to respond by saying, 'Yes, please continue deliberating".

Ms. Veloria's presence was waived, without her knowledge and in her absence, trial counsel failed to object to this proposal. Further, trial counsel was ineffective re mostly unanswered - on account of trial counsel's failure to present any evidence on behalf of Ms. Veloria, and the heated argument just prior to the verdict, all demonstrate the difficulty the jury was having in reaching a decision on Ms. Veloria's guilt or innocence. A neutral form of the Allen charge, based upon the Ninth Circuit Model Criminal Jury Instruction 7.7, should have been given to Ms. Veloria's jury.

Decisions coming out of the varying circuits reinforce the practice of administering an Allen charge once a jury indicates an inability to come to a unanimous verdict. Additionally, the length of deliberations, the abundance of communications from the jury and the contents of those communications all establish that an Allen charge would have been beneficial to Ms. Veloria's jury. In *Smalls v. Batista*, 191 F.3d 272 (2ndCir. 1999), the Court found that an Allen charge properly contained the following language: "at all times[,]...the Government has the burden of proof beyond a reasonable doubt in Ms. Veloria's case. (See exhibits 32 A-H, 33, 34 and 35). The decision of the Court, which does not even consider an Allen charge, should be weighed and scrutinized against the rights provided to a criminal defendant by the Sixth Amendment. Furthermore, defense counsel was ineffective for waiving Ms. Veloria's presence, without her knowledge, and then failing to adequately address this issue in light of prevailing norms. Ms. Veloria request reversal of her conviction.

## CLAIM NUMBER 38

### MS. VELORIA'S PRESENCE WAS WAIVED WITHOUT HER KNOWLEDGE IN VIOLATION OF HER SIXTH AMENDMENT RIGHT TO BE PRESENT AT ALL PROCEEDINGS

The Constitution guarantees the right of every person accused of a crime to be present at every stage of the trial, at least where the defendant's presence "bears, or may fairly be assumed to bear a relation, reasonably substantial, to his opportunity to defend." Snyder v. Massachusetts, 291 U.S. 97, 106(1934). This right is grounded in both the Sixth Amendment right to confrontation and the Fifth Amendment right to due process.

Ms. Veloria had a constitutional right, to be present at all critical stages of trial. An allegation of juror misconduct is a critical stage and does not deal with a question of law. Additionally, it is well established that communication between the judge and jury is to be in the presence of the defendant and counsel

It was a violation of Ms. Veloria's constitutional rights when her court appointed trial counsel waived her presence, without her knowledge. Ms. Veloria made clear to her trial counsel that she wished to be involved in all proceedings directly related to her trial upon arrival in Honolulu on May 28, 2003. Paralegal Rhonda Marcy was present with Ms. Veloria and defense counsel when the jury retired to deliberate, at which time Ms. Veloria unequivocally expressed her desire to be present at all times when her case was called.

Not once during deliberations did trial counsel call Ms. Veloria to inform her of, or allow her involvement with, any of the eight jury communications, the threatened juror issue, or her right to be present at these proceedings.

Throughout the four days of deliberations, Ms. Veloria and friend, Basilio Cruz, waited outside the Prince Kuhio Federal Building so Ms. Veloria could be present in the event her case was called or a verdict was reached. (See exhibit 24) It would have taken minimal effort for defense counsel to contact Ms. Veloria on her cellular phone, as she sat minutes from the courtroom, thereby affording her the opportunity to be present. (see exhibit 24)

A.B.A. Standard for Criminal Justice 15-3.7 (b) States that "the trial judge…should not communicate with a juror on any aspect of the case itself (as distinguished from matters relating to physical comforts and the like), except after notice to all parties and reasonable opportunity for them to present." [423]

Ms. Veloria asserts by and through this 18 U.S.C.§ 2255 that had she been afforded the opportunity to participate in the jury misconduct discussion, she would have insisted, by due exercise of her constitutional rights, on the following:  1) That all proceedings relating to her trial be preserved on the record; 2) that the Court interview Mr. Paulino to determine whether his impartiality had been affected; and 3) that the Court conduct individual interviews of all jurors to uncover whether any one juror's impartiality had been affected as a result of the misconduct.

It is a fundamental practice that all proceedings in the trial of a criminal case shall be open and public and shall be conducted in the presence of defendant and counsel.  The same is true with respect to any communication between the judge and jury after the case is submitted and the jury has begun deliberations

In the Court's ORDER DENYING DEFENDANT VELORIA'S MOTION FOR NEW TRIAL AS TO COUNT 1, it states, in part:  "Because Veloria agreed during trial on the manner

---

[423] Standards for Criminal Justice Section. 15-3.7 (1986)

in which to address the alleged argument between two jurors, her present motion is denied without a hearing."[424]

The memorandum of Ninth Circuit Court of Appeals affirming Ms. Veloria's conviction filed on 12/07/05 states in part: "Veloria's juror misconduct issue is foreclosed by her attorney's express consent to the district court's handling of the situation."[425]

Ms. Veloria herein makes her objection to the actions of her court appointed counsel and makes clear for this review that she WAS NOT INFORMED of this incident, and therefore, could not have "agreed" to its handling, nor should she be deprived of her Sixth Amendment right to be tried by an impartial jury because her court appointed counsel was ineffective and gave his "express consent" for the Court to handle the situation in this improper manner.

It was clearly error in this case for the trial court to communicate with the jury without notice to and outside the presence of defendant, especially in light of the communication three days earlier indication they were deadlocked.[426]  The Supreme Court has ruled in Rogers v United States[427] that in determining whether this was harmless error the court may consider the nature or substance of the communication in addition to the fact that it was ex-parte;  In Ms. Veloria's case, the substance of the ex parte communications are particularly troubling.

This jury misconduct issue involves a fundamental defect which resulted in a complete miscarriage of justice,[428] and therefore, Ms. Veloria's conviction should be vacated.indicating they were deadlocked.[429]

Ms. Veloria requests reversal.

---

[424] Dkt. 162 9/9/03 p. 1
[425] *U.S. v. Veloria* No. 03-10626, p. 2.
[426] DKT. 133 Note from Jury #3, filed 6/10/03
[427] 422 U.S. 35, at 40
[428] *Davis v. United States,* 417 US 333, 346 (1974).
[429] Dkt. 133 Note from Jury #3

<u>CLAIM 39</u>

**THE COURT CONTRIBUTED TO THE DENIAL OF MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW BY CONSISTENTLY FAILING TO CONSTRUE CIRCUMSTANCES IN LIGHT MOST FAVORABLE TO DEFENDANT AS WELL AS INTENTIONALLY GIVING INACCURATE SPELLING AND CITATIONS FOR CASES THAT WOULD HAVE ASSISTED THE DEFENSE DURING TRIAL AND ON APPEAL**

On 6/5/03, during Ms. Veloria's trial, in discussions regarding Ms. Veloria's unknowing waiver, The Court referred to two district court cases on account of their seemingly analogous circumstances with those in Ms. Veloria's case. From the bench, The Court spelled out letter – by-letter the names of the defendants in both cases, and gave each respective citation:

> "...*U,S. v. Laursen*, L-A-U-R-S-E-N, which I only have a Westlaw Case, Westlaw 1693537. This is a 2000 case in the Southern District of New York. I also have *United States v. Fronk*, F-R-O-N-K, at 137 FRD 159. This is a Western District of New York '97 case"[430]

The Court then stated "And both of these are pretty similar in terms of facts…" And then "So, it's very similar to the situation that we have here."[431] Although the Court acknowledged the similarities between the facts in these cases and those in Ms. Veloria's, she declined to conform her ruling with the posture of the other district judges.

After that day, 6/5/04, Ms. Veloria attempted to obtain copies of the above mentioned cases, in order to further understand the legal arguments being advanced in her criminal trial on

---

[430] TR. 6/5/03, P. 6 L. 1-7
[431] TR. 6/5/03, P. 6, L. 7-8, 13-14

this issue. However, all attempts to locate these cases were unsuccessful because both the spelling and the citation numbers were incorrect.[432]

Over the last four-and-a-half years, Ms. Veloria has sought information regarding these cases. Without discovering an explanation as to why they were illusive, until she herself filed a motion to the District Court requesting the production of said case law.[433] The Court then responded with the correct spelling and citations for the cases cited on 6/5/03, P. 6.

