*Office of the*
## FEDERAL PUBLIC DEFENDER
Districts of Hawaii and Guam

Kristine Pagan
Investigator

DISTRICT OF HAWAII
PRINCE KUHIO FEDERAL BUILDING
300 ALA MOANA BLVD., SUITE 7104
HONOLULU, HAWAII 96850-5269
(808) 541-2521  FAX 541-3545
TOLL FREE# (877) 541-2521

DISTRICT OF GUAM
FIRST HAWAIIAN BANK BUILDING
SUITE 310
400 ROUTE 8
MONGMONG, GUAM 96927
(671) 472-7111  FAX 472-7120

## MEMORANDUM

TO:     File

FROM:   Kristine Pagan

RE:     USA vs. Alicia Veloria

DATE:   November 22, 2000

---

Yesterday I met with **Wallace Iaukea** in a counselor's office at Kulani Prison. I had been informed prior to the interview that Mr. Iaukea had been acting up with the ACOs that morning and therefore may not be at his cooperative best. Although he was courteous enough, I found Mr. Iaukea to be suspicious, reluctant, evasive, and preoccupied with self concern.

Mr. Iaukea began by stating that the events I was asking about happened a long time ago and his memory of the events was not good. In addition, Mr. Iaukea expressed concern about his legal situation and about his need for a lawyer in relation to this particular case. He explained that he will go in front of the parole board in about one year and he does not want to have anything out there such as this case. I did my best to alleviate his concerns but when ever I asked specific questions, he would go back to his position that he did not want to talk about this matter without an attorney. I was able to gather a little bit of information from Mr. Iaukea.

Mr. Iaukea believes that the police were harassing Alicia on the day in question at the Keeau ball park. He did not feel that what they did was right. He does not recall having been ordered to get out of Alicia's truck. He thinks he got out voluntarily and on his own. He does not know if he left the door of the truck open or not. It is possible he did leave the door open when he got out because he did not have anything to hide and Alicia had told him that she didn't have anything to hide either. When Alicia told him this, she seemed, in his opinion, to be telling him the truth so he believed her.

Mr. Iaukea said that the dog, who's certification he believes had expired, did not alert to the truck that he saw. He saw the dog on the driver's side and then on the passenger side of the truck. The dog did not scratch, bite, or bark or react in any way. His wife at the time, Lisa, was sitting on the passenger side of his car which was parked near Alicia's truck. She may have seen

EXHIBIT 15

what happened as well. He does not know if there were many people around but he seems to recall that there were people at the ball field in the back.

The police came to get him at his in-law's house sometime after the day described above. He agreed to go to the station on his own. He took Lisa with him. When they got to the station, the police pulled Lisa aside for questioning. They also attempted to question him. He recalls being told that they knew that the drugs in the truck belonged to Alicia and that he needed to talk to them about it because if she came in and said that the drugs were his, he'd end up doing a lot of time. He requested an attorney instead and did not give them a statement.

Mr. Iaukea said that he talked to Alicia a couple of times after this incident. He was aware that the police claim to have a CI and he wonders who that person is and what they said. He said that he had heard things about Alicia back then but he does not know if they were true or not.