LAW OFFICE OF WINSTON D.M. LING
WINSTON D.M. LING 5217-0
P.O. BOX 700406
KAPOLEI, HAWAII 96709-0406
TELEPHONE NO. 271-6870

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATE OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ALICIA VELORIA, ) <br> ) <br> Defendant. ) <br> _____ ) | CR. NO. 00-00145 (SOM) |

## EMERGENCY MOTION TO RESCIND INVOLUNTARY WAIVERS

COMES NOW, Alicia Veloria, defendant in the above styled and numbered cause, by and through her counsel of record, Mr. Winston Ling, Esquire, and serves notice to the Court and the plaintiff, that she rescinds the involuntary implied waiver incorporated in the stipulated agreement signed by her on September 3, 2001, as part of the "Terms and Conditions for Proffer of Information by Defendant Alicia Veloria" during plea-negotiations, pursuant to Rule 11, Federal Rules of Criminal Procedure. In support of this motion, undersigned counsel would state:

1. That Miss Veloria was represented by Alexander M. Silvert, first Assistant Federal Public Defender at all times relevant to the plea-negotiations with Thomas J. Brady, Assistant United States Attorney;

EXHIBIT 18

2. That a letter was tendered to counsel, Alexander M. Silvert, by Thomas J. Brady, dated September 3, 2001, in which the defendant was led to believe in paragraph 2, that "the prosecution will not offer into evidence . . . statements made by Veloria at said meetings, except in a prosecution for false statements, obstruction of justice, or perjury, where such prosecution arises from Veloria's conduct during said meetings.

3. That counsel for the defendant took her before a federal magistrate, who explained the procedure for the plea-agreement, that the defendant needed to provide this information to Mr. Brady, and that none of the statements during plea-negotiations could be introduced against Miss Veloria, except for prosecution for perjury.

4. That counsel for the defendant took her into a meeting with Thomas J. Brady, in which Mr. Brady assured the defendant that any statements that she made would not be introduced against her, except for prosecution for perjury or for false statements, whether the plea-agreement was accepted or rejected.

5. That upon appointment of undersigned counsel, defendant filed a motion to suppress statements. This motion was denied by order of the Court on November 27, 2002, based upon the Court's finding "the Court treats the proffer agreement as a contract."[1]

6. That Alicia Veloria hereby rescinds the involuntary implied waiver incorporated in the stipulated agreement signed by her on September 3, 2001, as part of the "Terms and Conditions for Proffer of Information by Defendant Alicia Veloria" during plea-negotiations, based upon the following reasons:

---

[1] Order Denying Motion to Suppress Statements, page 4.

a. Breach of Rule 11(e), Federal Rule of Criminal Procedure, "The court shall not participate in any discussions between the parties concerning any such plea agreement", or alternatively, improper use of a magistrate to directly influence Miss Veloria to waive her constitutional and statutory rights, and involuntarily divulge information and evidence the government could use against her during trial.

b. Misrepresentation of the terms and conditions, whether expressed or implied, that the information she provided would no be used against her, except for impeachment purposes if she committed perjury.

c. Improper notice, that the government intended to use any information she provided to them to coerce, threaten and intimidate Miss Veloria into accepting any term they offered, and if Miss Veloria did not accept the government's terms, to threaten and intimidate Miss Veloria to prevent her from testifying in her own behalf, and to threaten and intimidate Miss Veloria to prevent her from calling any defense witnesses, under the threat that any witness she called to testify "would be prosecuted for perjury and obstruction of justice based upon the information Miss Veloria provided to the government during plea negotiations".

d. That the government obtained information during the plea negotiations from the "Proffer of Information by Defendant Alicia Veloria" during plea-negotiations that the government has shown they intend to use against Miss Veloria during trial, indicating the breach of good faith and fair dealing by the government, in violation of Miss Veloria's constitutional and statutory rights.

e. That the government has used Miss Veloria's "Proffer of Information by Defendant Alicia Veloria" during plea-negotiations to coerce, threaten and intimidate

other witnesses to testify against Miss Veloria, while intentionally withholding evidence from the defense that the witnesses have testified in prior court proceedings contrary to the testimony they intend to provide against Miss Veloria in this case.

    f. That the government's use of Miss Veloria's involuntary "Proffer of Information by Defendant Alicia Veloria" during plea-negotiations to introduce evidence of other uncharged wrongs, crimes, or acts, constitutes a trial by ambush, and creates the likelihood of a conviction based upon other uncharged wrongs, crimes, or acts, and not on the charges in the indictment, denying Miss Veloria the right to a fair trial of only those charges in the indictment.

