## STATEMENT OF JURISDICTION

The District Court had original jurisdiction of all offenses

against the laws of the United States pursuant to 18 U.S.C. § 3231.

This appeal is from a final judgment in a criminal case.  Verdict was

returned by the jury, June 13, 2003, convicted as to Count 1, for

Possession of Cocaine Base with Intent to Distribute (more than 5

grams)(21 USC 841(a)(1)) and acquitted as to Count 2, Possession of

Cocaine with Intent to Distribute (more than 500 grams).  Ms.

Veloria was remanded to custody pending sentencing. Sentence was

imposed on November 3, 2003, and a timely notice of appeal was

filed November 4, 2003. Judgment and Commitment was entered

on November 7, 2003.

This appeal is timely under federal Rule of Appellate Procedure

4(b).  This Court has jurisdiction over this appeal pursuant to 28

U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

Page

1.  Was it error to deny Ms. Veloria's motion to suppress, and

her motion to rescind involuntary waivers?                    12

2.  Was Ms. Veloria's rights violated when the court violated

1

EXHIBIT 35

the prohibition against court participation in plea discussions? 20

3.  Was it a violation of Ms. Veloria's constitutional rights to force Ms. Veloria to forfeit one or more constitutional rights in order to exercise another?                                          24

4. Was Ms. Veloria denied her constitutional right to present a complete defense?                                          32

5.  Was Ms. Veloria denied her constitutional right to effective assistance of counsel?  And Was Ms. Veloria constitutional rights violated when she was denied the right to present witnesses for the defense?                                          32

6.  If a proffer has no other purpose than to chill assertion of constitutional rights by penalizing those who choose to exercise them, then is it patently unconstitutional?                    34

7. Was Ms. Veloria's Fifth Amendment right to be tried only on an indictment in precisely the form issued by a grand jury violated?

8.  Was introduction of uncharged offenses, over the objection of the defendant, a constructive amendment to the indictment or a fatal variance?                                          45

9.  Was it error for the trial court to permit improper opening

and closing argument by the government of uncharged offenses?45

10. Was it error to deny Ms. Veloria's motion for mistrial, Rule

29 motion, and motion for a new trial?                                    45

11. Was Ms. Veloria denied her constitutional right to confront

her accusers?                                                          56

12. Was Ms. Veloria denied her constitutional right by limiting

her ability to cross examine government witnesses?          56

13. Was it an abuse of discretion for the trial court to deny Ms.

Veloria's right to introduce prior "bad acts" to impeach government

witness's general credibility?                                      56

14. Was it error to withhold Brady material and other

discovery?                                                              59

15. Was Ms. Veloria entitled to the identity of the confidential

informants referred to in the application for the search warrants

and the police reports?                                             60

16. Was the cumulative effect of the fatal errors sufficient to

deny Ms. Veloria her right to fundamental fairness during her jury

trial?                                                                                       71

17. Was Ms. Veloria's pre-indictment delay unnecessarily

prejudicial?                                                                            73

18. Was it error to waive Ms. Veloria's right to be present at all

stages of the trial, including questions from the jury, and jury

questioning?                                                                        76

19. Was Ms. Veloria's right to a unanimous verdict by a jury,

after deliberation, violated by the physical threats of intentional

violence directed toward jury members from other jurors?        77

20. Was Ms. Veloria's Sixth Amendment right violated by the

imposition of an enhanced sentence under the United States

Sentencing Guidelines based on the sentencing judge's

determination of a fact (other than a prior conviction) that was not

found by the jury or admitted by the defendant? Was it error to

deny Ms. Veloria credit for acceptance of responsibility?         78

21. Was it error for the trial court not to caution the jury not

to discuss the case among themselves, or with anyone else, until it

was given to them for deliberation, and caution the jury about news

reports, each time the jury retired?                                       78

4

## STATEMENT OF THE CASE

Alicia Veloria was indicted by grand jury on April 13, 2000, on two felony counts.  Count 1, possession with intent to distribute in excess of 5 grams of cocaine base, and Count 2, possession with intent to distribute in excess of 500 grams of cocaine.

The four day jury trial began on June 3, 2003, followed by four days of jury deliberation. A verdict was returned on June 13, 2003, of guilty as to count 1, and not guilty as to count 2.  Ms. Veloria was remanded to custody pending sentencing. Sentence was imposed on November 3, 2003, and a timely notice of appeal was filed November 4, 2003. The Judgment and Commitment was entered on November 7, 2003.  Ms. Veloria was sentenced to imprisonment for 97 months, supervised release for 4 years, and special assessment of $100.00.  She is currently serving that sentence.

STATEMENT OF FACTS

The record reflects that Sgt. Samuel Thomas, now a police captain with the Hawaii County Police Department, obtained a search warrant (Transcript Vol. 1, P 205, L 11-12) on July 9, 1996, (Transcript Vol. 1, P 205, L 24-25) for a residence at 69 Mauna Loa Street (Transcript Vol. 1, P 205, L 17-18) based upon information received from a confidential informant. (Transcript Vol. 1, P 206, L 3-4). The search warrant was executed on the following day, July 10, 2003. (Transcript Vol. 1, P 206, L 8-12) Evidence was seized and Ms. Veloria was taken into custody, (Transcript Vol. 1, P 220, L 10-14) and later released on bond.

On November 23, 1996, Marshal Kanehialua, brother Mitchel Kanehialua and Detective Manny Bega (Transcript Vol. 3, P 246, L 9-12), seized a blue Ford Ranger pickup (Transcript Vol. 3, P 158, L 10-11) at the Kea'au Ballpark (Transcript Vol. 3, P 158, L 4), from custody of Ms. Veloria, based upon information from a tip, although she was permitted to leave on foot.

