IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff - Respondent<br><br>v.<br><br>ALICIA VELORIA,<br>    Defendant - Movant | CR No.  00-00145 SOM<br>Civil No.  08-1950 SOM<br><br><br><br>MEMORANDUM IN SUPPORT OF MOTION<br>FOR RELEASE ON BOND PENDING<br>DECISION OF § 2255 MOTION |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

NOW COMES, the Defendant - Movant, Alicia Veloria and respectfully moves the Honorable Court for an Order staying the execution of her sentence and allowing her to be released pending a resolution of and any remedies resulting from the claims filed within her Motion under 28 U.S.C. § 2255.

In support of this Motion, Defendant - Movant submits Exhibits A - G and states as follows:

### I. BACKGROUND

On April 13, 2000, Defendant - Movant was indicted in the District of Hawaii while residing in Anchorage, Alaska and was subsequently released on October 2, 2000 on a $5,000.00 unsecured Appearance Bond and instructed to appear in court on October 10, 2000 in the District of Hawaii, to which Defendant - Movant complied.  (See Exhibits A and B)

On October 10, 2000, District of Hawaii Judge Susan Oki Mollway maintained the release conditions previously set by the District of Alaska and allowed Defendant - Movant to maintain residence in Anchorage, Alaska during her pre-trial release.

In addition to Defendant - Movant's trip to Hawaii for her initial appearance, she sought permission from Judge Mollway and travelled back to

Hawaii three more times, the last one having been for the commencement of trial on June 3, 2003. Defendant - Movant also sought permission to visit her father on the island of Hawaii while on pre-trial release. (See Exhibit C)

Closing arguments in this case took place on June 6, 2003 and one week later, on June 13, 2003, the jury delivered a guilty verdict on Count 1. Upon the Government's Motion to Detain Defendant Pending Sentencing, Defendant - Movant was immediately taken into custody.

On November 3, 2003, Defendant - Movant was sentenced to a term of ninety - seven (97) months. Pursuant to an **Ameline** remand, Defendant - Movant was resenteced to the same enhanced sentence of ninety - seven months on April 10, 2006. On December 12, 2006 the Ninth Circuit Court of Appeals affirmed the Defendant - Movant's sentence and a Writ of Certciorari was denied in April of 2007.

On December 26, 2007, Defendant - Movant filed a Motion under 28 U.S.C. § 2255 challenging her conviction with claims of ineffective assistance of counsel and the intentional withholding of critical exculpatory material by the prosecution.

## II. ARGUMENT

Although the practice is not explicity authorized by statue or rule, "there is abundant authority that federal district judges in habeas corpus and section 2255 proceedings have inherent power to admit applicants to bail pending the decision of their cases." **Cherek v. United States**, 767 F. 2d 335, at 337 (7thCir. 1985); **Blair v. McCarthy**, 881 F.2d 602, at 603 (9thCir. 1989).

18 U.S.C.A. Section 3143(b) sets forth the standard to be applied in determining whether to stay a sentence. A stay should be granted

VELORIA'S MEMORANDUM IN SUPPORT FOR RELEASE ON BOND          PAGE TWO

where the defendant shows:

    (A)    by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under § 3142(b) or (c) of this title; and

    (B)    that the appeal is not for the purposes of delay and raises a substantial question of law or fact likely to result in:

        (i)     reversal;
        (ii)    an order for a new trial;
        (iii)   a sentence that does not include a term of imprisonment; or
        (iv)    a reduced sentence to a term of imprisonment less that the total of the time already served plus the expected duration of process.

It is important to note that this same Defendant - Movant, Alicia Veloria, has been arrested twice for these same charges. For purposes of demonstrating that Alicia Veloria is not a flight risk or a danger to the community. Defendant - Movant was first arrested and charged by the State of Hawaii on December 18, 1996. This first prosecution was dismissed on January 15, 1997 by the State on its Motion to Dismiss Without Prejudice. The State Court granted the Dismissal over the objection of Defendant.

