ORIGINAL

EDWARD H. KUBO, JR. #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Drug/Organized Crime Section

THOMAS J. BRADY #4472
Assistant U.S. Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii  96850
Telephone:  (808) 541-2850
Facsimile:  (808) 541-2958
tom.brady@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 13 2008

at 11 o'clock and ___min. ___M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALICIA VELORIA,<br><br>        Petitioner,<br><br>     vs.<br><br>UNITED STATES OF AMERICA,<br><br><br><br><br><br><br>        Respondent. | ) CV. NO. 08-00019 SOM/BMK<br>) CR. NO. 00-00145 SOM<br>)<br>) GOVERNMENT'S RESPONSE TO<br>) DEFENDANT'S MOTION UNDER 28<br>) U.S.C. § 2255 TO VACATE, SET<br>) ASIDE, OR CORRECT SENTENCE;<br>) AFFIDAVIT OF ALEXANDER<br>) SILVERT; DECLARATION OF<br>) WINSTON D.M. LING;<br>) EXHIBITS "A" - "D";<br>) CERTIFICATE OF SERVICE<br>)<br>) DATE:  March 31, 2008<br>) TIME:  10:30 a.m.<br>) JUDGE: Susan Oki Mollway<br>)<br>)<br>)<br>) |

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . i - iv

I.  PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . 2

II.  FACTUAL BACKGROUND . . . . . . . . . . . . . . . . 7

III. ARGUMENT . . . . . . . . . . . . . . . . . . . . . 8

    A.  Law Applicable to VELORIA's § 2255 Motion . . . . . . 8

    B.  VELORIA Has Failed to Show That Pre-trial,
        Trial, and Appellate Counsels' Performance
        Was Ineffective . . . . . . . . . . . . . . . . 10

        1.  VELORIA's Pre-Trial Counsel Provided
            Professionally Competent Representation . . . 12

            a.  Failure to Obtain Police Report . . . . . 13

            b.  Failure to Include 'Hampered Litigation'
                Argument in Motion to Suppress Evidence . 14

            c.  Scope of Government's Ability to Use
                VELORIA's Statement at Trial . . . . . . 16

        2.  VELORIA's Trial Counsel Adequately Prepared
            for Trial and Challenged the Government's
            Evidence at Every Opportunity . . . . . . . . 18

            a.  Failure to File Motions and Memoranda . . 18

            b.  Failure to Impeach Witnesses . . . . . . 19

            c.  Failure to Interview Witnesses . . . . . 20

            d.  Miscellaneous Allegations of
                Ineffectiveness . . . . . . . . . . . . 21

        3.  VELORIA's Appellate Counsel Provided
            Professionally Competent Assistance . . . . 22

    C.  VELORIA's Allegations of Prosecutorial Misconduct . 23

        1.  Alleged Failures to Disclose Information . . . 24

            a.  Exculpatory Police Report . . . . . . . . 24

TABLE OF CONTENTS (cont.)

PAGE

      b.   Internal Revenue Service Criminal
           Investigation Special Agent
           Jason Pa's Notes . . . . . . . . . . . 26

      c.   Bolos Diagram . . . . . . . . . . . . . 27

      d.   Exculpatory Rent Receipt . . . . . . . 29

      e.   Ann Barcena . . . . . . . . . . . . . . 30

  2.   The Government Did Not Engage in Selective
      Prosecution . . . . . . . . . . . . . . . . . 32

  3.   There Was No Prejudicial Pre-Indictment Delay 33

  4.   The Government Did Not Mislead the Court
      Regarding Evidence of Prior Bad Acts . . . . . 36

  5.   The Government Did Not Fail to Correct
      False Testimony . . . . . . . . . . . . . . . 36

      a.   Detective Bolos' Testimony Regarding the
           Location of Ignacio Andres . . . . . . 38

      b.   Barcena's Grand Jury Testimony . . . . . 38

      c.   Barcena's Testimony that She Did Not
           Receive Any Deals . . . . . . . . . . . 39

      d.   Barcena's Explanation of the Reduction of
           State Felony Charges to Misdemeanors . . 40

D.  VELORIA's Allegations of Trial Errors . . . . . . . 41

  1.   Court's Failure to Remedy VELORIA's Unknowing
      Waiver . . . . . . . . . . . . . . . . . . . . 41

  2.   Court Failed to Protect VELORIA's Right to a
      Verdict by an Impartial Jury . . . . . . . . . 42

  3.   Court Intentionally Misspelled Case Names and
      Citations . . . . . . . . . . . . . . . . . . 43

TABLE OF CONTENTS (cont.)

PAGE

4.   The Court Improperly Participated in Plea
     Negotiations . . . . . . . . . . . . . . . .   45

5.   The Court Failed to Intervene When Counsel
     was Lacking . . . . . . . . . . . . . . . .   46

6.   The Court Enhanced VELORIA's Sentence Based on
     Facts Not Found by Jury . . . . . . . . . .   47

E.   VELORIA's Miscellaneous Allegations of Error  . . .   48

1.   Denied Application of Safety Valve . . . . . .   48

2.   Unlawful Seizure and Forfeiture of
     VELORIA's Truck . . . . . . . . . . . . . .   48

IV. CONCLUSION  . . . . . . . . . . . . . . . . . . . . .   49

## TABLE OF AUTHORITIES

CASES                                                          PAGE(s)

Allen v. United States,
     164 U.S. 492 (1896) . . . . . . . . . . . . . . . 18

Apprendi v. New Jersey,
     530 U.S. 466, 120 S.Ct. 2348 (2000) . . . . . . . . . . 5

Belmontes v. Woodford,
     350 F.3d 861 (9th Cir. 2003) . . . . . . . . . . 37

Blakely v. Washington,
     542 U.S. 296, 124 S.Ct. 2531 (2004) . . . . . . . . . . 5

Brady v. Maryland,
     373 U.S. 83 (1963) . . . . . . . . . . . . . . 25, 27, 28

Chevron Corp. v. Penzoil Co.,
     974 F.2d 1156 (9th Cir. 1992) . . . . . . . . . . . 42

Hayes v. Brown,
     399 F.3d 972 (9th Cir. 2005) . . . . . . . . . . . 37

In re Seagate Technology, LLC,
     497 F.3d 1360 (Fed. Cir. 2007) . . . . . . . . . . 42

Jones v. Barnes,
     463 U.S. 745 (1983) . . . . . . . . . . . . . . . 22

Lockhart v. Fretwell,
     506 U.S. 364 (1993) . . . . . . . . . . . . . . . 11

Napue v. Illinois,
     360 U.S. 264 (1959) . . . . . . . . . . . . . . . 37

Shah v. United States,
     878 F.2d 1156 (9th Cir. 1989) . . . . . . . . . . . 10

Shaiar v. United States,
     736 F.2d 817 (1st Cir. 1984) . . . . . . . . . . . 9

Strickland v. Washington,
     466 U.S. 668 (1984) . . . . . . . . . . . . 10-12, 19, 23

Tripati v. Henman,
     843 F.2d 1160 (9th Cir. 1988) . . . . . . . . . . . 8

| CASES | PAGE(s) |
|---|---|

United States v. Agurs,
    427 U.S. 97 (1976) . . . . . . . . . . . . . . . 37

United States v. Aichele,
    941 F.2d 761 (9th Cir. 1991) . . . . . . . . . 25, 29-31

United States v. Armstrong,
    517 U.S. 456 (1996) . . . . . . . . . . . . . . 33

United States v. Austin,
    817 F.2d 1352 (9th Cir. 1987) . . . . . . . . . . 12

United States v. Beers,
    189 F.3d 1297 (10th Cir. 1999) . . . . . . . . . 30

United States v. Bergman,
    813 F.2d 1027 (9th Cir. 1987) . . . . . . . . . . 22

United States v. Booker,
    543 U.S. 220, 125 S.Ct. 738 (2005) . . . . . . . . . . 5

United States v. Bracy,
    67 F.3d 1421 (9th Cir. 1995) . . . . . . . . . . 25

United States v. Corona-Verbera,
    509 F.3d 1105 (9th Cir. 2007) . . . . . . . . . . 35

United States v. Currie,
    589 F.2d 993 (9th Cir. 1979) . . . . . . . . . . 48

United States v. Frady,
    465 U.S. 152 (1982) . . . . . . . . . . . . . . 23, 48

United States v. Garcia,
    997 F.2d 1273 (9th Cir. 1993) . . . . . . . . . . 11

United States v. Grewal,
    825 F.2d 220 (9th Cir. 1987) . . . . . . . . . . 12

United States v. Halbert,
    640 F.2d 1000 (9th Cir. 1981) . . . . . . . . . . 22

United States v. Huntley,
    976 F.2d 1287 (9th Cir. 1992) . . . . . . . . . 34, 35

**CASES**                                                        **PAGE(s)**

United States v. Jernigan,
      492 F.3d 1050 (9th Cir. 2007) . . . . . . . . . . .  25

United States v. Johnson,
      988 F.2d 941 (9th Cir. 1993) . . . . . . . . . . .  48