The citations were incorrect in five separate areas. First, The Court misspelled "Laursen", which in actuality is spelled "Lauersen." The citation for the Lauersen case was given as "2000 Westlaw 3537", when in actuality it is "2000 Westlaw 3538". The Court gave the Fronk citation as "137FRD 159", when actuality it is "**173 FRD 59**" . There are five differences between the citations given and those of the actual cases. It would be highly unusual for five errors to have been given mistakenly.

These flagrant errors caused obvious problems for Ms. Veloria as she spent hours searching internet databases on the evening of 6/5/03 in an attempt to educate herself to assist her Court Appointed attorney in handling this issue. With respect to legal terminology and correctness; a District Judge is undoubtedly held to a higher standard than attorneys arguing before them. A criminal defendant should be able to rely on a judge quoting cases to be correct.

Even after Ms. Veloria's conviction and immediate incarceration, she continued searching for these cases in hopes of raising her unknowing waiver issue on direct appeal. In addition to requesting help from friends and family members, Ms. Veloria wrote to several "prisoner-self-help" agencies attempting to gain access to these district court opinions. The correct citations were illusive for an incarcerated defendant and Ms. Veloria's direct appeal was

---

[432] During Ms. Veloria'a trial, when The Court cited the cases, Defense Counsel Mr. Ling, Ms. Veloria and paralegal Ms. Marcy all wrote down the same spelling and citation that are reported on page six of the transcript of 6/5/03
[433] Veloria pro se motion, filed 7/26/07

submitted without the inclusion of an unknowing waiver argument, of which Ms. Veloria was certainly entitled to.

In preparation for the writing of an argument in her 2255, as a last resort, Ms. Veloria submitted a motion to her trial court requesting copies of the above mentioned opinions. [434] After endless searches coming up empty, Ms. Veloria finally received the much needed opinion from the Court, [435] only to learn that the difficulty in locating them was due to the existence of five errors in the spelling and citation of the cases.

Ms. Veloria was prejudiced by this error during trial, post-trial and on direct appeal. Ms. Veloria was unable to raise this issue previously because she was unaware of the reason or the inability to locate the cases (See Defendant's Motion for Production of Additional Legal Documents filed on 7/26/07).

Ms. Veloria's conviction was issued after having been denied specific constitutional rights. The Court contributed to Ms. Veloria's inability to defend herself with case law at a time when Ms. Veloria's court appointed defense counsel was ineffective because he, himself, would not conduct any research to assist Ms. Veloria with this issue during trial.

Ms. Veloria requests reversal of her conviction.

### CLAIM NUMBER 40

### MS. VELORIA'S CONSTITUTIONAL RIGHTS WERE VIOLATED BY THE IMPOSITION OF A SENTENCE BASED ON CONDUCT NOT FOUND BY HER JURY

The record reflects that on 4/13/00 Ms. Veloria was indicted by a grand jury for the following charge on Count 1:

---

[434] Veloria pro se motion for Production of Additional Legal Documents
[435] Order granting Veloria's pro se motion, filed 7/26/07

On or about July 10, 1996, in the District of Hawaii, ALICIA VELORIA, did knowingly and intentionally possess with intent to distribute in excess of 5 grams of cocaine base, a Schedule II controlled substance[436]

All in violation of Title 21, United States Code, Section 841 (a) (1)

The record reflects that on 6/13/03, the jury made the following finding as to Count 1:

(1) We, the jury, find the defendant, ALICIA VELORIA; GUILTY

(2) Did the government prove beyond a reasonable doubt that the amount of

Cocaine base involved in Count 1 was at least 5 grams?  YES[437]

The United States Sentencing Guidelines hold that a conviction of "at least 5 grams but less than 20 grams of Cocaine base" will place a defendant at an offense level of 26.  Since the only finding the jury made as to the amount of cocaine base involved was "at least 5 grams", Ms. Veloria's sentence should have been imposed accordingly.

The Fifth Amendment of the United States Constitution provides in pertinent part:

No person shall be held to answer for a capital offense or other infamous crime unless on a presentment or indictment of a grand jury...nor be deprived of life, liberty or property without due process of law...

The Sixth Amendment to the United States Constitution provides in pertinent part:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed...and to be informed of the nature and cause of the accusation...and to have the assistance of counsel.

Count 1 of Ms. Veloria's indictment charged her with possession with intent to distribute in excess of 5 grams of cocaine base.  On 6/13/03, the jury made a finding that the government proved beyond a reasonable doubt that the amount of cocaine base involved in Count 1 was "at least 5 grams".

---

[436] DKT #1, Secret indictment
[437] DKT #144, Special VERDICT form

Therefore, based on the rights given to Ms. Veloria by the United States Constitution coupled with the finding of her jury, the applicable sentencing range should have been found at the level triggered by and amount just above 5 grams.

An offense level of 26, in criminal history category I, allows a sentence between the range of 63-78 months. Ms. Veloria was given 97 months, a sentence, far greater than that which should have been given. This 97 month sentence is in violation of Ms. Veloria's Constitutional rights under the Fifth and Sixth Amendments.

At Ms. Veloria's first sentencing hearing on 11/3/03, Counsel objected to the increase sentence based on constitutional protections. Upon remand by the Ninth Circuit Court of Appeals, Ms. Veloria was re-sentenced on 4/10/2006, and given the same 97 month sentence. Counsel for Ms. Veloria again objected to the increased sentence and argued applicable case law.

The record clearly establishes that the grand jury charged Ms. Veloria with possession with intent to distribute in excess of 5 grams, thereby placing her liberty in the balance for that specific charge. Years later, Ms. Veloria's jury found her guilty of possession with intent to distribute at least 5 grams of cocaine base.

The Eight Amendment to the United States Constitution prohibits cruel and unusual punishment. Extending Ms. Veloria's sentence by way of considering conduct not found by the jury is cruel and unusual. The jury, as the tricks of fact, guaranteed by our constitution, are vested with the responsibility of finding guilt. Ms. Veloria was found to be guilty of possession with intent to distribute 5 grams of cocaine base. Her sentence should reflect that finding, and only that finding.

The United States Constitution requires this court to observe specific rights when placing an individual's liberty at risk. Based on the United States Constitution and the sentencing range

provided by the United States Sentencing Guidelines, the decision of the jury should have

resulted in the deprivation of Ms. Veloria's liberty for a term between the range of 63-78 months.

Ms. Veloria requests that the illegal portion of her sentence be stricken.

## CLAIM NUMBER 41

## MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FIFTH AND SIXTH AMENDMENT WERE VIOLATED BY THE COURT'S PARTICIPATION IN PLEA PROCEDURES IN HER CASE

Rule 11(h) states that "any variance from the procedures required by this rule which does

not affect substantial rights shall be disregarded."[438]

Ms. Veloria's substantial rights were affected by the court's participation when Judge

Kurren told Ms. Veloria to co-operate with the government.  This induced Ms. Veloria to follow

Judge Kurren's direction and sign the proffer letter.

Insofar as judicial intervention in the negotiation of a plea agreement is concerned, the

possibility of harmless error may be more theoretical than real.[439]  "'Rule 11 is obviously intended

*totally* to eliminate pressures emanating from judicial involvement in the plea bargaining process

. . . .'"[440] Once a court has involved itself in plea discussions--and particularly where it has voiced

some opinion as to the parameters of a prospective plea agreement not yet finalized by the parties

and submitted for approval--any hint that the court has given as to what it might approve or not

---

[438] *See, e.g., United States v. Akinsola*, 105 F.3d 331, 334 (7th Cir. 1997); *United States v. Cross*, 57 F.3d 588, 591 (7th Cir.), *cert. denied*, 516 U.S. 955, 116 S. Ct. 406, 133 L. Ed. 2d 324 (1995); *United States v. Diaz-Vargas*, 35 F.3d 1221, 1224 (7th Cir. 1994).

[439] *See United States v. Miles*, 10 F.3d at 1141; *United States v. Bruce*, 976 F.2d at 558; *see also, e.g., United States v. Casallas*, 59 F.3d 1173 (11th Cir. 1995); *United States v. Garfield*, 987 F.2d at 1424 (9th Cir. 1993).