    7. That Miss Veloria has been restrained in the Anchorage, Alaska area, and unable to meet with her counsel, locate and interview witnesses for the defense, or even to return to the scene of where the offenses are alleged to have occurred.

    8. That Miss Veloria has been denied full and complete production of discovery, and due to her indigence, has been unable to retain adequate legal assistance in Anchorage, Alaska to assist her in preparation for her defense.

    9. That Miss Veloria has recently discovered the plea-negotiations were entered into in bad faith by the plaintiff, and that Rule 11, Federal Rules of Criminal Procedure, was violated by the magistrate entering into and participating in the discussion between the parties concerning such plea-agreement. See Rule 11(e)(1)(C).

    10. Rule 11(e), Federal Rules of Criminal Procedure, and Rule 410, Federal Rule of Evidence, precludes the use of Miss Veloria's statements against her during any civil or criminal proceeding, except for prosecution for perjury or intentional false statements.

11. Miss Veloria's agreement to waive the rules of federal criminal procedure or federal rules of evidence was not voluntary given, and therefore, in the interest of justice, this Court must grant this motion to rescind the proffer agreement.

12. That this motion is supported by the affidavit of Miss Veloria, and memorandum in support, filed separately herewith.

13. That granting Miss Alicia Veloria's motion to rescind the involuntary waiver, whether deemed expressed or implied, incorporated in the stipulated agreement signed by her on September 3, 2001, as part of the "Terms and Conditions for Proffer of Information by Defendant Alicia Veloria" during plea-negotiations, and suppressing her statements, would prevent an abuse of the plea negotiation process and restore the defendant's rights to a fair trial.

14. That the government will not be prejudiced by the court granting this motion, the defendant believes she is entitled to the relief that she seeks, and that it should be granted in the interest of justice.

WHEREFORE, for the above and foregoing reasons, Alicia Veloria urges the Court to grant this motion to rescind the involuntary waiver, whether deemed expressed or implied, incorporated in the stipulated agreement signed by her on September 3, 2001, as part of the "Terms and Conditions for Proffer of Information by Defendant Alicia Veloria" during plea-negotiations, in the interest of justice.

Respectfully submitted on this _4th_ day of _June_, 2003.

_____
WINSTON LING
Attorney for Defendant:
ALICIA VELORIA

## CERTIFICATE OF SERVICE

I, _____ hereby certify that a true and exact copy of the foregoing document was mailed, and/or hand delivered, to the following:

THOMAS J. BRADY
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850

Attorney for Plaintiff:
UNITED STATES OF AMERICA

On this 4th day of June, 2003.

Signed, _____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATE OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ALICIA VELORIA,<br><br>Defendant. | CR. NO. 00-00145 (SOM) |

## MEMORANDUM IN SUPPORT OF ALICIA VELORIA'S EMERGENCY RENEWED MOTION TO SUPPRESS STATEMENTS BASED UPON THE MOTION TO RESCIND INVOLUNTARY WAIVERS

Alicia Veloria, defendant in the above styled and numbered cause, by and through her counsel of record, Mr. Winston Ling, Esquire, moved the Court by emergency renewed motion to suppress the statements in the "Proffer of Information by Defendant Alicia Veloria" during plea-negotiations, based upon the emergency motion to rescind involuntary waivers. This is Miss Veloria's memorandum in support.

Miss Veloria's former counsel filed a motion to suppress statements. That motion was denied by the court based upon the court enterpreting the stipulated agreement signed by her on September 3, 2001, as part of the "Terms and Conditions for Proffer of Information by Defendant Alicia Veloria" during plea-negotiations, as a contract. The Court found: "based upon the Court's finding "the Court treats the proffer agreement as a contract."[1]

Miss Veloria renews the motion to suppress statements where the implied waiver

---

[1] Order Denying Motion to Suppress Statements, page 4.

1

in the stipulated agreement entered into during pela negotiations was not voluntary.

## STATEMENTS MADE DURING PLEA NEGOTIATIONS ARE NOT GENERALLY ADMISSIBLE AGAINST THE DEFENDANT

Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure--which provide that statements made in the course of plea discussions between a criminal defendant and a prosecutor are generally inadmissible against the defendant--give a criminal defendant the right not to be impeached by statements made during plea discussions.

Although a criminal defendant may properly waive many of the most fundamental protections afforded by the Federal Constitution, where such waiver is made knowingly and voluntarily, extrajudicial contracts made prior to litigation that stipulate to a waiver of these fundamental rights trigger closer judicial scrutiny than stipulations made within the context of litigation.