Ms. Veloria was first charged on June 30, 1997, with a seven count complaint from the State. Those charges were dismissed, and Ms. Veloria was indicted by federal grand jury on two counts, on

6

April 13, 2000.

Ms. Veloria was tried by jury, found guilty of one count based on the evidence seized from 69 Mauna Loa Street, and not guilty of the Count based on evidence seized from the pickup. She was sentenced, and is currently serving that sentence at the Federal Prison Camp at Dublin, California.

<u>SUMMARY OF ARGUMENT</u>

Ms. Veloria was deprived of her Fifth Amendment due process right to a fair trial and Sixth Amendment right to present a defense.

Ms. Veloria's constitutional rights under the Fifth and Sixth Amendments: right to due process, right to fundamental fairness, right to jury trial, right to confront accusers, right to cross examine witnesses, right to testify, right to have witnesses and evidence for her defense, right to counsel, and equal rights, were violated under judicial constraints imposed as the result of prior plea negotiations, under the pretext of enforcing contract law to supplant substantive rights, indicating her substantive rights were waived by implication.

Judicial constraints violated additional substantive rights by forcing Ms. Veloria to choose between substantive rights, to waive one substantive right in order to exercise another.

Judicial constraints prevented the jury from fully exercising their function of assessing credibility of the government's witnesses by preventing Ms. Veloria from probing government witnesses for prejudice and bias, limiting cross examination, preventing the jury from hearing impeachment evidence, and preventing the jury from hearing testimony about the government witnesses' criminal record, including arrests and results of those arrests, notwithstanding their testimony that they received no deals, although escorted in custody, and anxious to begin a furlough from prison after their testimony.

Ms. Veloria was deprived of essential discovery, impeachment evidence and exculpatory evidence under Brady, ambushed during trial with uncharged offenses that deprived her of her right to be tried only on charges in the indictment, allowing the verdict to be influenced by uncharged offenses, and evidence was presented that jurors were threatened with physical violence during deliberation.

Ms. Veloria received an unconstitutional sentence in violation of her right to a jury trial determination of the issues relied upon by the Court to impose a sentence outside the guidelines. Sentencing enhancement was based upon uncharged conduct, and the Count of the indictment the jury acquitted her on.

8

ARGUMENT

"The task of safeguarding the rights of criminal defendants ultimately rests with the experienced men and women who preside in our district courts."[1]  That a district judge's responsibility does not end when he rules on objections and motions raised by the parties is recognized by the doctrine of plain error,[2] which embodies the notion that there are some errors that are so prejudicial and obvious the district judges must remedy them even without an objection.[3] "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."[4]  Where a district judge detects what he suspects may be an error seriously affecting the rights of a criminal defendant, he must address the problem.[5]  This duty exists at all times,[6] but never more

---

[1] *United States* v. *Balough*, 820 F.2d 1485, 1491 (9th Cir. 1987).

[2] Rule 52(b), Federal Rules of Criminal Procedure.

[3] *See United States* v. *Olano*, 934 F.2d 1425 at 1439 n.23 (9th Cir. 1991); *United States* v. *Hernandez-Escarsega*, 886 F.2d 1560 at 1573 (9th Cir. 1989), *cert. denied*, 110 S. Ct. 3237, 111 L. Ed. 2d 748, 58 U.S.L.W. 3817 (1990); *United States* v. *Bustillo*, 789 F.2d 1364 at 1367-68 (9th Cir. 1986)..

[4] Rule 52(b), Federal Rules of Criminal Procedure.

[5] *United States v. Redondo-Lemos*, 955 F.2d 1296 (9th Cir. 1992).

9

so than when the problem is such that it is unlikely to be detected by an individual defendant.[7]

District judges have direct experience with the policies and practices of the United States Attorneys in their districts and have the opportunity to discern patterns of discrimination.[8]  The Ninth Circuit affirmed a district court's dismissal of indictments as a sanction for the government's failure to comply with her discovery order.[9]  The district court reaffirmed on remand from the Ninth Circuit in Redondo-Lemos.[10]

## PROFFER WAS NOT A PLEA AGREEMENT

The prosecutor argued the defendant was bound by contract

---

[6] "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens* v. *Virginia*, 6 Wheat. 264, 404 (1821). "

[7] *United States v. Redondo-Lemos*, 955 F.2d 1296 (9th Cir. 1992).

[8] *See United States v. Redondo-Lemos,* 955 F.2d 1296, 1298, 1302 (9th Cir. 1992).

[9] *United States v. Redondo-Lemos*, 817 F. Supp. 812 (9th Cir. 1993).

[10] *See United States v. Redondo-Lemos*, 955 F.2d 1296, 1298, 1302 (9th Cir. 1992) (defendant Redondo-Lemos receive the benefit of the plea bargain as originally accepted by the Court and that his original sentence of 18-months incarceration and 48 months of supervised release is reaffirmed).

law,[11] but based his argument only on plea agreements cases.[12]  In Ms. Veloria's case the document was referred to by the trial court as either a proffer letter,[13] or debriefing statement,[14] but not a plea agreement.[15]  The trial court erred in misconstruing the document as a contract, and in enforcing it as a plea agreement.

A distinction can made between those statements found in plea agreements, statements made during plea discussions, and statements in the document in Ms. Veloria's case.  Inadmissability of such statements,[16] exceptions to inadmissibility,[17] and absolute prohibition on all forms of judicial participation,[18] were presented to the courts previously in varying forms.  This Court is also asked to

---

[11] Transcript Vol. 3, P 13, L 18-24.

[12] Transcript Vol. 3, P 13-14.

[13] Transcript Vol. 2, P 12, L 3.

[14] Transcript Vol. 2, P 11, L 12.

[15] Transcript Vol. 3, P 13, L 4-7.

[16] Rule 11(e)(6), Federal Rules of Criminal Procedure; Rule 410, Federal Rules of Evidence.