About five months later on June 30, 1997, a Complaint was filed against Alicia Veloria in the Third Circuit Court (CR 97-203). Ms. Veloria signed a Waiver of Indictment on the same charges July 16, 1997. However, it was not until May 20, 1998 that the State filed its Motion for Nolle Prosequi Without Prejudice. Defendant - Movant remained in the state of Hawaii for approximately one year and four months until she left for Alaska to pursue her college education and to care for her ailing grandmother, who soon passed away the following year in February, 2000.

The suggestion that since the Defendant - Movant has now been convicted and should, therefore, be considered a flight risk is not pursuasive. It is clear that the Defendant - Movant has <u>never</u> made any attempt to avoid prosecution at any time since the Jully 10, 1996 offense

VELORIA'S MEMORANDUM IN SUPPORT FOR RELEASE ON BOND        PAGE THREE

of which the jury on June 13, 2000 found her guilty. Exhibit D attached demonstrates Defendant - Movant's intent to see her case through until final disposition.

The record clearly shows that during the near seven year period between the offense and conviction, Defendant - Movant has appeared in State Court to answer this charge on many occasions. On July 16, 1997, she demonstrated her compliance by waiving indictment for the State to proceed in Circuit Court for the Third Circuit after state prosecutor had dismissed the charge on January 15, 1997. Here it is clear that the Defendant - Movant awaited the disposition of her case and on appearance on May 20, 1998, the State prosecutor once again moved the Court to dismiss the charge against Defendant - Movant citing that the case would be prosecuted in another forum.

At that point in May, 1998 Defendant - Movant was advised by counsel that the "Feds" would be indicting her any day.

However, a federal indictment was not issued until nearly two years later on April 13, 2000, by which time Defendant - Movant had moved to Anchorage, Alaska where she had established residency and was an active member of the community.

This Court cannot ignore all the numerous occasions which Defendant - Movant Veloria would have made, but did not make, an attempt to avoid prosecution, had that be her intent. It is also clear that the Government and the Court did not ever perceive or consider Ms. Veloria a "flight risk" throughout her two year and eight month pre-trial release. It is probably more evident by the Government's near four year delay in seeking indictment for this offense that Ms. Veloria was never considered to be a "threat to the community".

The Supreme Court has held that extensive records of arrests and ensuing court appearences may also establish reliablity in determining whether court appearences will be met. "[E]ach accused is entitled to any benefits due his good record." Stack v. Boyle, 342 U.S. 1 at 9 (1951); "Consistent appearence when flight is possible is an important indicator of whether a defendant is likely to appear once again." Wood v. United States, 391 F. 2d 981, 984 (D.C.Cir. 1968).

THE APPEAL FILED IS NOT FOR THE PURPOSE OF DELAY. Defendant - Movant declares her § 2255 Motion was not filed for the purpose of delay. The § 2255 Motion indeed raises a "substatial question of law or fact" within the meaning of 18 U.S.C. § 3143(b). A substantial question may be raised by an issue even where the Court has previously denied the motion or legal challenge. In the Ninth Circuit, "substantial question" is one that is "fairly debatable" or "fairly doubtful". See United States v. Handy, 761 F. 2d 1279, 1281 (9thCir. 1985).

Defendant - Movant's § 2255 Motion presents a "substantial question" as to the constitutionality of her detention and demonstrates herein "that a denial of bail could leaver [her] without remedy" given how much time will be expended in adjudicating [her] substantial claims. Hilton v. Braunskill 481 U.S. 770, at 777-78 (the less time that remains on prisoner's sentence, the stronger his interest in release pending further adjudication); LaFrance v. Bohlinger, 487 F.2d 506, 507 (1stCir. 1973)(release pending appeal approved because petitioner "had served much, possibly most of his sentence," and "requiring him to serve...more...would be too harsh").