United States v. Kern,
      12 F.3d 122 (8th Cir. 1993) . . . . . . . . . . .  30

United States v. Manning,
      56 F.3d 1188 (9th Cir. 1995) . . . . . . . . . . .  35

United States v. Moore,
      921 F.2d 207 (9th Cir. 1990) . . . . . . . . . . .  11

United States v. Popoola,
      881 F.2d 811 (9th Cir. 1989) . . . . . . . . . . .  12

United States v. Quan,
      789 F.2d 711 (9th Cir. 1986) . . . . . . . . . . 9, 10

United States v. Ratigan,
      351 F.3d 957 (9th Cir. 2003) . . . . . . . . . . .  24

United States v. Redd,
      759 F.2d 669 (9th Cir. 1985) . . . . . . . . 36, 43, 47

United States v. Schaflander,
      743 F.2d 714 (9th Cir. 1984), cert. denied,
      470 U.S. 1058 (1985) . . . . . . . . . . . . . 9, 10, 12

United States v. Sherlock,
      962 F.2d 1349 (9th Cir. 1989) . . . . . . . . . . .  34

United States v. Skurdal,
      341 F.3d 921 (9th Cir. 2003) . . . . . . . . . . .  24

United States v. Smith,
      424 F.3d 992 (9th Cir. 2005) . . . . . . . . . . .  43

United States v. Veloria,
      164 Fed. Appx. 562 (9th Cir. 2005) . . . . . . . 5, 36, 43

United States v. Walker,
      720 F.2d 1527 (11th Cir. 1983) . . . . . . . . . . .  30

iii

| CASES | PAGE(s) |
|---|---|

United States v. Zagari,
    111 F.3d 307 (2d Cir. 1997) . . . . . . . . . . . . . . 31

Veloria v. United States,
    127 S. Ct. 2073 (2007) . . . . . . . . . . . . . . . . 6

Wayte v. United States,
    470 U.S. 598 (1985) . . . . . . . . . . . . . . . . . 33

| RULES AND STATUTES | PAGE(s) |
|---|---|

18 U.S.C. § 3282 . . . . . . . . . . . . . . . . . . . 35

18 U.S.C. § 3553(a) . . . . . . . . . . . . . . . . . . 6

21 U.S.C. § 841 . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . 9

GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION UNDER
28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The United States of America, by its undersigned counsel, hereby responds to Plaintiff ALICIA VELORIA's (hereinafter "VELORIA") Motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence.

I. **PROCEDURAL BACKGROUND**

On April 13, 2000, a grand jury in the District of Hawaii returned a two-count Indictment charging VELORIA with possessing with intent to distribute in excess of five (5) grams of cocaine base (Count 1); and possessing with intent to distribute in excess of 500 grams of cocaine (Count 2).

VELORIA was arrested in Anchorage, Alaska on September 25, 2000. During the Rule 40 proceedings, VELORIA was released and ordered to appear in the District Court for the District of Hawaii. VELORIA was arraigned in the District of Hawaii on October 10, 2000, and the terms and conditions of her pretrial release previously set in the district of her arrest were continued.

VELORIA continued trial numerous times and sought and obtained new court-appointed counsel.[1] On August 30, 2001, the

---

[1] VELORIA's original attorney, First Assistant Federal Public Defender Alexander Silvert was replaced by Emmanuel Guerrero, who was replaced by trial counsel Winston D.M. Ling, who was replaced by Samuel P. King, Jr., who was subsequently replaced by Shawn A. Luiz.

Court heard testimony and argument on VELORIA's motion to suppress evidence. That motion was denied.

A few days later, on September 3, 2001, VELORIA entered into a proffer agreement with the Government in an effort to mitigate her jail time. In an interview with law enforcement on September 3, 2001, VELORIA confirmed that she knowingly and intentionally possessed cocaine base and cocaine as charged in Counts 1 and 2 of the Indictment. Through her attorney, VELORIA agreed to a draft plea agreement and information including both counts of the Indictment.

Ultimately, however, VELORIA informed the Government of her intention to go to trial and sought to suppress her September 3, 2001 statement to law enforcement. VELORIA represented that she believed that her proffered statement could only be used against her at trial if, and only if, she testified at trial contrary to her proffered statement. The Court denied VELORIA's motion to suppress her statement and concurred with the Government that there may be circumstances in which the Government could introduce VELORIA's statement at trial.[2]

---

[2] The Government sought unsuccessfully at trial to introduce VELORIA's statement given VELORIA's opening statement and vigorous cross-examination of Government witnesses.

Trial commenced on June 3, 2003.  PSR at ¶ 29.  On June 13, 2003, the jury found VELORIA guilty as to Count 1 of the Indictment, pursuant to 21 U.S.C. § 841, and not guilty as to Count 2 of the Indictment.  PSR ¶ 30.

On August 18, 2003, VELORIA filed a Motion for New Trial as to Count 1.  VELORIA argued that the Court should grant a new trial because the Court erred when it did not question all jurors as to a "heated argument" which arose during jury deliberations.  The Court denied the motion.

On November 3, 2003, VELORIA appeared before United States District Court Judge Susan Oki Mollway for sentencing. During the hearing, the Court adopted the Sentencing Guidelines calculations as set forth in the Pre-Sentence Report ("PSR")[3], and found VELORIA responsible for relevant conduct of approximately 22.6 grams of cocaine base (Count 1), as well as the acquitted conduct, to wit, 539.8 grams of cocaine (Count 2). After conversion, VELORIA was held accountable for 559.96 kilograms of marijuana.  PSR ¶ 39.  Based upon the drug quantities, the district court calculated a base offense level of 28.  PSR ¶ 41.  In addition, the Court found, by a preponderance of the evidence, a two-level upward adjustment for obstruction of

---

[3]    "PSR" refers to the Presentence Investigation Report which was prepared on September 12, 2003 and revised on October 17, 2003.  A copy of the sealed Presentence Investigation Report will be filed under separate cover.

4

justice.  PSR ¶¶ 41, 45.  VELORIA's total offense level was
assessed at 30, criminal history category of I, with a guideline
range of 97 to 121 months imprisonment.  PSR ¶ 80.

Following lengthy and significant argument from the
parties, the Court sentenced VELORIA to 97 months of
imprisonment, well below the statutory maximum of 40 years
imprisonment pursuant to the count of conviction (Count 1).

VELORIA appealed on several grounds including an
argument that her sentence was unconstitutional pursuant to the
Supreme Court's decision in Blakely v. Washington, 542 U.S. 296,
124 S.Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 466,
120 S.Ct. 2348 (2000).

On December 7, 2005, the Ninth Circuit affirmed
VELORIA's conviction.  See United States v. Veloria, 164 Fed.
Appx. 562 (9th Cir. 2005).  After affirming the conviction, the
Ninth Circuit remanded VELORIA's sentence to this Court to
determine whether VELORIA's sentence would have been different
had the Court known that the Guidelines were advisory.

Subsequent to the decision of the United States Supreme
Court in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738
(2005), the Court re-sentenced VELORIA on April 10, 2006.
Following briefing by the parties and oral arguments, the Court
calculated the advisory Guidelines offense level in precisely the
same fashion as it did during VELORIA's original sentencing in

2003.  After considering the Guidelines and all other relevant sentencing factors pursuant to 18 U.S.C. § 3553(a), the Court again determined that a reasonable sentence for VELORIA was 97 months of imprisonment, given the nature and degree of her criminal conduct.

On April 18, 2006, VELORIA filed a Notice of Appeal alleging that the Court improperly used facts not found by the jury in determining the advisory Guideline range, thereby violating VELORIA's Fifth and Sixth Amendment rights.  In an unpublished opinion decided December 4, 2006, the Ninth Circuit rejected all of VELORIA's arguments and affirmed this Court's conviction and sentence.  The Supreme Court denied certiorari on April 16, 2007.  See Veloria v. United States, 127 S. Ct. 2073 (2007).

On December 26, 2007, VELORIA filed the instant motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, in the United States District Court for the District of Hawaii. On January 9, 2008, VELORIA filed a 207-page Memorandum in support of her § 2255 motion and raised approximately 49 points of error, including but not limited to, ineffective assistance of at least three prior counsel.

In order to respond to VELORIA's motion, the United States filed a Motion for Order Finding Waiver of Attorney-Client

Privilege with Respect to VELORIA's § 2255 Motion, which the
Court granted on January 10, 2008.

## II.  **FACTUAL BACKGROUND**

On July 9, 1996, Hawaii County Police Department
("HCPD") officers, based on information provided by a cooperating
informant that VELORIA was selling cocaine from her residence,
obtained a warrant to search VELORIA's residence located at 69
Mauna Loa Street, Hilo, Hawaii.  PSR ¶ 8.  On July 10, 1996,
officers executed the search warrant and recovered, among other
items, marijuana, cocaine, and cocaine base.  PSR ¶¶ 8-9, 11.
VELORIA, along with Zachary Smith and another male were present
during the search of the residence and were all arrested.
PSR ¶ 12.  During the execution of the search warrant, a third
male approached VELORIA's residence and asked to purchase
marijuana from a HCPD officer.  PSR ¶ 12.  This individual was
also arrested.  PSR ¶ 12.  All arrested individuals were released
from police custody on July 10, 1996, pending further
investigation.  PSR ¶ 12.