[440] *United States v. Barrett*, 982 F.2d 193 (6th Cir. 1992), quoting *United States v. Werker*, 535 F.2d 198, 202 (2d Cir. 1976), cert. denied, 429 U.S. 926, 97 S. Ct. 330, 50 L. Ed. 2d 296 (1976). (emphasis in *Barrett*).

approve will inevitably affect the parties' own efforts to craft an agreement acceptable to them.[441] The actual impact will often be difficult to quantify. But the rule is focused on pressures--blatant or subtle--that the judicial office brings to bear on the process of negotiating a plea.[442] Those pressures do not vary depending on the facts; they are inherent in judicial intervention. Consequently, "[the defendant's] responses to the judge's questioning during the formalistic [plea] colloquy do not allay our concerns regarding voluntariness."[443]

The Court agreed there was no plea agreement in Ms. Veloria's case,[444] but acknowledged the proffer letter was part of plea negotiations.[445] The trial court misconstrued the proffer letter as being the same as a plea bargain under Rule 11, and declined to permit the defendant to rescind her proffer letter under the trial court's interpretation that Ms. Veloria waived certain rights and could not rescind them, based on the wording in the proffer letter.[446]

The record reflects the court's participation occurred during a settlement conference,[447] that the court's participation occurred in chambers with no record,[448] that the meeting between Judge Kurren and Ms Veloria in chambers was not attended by the prosecutor,[449] or court-appointed counsel, and the proffer was not signed until Judge Kurren told Ms. Veloria to co-operate with the government.[450]

---

[441] *United States v. Adams*, 634 F.2d 830 (5th Cir. 1981).
[442] *Id.* at 841-42; *United States v. Barrett*, 982 F.2d 193 (6th Cir. 1992).
[443] *United States v. Anderson*, 993 F.2d 1435 (9th Cir 1993).
[444] Transcript Vol. 3, P 35.
[445] Transcript Vol. 3, P 35.
[446] Transcript Vol. 3, P 35-37.
[447] Transcript Vol. 2, P 51.
[448] Transcript Vol. 2, P 51.
[449] Transcript Vol. 3, P 65.
[450] Transcript Vol. 2, P 50-51.

The record reflects the court's participation occurred at the meeting between Ms. Veloria and Judge Kurren in chambers with no record, on August 28, 2001, and the proffer was signed on September 3, 2001.[451]

At the time of the proffer letter,[452] the court was prohibited from participating in plea discussions.[453] Five days before the proffer was signed[454] court-appointed defense counsel, Alex Silvert, took his client, Ms. Veloria, to Magistrate Judge Barry Kurran's chambers,[455] where she was encouraged by the Court to sign the proffer letter and participate in the debriefing.[456]

The Court inquired of Mr. Ling, Ms. Veloria's trial counsel, what prejudice resulted from the meeting if Ms. Veloria did not plead guilty.[457]  Mr. Ling explained the Court influenced Ms. Veloria to sign the proffer letter, that it was not voluntary and knowing, and Ms. Veloria was moving to rescind the proffer letter.[458]

Ms. Veloria was denied her constitutional right to present a complete defense. Ms. Veloria's constitutional rights under the Fifth and Sixth Amendments, right to due process, right to fundamental fairness, right to jury trial, right to confront accusers, right to cross examine witnesses, right to testify, right to have witnesses and evidence for her defense, right to counsel,

---

[451] Transcript Vol. 2, P 50-51.

[452] September 3, 2001. (Transcript Vol. 2, P. 50, L 23; P. 51, L 8)

[453] Rule 11(e)(1) "the attorney for the government and the attorney for the defendant . . . may engage in discussions with a view toward reaching a[ ] [plea] agreement," and that the district court "shall not participate in any such discussions." Fed. R. Crim. P. 11(e)(1);  (Now Rule 11(c)(1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. . .).

[454] August 28, 2001. (Transcript Vol. 2, P. 51, L 3)

[455] (Transcript Vol. 2, P. 51, L 2-5)

[456] (Transcript Vol. 2, P. 48, L 2-14; P. 49, L 21 – P. 50 L 10)

[457] (Transcript Vol. 2, P. 50, L 14-20; P. 51, L 12 – P. 52 L 2)

[458] (Transcript Vol. 2, P. 51, L 12 – P. 52 L 2)

and equal rights, were violated under judicial constraints imposed as the result of the proffer letter that part of the plea negotiations, under the pretext of enforcing contract law to supplant substantive rights, indicating her substantive rights were waived by implication. Ms. Veloria was deprived of her Fifth Amendment due process right to a fair trial and Sixth Amendment right to present a defense.

Ms. Veloria was denied her constitutional right to effective assistance of counsel; and, Ms. Veloria's constitutional rights were violated when she was denied the right to present witnesses for the defense.

The court's interpretation of the proffer letter effectively handcuffed defense counsel, "I feel like I'm bound" "I have one arm tied behind my back or maybe two arms."[459] Defense counsel could not call witnesses for the defense,[460] and could not effectively cross examine the government's witnesses,[461] counsel was holding back because of the proffer letter,[462] the court stated it was designed to hold you back,[463] defense counsel stated he didn't know what the boundaries were.[464] Counsel's restraint of trade causing ineffective representation, was from fear of the proffer letter coming in[465] and fear of potentially new charges being filed against his client.[466]

The Court's threat that defense counsel's cross examination could potentially open the door,[467] and the plea negotiation proffer letter could come in,[468] along with the potential for

---

[459] Transcript Vol. 2, P 150, L 1-6; P 155, L 10-14.
[460] Transcript Vol. 2, P 194, L 11-21.
[461] Transcript Vol. 2, P 194-200; P 29-32.
[462] Transcript Vol. 2, P 34, L 6-15; Vol. 2, P32, L 8-16.
[463] Transcript Vol. 2, P 34, L 16-21.
[464] Transcript Vol. 2, P 34, L 22-25.
[465] Transcript Vol. 2, P 47, L 12-13.
[466] Transcript Vol. 2, P 17, L 1-5; Vol. 3, P 8, L 1-12; Vol. 3, P 20, L 16-25.
[467] Transcript Vol. 2, P 30, L 2-21.

additional criminal charges,[468] effectively handcuffed defense counsel, and restrained defense

counsel from the free exercise of his effective defense advocacy,[470] This denied Ms. Veloria her

constitutionally guaranteed right to effective representation..[471]

Ms. Veloria requests reversal.

## CLAIM NUMBER 42

### THE COURT FAILED TO INTERVENE DURING MS. VELORIA'S TRIAL WHEN COUNSEL APPOINTED TO DEFEND HER WAS LACKING IN THE PERFORMANCE OF HIS DUTIES, ALL IN VIOLATION OF MS. VELORIA'S SIXTH AMENDMENT RIGHT TO CONFNRONTATION AND TO HAVE EFFECTIVE ASSISTANCE OF COUNSEL IN HER DEFENSE

According to Cannon 1 of the Code of Judicial Conduct:

An independent and honorable judiciary is dispensable to justice in our society. A judge should participate in establishing, maintaining, and enforcing, and should himself observe, high standards of conduct so that the integrity and independence of the judiciary may be preserved. The provisions of this code should be construed and applied to further objective.

Additionally, Cannon 3 (A) (1) States:
(1) A judge should be faithful to the law and maintain professional competence in it. He should be unswayed by patrician interest, public clamor, or fear of criticism.

Further, Cannon 3 (B) (1) – (3) states:

(1) A judge should …discharge his administrative responsibilities, maintain professional competence and judicial administration, and facilitate the performance of the administrative responsibilities of …and court officials.
(2) A judge should require his staff and court officials subject to his direction and control to observe the standards of fidelity and diligence that apply to him.
(3) A judge should take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware.[472]

---

[468] Transcript Vol. 2, P 29, L 15-25.
[469] Transcript Vol. 2, P 17, L 1-16.
[470] Transcript Vol. 2, P 34, L 6-15.
[471] See *United States* v. *Dortch*, 5 F.3d 1056, 1069 (CA7 1993) ("Just as the defendant must choose whether to protect the proffer statements by not taking the stand, the defendant must choose whether to protect the proffer by carefully determining which lines of questioning to pursue with different witnesses"), cert. pending *sub nom. Suess* v. *United States*, No. 93-7218.
[472] Disciplinary measures may include reporting a lawyer's misconduct to an appropriate disciplinary body.

On many occasions throughout Ms. Veloria's trial, the court expressed her frustration with defense counsel's unprofessionalism and failure to "advocate" for his client. The court was clearly aware of the resulting ongoing prejudice to Ms. Veloria, although no action was taken to intervene and prevent additional injustices.