Where the agreement was made in the course of a plea discussion aimed at resolving the specific criminal case that was in progress against the accused, and was made in the nature of cooperation, then any express or implied waiver contained in that stipulation should be vacated if the plea negotiation is unsuccessful.

It would undermine the integrity of the plea-negotiation process to hold that it was enforceable against one party but not against the other. The government risks nothing to enter into such a stipulation, but the defendant risks the threat, either expressed or implied, of further criminal prosecutions based upon any information provided to the government, if the defendant takes the stand to testify during a criminal trial, or calls witnesses to testify for and on behalf of the defense, as the government has threatened

in Miss Veloria's case.

It appears to have become standard policy for the prosecution to demand a waiver of Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure by the defendant before the defendant can access the plea negotiating rules, as they have done in Miss Veloria's case.

This case poses only one question: did Congress intend to create a personal right subject to waiver by its individual beneficiaries when it adopted Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure, each Rule providing that statements made during plea discussions are inadmissible against the defendant except in two carefully described circumstances? The case raises no issue of policy to be settled by the courts, and if the generally applicable (and generally sound) judicial policy of respecting waivers of rights and privileges should conflict with a reading of the Rules as reasonably construed to accord with the intent of Congress, there is no doubt that congressional intent should prevail.

Based upon the Court's finding "the Court treats the proffer agreement as a contract,"[2] then the balance of contract law must also apply, whether there was a meeting of the minds, whether the waiver was voluntary and intentional, whether the government entered into the contract with clean hands, whether the agreement allows one of the two parties to be the judge of whether it has been violated, and if that is so judged, the judging party is free to keep all of its benefits from the bargain and make even fuller use of them.

In every contract there must be evidence that each party received something in

---

[2] Order Denying Motion to Suppress Statements, page 4.

3

exchange for something given. The stipulation demonstrates it was entirely one sided in favor of the government. In the stipulation in this case the Government can say that Ailicia Veloria gave incomplete testimony regardless of what she actually gives, and then use what she said against her. If the market for plea bargains leads to such one-sided contracts, how can they be allowed?

The contract, as interpreted by the court, was intended by the government only to be enforceable against Alicia Veloria, and not against the government. The stipulation was intended to gain a wealth of information from Miss Veloria that the government intended to use against her with the expressed and implied waiver inserted into the stipulation for that purpose. The government has already admitted Alicia Veloria provided them valuable information and they have made great use of it. However, the government cannot show they ever intended to provide anything in return. Now the government threatens prosecution of Alicia Veloria if she testifies and threatens prosecutions of any witness called for the defense whether she testifies or not.

This provides clear and convincing proof that the Congress never intended to provide such a distorted use of the plea-negotiating rules, to force them to swallow up Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure, before plea-negotiations can be entered into by a criminal defendant, and Congress never intended to permit plea-negotiating rules to be used by the government as a pretext to force a defendant to waive Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure. This intent would make the words of Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure just words without substance, dead

4

letters.

Logic would indicate that for Congress to intend Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure to be waivable, then the waiver could only be enforced if the agreement was enforceable against the government and not arbitrarily voidable by the government and not voidable by the defendant.

Alicia Veloria has moved to rescind the involuntary implied waiver incorporated in the stipulated agreement signed by her on September 3, 2001, as part of the "Terms and Conditions for Proffer of Information by Defendant Alicia Veloria" during plea-negotiations, pursuant to Rule 11, Federal Rules of Criminal Procedure.

The unlikelihood that Congress intended the modest default rule that the court sees in Rules 11(e)(6) and 410 looms all the larger when the consequences of the court's position are pursued. The first consequence is that the Rules will probably not even function as default rules, for there is little chance that they will be applied at all. Already, standard forms indicate that many federal prosecutors routinely require waiver of Rules 410 and 11(e)(6) rights before a prosecutor is willing to enter into plea discussions.  See *United States v. Stevens*, 935 F.2d 1380, 1396 (CA3 1991) ("Plea agreements . . . commonly contain a provision stating that proffer information that is disclosed during the course of plea negotiations is . . . admissible for purposes of impeachment").  Defendants are generally in no position to challenge demands for these waivers, and the use of waiver provisions as contracts of adhesion has become accepted practice. The court's interpretation in Alicia Veloria's case can only speed the heretofore illegitimate process by which the exception has been swallowing the Rules.