[17] Rule 11(e)(6), Federal Rules of Criminal Procedure; Rule 410, Federal Rules of Evidence.

[18] Rule 11(e)(1), Federal Rules of Criminal Procedure.

decide an additional question that affected substantial rights of Ms.
Veloria, that may be one of first impression for this Court. Does the
right to rescind or withdraw from any agreement or offer belong
only to the government, and did the trial court err in denying Ms.
Veloria's motion to rescind involuntary waivers?

<u>RIGHT TO RESCIND OR WITHDRAW</u>

<u>It was error to deny Ms. Veloria's motion to suppress, and her
motion to rescind involuntary waivers.</u>

Does the government's right to rescind or withdraw an offer for
any reason, at anytime, also extend to the defendant?  Ms. Veloria
believes that it does.  The motion to rescind involuntary waivers
should have been granted, and the court was in error in placing a
burden on Ms. Veloria that is not placed on the government, if the
government moves to rescind or withdraw.

Ms. Veloria believes the government argued in another case
that the government was not bound by the agreement and were free
to withdraw from the agreement at anytime for any reason before
the defendant entered a guilty plea.[19]  In that case the government

---

[19] *United States v. Mozer*, 828 F. Supp. 208 (SDNY 1993).

stated:

> "The Government contends first that the plea bargain
> agreement was nothing more than an offer of unilateral
> contract and as such did not impose any binding
> obligations on the Government until the defendant
> "accepted" by his timely entry of a guilty plea; the
> Government argues that until the defendant's entry of a
> plea under the agreement, the Government was free to
> withdraw its offer at any time for any reason."[20]

The government's right to rescind or withdraw from a plea
bargain agreement at anytime for any reason until the defendant's
entry of a guilty plea under the agreement, should extend as well to
the rights of the defendant to rescind or withdraw from a plea
bargain agreement at anytime for any reason.  This appears to be
contemplated by the rules,[21] and the defendant asserted that right
in the motion to rescind involuntary waivers. It was a deprivation of
Ms. Veloria's due process right to fundamental fairness for the trial
court to deny her motion to rescind involuntary waivers, in light of
the government's assertion in *United Sates v. Mozer,*[22] and when the

---

[20] *United States v. Mozer*, 828 F. Supp. 208 (SDNY 1993).

[21] Rule 11(e)(6), Federal Rules of Criminal Procedure; Rule 410,
Federal Rules of Evidence.

[22] *United States v. Mozer*, 828 F. Supp. 208 (SDNY 1993).

trial court placed the burden on the defendant that the government does not have when they move to rescind or withdraw from their agreement.

The Ninth Circuit has held that it lacks discretion to impose a different sentence under Rule 11(e)(1)(C);[23] if the court decides that a different sentence is required, approval of the plea agreement must be withdrawn and the parties must be returned to their pre-plea posture.[24]

Ms. Veloria's motion to rescind her proffer letter should have been granted and she should have been returned to her pre-proffer letter posture. The Court was in error to deny her motion to rescind the involuntary waivers.

## INVOLUNTARY WAIVER OF RIGHTS

The motion to rescind involuntary waivers raised the question of whether Ms. Veloria could rescind the proffer, under involuntary

---

[23] *See United States v. Mukai*, 26 F.3d 953, 955 (9th Cir. 1994); *United States v. Semler*, 883 F.2d 832, 833 (9th Cir. 1989).

[24] *United States v. Mukai*, 26 F.3d 953, at 955-56. See also United States v. Valencia, _____ (9th Cir. 2003).

14

and unknowing waiver of rights she did not know existed,[25] under

the undue influence from the court's participation,[26] and even

under an interpretation of contract law.[27]

Nowhere in the proffer was the defendant made aware of any

of her statutory rights under either Rule 11(e)(6), Federal Rules of

Criminal Procedure or under Rule 410, Federal Rules of Evidence.

They are not cited to in the proffer.

Nowhere in the proffer was the defendant made aware of the

explicit prohibition of any court participation.[28]   The prohibition is

not cited to in the proffer, nor is it even implied.

The government agued during trial that once the proffer was

signed Ms. Veloria could be held to the terms of the proffer under

contract law, and she could not rescind the proffer.[29]  However, the

government previously claimed that the government had such a

right to rescind or withdraw from an agreement at anytime for any

---

[25] *Johnson v. Zerbst*, 304 U.S. 458 (1938).

[26] Rule 11(e)(1), Federal Rules of Criminal Procedure.

[27] Transcript Vol. 2, P 44-45.

[28] Transcript Vol. 2, P 50-52.

[29] Transcript Vol. 2, P 41.

15

reason in *United States v. Mozer*.[30]

Waiver is the "intentional relinquishment or abandonment of a known right or privilege."[31]  While the standard for a waiver of fundamental rights may be more exacting than for other rights,[32] a waiver of a statutory right must still be "knowing and voluntary."[33] Here, there is no evidence that the defendant knowingly waived any known right or privilege, either fundamental right or statutory right.

Although the document in Ms. Veloria's case was written and titled by the government as, "Terms and Conditions for Proffer of Information by Defendant Alicia Veloria", it was referred to by the government during trial as "our statement",[34] by the court as a "proffer letter",[35] and at times just as an "agreement".

---

[30] *United States v. Mozer*, 828 F. Supp. 208 (SDNY 1993).

[31] *Johnson v. Zerbst*, 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S. Ct. 1019 (1938).

[32] *see, e.g., New York v. Hill*, 528 U.S. 110, 114-15, 145 L. Ed. 2d 560, 120 S. Ct. 659 (2000).

[33] *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1993); *United States v. Doe*, 374 F.3d 851 (9th Cir. 2004).

[34] Transcript Vol. 1, P 192.

[35] Transcript Vol. 1, P 192-193.