Included below are Claims One and Two of Defendant - Movant's § 2255 Motion demonstrating the withholding of exculpatory material, violating Defendant - Movant's Due Process rights and the Supreme Court's ruling in Brady v. Maryland, 373 U.S. 83 (1963). All exhibits mentioned within

VELORIA'S MEMORANDUM IN SUPPORT FOR RELEASE ON BOND                    PAGE FIVE

these two claims can be viewed by accessing the 49 exhibits in support of Defendant - Movant's § 2255 Motion.

### CLAIM NUMBER 1

**EXCULPATORY POLICE REPORT WITHHELD FROM DEFENSE RESULTING IN A VIOLATION OF MS. VELORIA'S FIFTH AMENDMENT DUE PROCESS RIGHTS AND HER SIXTH AMENDMENT RIGHT TO CONFRONTATION**

Pursuant to Local Rule 16.1 in the District of Hawaii, there is a standing order for routine discovery in criminal cases.

Local Rule 16.1 (a) orders the Government to provide to a defendant information which falls into any of 10 different subparagraphs, within seven (7) days after arraignment.

Specifically, Crim LR 16-1 (a) 7 orders the Government to provide the following discovery to a criminal defendant:

Brady material, as it shall be presumed that defendant has made a general *Brady v. Maryland*, 373 U.S. 83 (1963) request.

Therefore, the Government was required to provide Ms. Veloria with a copy of exhibit 28 within seven (7) days of her arraignment, which occurred on October 10, 2000. The intentional withholding of exhibit 28 prejudiced Ms. Veloria during pre-trial, trial and on direct appeal.

In May of 2007, Ms. Veloria mailed a Freedom of Information and Privacy Act request to the chief of police, Hawaii Police Department, requesting "All police reports relating to [the] arrest on July 10, 1996, having a master report number of F-00877." After sending payment of

$25.40 for fees in relation to said FOIA request, a manila envelope was mailed to Ms. Veloria, at Carswell Federal Medical Center.

Among the copies of the various police reports received on 7/3/2007,[47] Ms. Veloria discovered a report written by Steven Correia on 7/13/1996, containing information which would have been considered exculpatory and of great use to Ms. Veloria in her criminal trial (See Exhibit 28). This police report had never before been disclosed.

Ms. Veloria was first charged for offenses relating to this arrest by the State of Hawaii in 1996. Ms. Veloria retained private attorney Brian J. Delima to represent her. Pursuant to the state prosecution of this case, Ms. Veloria was given copies of all documents within her file through Mr. Delima. Steven Correia's police report was not within said discovery packet.

Four years later, Ms. Veloria was federally indicted, arrested and given pretrial release. Ms. Veloria immediately sent (via FedEx) a copy of the state discovery, provided to her four years prior in the state case, to the Federal Public Defender's Office.[48] When Mr. Silvert (F.P.D.) received discovery from AUSA Mr. Brady, he kindly forwarded a copy to Ms. Veloria for her records and asked her whether there appeared to be anything additional within the federal discovery. Ms. Veloria responded by mailing Mr. Silvert a letter comparing both state and federal discovery, listing additional and/or missing items from both sets of documents.[49] However, STEVEN CORREIA'S REPORT DID NOT APPEAR IN EITHER FEDERAL OR STATE DISCOVERY.

June of 2007 is the first time Ms. Veloria has ever viewed the police report written by Steven Correia. This police report establishes that the Hawaii Police Department and the

---

[47] It should be noted that Ms. Veloria initially received a redacted version of the report, with some of the critical descriptive information excised, HPD citing "invasion of personal privacy" as their reason for excision.
[48] This can be verified by records within defense counsel's files, as well as the cover letter itself (in Ms. Veloria's possession) sent with the packet.
[49] A copy of the letter containing the list is available upon request.

Government both were in possession of information that established another female suspect in this case related to the drugs recovered from the house at 69 Mauna Loa Street on 7/10/1996.