On November 19, 1996, HCPD officers received
information from a confidential informant indicating that VELORIA
had a large amount of cocaine which she offered to sell from her
vehicle, described as a turquoise-colored Ford pickup truck.  PSR
¶ 13.  On November 22, 1996, three HCPD officers were returning
to the Hilo Police Station from an unrelated assignment when they

7

observed VELORIA's truck parked in the parking lot of the Keaau

Ballpark.  PSR ¶ 14.  Officers also observed a light blue

Volkswagen pull up and park next to VELORIA's truck.  PSR ¶ 14.

The driver of the Volkswagen, later identified as Wallace Iaukea,

exited his vehicle, entered, and sat in the passenger seat of

VELORIA's vehicle.  PSR ¶ 14.  Officers approached VELORIA and

asked her if they could search her vehicle.  PSR ¶ 14.  VELORIA

declined to consent to a search of her vehicle, but agreed to

have a narcotic detection canine screen the vehicle.  PSR ¶ 14.

As the narcotic detection canine approached the passenger side of

the vehicle, VELORIA ran around the truck and attempted to push

the passenger door closed.  PSR ¶ 15.  Officers impounded

VELORIA's truck after the narcotic detection canine alerted to

the vehicle.  PSR ¶ 15.  On November 23, 1996, a search warrant

was issued and executed on VELORIA's truck.  PSR ¶ 16.  During

the search, officers recovered, among other items, a plastic bag

containing a large amount of cocaine and an amount of marijuana.

PSR ¶¶ 16-17.

## III. __ARGUMENT__

    A.   <u>Law Applicable to VELORIA's § 2255 Motion</u>

       VELORIA petitions this Court to vacate her sentence and

reverse her conviction.  A federal prisoner may collaterally

attack the legality of her conviction or sentence by filing a

motion pursuant to 28 U.S.C. § 2255.  <u>See</u> <u>Tripati v. Henman</u>, 843

F.2d 1160, 1162 (9th Cir. 1988).  A district court may grant
relief under § 2255 if it determines that "the judgment was
rendered without jurisdiction, or that the sentence imposed was
not authorized by law or otherwise open to collateral attack, or
that there has been such a denial or infringement of the
constitutional rights of the prisoner as to render the judgment
vulnerable to collateral attack."  28 U.S.C. § 2255.  Section
2255 provides that a court shall hold an evidentiary hearing on a
prisoner's § 2255 motion "unless the files and records of the
case conclusively show that the prisoner is entitled to no
relief."  28 U.S.C. § 2255.  Under Ninth Circuit law, the
standard for an evidentiary hearing is whether the prisoner has
made specific factual allegations, which if true, state a claim
on which relief can be granted.  United States v. Schaflander,
743 F.2d 714, 717 (9th Cir. 1984), cert. denied, 470 U.S. 1058
(1985).

        The allegations of the prisoner need not be accepted as
true to the extent they are contradicted by the record in the
case.  United States v. Quan, 789 F.2d 711, 715 (9th Cir. 1986);
Shaiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984).  In
addition, no hearing is required where the movant's allegations,
when viewed against the records, either fail to state a claim for
relief or are so palpably incredible as to warrant summary

9

dismissal.  <u>Shah v. United States</u>, 878 F.2d 1156, 1158 (9th Cir.
1989); <u>Schaflander</u>, 743 F.2d at 717; <u>Quan</u>, 789 F.2d at 715.

> B.    VELORIA Has Failed to Show That Pre-trial, Trial, and
>       <u>Appellate Counsels' Performance Was Ineffective</u>

VELORIA contends that her pre-trial, trial, and
appellate counsel were ineffective for numerous reasons,
including but not limited to alleged failures to conduct
interviews, cross-examine witnesses, challenge the Government's
evidence and challenge the Government's alleged non-compliance
with Rule 16.  All of VELORIA's allegations of ineffective
assistance of counsel are frivolous, lack merit, and should be
dismissed without a hearing.

The Supreme Court in <u>Strickland v. Washington</u>, 466 U.S.
668 (1984), enunciated the standard for judging a criminal
defendant's contention that the Constitution requires a
conviction to be set aside because counsel's representation of
defendant was ineffective.  To obtain a reversal of conviction
the defendant must satisfy the two-prong test established by
<u>Strickland</u>.  First, the defendant must show, considering <u>all</u> the
circumstances, that counsel's performance fell below an objective
standard of reasonableness.  <u>Id.</u> at 687.  Second, the defendant
must affirmatively prove prejudice.  <u>Id.</u>

To show that counsel's performance fell below an
objective standard of reasonableness, the defendant must identify
the acts or omissions of counsel that are alleged not to have

been the result of reasonable professional judgment.  Id. at 690.
The court must then determine whether in light of all the
circumstances, the identified acts or omissions were outside the
wide range of professionally competent assistance.  Id.  In
making that determination, the court should keep in mind that
counsel's function, as elaborated in prevailing professional
norms, is to make the adversarial testing process work in the
particular case.  At the same time, the court should recognize
that counsel is strongly presumed to have rendered adequate
assistance and made all significant decisions in the exercise of
reasonable professional judgment.  Id.

Even if the court finds that counsel's performance was
deficient, the motion cannot be granted unless the court also
finds prejudice.  To affirmatively prove prejudice, the defendant
must show that there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different.  Id. at 694.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome, id., and the fundamental fairness of the result.
Lockhart v. Fretwell, 506 U.S. 364 (1993); United States v.
Garcia, 997 F.2d 1273, 1283 (9th Cir. 1993).  In order to
demonstrate ineffective assistance of counsel, the defendant must
satisfy both prongs of the test.  Strickland, 466 U.S. at 697;
See also United States v. Moore, 921 F.2d 207, 210 (9th Cir.

11

1990); <u>United States v. Popoola</u>, 881 F.2d 811, 813-14 (9th Cir.

1989); <u>United States v. Grewal</u>, 825 F.2d 220, 222-23 (9th Cir.

1987); <u>United States v. Austin</u>, 817 F.2d 1352, 1354-55 (9th Cir.

1987); <u>United States v. Schaflander</u>, 743 F.2d 714, 717-18

(9th Cir. 1984).

     Indeed, the defendant who raises a claim of ineffective

assistance of counsel has a very heavy burden to bear.  The

reason is that "[i]t is all too tempting for a defendant to

second-guess counsel's assistance after a conviction or adverse

sentence, and all too easy for a court, examining counsel's

defense after it has proved unsuccessful, to conclude that a

particular act or omission of counsel was unreasonable."

<u>Strickland</u>, 466 U.S. at 689.

          1.   VELORIA's Pre-Trial Counsel Provided
              <u>Professionally Competent Representation</u>

     VELORIA alleges that pre-trial counsel, First Assistant

Federal Public Defender Alexander Silvert, was ineffective for

failing to obtain a copy of HCPD Officer Steven Correia's police

report, failing to include a 'hampered litigation' argument in a

pretrial motion to suppress evidence, failing to conduct

investigation and pre-trial discovery regarding VELORIA's truck

and regarding the narcotics canine training and alert records,

and for incorrectly advising her regarding the Government's

ability to use her September 3, 2001, statement at trial.  As the

record and Mr. Silvert's affidavit[4] both demonstrate, VELORIA's claims either lack any factual basis or fail to establish that Mr. Silvert's representation fell below an objective standard of reasonableness.  Moreover, VELORIA fails to affirmatively prove prejudice as a result of Mr. Silvert's allegedly ineffective representation.

      a.  <u>Failure to Obtain Police Report</u>

VELORIA asserts that Mr. Silvert was ineffective for failing to obtain a copy of HCPD Officer Steven Correia's police report.  Claim 2.  Officer Correia's report indicates that during the execution of the search warrant at VELORIA's residence on July 10, 1996, a male, later identified as Myles Kurashige, approached the Mauna Loa Street residence and told Officer Correia that he was looking for the "tall skinny girl who lives here."  VELORIA's Exhibit 28.  Officer Correia asked Kurashige if he was looking for Alicia, to which Kurashige responded, "[N]o, the other skinny girl that lives here."  Officer Correia informed Kurashige that the girl was not there at the moment.  Kurashige then asked, "Why, no more weed?"

VELORIA argues that this report is exculpatory and would have "provided the defense with information which could have been used in pretrial motions" had it been disclosed.

---

    [4]  The Government is hereby submitting Mr. Silvert's un-notarized affidavit.  A notarized copy will be filed as soon as it is received.

VELORIA also claims that the report would have established that officers were aware that a female, other than VELORIA, was known to live in the house on Mauna Loa Street and that the drugs recovered from the residence may have belonged to that other female suspect.  VELORIA also argues that disclosure of this report would have resulted in the defense calling Kurashige as a witness during trial.