During various appearances in Ms. Veloria's case, the court admonished defense counsel on several occasions. A few examples of such occurrences during trial are as follows:

THE COURT: …And if the attorneys have any job at all, it is not to sit there and say: So, Judge, what do you want to do? If that's all the attorneys have to do, why are they here? The attorney had better darn well have a position and support for the position that the attorney is advocating. Otherwise, don't be here. I'll just have the parties and they just want me to do what I want to do, I'll do it. So I'm putting a lot of burden back on the attorneys but this is your job. And if you don't feel you have this job, what are you doing in this courtroom?

So, you know, Mr. Ling, don't look to me and say: what do you want to do, Judge? That is not an appropriate for the attorney. You've got to advocate for your client within the bounds of the law.

(TR 6/4/04, P. 26)

THE COURT: …And so I really do need the attorneys to sink their teeth into this issue instead of just saying: Here's a problem, Judge. What are you going to do about it? Because, to me, that is not being an attorney. A party could come and tell me: I have a problem, Judge. What are you going to do about it?

I mean, so if an attorney has any role, you have better have a proposal and a background for your proposal. So that what I'm asking you folks to please do. Because, otherwise, I don't know what business you have taking up a seat in this courtroom.

So, I'm going to take a break and, Mr. Ling, you tell me when you want me and I will just be waiting. Okay? But sit in this courtroom and talk to your client and one way or another I need to know what is happening.

(TR. 6/4/03, P. 39-40)

THE COURT: Just the number. I only need the number. I don't need an explanation. Go get your rule book and tell me the number that you think it falls under.

(TR 6/4/03, P. 112)

THE COURT: …It is up to you. I have no business telling her she should nor should not waive the privilege, and I am not telling her whether she should or not. She's got to rely on you. You're her attorney…

THE COURT: You came this morning not prepared, and we took a lunch break after some testimony. First of all, we talked about it for two hours, then we had two hours of testimony, then there was, you know, an hour and a half of break, then you figure out what to do but you don't have comfort, I guess, in the law. And now you want to take another break. And I'm kinda concerned because I've got this jury and breathing down my neck are the attorneys in the case that's supposed to start on Friday. And it will start on Friday. Okay. So I don't know what to do.

(TR. 6/4/03 P. 154-158)

As noted above in the Code of Judicial Conduct, The Court was required to preserve the integrity of the proceedings within the courtroom. However, by viewing certain portions of the transcripts, one can clearly see that the Court's repeated admonishings went unheeded by defense counsel. The record demonstrate that the court took no further action to preserve Ms. Veloria's constitutional rights, thereby upholding judicial integrity.

Mr. Veloria attempted to persuade appellate counsel to raise this issue on appeal, but all such requests went ignored. See exhibits 32A-H, 33 & 34.

Ms. Veloria was prejudiced by the Court's knowing indifference to the deprivation of her Sixth Amendment Right to effective counsel when she was convicted and incarcerated unjustly. Ms. Veloria requests reversal.

## CLAIM NUMBER 43

## MS. VELORIA'S CONSTITUTIONAL RIGHTS UNDER THE FOURTH, FIFTH, SIXTH, EIGHT, AND FOURTEENTH AMENDMENTS WERE VIOLATED WHEN HER PROPERTY WAS UNLAWFULLY SEIZED AND FORTEITED

Ms. Veloria raises this issue herein as it is her first opportunity to be heard and also on account of the claim's constitutional implications. At all times since the seizure of Ms. Veloria's

- 185 -

truck she has been represented by counsel. Ms. Veloria has always asserted an interest in the property and believed it to have been evidence for use in any future proceedings. Ms. Veloria never received notice of forfeiture by the State or Federal government. All attorneys representing Ms. Veloria failed to preserve her interest and constitutional rights with respect to her property which was unlawfully seized.

On 11/22/96, officers working for the Hawaii Police Department detained Ms. Veloria, questioned her although she repeatedly expressed a desire to phone her attorney, and eventually seized her 1984 Ford Ranger pickup truck without an arrest or search warrant. At the time of the encounter, lasting approximately 30 minutes, Ms. Veloria herself was, for all intents and purposes, seized. Ms. Veloria was denied permission to phone attorney Brian J. Delima, who was representing her in another matter involving the Hawaii Police Department.

Ultimately, the truck was impounded and Ms. Veloria was forced to leave the park empty handed on foot. A search warrant was issued on the following day for the 1984 Ford Ranger pickup truck.

On 12/18/96, Ms. Veloria was arrested by the State of Hawaii for the following offenses relating to the seizure of Ms. Veloria's truck:

> Promoting Dangerous Drugs 1: Cocaine
> Drug Paraphernalia
> Promoting Detrimental Drugs 3: Marijuana

All charges were dismissed without prejudice on 1/18/97.

On 7/16/97, Ms. Veloria waived indictment for the following offences relating to the seizure of Ms. Veloria's 1984 Ford Ranger pickup:

> Promoting Dangerous Drugs: 1
>
> Prohibited Acts

- 186 -

Promoting Detrimental Drugs: 2

Once again, all charges against Ms. Veloria were dismissed in state court on 5/20/98.

On 9/25/00, Ms. Veloria was arrested on a federal arrest warrant relating to the incident involving the seizure on 11/22/96. Federal Public Defender Alexander Silvert submitted a motion to suppress the search of Ms. Veloria's truck on account of false information contained within the application for search warrant. The Court construed it as a request for a Franks hearing and subsequently denied it.

On 6/13/03, a federal jury found Ms. Veloria guilty of the offense stemming from the seizure of Ms. Veloria's truck on 11/22/96.

The following constitutional provisions apply to forfeiture cases:

*Fourth Amendment*: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

*Fifth Amendment*: "…nor shall any person…be deprived of life, liberty or property, without due process of law; nor shall private property be taken for public use without just compensation…"

*Eighth Amendment*: "Excessive bail shall not be required, nor excessive fines imposed, not cruel and unusual punishments inflicted."

*Fourteenth Amendment*: "…No state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws…"

Additionally, the South Amendment to the United States constitution provides that "in all criminal prosecutions, the accused shall enjoy the right…to have the assistance of counsel for his defense.

Ms. Veloria was being prosecuted for offences relating to the warrantless seizure of her property that was not illegal, per se. At all times since the seizure of her property, Ms. Veloria

was represented by counsel, first private and the court appointed. Ms. Veloria reasonable believed that her property constituted "evidence" and her access to it would be preserved until the disposition of any and all charges relating to the seizure.

In determination of the forfeiture of Ms. Veloria's property, the Attorney General for the State of Hawaii failed to consider certain extenuating circumstances as required by law. [473]

The following areas were not considered:

Language or cultural barriers[474]

Humanitarian factors such as youth or age[475]

Any contributory error on the part of government officials[476]

The fact that the property seized from Ms. Veloria's constituted "evidence" for any future proceedings against her[477]

All records and files of the criminal prosecutions against Ms. Veloria in both State and federal courts demonstrate that Ms. Veloria's property was seized without a warrant. Counsel for Ms. Veloria was ineffective for failing to challenge the seizure and forfeiture on those grounds. Additionally, there should have been a suppression hearing based on the manner in which the "dog sniff" was conducted. [478]

Ms. Veloria was not given adequate notice as required by the due process clause of the Fifth Amendment. Authorities could have properly served[479] Ms. Veloria by traveling to her place of residence, as reported to them on 12/18/96 arrest. Also, as files and records indicate, Ms. Veloria posted bail and appeared in Court on 1/15/97 which

---

[473] H.R.S. Ch. 712 A-10 (6) a-f
[474] Mr. Richard Veloria who actually received notice only completed sixth grade in school
[475] Ms. Veloria was 20 years old and her father, Mr. Veloria was 63 years old
[476] Property was seized without a warrant, in violation of Ms. Veloria's Fourth Amendment rights.
[477] The truck was defense evidence for purposes of a suppression hearing as well as the jewelry being used to demonstrate the inability of the government's witnesses to identify jewelry allegedly traded fro cocaine.
[478] *Kimmelman v. Morrison* (1986) 477 US 365
[479] As required by H.R.S. ch 712 A-8 (a)(i): By personal service

would have provided the opportunity for service. Lastly, Ms. Veloria was represented by private counsel. State of Hawaii authorities were well aware of the fact that Ms. Veloria was represented by Attorney Brian J. Delima. At no time did counsel receive notice of forfeiture on behalf of Ms. Veloria.