See, e. g., *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 377, 107 L. Ed. 2d 782, 110 S. Ct. 680 (1990) (no exception should be made by Court because it would be too difficult to "carve out an exception that would not swallow the rule"); *United States v. Powell*, 469 U.S. 57, 68, 83 L. Ed. 2d 461, 105 S. Ct. 471 (1984) (respondent's suggested exception to the *Dunn* rule "threatens to swallow the rule"). See also 23 C. Wright & K. Graham, Federal Practice and Procedure 121-122, n. 7.3 (1994 Supp.) ("It would seem strange if the prosecutor could undermine the judicial policy, now endorsed by Congress, of encouraging plea bargaining by announcing a policy that his office will only plea bargain with defendants who 'waive' the benefits of Rule 410"). Accordingly, it is probably only a matter of time until the Rules are dead letters.

Cooperation was openly and freely provided by Miss Veloria, the government kept all of the benefits of the stipulation, used the benefits and intends to us them against her during trial, as previously shown. The government's unclean hands of using the pretext of plea bargaining for the intended purpose of obtaining a waiver, while also gaining evidence to use against the defendant and her witnesses, and fully intending to void the agreement and keep the benefits, makes the Court a party to the deliberate misrepresentation by the government attorney, and encourage future behavior of the government prosecutors.

<u>WAIVER OF RULE 410, FEDERAL RULES OF EVIDENCE<br>
AND RULE 11(e)(6), FEDERAL RULES OF CRIMINAL PROCEDURE</u>

The Court at first blush may find the absence of any express wording from Congress concerning waiver of these rules, does not prevent waiver by a defendant.

Judge Sneed of the Ninth Circuit stated: "To allow waiver of these rules would be

6

contrary to all that Congress intended to achieve. If these rules were subject to waiver, candid and effective plea bargaining could be severely injured." Judge Sneed continued: "Allowing a waiver of these rules would contravene and thwart the policy - efficient case resolution through plea bargaining - these rules were designed to effectuate."

Similarly, the Souter dissent stated: "These explanations show with reasonable clarity that Congress probably made two assumptions when it adopted the Rules: pleas and plea discussions are to be encouraged, and conditions of unrestrained candor are the most effective means of encouragement."[3] If bargaining becomes too risky, small-time criminals will be afraid to cooperate with prosecutors, frustrating not one, but two goals: the conservation of judicial resources via guilty pleas, and the production of evidence against criminals.[4] Both of these goals are matters of the public interest, not just of the defendant's, so any one defendant's willingness to grant a waiver is not dispositive of whether he should be allowed to grant it, unlike in the case of other, purely personal privileges.[5]

To continue the market analogy, prosecutors will charge what "traffic may bear," and this is a bad thing. I will quote a long excerpt from the Souter dissent to allow a full statement of this position:

> The Rules draw no distinction between use of a statement for impeachment and use in the Government's case-in-chief. If objection can

---

[3] Mezzanatto, 513 U.S. at 214 (Souter, J., dissenting).
[4] See Dahlin, note 7, at 1383.
[5] In Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704 (1945), the Supreme Court said that "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." An example is the Speedy Trial Act of 1974, 18 U.S.C. 3161 (1994), which cannot be waived because the public would lose from a delay in the criminal's imprisonment if he is guilty, even though he and the prosecutor might both find a long delay convenient.

be waived for impeachment use, it can be waived for use as affirmative evidence, and if the Government can effectively demand waiver in the former instance, there is no reason to believe it will not do so just as successfully in the latter. When it does, there is nothing this Court will legitimately be able to do about it. The Court is construing a congressional rule on the theory that Congress meant to permit its waiver. Once that point is passed, as it is today, there is no legitimate limit on admissibility of a defendant's plea negotiation statements beyond what the Constitution may independently impose or the traffic may bear. Just what the traffic may bear is an open question, but what cannot be denied is that the majority opinion sanctions a demand for waiver of such scope that a defendant who gives it will be unable even to acknowledge his desire to negotiate a guilty plea without furnishing admissible evidence against himself then and there. In such cases, the possibility of trial if no agreement is reached will be reduced to fantasy. The only defendant who will not damage himself by even the most restrained candor will be the one so desperate that he might as well walk into court and enter a naked guilty plea. It defies reason to think that Congress intended to invite such a result, when it adopted a Rule said to promote candid discussion in the interest of encouraging compromise.6

Justice Souter's fear is that a second defect of the plea bargaining market will nullify the intent of Congress: the prosecutor will have all the bargaining power and will always force a waiver of **Rule 410** rights on the defendant. The Court's ruling would therefore "render the Rules largely dead letters."7 As Eric Dahlin puts it: "Because the prosecutor will almost always have a strong power advantage over the defendant, a true 'bargain' will not result and most defendants will end up signing waivers, despite their desire to not do so."8