16

The proffer letter in Ms. Veloria's case appears to have been designed for the sole purpose of prying information from the defendant while offering nothing in return for the information.

The document was not a contract and the defendant had the right to rescind or withdraw at anytime for any reason, the same as the government claimed the right to do in *United States v. Mozer*.[36]

### GOVERNMENT BREACHED THE AGREEMENT

Ms. Veloria was forced to rescind the proffer because the government breached their agreement. It was only after Ms. Veloria had fully provided the government with all of the information that they desired, which they admitted had benefited the government a great deal, that the government placed the plea agreement outside her reach. The government then confronted Ms. Veloria with a demand she enter a guilty plea to a new additional charge of conspiracy to commit money laundering, and money laundering, in addition to the most serious of the two counts in the indictment, by information. The untenable position the government placed Ms. Veloria in required her to commit perjury, another felony offense, in

---

[36] *United States v. Mozer*, 828 F. Supp. 208 (SDNY 1993).

17

order to accept the government's plea bargain.

## PROFFER WAS NOT A COMMERCIAL CONTRACT

Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution.

Although the Government argued against Ms. Veloria's motion to rescind involuntary waivers in the manner of a commercial contract dispute, courts have consistently made clear that a prosecutor entering into a plea bargain agreement is not simply a party to a contract. The Government is required to observe high standards of integrity and honorable conduct, and the supervisory power of the court is designed to insure that such standards are observed.[37]

As the second Circuit has explained, "Comparing a criminal defendant with a merchant in the marketplace is an inappropriate analogy that we have rejected. The law of commercial contracts

---

[37] See *United States v. Hasting*, 461 U.S. 499, 505, 76 L. Ed. 2d 96, 103 S. Ct. 1974 (1983); *Santobello v. New York*, 404 U.S. 257, 262, 30 L. Ed. 2d 427, 92 S. Ct. 495 (1971).

plays only a limited role in resolving a plea dispute."[38]

> "Unlike contracts, Plea Bargains involve a myriad of collateral considerations such as expectations of fundamental fairness by the Defendants, efficient administration of justice, and the integrity of the Government's promises."[39]

> "A plea agreement, however, is not simply a contract between two parties. It necessarily implicates the integrity of the criminal justice system and requires the courts to exercise judicial authority in considering the plea agreement . . . .". [40] (citation omitted).

> "A plea agreement is not an appropriate context for the Government to resort to a rigidly literal approach in the construction of language." [41]

Consistent with this view, courts have emphasized that "the most meticulous standards of both promise and performance must be met by prosecutors engaging in plea bargaining."[42]

---

[38] *Innes v. Dalsheim*, 864 F.2d 974, 978 (2d Cir. 1988) (citing *United States ex rel. Selikoff v. Commissioner of Correction*, 524 F.2d 650, 654 (2d Cir. 1975)), cert. denied, 493 U.S. 809 (1989).

[39] *United States v. Smith*, 648 F. Supp. at 498; see, e.g., *United States v. McGovern*, 822 F.2d at 743.

[40] *United States v. Smith*, 648 F. Supp. at 498; see, e.g., *United States v. McGovern*, 822 F.2d at 743.

[41] *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir. 1978).

[42] *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973); accord *United States v. Fields*, 766 F.2d 1161, 1167 (7th Cir. 1985); *United States v. Bowler*, 585 F.2d 851, 854 (7th Cir. 1978).

The Ninth Circuit expressed similar concerns, noting that Rules 410 and 11(e)(6) "aid in obtaining the cooperation" that is often necessary to identify and prosecute the leaders of a criminal conspiracy and that waiver of the protections of the Rules "could easily have a chilling effect on the entire plea bargaining process."[43]

According to the Ninth Circuit, the plea-statement Rules "permit the plea bargainer to maximize what he has 'to sell'" by preserving "the ability to withdraw from the bargain proposed by the prosecutor without being harmed by any of his statements made in the course of an aborted plea bargaining session."[44]

## PROHIBITION AGAINST COURT'S PARTICIPATION

Ms. Veloria's constitutional and statutory rights were violated when the court violated the prohibition against court participation in plea discussions.

---

[43] *United States v. Mezzanatto*, 998 F.2d at 1455; reversed by the Supreme Court 513 U.S. 196 (1995), (*Held:* An agreement to waive the plea-statement Rules' exclusionary provisions is valid and enforceable absent some affirmative indication that the defendant entered the agreement unknowingly or involuntarily. Pp. 200-211.)

[44] *United States v. Mezzanatto*, 998 F.2d at 1455; reversed by the Supreme Court 513 U.S. 196 (1995), (*Held:* An agreement to waive the plea-statement Rules' exclusionary provisions is valid and enforceable absent some affirmative indication that the defendant entered the agreement unknowingly or involuntarily. Pp. 200-211.)

Can an absolute prohibition against the court's participation be excused as "invited error"?[45]  Previous decisions indicate that the prohibition is absolute, and appears to imply it is not waivable.

Rule 11(e)(1) of the Federal Rules of Criminal Procedure provided "the attorney for the government and the attorney for the defendant . . . may engage in discussions with a view toward reaching a[ ] [plea] agreement," and that the district court "shall not participate in any such discussions."[46]  Although the Ninth Circuit does not appear to have addressed the prohibition against court participation in Rule 11(e)(1) in a published opinion, the rule is strictly interpreted by other circuits. *See United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993) ("Rule 11(e)(1) prohibits absolutely a district court from all forms of judicial participation in or interference with the plea negotiation process." (internal quotation marks omitted)); *United States v. Corbitt*, 996 F.2d 1132, 1134 (11th Cir. 1993) (per curiam) (explaining that Rule 11(e)(1) establishes "an absolute prohibition on all forms of judicial participation" in plea

---

[45] Transcript Vol. 3, P 42.