It should also be noted that this exculpatory police report was written on 7/12/1996, three days after the search of the house; unlike the other inculpatory reports suspiciously written more than four months later, on 11/12/1996 (See Exhibit 1).

Throughout trial, in an attempt to shift suspicion from the three males arrested with Ms. Veloria at 69 Mauna Loa Street, the Government repeatedly elicited testimony regarding the female clothes in "bedroom #1,"[50] which is the room found to have contained the cocaine base. Additionally, on several occasions, testimony was placed before the jury by the Government which is contradictory to the information contained within Steven Correia's police report. An example of such testimony is when the Government posed the following question to Sam Thomas: "Now, do you have any intelligence that someone other than Ms. Veloria was living at 69 Mauna Loa Street?" The response given by the chief investigator in the case was "No."[51]

Not only is this testimony contradictory to evidence recovered from the house at 69 Mauna Loa Street,[52] it directly conflicts with the police report routed to S. Thomas, written by an officer who was present during the search of said house (See Exhibit 28).

The Supreme Court ruled in *Kyles v. Whitely*,[53] that undisclosed evidence favorable to an accused is material and results in Constitutional error when there is a "reasonable probability" that if the evidence had been disclosed to the defense, the results of the proceeding would have been different. In their opinion, the Court specifically stated, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the Government's behalf in

---

[50] TR 6/4/03, p. 71, L. 9; TR 6/5/03, p. 86, l. 2
[51] TR 6/4/03, p. 70, L. 8
[52] Evidence/property list items: #12, #13, #22, #23; and Exhibit 3 Photographic record items: #11, #17, #24
[53] 514 U.S. 419, 131 L.Ed. 2d. 508

the case, including the police."[54] Additionally, courts have found *Brady* violations when prosecutors were unaware of and consequently did not disclose favorable evidence even though said evidence was withheld from the prosecutor by the police.[55]

Disclosure of this police report would have provided the defense with information which could have been used in pretrial motions. This police report would have afforded the defense an opportunity to weigh the potential testimony of Myles Kurashige for both trial and pretrial hearings.

Steven Correia's police report documents that Mr. Kurashige arrived at 69 Mauna Loa Street and indicated that he was "looking for the tall, skinny girl who lives here." When Steven Correia specifically asked Mr. Kurashige if he was looking for "Alicia," Mr. Kurashige's response was "No." Mr. Kurashige reportedly attempted to purchase marijuana from Steven Correia and was arrested (See Exhibit 28).

This police report would have given the defense two important arguments at trial The first argument is that the Hawaii Police Department was aware that a female (other than Alicia Veloria) was known to live in the house on Mauna Loa Street. The second argument or issue arising from this report is that Mr. Kurashige was seeking "the tall, skinny girl" in hopes of purchasing illegal drugs, and when Steven Correia specifically asked if Mr. Kurashige was looking for Alicia, he indicated he was not. This police report is unquestionably exculpatory and its use to the defense during the trial cannot be denied. This police report effectively establishes another female suspect for the charge for which Ms. Veloria was convicted.

Disclosure of this police report would have resulted in the defense calling Mr. Kurashige as a witness during trial. Additionally, the information contained within the police report would

---

[54] Ibid, at 508
[55] *McMillian v. Johnson*, 88 F. 3d 1554, 1568-69 (11th Cir. 1996)

have allowed the defense to impeach[56] the testimony of Sam Thomas when he stated that the H.P.D. had no information "that someone other than Alicia Veloria was living at 69 Mauna Loa Street." Also, testimony establishing another female suspect would have explained the presence of female clothes in the bedroom in which the cocaine base was found.

Hence, "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[57] There can be no doubt as to this exculpatory police report's value to Ms. Veloria's defense at trial. It is reasonable to consider that the jury may have arrived at a different conclusion after having been given the information contained within Steven Correia's police report.