Mr. Silvert, in his affidavit, states that he cannot recollect any attempts that may have been made to obtain this police report.  See Affidavit of Alexander Silvert attached hereto, ¶ 3.  However, Mr. Silvert provides that based on his office's extensive investigation of the case, he may not have aggressively sought to obtain this particular police report because his investigation confirmed that VELORIA, indeed, both resided at, and dealt drugs from, the Mauna Loa Street residence. See Affidavit of Alexander Silvert attached hereto, ¶ 3. Accordingly, Mr. Silvert's alleged failure to obtain a copy of Officer Correia's report would have been objectively reasonable in light of the information he gathered through investigation.

b.    Failure to Include 'Hampered Litigation'
Argument in Motion to Suppress Evidence

VELORIA next claims that Mr. Silvert was ineffective for failing to include a 'hampered litigation' argument in the Motion to Suppress Evidence that was filed on July 23, 2001. Claims 4, 5.  VELORIA claims that had the Government not delayed

14

approximately four years in indicting her, she would have been able to call a "key witness" by the name of Keau Miles. Miles allegedly witnessed the encounter between VELORIA and HCPD officers at the Keaau Ballpark on November 22, 1996. <u>See</u> Veloria Exhibit 8.

Mr. Silvert, in his affidavit, states that after lengthy investigation, it was discovered that Miles was deceased. <u>See</u> Affidavit of Alexander Silvert attached hereto, ¶ 4. Mr. Silvert states that he considered and discussed with VELORIA on several occasions the possibility of filing a motion to dismiss based on pre-indictment delay. <u>See</u> Affidavit of Alexander Silvert attached hereto, ¶ 4. However, upon further research and investigation, three other witnesses were located who claimed to have been present when VELORIA's truck was searched. As such, Mr. Silvert determined that a motion to dismiss based on pre-indictment delay would have had no merit since VELORIA would have been unable to establish the required element of prejudice due to the delay. <u>See</u> Affidavit of Alexander Silvert attached hereto, ¶ 4. Moreover, it was unclear to Mr. Silvert how much of the search Miles witnessed.

With respect to VELORIA's claims that Mr. Silvert failed to investigate the scene of the search, specifically, the condition of her truck, and the training and alert records of the

narcotics canine, Mr. Silvert states that contrary to VELORIA's
allegation, investigation was conducted.  In addition,
Mr. Silvert states that the narcotics canine training and alert
records were not relevant to the factual question at issue.  See
Affidavit of Alexander Silvert attached hereto, ¶ 4.
Accordingly, Mr. Silvert's representation was professionally
competent.

      c.    Scope of Government's Ability to Use
             VELORIA's Statement at Trial

      VELORIA asserts that Mr. Silvert was ineffective for
incorrectly informing her of the Government's ability to use her
September 3, 2001, statement at trial.  VELORIA claims that
Mr. Silvert, after reviewing the proffer agreement, informed
VELORIA that "nothing she said in the meeting would be used
against her unless she testified at trial and committed perjury."
Veloria Memorandum p. 54.

      The subject of Mr. Silvert's interpretation of, and
advice to VELORIA regarding, the provision in the proffer
agreement concerning the circumstances under which the Government
could use VELORIA's statement at trial was explored at length
during a November 26, 2002, hearing on VELORIA's Motion to
Suppress Statements.  See Transcript of Proceedings, Motion to
Suppress Statements, pp. 12-17 attached hereto as Exhibit "D".
During this hearing, Mr. Silvert testified that he interpreted
and advised VELORIA that the proffer agreement meant that "the

government cannot and will not use her statement in any way
except if she takes the witness stand and testifies differently
from what she said." See Transcript of Proceedings, Motion to
Suppress Statements, p. 15 attached hereto as Exhibit "D".

Mr. Silvert's interpretation of the proffer agreement
was ultimately incorrect, however, regardless of whether this
error fell outside the wide range of professionally competent
assistance, VELORIA fails to affirmatively prove prejudice as a
result and as required by Strickland. As Mr. Silvert states in
his affidavit, he repeatedly advised VELORIA that if she agreed
to be debriefed, "there would be, effectively, no possibility of
proceeding to trial." See Affidavit of Alexander Silvert
attached hereto, ¶ 5. Mr. Silvert advised VELORIA that if she
made inculpatory statements during her debriefing, she would not
then be able to proceed to trial because she would be unable to
testify on her own behalf because her debriefing statement would
be used against her. Moreover, "counsel could not put her on the
stand to proclaim her innocence because that would amount to
putting on perjured testimony." See Affidavit of Alexander
Silvert attached hereto, ¶ 5.

Regardless of whether Mr. Silvert correctly informed
VELORIA regarding the Government's ability to use her statement
at trial, VELORIA was well aware, based on Mr. Silvert's repeated
advice, that agreeing to the debriefing would effectively amount

17

to her pleading guilty and forgoing a trial.  Thus, each of
VELORIA's allegations of ineffective assistance of counsel with
respect to Mr. Silvert are entirely without merit.

> 2.   VELORIA's Trial Counsel Adequately Prepared for
>      Trial and Challenged the Government's Evidence at
>      Every Opportunity

VELORIA makes numerous allegations against trial
counsel, Winston D.M. Ling, including, but not limited to,
Mr. Ling's ineffectiveness for failing to file various motions
and memoranda, interview witnesses, impeach witnesses, and
request an Allen charge.[5]  As the record reflects, all of
VELORIA's allegations are without merit and lack any factual
basis.  Mr. Ling at all times provided reasonably competent and
effective assistance of counsel and VELORIA, therefore, cannot
have suffered any prejudice.  Even if Mr. Ling's performance did
fall below an objective standard of reasonableness, which it
clearly did not, VELORIA has failed to prove prejudice as a
result of any of her allegations of ineffectiveness.

> a.   Failure to File Motions and Memoranda

VELORIA alleges that she was denied effective
assistance of counsel because Mr. Ling failed to file various
motions or memoranda that were prepared by a paralegal at
VELORIA's request.  Specifically, VELORIA claims that Mr. Ling
failed to file a Memorandum of Law in Support of Request for an

_____

[5]   Pursuant to Allen v. United States, 164 U.S. 492 (1896).

Order of Court Requiring the Government to Admit or Deny Whether They Violated any Local, State or Federal Law in the Investigation and Prosecution of this Case (Claim 14), Emergency Motions in Limine for Disclosure of Intent, for a Hearing Outside the Presence of the Jury, and to Exclude Certain Evidence (Claims 16 & 17), and an Emergency Motion to Disclose Identity of Confidential Informant and Memorandum in Support (Claim 20).

As the Supreme Court noted in Strickland, "[j]udicial scrutiny of counsel's performance must be highly deferential" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690. As Mr. Ling states in his declaration, he considered the above-referenced motions and memoranda VELORIA presented to him and, "based on the merits of the issue and circumstances of the case," decided not to file them. See Declaration of Winston Ling attached hereto, ¶¶ 6, 8, 11. Thus, Mr. Ling's decision not to file such memoranda and motions was objectively reasonable and Mr. Ling's representation fell within the wide range of professionally competent assistance.

b.    Failure to Impeach Witnesses

VELORIA next argues that Mr. Ling failed to impeach Government witnesses, Wallace Iaukea and Ann Barcena, with various information such as their criminal history, motivation to

19

testify against VELORIA, and prior drug use.  Claims 23-32.  As
Mr. Ling states in his declaration, he did not use this
information to impeach Iaukea and Barcena because either: (1) he
was unaware of, or had no evidence to substantiate the alleged
impeachment information; (2) he had other information that could
be used to impeach the witnesses; or (3) the information was not
suitable for impeachment.  See Declaration of Winston Ling
attached hereto, ¶¶ 14-23.  Again, Mr. Ling's representation was
objectively reasonable.

    c. <u>Failure to Interview Witnesses</u>

    VELORIA asserts that Mr. Ling was ineffective for
failing to interview her brother, Richard Marble, as well as
Iaukea and Barcena.  Claims 16-17, 19.  Contrary to VELORIA's
claim that she specifically requested Mr. Ling to interview her
brother, Mr. Ling, in his declaration, states that VELORIA "made
it very clear to me not to involve her brother."  See Declaration
of Winston Ling attached hereto, ¶¶ 2, 9, 10.  Accordingly,
Mr. Ling, in not interviewing Marble, was merely respecting his
client's stated desire and cannot possibly be found to have
rendered ineffective assistance of counsel.