Ms. Veloria herein requests an order from this Honorable Court[480]

### CLAIM NUMBER 44

### MS. VELORIA REQUESTS REDUCTION OF HER SENTENCE IN LIGHT OF THE SUPREME COURT'S DECISION IN *KIMBROUGH V. UNITED STATES* PROVIDING RELIEF FOR THE UNREASONABLE 100; 1 COCAINE BASE DISPARITY

By and through this motion under 28 U.S.C.§ 2255, Ms. Veloria herein requests that this Honorable Court reduce her sentence in accord with the Supreme Court's decision on 12/10/97 in Kimbrough v. United States (06-6330) in light of the harsh cocaine base penalties under which .Ms. Veloria was originally sentenced.

Ms. Veloria was convicted of and sentenced for a charge of "possession with intent to distribute in access of 5 grams". Ms. Veloria hereby requests that this court reduce her sentence to one more reasonable in light of the recent amendment and decision regarding sentencing and cocaine base penalties.

Ms. Veloria believes her sentence should be reduced because just as beer and wine are two forms of the same drug (alcohol), crack cocaine and powder are two forms of the same drug. Despite this, there is a vast disparity in the federal sentences for crack cocaine and powder cocaine offenses. Cocaine powder is derived from coca paste which is in turn derived from the leaves of the coca plant. Crack cocaine is made by taking cocaine powder and cooking it with

---

[480] "Federal forfeiture law...preempts state law. See U.S. Const. art. VI (Supremacy Clause.)" *United States v. 817 NE 29th Dr, Wilton Manors*, 175 F.3d 1304, 1311 n. 14(11th Cir. 1999). Also see F.R.Civ.P. Rule 83(a)(2); F.R. Crim.P. Rule 57(a)(2).

baking soda and water until it forms a hard substance. These "rocks" can then be broken into pieces and sold in small quantities. Each gram of powder produces approximately 89 grams of crack. This disparity does not uphold basic principals of equity in U. S. Code.

The psychotropic and physiological effects of all types of cocaine are the same, but the intensity and duration of the high differ according to the route of administration. Crack is always smoked and gives a fast, intense high. Powder cocaine is usually snorted, which gives a slower and less intense high. Supporters of the 100:1 quantity ratio say that the intensity of the high created by crack makes crack more addictive than powder and makes its users more violence prone. Experts believe that crack is more likely to be abused because the high is short, which causes users to desire more of the drug, and because it is cheap and widely available. But when powder cocaine is injected it produces a fast, intense high similar to crack.

The 100:1 quantity ratio in cocaine sentencing causes low-level crack offenders to receive arbitrarily severe sentences compared to high level powder cocaine offenders. Ms. Veloria herein moves this Honorable Court to reduce her cocaine base sentence to reflect the opinion expressed in Kimbrough regarding cocaine sentencing disparity.

## CLAIM NUMBER 45

### MS. VELORIA'S FIFTH AMENDMENT AND SIXTH AMENDMENT RIGHTS WERE VIOLATED BY THE IMPOSITION OF AN ENHANCED SENTENCE UNDER UNITED STATES SENTENCING GUIDELINES BASED ON THE SENTENCING JUDGE'S DETERMINATION OF A FACT (OTHER THAN A PRIOR CONVICTION) THAT WAS NOT FOUND BY THE JURY OR ADMITTED BY THE DEFENDANT

Ms. Veloria's Sixth Amendment right to trial by jury was violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the sentencing judge's determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant.

The imposition of Ms. Veloria's sentence violates the Sixth Amendment as interpreted by the Supreme Court in *Blakely v. Washington*, 159 L. Ed. 2d 403, 2004 U.S. LEXIS 4573, 124 S. Ct. 2531 (2004) because the facts underlying the calculation of her base offense level and her sentence enhancement were not found by a jury beyond a reasonable doubt.

The sentencing enhancement was imposed months after the jury trial conviction of one count and acquittal of the other count. The pre-sentence report was prepared long after conviction, and the prosecutor and the pre-sentence investigator argued for sentence enhancement based upon uncharged obstruction of justice, uncharged suborning perjury, uncharged drug sales, uncharged money laundering.

The jury trial was riddled with evidence of uncharged offenses, but the jury was not asked to make a finding on the uncharged offenses as part of the judgment. The jury returned a conviction only on Count 1, that it "was at least five grams". The jury returned an acquittal as to Count 2, finding Ms. Veloria did not possess the 539.8 grams of cocaine found in the truck.

The Pre-sentence Investigator used both the amount the jury returned a conviction on, and the amount the jury acquitted Ms. Veloria on to find a Base Offense Level of 28. In addition, the Pre-sentence Investigator added a two level adjustment for one of the uncharged offenses, "obstruction of Justice". No finding was made by the jury as to any of the uncharged offenses.

Ms. Veloria's sentence was based upon the information from the Pre-sentence Investigation Report, that provided a Guideline level of 30.

The sentencing Judge made a finding by a preponderance of the evidence that Ms. Veloria was more probably than not guilty of the uncharged offenses, and denied Ms. Veloria credit for accepting responsibility.

Uncharged offense conduct was introduced during trial over the objection of defense counsel, the court inquired why sales were not made part of the charged offense, the prosecutor admitted it was uncharged offenses, and it cannot be said that the uncharged conduct did not permit the jury to convict based on uncharged conduct (look at jury questions).  However, the uncharged conduct was not presented to the jury as a charge to be deliberated on, the jury did not deliberate on any of the uncharged conduct as a separate charge, and after the conviction was entered on the record, the judge enhanced Ms. Veloria's sentence based upon uncharged conduct after making a preponderance finding that Ms. Veloria was more probably than not guilty of the uncharged conduct.

Therefore, under *Apprendi v. New Jersey*,[481] *Blakely v. Washington*,[482] *United States v. Booker*,[483] and *Cunningham v. California*,[484] Ms. Veloria's sentence is unconstitutional and must be vacated.  Sentencing Ms. Veloria must be without enhancement based on uncharged conduct, and without the acquitted count.

Ms. Veloria requests reversal.

## CLAIM NUMBER 46

### IT WAS A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS AND SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE WAS UNLAWFULLY DENIED APPLICATION OF THE "SAFETY VALVE" PROVISION

The Pre-sentence Investigator used both the amount the jury returned a conviction on, and the amount the jury acquitted Ms. Veloria on to find a Base Offense Level of 28.  In addition, a two level enhancement was added for "Obstruction of Justice," for a total level of 30.

---

[481] *Apprendi v. New Jersey*, 530 U.S. 466; 120 S. Ct. 2348; 147 L. Ed. 2d 435.

[482] *Blakely v. Washington*, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004).

[483] *United States v. Booker*, 543 U.S. 220 (2005)
[484] *Cunningham v. California*, 127 S. Ct. 856 (2007)

According to Part A, Item 42, Page 11 of Ms. Veloria's P.S.I., Ms. Veloria did not qualify for the "Safety Valve" provision because AUSA Brady reported that she "has not truthfully provided to the government all information and evidence the defendant has concerning the offense…"

Therefore, the only criterion Ms. Veloria failed to satisfy from the five set forth in 18 U.S.C.§ 3553 (f) is:

> 5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the government all information and evidence the defendant concerning the offense or offences that were part of the same course of conduct, or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

However, a review of the transcripts in Ms. Veloria's case illustrates an opinion far different from the one AUSA Brady reported to the Pre-sentence Investigator. On November 26, 2002, during discussions regarding Ms. Veloria's "debriefing," AUSA Brady stated "And, in fact, I believe she was truthful on September 3, 2001." [485]

Ms. Veloria should have been given a two-level reduction pursuant to U.S.S.G. § 2D1.1 (b) (6), because prior to sentencing, as shown by AUSA Brady's statement in open court, Ms. Veloria was truthful, thereby meeting all five of the required criteria set forth in U.S.S.G. § 5C1.2.

The fact that Ms. Veloria exercised her right to a jury trial determination by putting the government to its burden does not negate the fact that she participated in a "debriefing" with government agents and provided truthful information. In *United States vs. Sherpa*[486], the Ninth Circuit Court of Appeals affirmed the district court's decision to apply the safety valve even in a case where a defendant proceeded to trial and was convicted.

In advance of sentencing, Ms. Veloria contacted her court appointed counsel over the phone, as well as in written communications, and attempted to illustrate how she qualified for safety valve (see exhibit 32A).