And, indeed, both with respect to the Mezzanatto waiver and to plea bargains generally, it seems that the agreements are unconscionably one-sided. Consider the following excerpt from a plea bargain in a different case:

It is further understood that Mr. Schulz must at all times give

---

6 Mezzanatto, 513 U.S. at 217-18 (Souter, J., dissenting).
7 Id. at 211.
8 Dahlin, supra note 7, at 1381.

8

complete, truthful and accurate information and testimony and must not commit any further crime whatsoever. Should Mr. Schulz commit any further crimes or should it be judged by this Office that Mr. Schulz has given false, incomplete or misleading testimony or information, or has otherwise violated any provision of this agreement, this agreement shall be null and void and Mr. Schulz shall thereafter be subject to prosecution for any federal criminal violation of which this Office has knowledge, including, but not limited to, perjury and obstruction of justice. Any such prosecutions may be premised upon any information provided by Mr. Schulz, and such information may be used against him.[9]

Circuit Courts have held the rules are not waivable.[10] Although the Supreme Court of the United States has held the rules are waivable,[11] they clearly pointed out an exception if the defendant's waiver was unknowing and involuntary.[12] That is what happened in this case. Alicia Veloria entered into the agreement to cooperate with the government and provided information and evidence the government admits was very helpful and they have used the information already. The government has voided the agreement and intends to use the waivers against Miss Veloria. Alicia Veloria's waivers were unknowing and involuntary, where she would not have entered the agreement if she knew the government's participation was a pretext to develop evidence to use against her and to prevent her from testifying under threats of prosecution.

It is not clear whether the misrepresentation could be interpreted as fraud that was perpetrated on the defendant by an officer of the Court, but it is clear that this Court has supervisory authority over the officers of the Court, and would not knowingly make

---

[9] United States v. Stirling, 571 F.2d 708, 730 n.16 (7th Cir. 1978).
[10] United States v. Acosta-Ballardo, 8 F.3d 1532 (10th Cir. 1993); United States v. Mezzanatto (998 F.2d 1452; 9th Cir. 1993); United States v. Cross, (6th Cir. 1992 U.S. App. LEXIS 4719, unpublished); United States v. Lawson, 683 F.2d 688 (2nd Cir. 1982).
[11] United States v. Mezzanatto, 513 U.S. 196; 115 S. Ct. 797; 130 L. Ed. 2d 697; 1995 U.S. LEXIS 692; 63 U.S.L.W. 4060; 40 Fed. R. Evid. Serv. (Callaghan) 1220; 95 Cal. Daily Op. Service 431; 95 Daily Journal DAR 780; 18 Fla. L. Weekly Fed. S 521.
[12] "that a federal criminal defendant's agreement to waive the exclusionary provisions of the plea-statement rules is valid and enforceable, absent some affirmative indication that the agreement was entered into unknowingly or involuntarily".

9

the Court a party to such intentional deception by the government prosecutor.

There had to be a subjective expectation by defendant that he was negotiating a plea and that expectation had to be objectively reasonable. United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978) [*17] (en banc); United States v. O'Brien, 618 F.2d 1234, 1240-41 (7th Cir.), cert. denied, 449 U.S. 858 (1980); United States v. Doe, 655 F.2d 920, 925 (9th Cir. 1980). There is no reason why this approach does not remain a correct approach.

This Court can discourage such behavior by government attorneys and prevent the Court from becoming an unwilling party to such contumacious deceptive behavior by grating Miss Veloria's motion to rescind the stipulation, and rule that everything in the rescinded agreement, including the involuntary waivers, is voided and cannot be used against Miss Veloria.

WHEREFORE, for the above and foregoing reasons, Alicia Veloria urges the Court to grant the motion to rescind the involuntary waiver, whether deemed expressed or implied, incorporated in the stipulated agreement signed by her on September 3, 2001, as part of the "Terms and Conditions for Proffer of Information by Defendant Alicia Veloria" during plea-negotiations, in the interest of justice.

Respectfully submitted on this 5th day of June, 2003.

WINSTON LING
Attorney for Defendant:
ALICIA VELORIA

CERTIFICATE OF SERVICE

I, _____ hereby certify that a true and exact copy of the foregoing document was mailed, and/or hand delivered, to the following:

THOMAS J. BRADY
Assistant United States Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850

Attorney for Plaintiff:
UNITED STATES OF AMERICA

On this 5 day of June, 2003.

Signed, _____

11