[46] Fed. R. Crim. P. 11(e)(1) (1999).

21

negotiations (internal quotation marks omitted)); *United States v. Bruce*, 976 F.2d 552, 558 (9th Cir. 1992) ("The unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under *any* circumstances: it is a rule that . . . admits of no exceptions.").

Can the absolute prohibition against the court's participation be excused by either the extent of the court's participation, or the results of the court's participation?[47]  The absolute prohibition does not appear to leave any room for exceptions.  The involuntariness in the motion to rescind involuntary waivers, presented to the court, was that her court-appointed attorney took her to Judge Kurren for the judge to convince her to cooperate with the government.[48]

The record reflects the court's participation occurred during a settlement conference,[49] that the court's participation occurred in chambers with no record,[50] that the meeting between Judge Kurren

---

[47] Transcript Vol. 3, P 38-48.

[48] Transcript Vol. 2, P 50-52.

[49] Transcript Vol. 2, P 51.

[50] Transcript Vol. 2, P 51.

22

and Ms Veloria in chambers was not attended by the prosecutor,[51] or court-appointed counsel, and the proffer was not signed until Judge Kurren told Ms. Veloria to co-operate with the government.[52] The record reflects the court's participation occurred at the meeting between Ms. Veloria and Judge Kurren in chambers with no record, on August 28, 2001, and the proffer was signed on September 3, 2001.[53]

INHERENTLY COERCIVE

Rule 11's prohibition of judicial involvement in plea discussions is based on a recognition that a judge's power over an accused makes his participation in plea negotiations inherently coercive.[54] A coerced plea would not only violate a defendant's constitutional rights, it would also increase the chance of convicting

---

[51] Transcript Vol. 3, P 65.

[52] Transcript Vol. 2, P 50-51.

[53] Transcript Vol. 2, P 50-51.

[54] See Fed. R. Crim. P. 11 advisor committee's notes to the 1974 amendments; See also *United States v. Johnson*, 89 F.3d 778, 783 (11th Cir. 1996), *United States v. Barrett*, 982 F.2d 193, 194 (6th Cir. 1992).

the innocent.[55] Rule 11 protects against these wrongs by completely

removing the judge from plea negotiations.[56]

BURDEN PLACED ON DEFENDANT WAS ERROR

It was a violation of Ms. Veloria's constitutional rights to force

Ms. Veloria to forfeit one or more constitutional rights in order to

exercise another.

The court erroneously placed a burden on Ms. Veloria to prove

not only that the meeting with Judge Kurren occurred,[57] prove what

happened during the meeting,[58] dismissed the request to call Judge

Kurren's clerk,[59] and implied a threat as to what Judge Kurren

might say if he was forced to testify.[60] The court also placed Ms.

Veloria in an untenable position of being forced to forfeit one right

---

[55] See *United States v. Bruce*, 976 F.2d at 556 (listing reasons for
Rule 11's prohibition on judicial involvement in plea discussions).

[56] Fed. R. Crim. P. 11 advisory committee's notes to the 1974
Amendments ("The amendment makes clear that the judge should
not participate in plea discussions leading to a plea agreement.").

[57] Transcript Vol. 2, P 50-51.

[58] Transcript Vol. 3, P 65.

[59] Transcript Vol. 3, P 65.

[60] Transcript Vol. 3, P 66.

in order to exercise another,[61] and indicated the court's concern for the government's rights over those of the defendant's.[62] The court stated:

> "Poor little Ms. Veloria. The judge is making me trade
> one right against the other. That's the law. You have to
> be fair to the government. A defendant is not the only
> one with rights in this court room. And you have to give
> up that right."[63] If I rule in your favor, it would greatly
> prejudice the government, because it can't take the kind
> of appeal that it could have taken if it was before trial.[64]

The court declined to let Ms. Veloria make the argument on her motion to rescind the involuntary waivers, because she would not waive her attorney client privilege,[65] disregarded, and would not consider prior counsel's statements on the record during a prior proceeding.[66] The court seemed to indicate that either the attorney-client privilege was waived during the prior proceeding, and could not be rescinded, or that it wasn't waived and she could not rely

---

[61] Transcript Vol. 3, P 67-68; P 70, L 3-15; Vol. 2, P 50-61.

[62] Transcript Vol. 3, P 69, L 9-15.

[63] Transcript Vol. 3, P 67-68; P 70, L 3-15.

[64] Transcript Vol. 3, P 69, L 9-15.

[65] Transcript Vol. 3, P 71.

[66] Transcript Vol. 3, P 71.

upon the statements from her former counsel that appeared in the record.[67] And appeared to rely upon this basis to deny the motion to rescind the involuntary waivers.[68] The court declined to accept an affidavit from Ms Veloria and declined to accept an affidavit from former counsel. "So – if you don't want to carry your burden which is to waive the privilege, I'm going to deny this motion."[69]

The trial court also appeared to deny the motion because the government could not take an immediate appeal if she ruled in Ms. Veloria's favor; since the government had called its first witness and she had already been placed in jeopardy, the jury could not be dismissed and the defendant retried because of double jeopardy, the jury could not be kept waiting during the time it would take for an appeal, and it appeared the government could not take an immediate appeal after the defendant was placed in jeopardy. [70]

APPEARANCE OF IMPROPRIETY

Plea agreements have been vacated under court's supervisory

---

[67] Transcript Vol. 3, P 71-76.

[68] Transcript Vol. 3, P 76.

[69] Transcript Vol. 3, P 70, L 12-15.