Courts have previously granted relief for petitioners on a 2255 Motion upon claims of prosecutorial suppression of exculpatory evidence and the withholding of police reports.[58] Additionally, claims of police suppression of evidence have been found to be cognizable on a 2255 Motion and cause for granting relief to petitioners.[59]

Ms. Veloria requests reversal of her conviction and hereby requests an evidentiary hearing into circumstances regarding this withheld police report and to determine whether any additional exculpatory material is within the possession of the Government or the Hawaii Police Department.

## CLAIM NUMBER 2

### COUNSEL FAILED TO OBTAIN POLICE REPORT THEREBY VIIOLATING MS. VELORIA'S FIFTH AMENDMENT RIGHT TO DUE PROCESS OF LAW AND HER SIXTH AMENDMENT RIGHT TO CONFRONTATION AND TO HAVE AFFECTIVE ASSISTANCE OF COUNSEL

---

[56] Steven Correia's police report itself bears the words "I request that this case be left continuing and that a copy of this report be routed to the chief investigator (Detective Thomas) for his review and final disposition."
[57] Kyles v. Whittley, 514 U.S. 419, 434 (1995)
[58] Walker v. Lockhart, 763, F. 2d 942 (8th Cir. 1985); White v. Helling, 194 F. 3d 937 (8th Cir. 1999); U.S. v. Weintraub, 871 F. 2d 1257 (5th Cir. 1989); Boyette v. LeFerve, 246 F. 3d 76 (2nd Cir. 2001)
[59] McDowell v. Dixon, 858 F. 2d 945 (4th Cir. 1988)

Upon receipt and review of the federal discovery documents in November of 2000, Ms. Veloria followed up with a letter to Mr. Silvert pointing out that Detective Sam Thomas' report notes that "a Miles Kurashige attempted to purchase marijuana from vice officer Steven Correia" (See Exhibit 29). Ms. Veloria requested that Mr. Silvert obtain and review this report to weigh its potential exculpatory value to Ms. Veloria's defense.[60]

In June of 2002, Ms. Veloria again wrote a follow-up letter to Emmanuel Guerrero, her then attorney, urging him to "find a man named Miles Kurashige," notifying him that Mr. Kurashige "needs to be called as a witness to testify as to who was dealing out of the house," (See Exhibit 31A). Ms. Veloria also noted within this letter that she had previously "requested that police report several times from Mr. Silvert, but never received it."[61]

In response to a phone conversation Ms. Veloria had with Mr. Guerrero on July 2, 2002, she once again wrote another letter which she faxed to him along with the page of the police report (F-00877) containing Myles Kurashige's name and report number (See Exhibit 31B). Once again Ms. Veloria attempted to draw her attorney's attention to the importance of this missing police report by writing, "This report should be requested prior to trial. We might find something of value."

However, despite Ms. Veloria's continued appeals to her attorneys, Steven Correia's report of arrest of Myles Kurashige at the house at 69 Mauna Loa Street was NEVER requested. Although Ms. Veloria made clear to her defense counsels that she believed this report would contain information which would help her in trial, three different attorneys failed to follow up on

---

[60] P. 4 of letter to F.P.D. Silvert dated 11/7/00
[61] Exhibit 11, letter to Mr. Guerrero, once again shows that Ms. Veloria was insisting that her counsel pursue this issue.

this in preparation for Ms. Veloria's trial. Exhibits 11, 29, 31A and 31B prove that counsel appointed to represent Ms. Veloria intentionally ignored Ms. Veloria's repeated requests.

Disclosure of this police report would have provided the defense with information which could have been used in pretrial motions. This police report would have afforded the defense an opportunity to weigh the potential testimony of Myles Kurashige for both trial and pretrial hearings.

Steven Correia's police report documents that Mr. Kurashige arrived at 69 Mauna Loa Street and indicated that he was "looking for the tall, skinny girl who lives here." When Steven Correia specifically asked Mr. Kurashige if he was looking for "Alicia," Mr. Kurashige's response was "No." Mr. Kurashige reportedly attempted to purchase marijuana from Steven Correia and was arrested (See Exhibit 28).