    With respect to Iaukea and Barcena, Mr. Ling states
that he did not interview them because he knew what they would be
testifying about and because it is his practice, in many cases,
not to speak with prosecution witnesses because "they will be

prepared to what I will be asking" at trial.  See Declaration of
Winston Ling attached hereto, ¶ 8.  In any event, as the record
indicates, both Iaukea and Barcena indicated that they would not
speak to Mr. Ling.  See Transcript of Proceedings, Vol. II, p. 29
attached hereto as Exhibit "B".  Therefore, Mr. Ling's
representation did not fall below an objective standard of
reasonableness.

           d.    Miscellaneous Allegations of Ineffectiveness

          VELORIA raises numerous other miscellaneous allegations
of Mr. Ling's ineffectiveness including Mr. Ling's failure to:
(1) obtain a copy of HCPD Officer Steven Correia's police report
(Claim 2); (2) pursue a remedy for VELORIA's unknowing waiver
(Claim 8); (3) pursue a remedy for the Government's alleged
violation of Rule 404(b) of the Federal Rules of Evidence (Claims
16, 17 ); (4) introduce at trial an allegedly exculpatory rent
receipt in the name of Marlene Anduha (Claim 18); (5) correct
Detective Bolos' false testimony regarding where Ignacio Andres
was located in the Mauna Loa Street house (Claim 21); (6) bring a
copy of the Federal Rules of Evidence with him to the courtroom
(Claim 22); (7) inquire or address alleged suspicious entries on
Barcena's rap sheet (Claim 26); (8) challenge Criminalist Brian
Koge's testimony (Claim 33); (9) inform VELORIA of jury
communications and advise her of her right to be present during
proceedings (Claims 34, 35, 38); (10) advocate in his client's

best interests (Claim 35);  and (11) request an <u>Allen</u> charge
(Claim 37).  Mr. Ling addresses each of the above allegations in
his declaration.  <u>See</u> Declaration of Winston Ling attached
hereto, ¶¶ 2, 5, 8-9, 12-13, 17, 24-25, 27-28.  As Mr. Ling's
declaration indicates, VELORIA's claims either lack any factual
basis or fail to establish that Mr. Ling's representation fell
below an objective standard of reasonableness.

>    3.    VELORIA's Appellate Counsel Provided
>          <u>Professionally Competent Assistance</u>

VELORIA argues that she was prejudiced by appellate
counsel, Shawn A. Luiz's, failure to raise numerous allegedly
meritorious issues and because Mr. Luiz filed his appellate brief
without allowing her the option of filing her pro se appellate
brief.[6]  Claim 49.  VELORIA's allegations of ineffective
assistance of appellate counsel are equally without merit.

Appellate counsel are vested with the authority to
determine which issues should be raised on an appeal.  <u>Jones v.
Barnes</u>, 463 U.S. 745, 751-53 (1983).  In addition, a "criminal
defendant does not have an absolute right to both self-
representation and the assistance of counsel."  <u>United States v.
Halbert</u>, 640 F.2d 1000, 1009 (9th Cir. 1981); <u>United States v.

---

[6]  The Government has requested that Mr. Luiz prepare a
declaration addressing VELORIA's allegations of ineffective
assistance of counsel.  Mr. Luiz was unable to provide his
declaration prior to the Government's deadline for responding to
VELORIA's motion.  The Government will file Mr. Luiz's
declaration as soon as it is received.

Bergman, 813 F.2d 1027, 1030 (9th Cir. 1987).  Since VELORIA was
represented by counsel on appeal, it would have been entirely
inappropriate for her to file a pro se appellate brief.  Thus,
Mr. Luiz's representation was not ineffective and VELORIA has
failed to prove either part of the Strickland inquiry.

     C.    VELORIA's Allegations of Prosecutorial Misconduct

       VELORIA contends that the Government denied or
infringed upon her Constitutional right to due process of law, to
confront witnesses against her, to equal protection, and her
right against self-incrimination for several reasons, including
but not limited to selective prosecution, allowing witnesses to
testify untruthfully, and alleged failures to disclose
exculpatory information.  All of VELORIA's allegations are
frivolous, lack merit, and should be summarily dismissed without
a hearing as she fails to establish actual prejudice from any of
the errors she complains of.

       VELORIA never raised any of these allegations of
prosecutorial misconduct prior to trial, at trial, or on direct
appeal and must show both cause for her failure to assert these
claims in earlier proceedings and actual prejudice.  United
States v. Frady, 465 U.S. 152, 170-71 (1982).  VELORIA claims
that these issues were never raised previously due to the
ineffective assistance she received from her counsel.  The Ninth
Circuit has held that ineffective assistance of counsel

constitutes cause sufficient to excuse a procedural default.
United States v. Ratigan, 351 F.3d 957, 964-65 (9th Cir. 2003);
United States v. Skurdal, 341 F.3d 921, 925 (9th Cir. 2003).  In
this case, however, the Government submits that VELORIA received
adequate and effective assistance of counsel and thus, cannot
establish the requisite cause.  Regardless, VELORIA fails to
establish actual prejudice and is, therefore, precluded from
raising these issues in the instant § 2255 proceedings.
Nevertheless, the Government briefly addresses VELORIA's claims
of prosecutorial misconduct below.

> 1.  Alleged Failures to Disclose Information

>> a.  Exculpatory Police Report

VELORIA claims that the Government intentionally
withheld a police report written by HCPD Officer Steven Correia.
Claim 1.  As previously mention, Officer Correia's report
indicates that during the execution of the search warrant at
VELORIA's residence on July 10, 1996, a male, later identified as
Myles Kurashige, approached the Mauna Loa Street residence and
was looking to buy marijuana.

VELORIA argues that this report is exculpatory and
would have "provided the defense with information which could
have been used in pretrial motions" had it been disclosed.
VELORIA also claims that the report would have established that
officers were aware that a female, other than VELORIA, was known

24

to live in the house on Mauna Loa Street and that the drugs
recovered from the residence may have belonged to that other
female suspect.    VELORIA also argues that disclosure of this
report would have resulted in the defense calling Kurashige as a
witness during trial.

     In Brady v. Maryland, the Supreme Court held that the
prosecution's suppression of evidence favorable and material to
the guilt or innocence of the accused is a violation of due
process irrespective of the good faith or bad faith of the
prosecution.    373 U.S. 83, 87 (1963).    See United States v.
Jernigan, 492 F.3d 1050, 1053 (9th Cir. 2007).    However, the
prosecution need not disclose evidence available to the defense
from other sources.    United States v. Bracy, 67 F.3d 1421,
1428-29 (9th Cir. 1995); United States v. Aichele, 941 F.2d 761,
764 (9th Cir. 1991).

     In the instant case, the United States submits that no
due process or Brady violation occurred as a result of the
Government's failure to disclose Officer Correia's report.
Kurashige's name, along with the fact that he approached
VELORIA's residence looking to buy marijuana on July 10, 1996 was
included in HCPD Detective Samuel Thomas' report that was
disclosed to VELORIA.    See Veloria's Exhibit 1.    Accordingly,
Detective Thomas' report provided the defense with information
concerning Kurashige's identity and the circumstances surrounding

25

his presence at the Mauna Loa Street residence on July 10, 1996,
the date the search warrant was executed.  Detective Thomas'
report contained ample information to enable the defense, through
the exercise of reasonable diligence, to attempt to locate
Kurashige, question him about why he went to the Mauna Loa Street
residence on July 10, 1996, and determine whether to call him as
a witness.  Accordingly, the information contained in Officer
Correia's report was available to VELORIA in Detective Thomas'
report and no Brady or due process violation occurred.  In
addition, VELORIA fails to establish actual prejudice from this
alleged violation.

                  b.    Internal Revenue Service Criminal
                      Investigation Special Agent Jason Pa's Notes

VELORIA claims that her Fifth Amendment right to due
process was violated when the Government failed to comply with
the Court's November 13, 2002, Order compelling discovery of the
notes that were used by Internal Revenue Service Criminal
Investigation ("IRS CID") Special Agent Jason Pa to prepare the
September 3, 2001, Memorandum of Interview.  Claims 11, 12.
VELORIA asserts that had Special Agent Pa's notes been disclosed,
she would have been able to demonstrate that her debriefing
statement was given unknowingly and would have been able to
challenge the inaccuracies and misstatements contained in Special
Agent Pa's Memorandum of Interview regarding her involvement with
drug-related activities.  Veloria Memorandum pp. 85, 80.

Contrary to VELORIA's allegation, the Government did
not fail to comply with the Court's order compelling discovery of
Agent Pa's notes.  Specifically, the Court ordered that "[t]he
Government will turn over Agents notes if there are such notes."
See Criminal Docket Entry 89.  Despite Special Agent Pa's
statement that appears at the end of the September 3, 2001
Memorandum of Interview, that "I prepared this memorandum on
September 3, 2001, after refreshing my memory from notes made
during and immediately after the interview with Alicia Veloria,"
Special Agent Pa informed the Government that he did not have any
notes regarding the September 3, 2001 Memorandum of Interview.
Since the agent did not have any notes, the Government did not
fail to comply with the Court's order.

In any event, the Government never introduced the
Memorandum of Interview as evidence during VELORIA's trial and
VELORIA cannot possibly have suffered any prejudice due to the
Government's failure to disclose Special Agent Pa's notes.
Moreover, the alleged inaccuracies and misstatements contained in
the Memorandum of Interview that VELORIA identifies, such as the
date her parents were divorced, are hardly material or relevant
to VELORIA's guilt, conviction, or sentence.

c.    Bolos Diagram

VELORIA next claims that the Government violated the
requirements of Brady v. Maryland, as well as her Fifth Amendment

27

due process right, when the Government failed to produce
surveillance or other investigative information that formed the
basis of a diagram prepared by HCPD Detective B. Bolos.  Claim
13.  The diagram prepared by Detective Bolos depicts a chart
linking VELORIA with the names of several other individuals,
including VELORIA's brother, Rick, as well as vehicle license
plate numbers and telephone numbers for pagers.  See Veloria's
Exhibit 7.