At Ms. Veloria's sentencing hearing, defense counsel made several objections relating to the P.S.I., and sentence calculation with respect to her conviction. In sentencing Ms. Veloria, the

---

[485] TR. 11/26/02, P. 29, L. 8.
[486] *United States v. Sherpa*, 110 F.3d 656 (9th Cir. 1996)

Court specifically stated: "you were not eligible for the safety valve provision, given by rulings".[487]

Ms. Veloria attempted to persuade her appellate counsel to raise this issue on direct appeal pursuant to decisions in *United States v. Flanagan*[488] and *United States v. Thompson*[489]

Ms. Veloria was prejudiced when she was unlawfully denied application of the Safety Valve provision in the Calculation of her sentence. "Safety Valve" would have reduced Ms. Veloria's sentence by up to 19 months.

Ms. Veloria requests application of the Safety Valve provision to her sentence.


## CLAIM NUMBER 47

## MS. VELORIA WAS PREJUDICED BY THE OBJECTIVELY UNREASONABLE PERFORMANCE OF COUNSEL DURING THE PRETRIAL, TRIAL AND DIRECT APPEAL PROCESS.

In writing for the majority in *Strickland v. Washington*,  466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that,

> "…actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice."

*Id.* 466 U. S. at 693, 80 L.Ed.2d at 697.


More specifically, Justice O'Connor set forth the now well-known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U. S. at 695, 80 L.Ed.2d at 698.

---

[487] Tr. 11/03/03, P. 43, L. 1
[488] *United States v. Flanagan*, 80 F.3d 143 (5th Cir. 1996)
[489] *United States v. Thompson*, 76 F.3d 166 (7th Cir. 1996)

While the Court noted the government's perhaps natural inclination to argue that attorney error is harmless unless the defendant can show that "counsel's deficient conduct more likely than not altered the outcome of the case,"[490] the Court specifically and explicitly rejected this argument by the government.[491]

In rejecting any outcome determinative test such as that employed in the Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Strickland v. Washington,* 466 U.S. at 694, 80 L.Ed.2d at 697; *Williams v. Taylor,* 120S. Ct. 1495, 1519; 2000 LEXIS 2837, ** 76; 146 L. Ed. 2d 389 (4-18-00).[492]

The Court further specifically rejected the application of the "actual prejudice" standard of *United States v. Frady,* 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral

---

[490] *Id.* 466 U.S. at 694, 80 L.Ed.2d at 697.

[491] *Id.* This, of course, means that the "plain error" standard also does not apply to ineffective assistance of counsel claims. *Id.* See *United States v. Olano,* 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict…").

[492] *See also United States v. Day,* 969 F2d 39, 45 and [n.3] (3rd Cir 1992) (same) and *United States v. Loughery,* 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some courts have held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that this ineffectiveness probably affected the outcome of the proceeding," *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 2000 U. S. LEXIS 2837, **53-64; 146 L. Ed. 2d 389 (4-18-00), this construction of *Lockhart v. Fretwell* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell* was limited to circumstances where the "different outcome" would be contrary to the law. As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell*

"…today's decision will, in the vast majority of cases, have not effect on the prejudice inquiry under Strickland…The determinative question – whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'…remains unchanged." *Id.* 506 U.S. at 373 (O'Connor concurring).

attacks on that judgment. *See United States v. Frady,* 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.* at 26, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

*Strickland,* 66 U.S. at 697-98, 80 L.Ed.2d at 700.[493]

The Court hearing an ineffectiveness claim should consider the totality of the factors

which guided the decision-maker in the challenged proceeding, then try to determine which

factors were or were not "affected" by counsel's errors.

"Taking the unaffected [factors] as given, and taking due account of the effect of the errors on the remaining [factors], a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Strickland v. Washington,* 466 U. S. at. 696 , 80 L.Ed.2d at 699.

Where through "hindsight"[494] the Court can determine that, but for the errors of counsel,

there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine

confidence" the challenged proceedings, the defendant has affirmatively proven prejudice.

*Strickland,* 466 U. S. at 694-95; *United States v. Glover,* 531 U. S. 198; 121 S.Ct. 696; 148

[493] *See Kimmelman v. Morrison,* 477 U.S. at 375, 393 and [n. 1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Osborn v. Shillinger,* 861 F.2d 612, 626 and [n. 13] (10th Cir 1988) (same); *Smith v. United States,* 871 F.supp. 251, 255 (E.D. Va. 1994) (same).

[494] *Lewis v. Dretke,* 355 f.3D 364; 2003 U. S. App. LEXIS 26156 (5th Cir 2003) (citing *Westleyv. Johnson,* 83 F.3d 714, 723 (5th Cir 1996) (citing *Lockhart v. Fretwell,* 506 U. S. 364, 373 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993)) ("prejudice," contrary to the "performance" test of *Strickland* is measured by "hindsight"); *Mayo v. Henderson,* 13 F.3d. 528 (2nd Cir. 1994) (same); *McKee v. United States,* 167 F. 3d 103; 1999 U. S. App. LEXIS 1390 (2nd Cir 1999) (same); *Prou v. United States,* 199 F.3d 37; 1999 U. S. App. LEXIS 32827 (1st Cir. 1999) (same). This means that the law applicable to the determination of "prejudice" is the law known to be correct at the time the claim of ineffective assistance of counsel is adjudicated. *Id.* In Cases where the outcome of the prejudice inquiry would be affected by *United States v. Booker,* 543 U. S. 2005 U. S. LEXIS 628 (1-12-05), the Supreme Court holding in *Lockhart v. Fretwell* requires application of the principles of *Booker* even if Ms. Veloria's case was final before *Booker, Blakely* or *Apprendi.*

L.Ed2d 604; 2001 U.S. LEXIS 639 (2001); *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 2000

U.S. LEXIS 2837, **53-64; 146 L.Ed.2d 389 (4-18-00).[495]

The *Strickland* test for "prejudice" is also applicable to cases where a criminal defendant

is challenging his conviction or sentence due to actual ineffective assistance of counsel in the

prosecution of his direct appeal, *United States v. Williamson,* 183 F.3d 458, 462 (5th Cir 1999);

*Banks v. Reynolds,* 54 F.3d 1508 (10th Cir 1995),[496] with the caveat that "prejudice in this type

of case is limited to the 'outcome' of the direct appeal. It does not require the defendant to

demonstrate that she would be 'successful on remand'; only that there is a reasonable probability

that she would have had her conviction and/or sentence vacated and/or remanded to the lower

court. *United States v. Mannino,* 212 F. 3d 835; 2000 U. S. App. LEXIS 10382 (3rd Cir. 2000).

In the instant case, Ms. Veloria has made specific, sworn, factual allegations, in the

Statement of Claim of her 2255 Motion, that she was prejudiced by the objectively unreasonable

performance of counsel in the direct appeal process, when counsel failed to allow Ms. Veloria

the option of filing her completed direct appeal brief pro se.

---

[495] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 2000 U.S. LEXIS 2837, ** 53-64, 146 L.Ed.2d 389 (4-18-00), the Supreme Court explicitly rejected the theory that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding." *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 2000 U.S. LEXIS 2837, ** 53-64; 146 L.Ed.2d 389 (4-18-00). This construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell* was limited to circumstances where the a "different outcome" would be contrary to the law. *Id.* As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell:*
    "…today's decision will, in the vast majority of cases, have not effect on the prejudice inquiry under Strickland…The determinative question – whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different'…remains unchanged." *Id.* 506 U.S. at 373 (O'Connor concurring).

[496] See also *United States v. Reinhart,* 357 f.3D 521; 2004 U. S. App. LEXIS 507 (5th Cir 2004); *United States v. Bass,* 310 F.3d 321; 2002 U.S. App. LEXIS 21543 (5th Cir. 2002); *United States v. Mannino,* 212 F.3d 835; 2000 U. S. App. LEXIS 10382 (3rd Cir 2000); *Mayo v. Henderson,* 13 F.3d 528 (2nd Cir. 1994); *Freeman v. Lane,* 962 F.2d 1252 (7th Cir. 1992); *Orazio v. Dugger,* 876 F.2d 1508 (11th Cir 1989); *Matire v. Wainwright,* 811 F.2d 1430 (11th Cir 1987); *Grady v. Artuz,* 931 F. Supp. 1048 (S.D.N.Y. 1996); *Daniel v. Thigpen,* 742 F. Supp. 1535 (M.D. Ala. 1990).