[70] Transcript Vol. 3, P 54-57.

authority because of the appearance of impropriety. "Rule 11 may
not by its terms compel vacating the plea given that the district
court itself was not involved in the most troubling conduct here, but
given the appearance of impropriety, we conclude that the exercise
of our supervisory authority warrants that step nonetheless."[71]

Judicial participation in plea negotiations implicates one of the
core concerns of Rule 11;[72] and vacating a plea and sentence that
may have been affected by such participation best serves the
prophylactic purpose of the rule,[73] and where the court cannot say
that the appearance of impropriety had no effect on the plea and
sentence.[74]

### PREJUDICE TO THE DEFENDANT

Rule 11(h) states that "any variance from the procedures
required by this rule which does not affect substantial rights shall

---

[71] *See McCarthy v. United States,* 394 U.S. at 463-64, 89 S. Ct. at
1169; *United States v. Adams,* 634 F.2d 830 (5th Cir. 1981).

[72] *United States v. Miles,* 10 F.3d at 1140, citing *United States v.
Adams,* 634 F.2d 830 (5th Cir. 1981).

[73] *United States v. Miles,* 10 F.3d at 1142 & n.10 (collecting cases).

[74] *United States v. Kraus,* 137 F.3d 447 (7th Cir. 1998).

be disregarded."[75]

Ms. Veloria's substantial rights were affected by the court's participation when Judge Kurren told Ms. Veloria to co-operate with the government. This induced Ms. Veloria to follow Judge Kurren's direction and sign the proffer letter.

Insofar as judicial intervention in the negotiation of a plea agreement is concerned, the possibility of harmless error may be more theoretical than real.[76] "'Rule 11 is obviously intended *totally* to eliminate pressures emanating from judicial involvement in the plea bargaining process . . . .'"[77] Once a court has involved itself in plea discussions--and particularly where it has voiced some opinion as to the parameters of a prospective plea agreement not yet

---

[75] *See, e.g., United States v. Akinsola,* 105 F.3d 331, 334 (7th Cir. 1997); *United States v. Cross,* 57 F.3d 588, 591 (7th Cir.), *cert. denied,* 516 U.S. 955, 116 S. Ct. 406, 133 L. Ed. 2d 324 (1995); *United States v. Diaz-Vargas,* 35 F.3d 1221, 1224 (7th Cir. 1994).

[76] *See United States v. Miles,* 10 F.3d at 1141; *United States v. Bruce,* 976 F.2d at 558; *see also, e.g., United States v. Casallas,* 59 F.3d 1173 (11th Cir. 1995); *United States v. Garfield,* 987 F.2d at 1424 (9th Cir. 1993).

[77] *United States v. Barrett,* 982 F.2d 193 (6th Cir. 1992), quoting *United States v. Werker,* 535 F.2d 198, 202 (2d Cir. 1976), cert. denied, 429 U.S. 926, 97 S. Ct. 330, 50 L. Ed. 2d 296 (1976). (emphasis in *Barrett*).

finalized by the parties and submitted for approval--any hint that

the court has given as to what it might approve or not approve will

inevitably affect the parties' own efforts to craft an agreement

acceptable to them.[78]  The actual impact will often be difficult to

quantify. But the rule is focused on pressures--blatant or subtle--

that the judicial office brings to bear on the process of negotiating a

plea.[79] Those pressures do not vary depending on the facts; they are

inherent in judicial intervention. Consequently, "[the defendant's]

responses to the judge's questioning during the formalistic [plea]

colloquy do not allay our concerns regarding voluntariness."[80]

    The Court agreed there was no plea agreement in Ms. Veloria's

case,[81] but acknowledged the proffer letter was part of plea

negotiations.[82] The trial court misconstrued the proffer letter as

being the same as a plea bargain under Rule 11, and declined to

---

[78] *United States v. Adams*, 634 F.2d 830 (5th Cir. 1981).

[79] *Id.* at 841-42; *United States v. Barrett*, 982 F.2d 193 (6th Cir. 1992).

[80] *United States v. Anderson*, 993 F.2d 1435 (9th Cir 1993).

[81] Transcript Vol. 3, P 35.

[82] Transcript Vol. 3, P 35.

29

permit the defendant to rescind her proffer letter under the trial
court's interpretation that Ms. Veloria waived certain rights and
could not rescind them, based on the wording in the proffer letter.[83]

The record reflects the court's participation occurred during a
settlement conference,[84] that the court's participation occurred in
chambers with no record,[85] that the meeting between Judge Kurren
and Ms Veloria in chambers was not attended by the prosecutor,[86]
or court-appointed counsel, and the proffer was not signed until
Judge Kurren told Ms. Veloria to co-operate with the government.[87]
The record reflects the court's participation occurred at the meeting
between Ms. Veloria and Judge Kurren in chambers with no record,
on August 28, 2001, and the proffer was signed on September 3,
2001.[88]

---

[83] Transcript Vol. 3, P 35-37.

[84] Transcript Vol. 2, P 51.

[85] Transcript Vol. 2, P 51.

[86] Transcript Vol. 3, P 65.

[87] Transcript Vol. 2, P 50-51.

[88] Transcript Vol. 2, P 50-51.

At the time of the proffer letter,[89] the court was prohibited from participating in plea discussions.[90] Five days before the proffer was signed[91] court-appointed defense counsel, Alex Silvert, took his client, Ms. Veloria, to Magistrate Judge Barry Kurran's chambers,[92] where she was encouraged by the Court to sign the proffer letter and participate in the debriefing.[93]

The Court inquired of Mr. Ling, Ms. Veloria's trial counsel, what prejudice resulted from the meeting if Ms. Veloria did not plead guilty.[94] Mr. Ling explained the Court influenced Ms. Veloria to sign the proffer letter, that it was not voluntary and knowing, and

---

[89] September 3, 2001. (Transcript Vol. 2, P. 50, L 23; P. 51, L 8)

[90] Rule 11(e)(1) "the attorney for the government and the attorney for the defendant . . . may engage in discussions with a view toward reaching a[ ] [plea] agreement," and that the district court "shall not participate in any such discussions." Fed. R. Crim. P. 11(e)(1); (Now Rule 11(c)(1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. . .).