This police report would have given the defense two important arguments at trial The first argument is that the Hawaii Police Department was aware that a female (other than Alicia Veloria) was known to live in the house on Mauna Loa Street. The second argument or issue arising from this report is that Mr. Kurashige was seeking "the tall, skinny girl" in hopes of purchasing illegal drugs, and when Steven Correia specifically asked if Mr. Kurashige was looking for Alicia, he indicated he was not. This police report is unquestionably exculpatory and its use to the defense during the trial cannot be denied. This police report effectively establishes another female suspect for the charge for which Ms. Veloria was convicted.

Disclosure of this police report would have resulted in the defense calling Mr. Kurashige as a witness during trial. Additionally, the information contained within the police report would have allowed the defense to impeach[62] the testimony of Sam Thomas when he stated that the

---

[62] Steven Correia's police report itself bears the words "I request that this case be left continuing and that a copy of this report be routed to the chief investigator (Detective Thomas) for his review and final disposition."

VELORIA'S MEMORANDUM IN SUPPORT FOR RELEASE ON BOND    PAGE TWELVE

H.P.D. had no information "that someone other than Alicia Veloria was living at 69 Mauna Loa Street." Also, testimony establishing another female suspect would have explained the presence of female clothes in the bedroom in which the cocaine base was found.

Hence, "the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict."[63] There can be no doubt as to this exculpatory police report's value to Ms. Veloria's defense at trial. It is reasonable to consider that the jury may have arrived at a different conclusion after having been given the information contained within Steven Correia's police report.

Ms. Veloria requests that her conviction be vacated.

Defendant - Movant believes the foregoing claims clearly demonstrate that her detention is violative of the rights set forth in the United States Constitution. In deciding to release a convicted defendant pending his appeal, District Judge Young made the following order: "There seems little point to an appeal if the defendant will serve his time before a decision is rendered." **United States v. McManus**, 657 F.Supp 382, at 384. Additionally, the following comment is applicable in Defendant - Movant's case: "If the defendant's conviction is affirmed, he will promptly commence serving his term of incarceration." **McManus, supra.**

Release pending § 2255 proceedings have been ordered especially when claims advanced by petitioners are meritorious. **Baker v. Sard**, 420 F.2d 1343, at 1343-44 (D.C.Cir. 1969) (likelihood of success "itself may supply" "forceful special circumstance").

---

[63] *Kyles v. Whittley*, 514 U.S. 419, 434 (1995)

VELORIA'S MEMORANDUM IN SUPPORT FOR RELEASE ON BOND    PAGE THIRTEEN

III. CONCLUSION

Defendant - Movant now moves this Court for release pending any remedies as a result of the claims advanced within her Motion under 28 U.S.C. § 2255, especially in light of the two point reduction of Cocaine Base penalties calling for retroactive application. As of this date, Defendant - Movant has served nearly her entire term of incarceration.

In the Defendant - Movant's case, if the execution of her sentence is stayed, she will likely have less that five (5) months left to serve in prison (by factoring in earned good-time credit and 10% mandatory half way house placement) if ordered to return to serve the remainder of her term.

Based on the foregoing arguments, thsi Court is respectfully urged to grant Defendant - Movant's Motion to Stay Exectuion of her Sentence pending Appeal under 18 U.S.C. § 3143(b) and release Defendant - Movant upon the conditions previously imposed by this Honorable Court to one of the parties who have submitted affidavits swearing to their desire to take responsibility of being Defendant - Movant's third-party. (See Exhibits E-F).

Since Ms. Veloria is not an attorney and has written this motion Pro Se while incarcerated, this court shall hold her to less stringent standards than formal papers drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).

Dated this 14th day of January, 2008.

Respectfully Submitted,

*Alicia Veloria*
Alicia Veloria, Pro Se
Register Number 14144-006
Federal Medical Center, Carswell
P.O. Box 27137
Ft. Worth TX 76127