Pursuant to Brady v. Maryland, the Government is
obligated to disclose exculpatory evidence favorable and material
to the guilt or innocence of the accused.  Brady, 373 U.S. at 87.
By looking at the Bolos diagram, it is unclear what the
relationship is between VELORIA and the eighteen other
individuals linked to VELORIA's name because the diagram does not
appear to have a title or contain any explanatory information.
Arguably, however, the diagram is more inculpatory than
exculpatory since the diagram depicts VELORIA as the central
figure to which all other entries are connected.  Further, the
diagram is not material to VELORIA's guilt or innocence as it was
never introduced as evidence and none of the individuals whose
names appear on the diagram testified at VELORIA's trial.
VELORIA cannot possibly have suffered any prejudice from the
Government's failure to disclose background information relating

28

to the preparation of the diagram and the Government was under no
obligation to disclose any such information.

        d.    Exculpatory Rent Receipt

        VELORIA claims that her Fifth Amendment right to due
process was violated when the Government failed to disclose the
"exculpatory nature" of a rent receipt for the Mauna Loa Street
property in the name of Marlene Anduha for the month of July,
1996, the month the search warrant was executed on the residence.
Claim 18.  VELORIA asserts that the Government's failure to
disclose the exculpatory nature of the rent receipt "made it
easier for defense counsel to ignore Ms. Veloria's claim that it
should be introduced at trial."  Veloria Memorandum p. 109.

        VELORIA once again fails to establish actual prejudice
resulting from this alleged failure to disclose and is therefore
precluded from raising the issue.  In addition, the fact that
VELORIA attempted to persuade counsel to introduce the
"exculpatory" rent receipt at trial indicates that VELORIA
already knew about the existence of the rent receipt and that the
receipt was in someone's name other than her own.  Thus, the
Government was not obligated to disclose the rent receipt under
Brady.  See United States v. Aichele, 941 F.2d 761, 764 (9th Cir.
1991)("When, as here, a defendant has enough information to be
able to ascertain the supposed Brady material on his own, there
is no suppression by the government").

                            29

e.    Ann Barcena

VELORIA next claims that her Fifth Amendment right to due process and Sixth Amendment right to confrontation were violated when the Government failed to disclose various impeachment information about Ann Barcena, a Government witness. Claims 25-32.  Specifically, VELORIA alleges that the Government failed to disclose Barcena's receipt of favorable treatment with respect to various state court charges, Barcena's full criminal history, and that Barcena had a history of mental illness.

With respect to VELORIA's claim that Barcena received some sort of deal or other favorable treatment with respect to state court charges in exchange for testifying against VELORIA, the Government was unaware of any such cooperation or deal with state prosecutors and no Brady violation exists.  "[T]he state's knowledge and possession of potential impeachment evidence cannot be imputed to a federal prosecutor for purposes of establishing a Brady violation." United States v. Beers, 189 F.3d 1297, 1304 (10th Cir. 1999).  See also United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991); United States v. Kern, 12 F.3d 122, 126 (8th Cir. 1993); United States v. Walker, 720 F.2d 1527, 1535 (11th Cir. 1983)(declining to impute knowledge of deal between witness and state officials to the federal prosecutor).

In addition, VELORIA cannot prove actual prejudice from the Government's alleged failure to disclose this information.

30

At trial, VELORIA's counsel vigorously cross-examined Barcena, inquired about the very state court charges VELORIA questions here, and inquired whether Barcena had received any favors. Barcena replied, "No.  I never get no deals, no favors, no nothing.  I'm here on a subpoena and I was made no promises." See Transcript of Proceedings, Vol. III, p. 112 attached hereto as Exhibit "C".  Accordingly, VELORIA did not suffer any prejudice as a result of the Government's alleged failure to disclose information.

VELORIA next claims that the Government failed to disclose information regarding Barcena's history of mental illness, as documented in the files of the Third Circuit Court for the State of Hawaii.  The Government submits that it had no knowledge of Barcena's mental history and that no Brady violation occurred.  As previously discussed, a state's knowledge of potential impeachment evidence cannot be imputed to a federal prosecutor for purposes of establishing a Brady violation.  See United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991).  In addition, VELORIA, herself, was able to obtain information regarding Barcena's mental history from documents filed in state court.  Veloria Memorandum p. 157.  This information was a matter of public record and could have been obtained with due diligence. Thus, no Brady violation occurred.  See United States v. Zagari, 111 F.3d 307, 320 (2d Cir. 1997)(no Brady violation despite

failure to disclose witness had mental disorders since defendants had actual knowledge of witness and information about mental illness could have been obtained with due diligence).

Lastly, VELORIA claims that the Government failed to disclose Barcena's complete criminal history. Once again, no Brady violation occurred as the Government did disclose a copy of Barcena's rap sheet to the defense prior to Barcena testifying at trial. Even if, as VELORIA alleges, Barcena's rap sheet failed to disclose her two most recent charges for theft and shoplifting, VELORIA had ample impeachment evidence against Barcena as her rap sheet revealed approximately fifteen other arrests and convictions, and included four other theft charges. Nevertheless, VELORIA's counsel never sought to impeach Barcena's veracity or credibility based on any of these convictions and VELORIA cannot claim to have suffered any prejudice.

2. The Government Did Not Engage in Selective Prosecution

VELORIA claims that her right to equal protection was violated when the Government engaged in selective prosecution. Claim 3. VELORIA contends that she was the only one investigated, charged, and prosecuted, despite the presence of others at both the Mauna Loa Street residence and the Keaau Ballpark, who were allegedly similarly situated. VELORIA points out that three other individuals were present and arrested on July 10, 1996, at the Mauna Loa Street residence, none of whom

32

were charged or prosecuted.  In addition, Wallace Iaukea, the
other occupant of VELORIA's truck at the time HCPD officers
approached her at the Keaau Ballpark on November 22, 1996, was
never charged or prosecuted.  VELORIA claims that she was singled
out for prosecution based on her age, gender, and race.  Of the
four other individuals who were arrested at the residence and the
ballpark, VELORIA was the only one who was female, Caucasian, and
approximately 20 years old, while the others were male, non-
Caucasian, and ranged in age from 30 to 44.

　　　In order to establish a prima facie case of selective
prosecution, VELORIA must show that both the prosecutorial
decision had a "discriminatory effect and that it was motivated
by a discriminatory purpose."  Wayte v. United States, 470 U.S.
598, 608 (1985); United States v. Armstrong, 517 U.S. 456, 465
(1996).  In this case, VELORIA was prosecuted based upon
substantial evidence that she was involved in drug dealing, not,
as VELORIA claims, because she was a young, Caucasian female.
Moreover, VELORIA has not alleged, nor could she succeed in
proving, that the Government acted with improper discriminatory
purpose in prosecuting her.

　　　3.　　There Was No Prejudicial Pre-Indictment Delay

　　　VELORIA claims that her right to equal protection and
due process was violated due to the Government's pre-indictment
delay.  Claim 4.  VELORIA argues that the approximately four-year

33

delay between her arrest and indictment was an intentional device
by the Government to gain a tactical advantage over her.  VELORIA
claims that had the Government not delayed in indicting her, she
would have been able to call an individual by the name of Keau
Miles as a witness.  Miles allegedly witnessed the encounter
between VELORIA and HCPD officers at the Keaau Ballpark on
November 22, 1996.  See Veloria Exhibit 8.  Miles subsequently
passed away in 1999, prior to VELORIA's indictment on April 13,
2000.

        Generally, any delay between the commission of a crime
and an indictment is limited by the statute of limitations.
United States v. Huntley, 976 F.2d 1287, 1290 (9th Cir. 1992).
In order to prevail on her claim that she was denied due process
because of pre-indictment delay, VELORIA must satisfy both prongs
of a two-part test.  First, she must prove actual and non-
speculative prejudice from the delay.  Second, the length of the
delay is weighed against the reasons for the delay and VELORIA
must show that the delay "offends those fundamental conceptions
of justice which lie at the base of our civil and political
institutions."  United States v. Sherlock, 962 F.2d 1349, 1353-54
(9th Cir. 1989).  The second prong of the test applies only if
VELORIA has demonstrated actual prejudice.

        Establishing prejudice is a heavy burden that is rarely
met.  Huntley, 976 F.2d at 1290.  A generalized assertion of loss

34

as a result of the death of a witness usually is not enough to
establish the requisite prejudice. United States v. Manning, 56
F.3d 1188, 1194 (9th Cir. 1995). VELORIA must show that lost
testimony, witnesses, or evidence "meaningfully has impaired
[her] ability to defend [herself]," and "[t]he proof must
demonstrate by definite and non-speculative evidence how the loss
of a witness or evidence is prejudicial to [her] case." United
States v. Corona-Verbera, 509 F.3d 1105, 1112 (9th Cir.
2007)(citing Huntley, 976 F.2d at 1290). The Ninth Circuit has
held that when a defendant fails to make a specific showing as to
what a deceased witness would have said, any argument of
prejudice is pure conjecture. Corona-Verbera, 509 F.3d at 1113.