Ms. Veloria requests reversal.

## CLAIM NUMBER 48

### MS. VELORIA WAS PREJUDICED BY THE CUMULATIVE IMPACT OF MULTIPLE DEFICIENCIES OR ERRORS BY COUNSEL DURING PRETRIAL, TRIAL AND DIRECT APPEAL PROCESS

Even where no *single* error by counsel is sufficient to vacate the conviction and/or sentence of the defendant, prejudice may result from the cumulative impact of multiple deficiencies or errors by counsel during the trial process. *Matthews v. Abramajtys,* 2003 U. S. App. LEXIS 2187; 2003 FED App. 0045P (6th Cir. 2003) (affirming in part *Matthews v. Abramajtys,* 2000 U. S. Dist. LEXIS 4635 (E.D. Mich. 4-11-00).[497]

In Ms. Veloria's case, as set forth in the foregoing arguments and in the Statement of Claim and the Model Court Form of her Section 2255 Motion, and her 35 exhibits, counsel's performance was below the objective standard required by the Constitution in multiple areas. While Ms. Veloria respectfully submits that each of the multiple professionally unreasonable acts and omissions of counsel prejudiced her within the meaning of *Strickland,* she was clearly prejudiced by the cumulative impact of the multiple deficiencies and errors.

Based on the foregoing facts and law, Ms. Veloria has affirmatively pleaded "prejudice" in her case within the meaning of *Strickland v. Washington,* 466 U. S. 668, 80, L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United States v. Glover,* 531 U.S. 198; 121 S.Ct. 696; 148 L.Ed.2d 604; 2001 U.S. LEXIS 639 (2002) and *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 2000 U.S. LEXIS 2837, ** 53-64; 146 L.Ed.2d 389 (4-18-00), due to the "multiplicity of error" which

---

[497] See also *United States v. Russell,* 2002 U.S. App. LEXIS 9538 (4th Cir 5-20-02) (vacating denial of motion pursuant to 28 U.S.C.§ 2255 and remanding on claim of cumulative error of counsel); *Killian v. Poole,* 282 F.3d 1204; 2002 U.S. App. LEXIS 3887 (9th Cir 2001); *United States v. Russell,* 2002 U.S. App. LEXIS 9538 (4th Cir 5-20-02); *Johnson v. Newland,* 1999 U.S. Dist. LEXIS 427 (ND Cal. 1-15-99); *United States v. Van Dyke,* 14 F.3d 415, 417-424 (8th Cir. 1994); *Harris By and Through Ramseyer v. Blodgett,* 853 F. Supp. 1239 (W.D. Wash. 1994); *Harris v. Wood,* 64 F.3d 1432 (9th Cir 1995); *Mak v. Blodgett,* 970 F.2d 614; 1992 U. S. App. LEXIS 15964 (9th Cir 1992).

denied Ms. Veloria her Sixth Amendment constitutional right to effective assistance of counsel during pretrial, trial and direct appeal process.

Based on all of the foregoing, Ms. Veloria respectfully asks the Honorable Court to **ORDER** an evidentiary hearing in which she can be allowed to prove her case.

Ms. Veloria requests reversal.

### CLAIM NUMBER 49

### MS. VELORIA WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN THE DIRECT APPEAL PROCESS WHEN COUNSEL FAILED TO FILE MERITORIOUS ISSUES SUBMITTED BY MS. VELORIA

In *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed2d 674, 104 S. Ct. 2052 (1984), the Supreme Court established a two-prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel, the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id*. 466 U. S. at 688-689; *Williams v. Taylor,* 120 S. Ct. 1495, 1512-16; 2000 U. S. LEXIS 2837, **53-64; 146 L. Ed. 2d 389 (4-18-00); *United States v. Glover*, 531 U.S. 198; 121S.Ct. 696; 148 L.Ed.2d 604; 2001 U.S. LEXIS 639 (2001).

In *Faretta v. State of California*,[498] the Supreme Court ruled that an individual has a constitutional right to represent himself if he voluntarily and intelligently elects to proceed without counsel. Additionally, courts have recognized that a defendant has a right to submit briefs pro se on appeal.[499] Thus, after Ms. Veloria voluntarily prepared a pro se brief and

---

[498] 422 US 806 (1975)
[499] *Vega v. Johnson*, 149 F.3d 354 (5th Cir. 1998)

intelligently provided it to Court appointed counsel well in advance of the due date, her hard work was completely ignored without even so much as notice and opportunity to respond.

Where the foregoing test is satisfied and counsel is found to have been constitutionally ineffective in the direct appeal process, the remedy is for the Court to vacate and re-enter the judgment of conviction to allow the defendant to take an out of time appeal. *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993) (citing *Estes v. United States*, 883 F.2d 645, 649 (8th Cir. 1989)).

In the instant case, Ms. Veloria pleads the following specific, sworn, factual allegations in this memorandum of her 2255 Motion:

On several occasions, Ms. Veloria clearly informed counsel of her intent to file her completed appeal brief pro se if counsel disagreed with the issues raised within (See Exhibit 32A-32H). Court appointed-counsel Mr. Luiz filed his appeal brief without allowing Ms. Veloria the option of filing her brief pro se, although Ms. Veloria repeatedly made him aware of the avenues by which he could contact her (See Exhibits 32A and 32H). Ms. Veloria did not and would not have waived her right to raise constitutional violations on her statutory first right of appeal. Ms. Veloria did not waive her right to fundamental decisions regarding her direct appeal.[500]

The Supreme Court's decision in *Evitts v. Lucey*[501] establishes that a defendant has a right to effective assistance on direct appeal. Further decisions coming out of the Court of Appeals in recent years indicate that a movant can request review on 2255 when an appellate attorney "fails to raise certain legal issues"[502] on appeal. In *McFarland v. Yukins*, the court ruled that "appellate counsel's failure to raise...argument [that "would have likely prevailed"] was sufficiently

---

[500] *Jones v. Barnes*, 463 U.S. 745
[501] 469 US 387 (1985)
[502] *Ballard v. United States*, 400 F.3d 404 (6th Cir. 2005)

unreasonable to violate [movant's] right to counsel." [503] Additionally, courts have ruled that an appellate counsel can be found to have been ineffective when they fail to present a claim that "was much stronger than the issues"[504] counsel did raise.

United States v. Mannino, 212 F.3d 835, 843 (3d Cir. 2000) notwithstanding appellate defenders' "skill and experience," omission of claim of "such obvious merit and importance" constituted ineffective assistance and furnished cause for default of claim on direct appeal;

Mason v. Hanks, 97 F.3d 887, 891-902 (7th Cir. 1996) (appellate counsel's omission of apparently meritotous claim constituted ineffective assistance and "cause"); Gravley v. Mills, 87 F.3d 779, 785-86 (6th Cir. 1996) (trial counsel's ineffective representation provided "cause" excusing failure to object to prosecutorial misconduct: "most compelling evidence of counsel's incompetence was her failure to object" and failure to raise claim in motion for new trial);

Washington v. Hofbauer, 228F, 3d689, 702 (6th Cir. 2000)("This Court has on several occasions found that a consul's failure to object to prosecutorial misconduct constitutes defective performance when that failure is due to clear inexperience or lack of knowledge of controlling law, rather than reasonable trial strategy,");

Mason v. Carrier, 477 U.S. at 496 ("right to effective assistance of counsel...may in a particular case be violated by even an isolated error if that error...is sufficiently egregious and prejudicial").

Ms. Veloria's appellate counsel, Attorney Shawn Luiz, received her completed pro se brief around 1/2/2005. Said brief raised 24 separate issues for review. The issues raised within were supported by Supreme Court, Ninth Circuit and other circuit court of appeals case law. There were a total of 121 authorities referenced to in the brief. The issues raised in Ms.

---

[503] 356 F. 3d 688 (6th Cir. 2004)
[504] *Caver v. Straub*, 349 F.3d 340 (6th Cir. 2003)

Veloria's brief were not frivolous (See Veloria pro se brief, Exhibit 35) and should have been presented to the appellate court for review.