[91] August 28, 2001. (Transcript Vol. 2, P. 51, L 3)

[92] (Transcript Vol. 2, P. 51, L 2-5)

[93] (Transcript Vol. 2, P. 48, L 2-14; P. 49, L 21 – P. 50 L 10)

[94] (Transcript Vol. 2, P. 50, L 14-20; P. 51, L 12 – P. 52 L 2)

31

Ms. Veloria was moving to rescind the proffer letter.[95]

<u>Ms. Veloria was denied her constitutional right to present a</u> <u>complete defense</u>. Ms. Veloria's constitutional rights under the Fifth and Sixth Amendments, right to due process, right to fundamental fairness, right to jury trial, right to confront accusers, right to cross examine witnesses, right to testify, right to have witnesses and evidence for her defense, right to counsel, and equal rights, were violated under judicial constraints imposed as the result of the proffer letter that part of the plea negotiations, under the pretext of enforcing contract law to supplant substantive rights, indicating her substantive rights were waived by implication. Ms. Veloria was deprived of her Fifth Amendment due process right to a fair trial and Sixth Amendment right to present a defense.

<u>Ms. Veloria was denied her constitutional right to effective</u> <u>assistance of counsel</u>;  and,  <u>Ms. Veloria's constitutional rights were</u> <u>violated when she was denied the right to present witnesses for the</u> <u>defense</u>.

The court's interpretation of the proffer letter effectively

----

[95] (Transcript Vol. 2, P. 51, L 12 – P. 52 L 2)

handcuffed defense counsel, "I feel like I'm bound" "I have one arm

tied behind my back or maybe two arms."[96]  Defense counsel could

not call witnesses for the defense,[97]  and could not effectively cross

examine the government's witnesses,[98] counsel was holding back

because of the proffer letter,[99] the court stated it was designed to

hold you back,[100] defense counsel stated he didn't know what the

boundaries were.[101]  Counsel's restraint of trade causing ineffective

representation, was from fear of the proffer letter coming in[102] and

fear of potentially new charges being filed against his client.[103]

The Court's threat that defense counsel's cross examination

––––––––––––––––––

[96] Transcript Vol. 2, P 150, L 1-6; P 155, L 10-14.

[97] Transcript Vol. 2, P 194, L 11-21.

[98] Transcript Vol. 2, P 194-200; P 29-32.

[99] Transcript Vol. 2, P 34, L 6-15; Vol. 2, P32, L 8-16.

[100] Transcript Vol. 2, P 34, L 16-21.

[101] Transcript Vol. 2, P 34, L 22-25.

[102] Transcript Vol. 2, P 47, L 12-13.

[103] Transcript Vol. 2, P 17, L 1-5; Vol. 3, P 8, L 1-12; Vol. 3, P 20, L 16-25.

could potentially open the door, [104] and the plea negotiation proffer letter could come in, [105] along with the potential for additional criminal charges, [106] effectively handcuffed defense counsel, and restrained defense counsel from the free exercise of his effective defense advocacy, [107] This denied Ms. Veloria her constitutionally guaranteed right to effective representation, notwithstanding defense counsel Winston Ling's impeccable integrity, knowledge, experience, and competence. [108]

## USURPATION OF UN-DELEGATED POWERS

If a proffer has no other purpose than to chill assertion of constitutional rights by penalizing those who choose to exercise them, then is it patently unconstitutional.

---

[104] Transcript Vol. 2, P 30, L 2-21.

[105] Transcript Vol. 2, P 29, L 15-25.

[106] Transcript Vol. 2, P 17, L 1-16.

[107] Transcript Vol. 2, P 34, L 6-15.

[108] See *United States* v. *Dortch*, 5 F.3d 1056, 1069 (CA7 1993) ("Just as the defendant must choose whether to protect the proffer statements by not taking the stand, the defendant must choose whether to protect the proffer by carefully determining which lines of questioning to pursue with different witnesses"), cert. pending *sub nom. Suess* v. *United States*, No. 93-7218.

Ms. Veloria's case clearly demonstrates the intentional prejudice to the defendant affecting substantial rights, by the prosecutor's design and use of proffer letters that offer nothing to the defendant, require the defendant to forfeit substantial rights, and usurps the un-delegated authority of specific powers reserved to the other two branches of government.

Congress and the Judiciary ordinarily defer to the Executive's "prosecutorial discretion."[109] However, under certain circumstances the doctrine of separation of powers, rather than requiring judicial deference to the Executive's prosecutorial decision-making, permits the courts to assert their own constitutionally granted right to "say what the law is."[110]  As a result, courts may, without violating separation of powers, consider *sua sponte* legal arguments not specifically advanced by counsel.

Congress must have understood that the judicial system's interest in candid plea discussions would be threatened by recognizing waivers under Rules 410 and 11(e)(6). See ABA

[109] *See* U.S. CONST. Art. II, § 3 (stating that the President shall "take Care that the Laws be faithfully executed").

[110] *Marbury v. Madison*, 5 U.S. 137, 177 (1803).

Standards for Criminal Justice 14-3.4, commentary (2d ed. 1980) (a
rule contrary to the one adopted by Congress "would discourage
plea negotiations and agreements, for defendants would have to be
constantly concerned whether, in light of their plea negotiation
activities, they could successfully defend on the merits if a plea
ultimately was not entered").