        In this case, there was no prejudicial pre-indictment
delay as VELORIA was indicted well within the 5-year statute of
limitations. See 18 U.S.C. § 3282. The Government did not
intentionally delay indictment in order to attempt to gain any
kind of advantage over VELORIA. Moreover, VELORIA cannot prove
actual, non-speculative prejudice from the alleged delay.
VELORIA does not give any indication of what Miles' testimony
would have been, however, based on Exhibit 8 of VELORIA's
Memorandum of Law, it appears that Miles' testimony would have
concerned the events on November 22, 1996 at the Keaau Ballpark
charged in Count 2 of the Indictment. VELORIA was acquitted on
Count 2 of the Indictment and, therefore, cannot possibly claim

35

to have suffered any prejudice as a result of Miles' death and inability to testify on her behalf.

### 4. The Government Did Not Mislead the Court Regarding Evidence of Prior Bad Acts

VELORIA claims that she was denied due process because the Government failed to give adequate advanced notice of its intention to introduce the testimony of two witnesses pursuant to Rule 404(b) of the Federal Rules of Evidence and because the Government made false statements regarding the time frame of the testimony of one of these witnesses. Claim 15. VELORIA unsuccessfully raised these precise claims on direct appeal and cannot now seek to re-litigate them as part of her § 2255 motion. See United States v. Veloria, 164 Fed. Appx. 562, 563 (9th Cir. 2005). Issues considered on direct appeal are not subject to collateral attack under § 2255. United States v. Redd, 759 F.2d 669, 701 (9th Cir. 1985).

### 5. The Government Did Not Fail to Correct False Testimony

VELORIA claims that the Government violated her rights to due process and to confront witnesses against her by failing to correct allegedly false testimony. Specifically, VELORIA claims that the Government knowingly allowed HCPD Detective Bolos to testify falsely regarding where a third individual, Ignacio Andres, was located by police during the execution of the search warrant at the Mauna Loa Street residence. Claim 21. VELORIA also asserts that Barcena committed perjury during her grand jury

36

testimony when she stated that she hadn't used drugs for a long time.  Claim 27.  In addition, VELORIA claims that the Government failed to correct Barcena's false testimony regarding her statement that she did not receive any deals in exchange for her testimony, and her explanation of how certain of her state felony charges were reduced to misdemeanor offenses.  Claims 26, 28.

     The Supreme Court has held that "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment."  Napue v. Illinois, 360 U.S. 264, 269 (1959).  In addition, the state violates a criminal defendant's right to due process when, "although not soliciting false evidence, it allows false evidence to go uncorrected when it appears."  Id.  A due process violation claim under Napue will succeed when: "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material."  Hayes v. Brown, 399 F.3d 972, 984 (9th Cir. 2005).  The standard for assessing the materiality of testimony is whether there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury."  Belmontes v. Woodford, 350 F.3d 861, 881 (9th Cir. 2003)(quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).

37

a.    Detective Bolos' Testimony Regarding the
            Location of Ignacio Andres

Detective Bolos testified that once he entered the
Mauna Loa Street residence, he "walked past the two persons
straight down the hallway . . . and I looked to my left, in the
last bedroom I saw somebody on the floor." See Transcript of
Proceedings, Vol II, p. 135 attached hereto as Exhibit "B".
VELORIA argues that this testimony was false and contradicted by
Detective Thomas' police report that indicates Andres was located
in one of the bedrooms located downstairs.

While Detective Bolos' testimony regarding where Andres
was located may in fact have been inaccurate, and the Government
should have caught and corrected this inadvertent misstatement,
this testimony is not material.  As VELORIA herself admits, "this
false testimony admitedly [sic] could not have affected the
verdict against Ms. Veloria."  Veloria Memorandum p. 117.
Andres' location within the residence is entirely irrelevant to
VELORIA's guilt and no due process violation occurred.

b.    Barcena's Grand Jury Testimony

On July 8, 1998, Barcena was called as a witness before
a federal grand jury in the District of Hawaii.  Barcena was
asked, among other things, when she last used drugs.  Barcena
responded, "[l]ong time ago.  I've been in treatment every day."
VELORIA claims that according to a state probation officer's

report contained in the files of the state court, Barcena tested
positive for cocaine and opiates on June 1, 1998.

The Government has not obtained a copy of the state
probation officer's report that VELORIA references, nor has the
Government verified the information contained therein.
Regardless of whether Barcena may have committed perjury during
her grand jury testimony, no due process violation occurred as
the Government had no knowledge that her testimony was false.  In
addition, Barcena's allegedly false testimony was not material as
the jury did not have access to Barcena's grand jury testimony
and because the Government's evidence against VELORIA was
substantial.

> c.    Barcena's Testimony that She Did Not Receive
>        Any Deals

As previously mentioned, Barcena testified, on
cross-examination, that she did not receive any deals with
respect to certain state court charges in exchange for her
testimony against VELORIA.  VELORIA alleges, without providing
any actual evidence, that Barcena's testimony was false based on
her speculation that Barcena must have received some sort of
benefit from the state.

The Government contends that no due process violation
occurred because Barcena's testimony was truthful.  The
Government is and was unaware of Barcena's receipt of any kind of
benefit from the state.  In addition, Barcena's allegedly false

testimony was not material as the Government had substantial evidence against VELORIA.

           d.    Barcena's Explanation of the Reduction of State Felony Charges to Misdemeanors

During cross-examination, VELORIA's counsel attempted to question Barcena regarding certain state felony charges that were subsequently reduced to misdemeanor offenses. VELORIA claims that Barcena responded untruthfully when she explained that it was "proved in court that that wasn't a felony." <u>See</u> Transcript of Proceedings, Vol. III, p. 113 attached hereto as Exhibit "C". Barcena later stated that "[w]hen the witnesses that we put on the stand, the truth was said, and the charge was dropped to a lower charge." VELORIA asserts that the state court minutes for Barcena's case indicate that the reduction in charges was due to a change of plea that was entered and, thus, the Government violated her right to confront witnesses against her by failing to correct Barcena's "misrepresentation."

In this case, neither VELORIA's right to confront witnesses against her, nor her due process right were violated by Barcena's testimony regarding the reduction of her state felonies charges to misdemeanors. Barcena testified before the jury and VELORIA was afforded the opportunity to cross-examine Barcena, therefore, VELORIA's confrontation right was not denied. No due process violation occurred as the Government was not aware that Barcena's testimony was false. In any event, while Barcena, a

layperson unfamiliar with legal terminology, may have
misunderstood and mis-characterized the legal proceedings that
led to her charge reduction, her allegedly false testimony was
not material to the jury's determination of VELORIA's guilt.

    D.   <u>VELORIA's Allegations of Trial Errors</u>

        1.   Court's Failure to Remedy VELORIA's Unknowing
            Waiver

      VELORIA claims that she was denied a fair trial because
the Court "failed to remedy Ms. Veloria's unknowing waiver" with
respect to her proffer agreement.  Claim 9.  Specifically,
VELORIA asserts that the Court refused to allow her to
selectively waive her attorney-client privilege and she was,
therefore, forced to chose between proceeding on her unknowing
waiver/ineffective assistance of counsel claim or invoking her
attorney-client privilege.  VELORIA also claims that she was
prejudiced by the Court's failure to rule on the unknowing waiver
issue until the end of trial because her attorney was limited in
his ability to cross-examine witnesses.  Claim 10.

      In this case, VELORIA sought, via an Emergency Motion
to Rescind Involuntary Waivers, to rescind her waiver in the
proffer agreement because it was given unknowingly based on her
attorney's advice and interpretation of the waiver, which turned
out to be incorrect.  VELORIA's Emergency Motion was not filed
until June 4, 2003, the second day of trial.  The Court spent a
significant amount of time during trial on June 4, 2003, and

again on June 5, 2003, considering this issue, but was ultimately precluded from making a determination as to whether VELORIA's waiver was knowing because VELORIA invoked her attorney-client privilege.  The Court did not err in refusing to allow VELORIA to selectively waive her attorney-client privilege.  It is clear that the scope of the attorney-client waiver is broad and "applies to all other communications relating to the same subject matter."  In re Seagate Technology, LLC, 497 F.3d 1360, 1372 (Fed. Cir. 2007).  In addition, the attorney-client privilege "may not be used both as a sword and a shield."  See, e.g., Chevron Corp. v. Penzoil Co., 974 F.2d 1156, 1162 (9th Cir. 1992).  Thus, the Court made every attempt to resolve VELORIA's unknowing waiver claim.  That the issue was not resolved until the third day of trial was not the result of any delay on the part of the Court, but rather due to the fact that VELORIA did not file her motion raising the issue until the second day of trial.  VELORIA's claims are entirely without merit.

 2.    Court Failed to Protect VELORIA's Right to a
       Verdict by an Impartial Jury

VELORIA argues that the Court, upon learning of an incident involving one juror physically threatening another juror, should have inquired of both jurors to determine if the incident would affect their abilities to deliberate.  Claims 34, 35.  VELORIA contends that since the Court only spoke to Mr.