Instead, against the known wishes of Ms. Veloria, Attorney Luiz filed his opening brief on 2/23/05 containing two trial issues and an argument under <u>Blakely</u>. Ms. Veloria was unaware of Attorney Luiz's intention to forego and therefore waive the issues raised within Ms .Veloria's brief as she was unsuccessful in her attempts to contact him by phone throughout the month of January. However, it was Ms. Veloria's belief that Attorney Luiz was sufficiently informed of her wishes as the appellant, and therefore, would either use Ms. Veloria's brief or incorporate her arguments into his.[505] In February, Ms. Veloria was placed in the Special Housing Unit (SHU) and was unable to attempt any further contact with Attorney Luiz.

Attorney Luiz's decision to completely ignore Ms. Veloria's completed pro se appeal brief was unprofessional. Under these circumstances, there was nothing Ms. Veloria could have done to raise the issues she had been researching since the return of her guilty verdict 18 months earlier. Through correspondence, Ms. Veloria repeatedly urged Attorney Luiz to contact her (through BOP counselors at Dublin) during the month of January so they could discuss said pro se appeal brief.[506] Had Attorney Luiz phoned Dublin prison[507] and informed Ms. Veloria that he disagreed with the issues raised within her brief, Ms. Veloria would have been afforded the opportunity to file her brief pro se.

Ms. Veloria's brief was completed and mailed to Attorney Luiz well in advance of the deadline, such that Ms. Veloria would have adequate time to seek an alternate route of presenting the constitutional violations which occurred during her trial. Court appointed appellate counsel

---

[505] See Exhibit 32, paragraph 5; "If you do not agree with the issues that will be raised and refuse to file it, then I respectfully ask that you withdraw from my case and file the brief on my behalf pro se."
[506] See Exhibit 34
[507] Ms. Veloria provided him with the telephone number, the names of staff who could facilitate a legal call and the appropriate extension.

effectively impeded Ms. Veloria's attempt at seeking review of specific issues, demonstrating his ineffectiveness, as well as his unprofessional behavior. Such a refusal should be evaluated by ineffective assistance of counsel standards.[508]

Under these circumstances, Ms. Veloria was denied effective assistance of counsel in the direct appeal process of her case. No "prejudice" needs be shown. *United States v. Peak*, 992 F.2d 39, 41-42 (4th Cir. 1993); *Jones v. Cowley*, 28 F.3d 1067, 1073 (1oth Cir. 1994); *United States v. Horodner*, 993 F.2d 191, 195 (9th Cir. 1993); *Martin v. United States*, 81 F.3d 1083 (11th Cir 1996); *United States v. Gipsom*, 985 F. 2d 212, 215 (5th Cir. 1993).

Based on the foregoing facts and the applicable law, this Court should consider Ms. Veloria's arguments as if they were filed on direct appeal.

**V**

**AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT**

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

28 U.S.C.§ 2255.[509]

---

[508] *Smith v. South Carolina*, 882 F.2d 895, 898 (4th Cir. 1989)

[509] *United States vs. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (evidentiary hearing required unless 2255 motion, files and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 ( 3rd Cir 1994) (petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Ciak v. United States*, 59 F.3d 296, 306-07 (2nd Cir 1995) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue);

In the instant case as set forth in the Statement of Claim of the 2255 motion, and the foregoing arguments, Ms. Veloria has pleaded, presented evidence, and argued the applicable law to demonstrate that her conviction and sentence is violative of her Sixth Amendment right to effective assistance of counsel during her trial and direct appeal process. *Id.*

While many of the allegations are already well established by the files and record of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records." These allegations require an evidentiary hearing under well settled law. *Shaw v. Unites States,* 24 F.3d 1040, 1043 (8th Cir. 1994) (evidentiary hearing required unless § 2255 motion, files and trial record "conclusively show" petition entitled to no relief); *Virgin Islands v. Weatherwax,* 20 F.3d 572, 573 (3rd Cir. 1994) (petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief); *Stoia v. United States,* 22 F.3d 766, 768 (7th Cir. 1994) (same); *Ciak v. United States,* 59 F.3d 296, 306-07 (2nd Cir 1995) (same); *Shaw v. United States,* 24 F.3d 1040, 1043 (8th Cir. 1994) (holding that district court erred in denying request for evidentiary hearing when petitioner "alleged facts, which, if found to be true, would have entitled him to relief); *Nichols v. United States,* 75 F.3d 1137, 1145-46 (7th Cir 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon,* 231 F.3d 923; 2000 U. S. App. LEXIS 27778 (4th Cir 11-6-00) ( petitioner entitled to evidentiary hearing when motion presented colorable claim and unclear whether counter affidavit disputed

---

*United States v. Witherspoon,* 231 F.3d 923; 2000 U. S. App. LEXIS 27778 (4th Cir 11-6-00) ( petitioner entitled to evidentiary hearing when motion presented colorable claim and unclear whether counter affidavit disputed defendant's allegations); *Guy v. Cockrell,* 343 F.3d 348; 2003 U. S. App. LEXIS 16632 (5th Cir 2003) (disputed issues of material fact require evidentiary hearing); *Paprocki v. Foltz,* 869 F.2d 281, 287 (6th Cir. 1989) (if there are factual issues in dispute in a section 2255 petition and the record is insufficient to enable the district court to resolve the issue of whether a claim of ineffective assistance of counsel is meritorious, the district court must hold an evidentiary hearing.)

defendant's allegations); *Guy v. Cockrell,* 343 F.3d 348; 2003 U. S. App. LEXIS 16632 (5th Cir 2003) (disputed issues of material fact require evidentiary hearing).

Based on all of the foregoing, Ms. Veloria respectfully requests this Honorable Court to **ORDER** an evidentiary hearing where she can prove her case.

## CONCLUSION

On account of evidence set forth herein regarding the intentional withholding of critical exculpatory material, thereby denying Ms. Veloria a constitutionally fair trial, she herein requests that this Honorable Court **ORDER** that she be released from incarceration forthwith and that all future proceedings and/or litigation with respect to this 2255 motion be conducted with Ms. Veloria on a pretrial basis.

Pursuant to Rule 8 of the Rules Governing Section 2255 Proceedings, Ms. Veloria asks this Honorable Court to **ORDER** an evidentiary hearing where she can prove the allegations herein by: (A) her own testimony; (B) the testimony of Attorney Alexander Silvert; (C) the testimony of Attorney Winston Ling; (D) the testimony of Rhonda Marcy; (E) additional evidence; and (F) legal argument to be presented at the hearing.

Ms. Veloria has demonstrated by the foregoing argument, the factual allegations of her motion, and the attached verified exhibits, that her conviction is violative of her Constitutional Sixth Amendment rights.

**WHEREFORE MOVANT** Alicia Veloria respectfully asks this **HONORABLE COURT** to:

**ORDER** the return of Ms. Veloria's property seized on 11/22/96.

**ORDER** an evidentiary hearing as set forth in her 2255 motion; and upon proof of her allegations herein,

**ORDER** than her conviction be reversed, or

**ORDER** that her judgment of conviction be **VACATED** so that she can take a direct appeal,

And/or **ORDER** any remedies the Court deems appropriate.

I have read the foregoing and state that the facts are set forth upon personal knowledge and are true and correct.

Signed under penalty of perjury under
28 U.S.C. 1746, this _18_ day of
DEC_____, 20 07.

_Alicia Veloria_
Alicia Veloria
P. O. Box 27137
Fort Worth, TX 76127

# United States District Court
# District of Hawaii

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | **Crim. No.00-00145** |
| ) | **Civil No.**_____ |
| **Plaintiff-Respondent** ) | **HON. SUSAN OKI MOLLWAY** |
| ) | |
| **Vs.** ) | |
| ) | |
| **ALICIA VELORIA** ) | **CERTIFICATE OF FILING** |
| ) | |
| **Defendant-Movant** ) | |

\*    \*    \*    \*    \*    \*    \*    \*    \*

Pursuant to the principles of *Houston v. Lack,* 487 U.S. 266, 276 (1988), the attached motion pursuant to 28 U.S.C. 2255 was filed with the Court on this date by depositing three copies of same into the prison mail collection box, in sealed envelopes, first class postage affixed and addressed to: **Clerk – U. S. District Court,** Prince Kuhio Federal Building, 300 Ala Moana Blvd., Honolulu, HI 96850.

I have read the foregoing and state that the facts are set forth upon personal knowledge and are true and correct.

Signed under penalty of perjury under 28 U.S.C. 1746, this _18_ day of _DEC_____, 20_07_.

_Alicia Veloria_
Alicia Veloria
P. O. Box 27137
Fort Worth, TX 76127