There is, indeed, no indication that Congress intended merely
a regime of such limited openness as might happen to survive
market forces sufficient to supplant a default rule of inadmissibility.
Nor may Congress be presumed to have intended to permit waivers
that would undermine the stated policy of its own Rules.[111]

In Ms. Veloria's case it appears the policy endorsed by the
court and the prosecutor is not the policy that Congress intended
when it enacted the Rules.[112]  Under separation-of-powers doctrine,

---

[111] *Brooklyn Savings Bank* v. *O'Neil*, 324 U.S. 697, 704, 89 L. Ed.
1296, 65 S. Ct. 895 (1945) ("Where a private right is granted in the
public interest to effectuate a legislative policy, waiver of a right so
charged or colored with the public interest will not be allowed where
it would thwart the legislative policy which it was designed to
effectuate").

[112] See *Touche Ross & Co.* v. *Redington*, 442 U.S. 560, 578, 61 L. Ed.
2d 82, 99 S. Ct. 2479 (1979) ("The ultimate question is one of
congressional intent, not one of whether this Court thinks that it

neither branch of government may sub-delegate any of the powers specifically reserved to their branch of government to either of the other two branches, nor can either branch of government usurp any of those powers specifically reserved to either of the other two branches of government.[113]

Under anti-abdication principle or "non-delegation doctrine", the court has unanimously invalidated legislation in which Congress delegated "to others the essential legislative functions with which it is . . . vested,"[114] and it has read other statutes narrowly to avoid annulling them as excessive abdications of constitutional responsibility.[115]

---

can improve upon the statutory scheme that Congress enacted into law").

[113] *J. W. Hampton, Jr., & Co.* v. *United States*, 276 U.S. 394, 406, 72 L. Ed. 624, 48 S. Ct. 348 (1928) (Taft, C. J.) ("It is a breach of the National fundamental law if Congress gives up its legislative power and transfers it to the President, or to the Judicial branch, or if by law it attempts to invest itself or its members with either executive power or judicial power").

[114] *A. L. A. Schechter Poultry Corp.* v. *United States*, 295 U.S. 495, 529, 79 L. Ed. 1570, 55 S. Ct. 837 (1935); *id.*, at 553-554 (Cardozo, J., concurring).

[115] see *Industrial Union Dept., AFL-CIO* v. *American Petroleum Institute*, 448 U.S. 607, 646, 65 L. Ed. 2d 1010, 100 S. Ct. 2844

What Congress cannot sub-delegate, cannot be garnered by usurpation. The proffer letter in Ms. Veloria's case appears to be an intentional usurpation of un-delegated authority of both the Congressional and Judicial powers by the Executive branch of government, and intentionally usurping defendant's substantial constitutional and statutory rights.

The ability of the federal courts to invalidate enactments of a co-equal branch of government is a potent weapon. Accordingly, the United States Supreme Court has concluded that invalidation must be used sparingly to avoid judicial dismemberment of congressional legislation.[116] However, federal court's have a duty to safeguard the

---

(1980) (plurality opinion); *National Cable Television Assn., Inc.* v. *United States*, 415 U.S. 336, 342, 39 L. Ed. 2d 370, 94 S. Ct. 1146 (1974). See also *Industrial Union Dept., supra*, at 672-676 (REHNQUIST, J., concurring in judgment) (discussing limits on the delegation of Congress's legislative power).

[116] *See NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 511 (1979) (Brennan, J., dissenting). *See also United States v. Raines*, 362 U.S. 17, 21 (1960) (Court will never anticipate a question of constitutional significance before being forced to decide it); *Blodgett v. Holden*, 275 U.S. 142, 147-48 (1927) (separate opinion of Holmes, J.) ("to declare an Act of Congress unconstitutional . . . is the gravest and most delicate duty that this Court is called on to perform."); *Grenada County Supervisors v. Brogden*, 112 U.S. 261, 269 (1884) (courts should not assume Congress intended to violate Constitution).

rights of the criminal defendant, and the court's are free to use their supervisory powers to deter prosecutorial misconduct.

The proffer letter in Ms. Veloria's case appears intentionally designed to usurp judicial and legislative powers while striping the defendant, Ms. Veloria, of her constitutional and statutory rights to the fundamental fairness of a meaningful opportunity to present a defense, while preventing the court from safeguarding her rights.

## COURT'S SUPERVISORY POWER

The supervisory power has been used countless times to deter myriad instances of prosecutorial misconduct.[117]  In our criminal justice system, a prosecutor "is both an administrator of justice and an advocate. . . . [His] duty . . . is to seek justice, not merely to convict."[118]  The supervisory power is an appropriate vehicle for insuring that a prosecutor carries out his ethical obligations.[119]

The prosecutor's motives in the present case appear to be

---

[117] *See e.g., United States v. Leslie*, 759 F.2d at 371 (citing several examples of use of supervisory power over prosecutors).

[118] I ABA, *Standards for Criminal Justice* 3-1.1(b) & (c) (1980); *see also Berger v. United States*, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935).

[119] *See e.g., United States v. Serubo*, 604 F.2d 807, 818 (3d Cir. 1979).

apparent when the proffer is compared with another case, and the

prosecutor disclosed in that case the trial court's error in the

present case.

> "The Government contends first that the plea bargain
> agreement was nothing more than an offer of unilateral
> contract and as such did not impose any binding
> obligations on the Government until the defendant
> "accepted" by his timely entry of a guilty plea; the
> Government argues that until the defendant's entry of a
> plea under the agreement, the Government was free to
> withdraw its offer at any time for any reason."[120]

Ms. Veloria's motion to rescind the proffer letter, and suppress

the statement, provided notice to the trial court, and opportunity for

the trial court to exercise its duty to safeguard the rights of the

criminal defendant.

That is precisely the reason that supervisory power could have

been used to return to the defendant her constitutional and

statutory rights.

Any argument that the supervisory power is not appropriate

on the facts of this case because this case involves use of the power

against the executive branch -- namely, the prosecutor -- rather

than against a judicial officer is unpersuasive. The supervisory

---

[120] *United States v. Mozer*, 828 F. Supp. 208 (SDNY 1993).

40