42

Kuramoto, the threatened juror, the Court violated her right to a trial by an impartial jury.

Once again, VELORIA is procedurally barred from raising this issue in the context of a § 2255 motion as it was already raised on direct appeal. See United States v. Redd, 759 F.2d 699, 701 (9th Cir. 1985)("Redd raised this precise claim in his direct appeal, and this court expressly rejected it. Therefore, this claim cannot be the basis of a § 2255 motion"). The Ninth Circuit, in affirming her conviction, found that VELORIA's alleged juror misconduct claim "was thoroughly investigated by the district court, and its effect cured by ensuring that [the threatened juror] no longer felt intimidated." United States v. Veloria, 164 Fed. Appx. 562, 563 (9th Cir. 2005)(quoting United States v. Smith, 424 F.3d 992, 1014 (9th Cir. 2005)). Accordingly, VELORIA is precluded from raising this issue in her § 2255 motion.

### 3. Court Intentionally Misspelled Case Names and Citations

VELORIA next claims that she was denied due process of law when the Court, on the third day of trial while addressing VELORIA's Emergency Motion to Rescind Involuntary Waivers, intentionally misspelled and provided incorrect cites for two cases, United States v. Lauersen, 2000 WL 1693538, and United States v. Fronk, 173 F.R.D. 59. Claim 39. See Transcript of Proceedings, Vol. III, pp. 5-6 attached hereto as Exhibit "C".

43

VELORIA's claim is not only baseless, it is preposterous. There is absolutely no evidence to suggest that the Court intentionally misspelled and provided incorrect cites for these cases. To the contrary, the record overwhelmingly reflects the Court's ongoing and painstaking efforts to ensure VELORIA received a fair trial. It appears that the Court, or perhaps possibly the court reporter, inadvertently misspelled these case names and citations, as the Court, on several other occasions during trial provided accurate names and citations for other cases. See Transcript of Proceeding, Vol. II, pp. 8, 14 (United States v. Krilich) attached hereto as Exhibit "B"; Transcript of Proceedings, Vol. II, p. 163 (Chevron Corp. v. Penzoil Co.) attached hereto as Exhibit "B"; Transcript of Proceeding, Vol. III, p. 9 (United States v. Rebbe) attached hereto as Exhibit "C".

In any event, VELORIA has not established that she suffered actual prejudice as a result of these inadvertent mistakes. VELORIA asserts that she was unable to raise the unknowing waiver issue on appeal because she was not able to locate the Lauersen and Fronk cases. Even if VELORIA had located these cases, however, her appellate counsel, Mr. Luiz, apparently determined that the issue was not suitable for appeal as it was not included in the appellate brief that was filed with the Ninth Circuit. Moreover, the two cases VELORIA refers to would not have had any effect on the unknowing waiver issue as VELORIA

44

chose not to waive her attorney-client privilege with Mr.

Silvert, thereby precluding any further inquiry into her claim.

> ### 4. The Court Improperly Participated in Plea Negotiations

VELORIA claims that the Court improperly participated

in plea negotiations in her case.  Specifically, VELORIA alleges

that Magistrate Judge Kurren "told [her] to co-operate with the

Government.  This induced Ms. Veloria to follow Judge Kurren's

direction and sign the proffer letter."  Veloria Memorandum

p. 179.  Claim 41.  VELORIA also claims that "she was encouraged

by the Court to sign the proffer letter and participate in the

debriefing."  Veloria Memorandum p. 181.

The Court explored this issue during VELORIA's trial

while hearing her Emergency Motion to Rescind Involuntary

Waivers.  With respect to the settlement conference with Judge

Kurren, the Court noted:

> All I have is the court minutes, and they don't even
> indicate Ms. Veloria was present.  So I'm taking your
> word that she was.  But the court minutes only say,
> "Settlement conference held on 8/28/01.  Attorneys:
> Thomas J. Brady, Alexander Silvert.  Reporter:
> Chambers.  No record taken."  That's all it says.
>
> So I don't think that the existence of a conference
> that's shown by notes in the court docket, which
> doesn't even indicate that Ms. Veloria was there, I
> don't think that's enough for me to say that Ms.
> Veloria somehow involuntarily signed a proffer
> agreement.

See Transcript of Proceedings, Vol. III, p. 64 attached hereto as

Exhibit "C".

As the Court pointed out, there is absolutely no basis for VELORIA's claim that Judge Kurren acted improperly and induced her to sign the proffer agreement.  Moreover, without knowing exactly what was said during this settlement conference, it is impossible to speculate what, if any, prejudice VELORIA suffered as a result of this alleged misconduct.

5.    The Court Failed to Intervene When Counsel was Lacking

VELORIA, citing Canon 3 B.(3) of the Code of Judicial Conduct, claims that the Court failed to intervene during her trial to prevent injustice and prejudice due to her trial counsel's ineffectiveness and unprofessional conduct.  Claim 42. VELORIA also states that the Court took no action to preserve VELORIA's constitutional rights.

As discussed above, Mr. Ling's representation of VELORIA at trial was at all times reasonable, effective, and professional.  As such, the Court had no duty or obligation to intervene.  If VELORIA was so dissatisfied with Mr. Ling's representation, she could have notified the Court herself, but apparently chose not to in the hope that the Court would intervene <u>sua</u> <u>sponte</u>.

Contrary to VELORIA's claim that the Court took no action to preserve her constitutional rights, the Court took great pains to insure that VELORIA's rights were preserved and that she was accorded a fair trial.  <u>See</u> Transcript of

46

Proceedings, Vol. II, pp. 152-53; 156-57 attached hereto as Exhibit "B"; Transcript of Proceedings, Vol. III, pp. 28-30 attached hereto as Exhibit "C". In addition, the Court, on numerous occasions, granted Mr. Ling's requests for bench conferences and short recesses to research issues and consult with his client. <u>See</u> Transcript of Proceedings, Vol. I, p. 171 attached hereto as Exhibit "A"; Transcript of Proceedings, Vol. II, pp. 40, 160 attached hereto as Exhibit "B"; Transcript of Proceedings, Vol. III, pp. 7-8, 54, 70 attached hereto as Exhibit "C". Thus, VELORIA's claims are entirely without merit.

> 6.    The Court Enhanced VELORIA's Sentence Based on
> <u>Facts Not Found by Jury</u>

VELORIA argues that her Sixth Amendment rights were violated when the Court imposed an enhanced sentence based on facts that were not found by the jury. Specifically, VELORIA alleges that her sentence was improperly enhanced based on uncharged offenses of obstruction of justice, suborning perjury, and uncharged drug sales and money laundering. Claims 40, 45.

Again, VELORIA is procedurally barred from raising allegations of sentencing errors since she previously raised the issue she presently complains of on direct appeal. As previously discussed, it is impermissible to raise again, even in a first § 2255 motion, matters that have already been litigated in, and resolved by, the federal courts. <u>See</u> <u>United States v. Redd</u>,

47

759 F.2d 699, 701 (9th Cir. 1985)("Redd raised this precise claim in his direct appeal, and this court expressly rejected it. Therefore, this claim cannot be the basis of a § 2255 motion"); United States v. Currie, 589 F.2d 993, 995 (9th Cir. 1979)("Issues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding. . . . We are bound by the previous decision and decline to again review this contention" (citations omitted)).

Section 2255 is not a vehicle designed to provide a defendant with multiple opportunities to challenge a sentence. United States v. Johnson, 988 F.2d 941 (9th Cir. 1993). Further, a collateral challenge under § 2255 "may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

E.    VELORIA's Miscellaneous Allegations of Error

1.    Denied Application of Safety Valve

VELORIA claims that her Fifth Amendment right to due process was violated when she was unlawfully denied application of the "safety valve" provision. Claim 46. As discussed above, VELORIA is procedurally barred from raising allegations of sentencing errors since she previously appealed her sentence.

2.    Unlawful Seizure and Forfeiture of VELORIA's Truck

VELORIA claims that her Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights were violated when her truck was unlawfully seized and forfeited. Claim 43. As previously discussed, VELORIA was acquitted as to Count 2 of the Indictment,

48

the incident on November 22, 1996, at the Keaau Ballpark involving VELORIA's truck.  Since VELORIA was found not guilty on Count 2, she cannot possibly claim to have suffered any prejudice as a result of the alleged unlawful seizure of her truck and may not raise this claim in the instant § 2255 proceeding.  More importantly, however, the alleged unlawful forfeiture of VELORIA's truck appears to involve a state court proceeding over which this Court has no jurisdiction.

## IV. CONCLUSION

The allegations in VELORIA's § 2255 motion when viewed against the records, fail to state a claim for relief, or are so palpably incredible as to warrant summary dismissal.  For the foregoing reasons, the United States of America requests that VELORIA's § 2255 motion be denied in its entirety without a hearing.

DATED: March 13, 2008, at Honolulu, Hawaii.

Respectfully submitted,

EDWARD H. KUBO, JR.
United States Attorney
District of Hawaii

By _____
    THOMAS J. BRADY
    Assistant U.S. Attorney

49