UNITED STATES DISTRICT COURT

DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| ALICIA VELORIA, | ) | CR. NO. 00-00145 |
| | ) | |
| Plaintiff, | ) | HONORABLE SUSAN OKI MOLLWAY |
| | ) | JUDGE |
| VS. | ) | |
| | ) | DECLARATION OF WINSTON D.M. LING |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## DECLARATION OF WINSTON D.M. LING

1.    I had previously represented Ms. Alicia Veloria in her jury trial in Cr. No. 00-00145 before the Honorable Susan O. Mollway.

2.    In regard to Ms. Veloria's Claim No. 2, in my conversations with Ms. Veloria, she did not inform me of any other female residing in her residence in the bedroom where the clothes were found. I believed that the clothes belonged to Ms. Veloria. She did inform me that her brother had or was living at the residence and had left just shortly prior to the raid. She did not want her brother involved and prevented me from questioning him regarding the case or bringing him in as a witness. I believed he was incarcerated in Washington State before and/or during Ms. Veloria's trial. I believe she informed me that there was a male drug addict living downstairs of her residence. Ms. Veloria was residing upstairs in the house in another bedroom other than from the bedroom that the clothes were found and drugs were found. I argued in closing argument that she resided in bedroom #2 and not bedroom #1 where the drugs were found. I believed that the bedroom where the clothes were found was a storage room for Ms. Veloria but I didn't argue that.

The jury is not stupid and would not believe that Ms. Veloria did not reside in the house, the real question was whether the drugs and clothes in bedroom #1 belonged to Ms. Veloria. How can Ms. Veloria say that she lived downstairs when there was no furniture downstairs? She told me she lived upstairs and the evidence reflected that. I can't argue to the jury that she lived downstairs in a vacant apartment.

3.    In regards to Ms. Veloria's Claim No. 4, Mr. Miles testimony is speculative, I have no idea what he would have said.

4.    In regards to Ms. Veloria's Claim No. 5, based on record, I believe that the police were reasonable in their actions in questioning Ms. Veloria. I believe that Ms. Veloria consented to the canine search and that was what I argued for in closing statements. She told me that she consented. The police could have easily physically opened the car door without the canine, but utilized the canine search prior to physically searching the vehicle. Ms. Veloria did not inform me that she was attempting to phone her attorney. I did not question the certification of the canine because I didn't believe it was an issue, the fact that drugs were found was a consideration. The jury is not stupid. The fact that she consented to the canine search indicated to the jury that she was not aware of the drugs. I do not believe there was a compromised verdict in Ms. Veloria's case.

5.    In regards to Ms. Veloria's Claim No. 8, I had done legal research on Ms. Veloria's case and could not find any legal authority on point to base Ms. Veloria's suppression of her prior statements. The fact was that the government had committed no misconduct. I did find some authority regarding contract law but it wasn't clear, and I didn't want to put on the record that I could not find any authority. I felt that it was more appropriate as an appellate issue so I tried to preserve the issue by filing the motion. Later, I believe on the day of trial, Ms. Veloria's friend had emailed me an emergency motion to rescind involuntary waivers which expanded on the contract law issue. I reviewed it, and thought there was some merit, and I believe I filed it.

6.    In regards to Ms. Veloria's Claim No. 14, as Ms. Veloria had stated I had received the memorandum on the first day of trial, I reviewed it that morning and had considered filing it, but after reconsideration, I decided not to file based on the merits of the issue and the circumstances of the case. I do not recall any prior conversation I had with Ms. Veloria regarding

the issue.

7.    In regards to Ms. Veloria's Claim No. 15, during the trial, I did not want to go into specifics as to when and how these transactions occurred between the witness Ann Pacheco (Barcena) and Ms. Veloria. The witness testified that she received drugs from Defendant during the summer which is about when the search occurred. If we went too much into specifics, it would validate the witness' testimony in front of the jury. I just wanted to point out in closing that she may have a motivation to lie (even though there was no evidence that the Burglary charge was amended to tresspassing as a result of any cooperation with the federal authorities against Ms. Veloria) and that prosecution had the burden in substantiating the drug transactions with certificates. Through experience and practice, I didn't want to linger too long with a prosecution witness especially when I believe she was telling the truth. I just wanted to make my points and then bring them out in closing arguments.

8.    In regards to Ms. Veloria's Claim No. 16 & 17, I did make 404 objections on the record. I do recall receiving the testimonies of Ms. Pacheco (Barcena) and Mr. Iaukea and was able to prepare adequately for their anticipated testimonies. I knew what they would be testifying about and there are a lot of cases where I don't want to speak with the prosecution witnesses in part because they will be prepared to what I will be asking. I don't believe Ms. Veloria's defense suffered, I was able to present a cogent argument in her defense. I reviewed the motions/memorandums and in my best judgment and the circumstances of the case, I chose not to file those motions/memorandums that were sent to me on the day of trial.

9.    In regards to Ms. Veloria's Claim No. 18, Ms. Veloria was staying at the house and in fact may have owned the house. I believe that she may have informed me that she owned the house and it was bought through someone else. I believe there was an issue regarding the ownership of the house and that was an area that I didn't want to explore. In closing argument, I did point out at least a couple of times that Ms. Marlene Anduha was on the rental receipt which was brought out during trial. Ms. Veloria occupied one bedroom (#2) and the other bedroom (#1) was not occupied. To my knowledge her brother had lived in the house but had either moved out or was not present when the search of the house occurred. She did not want me to involve her brother

and instructed me not to try to contact him further or involve him in the case. I had earlier tried to get in touch with him. She refused to discuss the circumstances of her brother with me, and to this day, I do not know whether her brother occupied the other bedroom. To my knowledge, Ms. Veloria had never informed me of any female occupying the bedroom where the drugs were found.

10.    In regards to Ms. Veloria's Claim No. 19, it was her decision not to involve her brother, I wanted to involve her brother, in part because he may be a possible explanation/source of the drugs found in the bedroom and it would add to Ms. Veloria's reasonable doubt. Ms. Veloria initially agreed to have her brother testify, but she then changed her mind and instructed me not to involve her brother. She made it very clear to me not to involve her brother, I suspected that she didn't want her brother get indicted.

11.    In regards to Ms. Veloria's Claim No. 20, on the day of trial, I received several motions/memorandums that I understood was my option to file or not file. I reviewed the documents and considered filing some and had then reconsidered based on my best judgment and the circumstances. I do not recall when I reviewed the motions since it was sent the morning of June 3, 2003, I did sign some on June 4, 2003. I do not recall telling Ms. Veloria that I would be filing an Emergency Motion to Disclose Identity of Confidential Informant and Memorandum in Support, it would have to be on the morning of June 4, 2003. Ms. Veloria was with me the during the trial and would have objected if I didn't file or do what she wanted. She took an active part in the case and I conferred with her whenever possible.

12.    In regards to Ms. Veloria's Claim No. 21, I do not recall that part of trial where that occurred, I may have missed it and certainly Ms. Veloria missed it, otherwise she would have definitely pointed it out to me. She took an active part in the trial of her case and was continuously talking to me during testimonies of witnesses which interfered with my hearing the testimonies and concentration on the case. She was probably talking to me during that time. She is headstrong and I had a hard time controlling her.

13.    In regards to Ms. Veloria's Claim No. 22, in my cross examination of Mr. Iaukea, my questioning was directed towards the issue regarding the drugs in the truck. Ms. Veloria was acquitted of the charge and I did have a copy of the Federal Rules of Evidence with

me.

14.    In regards to Ms. Veloria's Claim No. 23, I believed that Mr. Iaukea had been convicted of a drug possession charge.  The purpose of having the prior conviction admitted was for the purpose of showing that Mr. Iaukea had knowledge of drugs.  In light of that, it was not significant to me that the prior drug charge was not brought in because there were other evidence that would show that Mr. Iaukea was knowledgeable regarding drugs.  Ms. Veloria was acquitted regarding the charge in which Mr. Iaukea was testifying about.

15.    In regards to Ms. Veloria's Claim No. 24, in prior cases, courts have taken exception to counsel inquiring about prior misconduct of witnesses prior to counsel informing the court.  The prudent way would be to have a conference with the court to explain the intentions of counsel prior to counsel going into that area.  The main objective I had was to go into the motive of Ms. Pacheco (Barcena) possibly assisting the authorities to incur favor to discredit her rather than on the theft offenses.  Ms. Veloria and I had discussed this prior to approaching the bench and prior to trial and this was the avenue which we had decided to go.

16.    In regards to Ms. Veloria's Claim No. 25, there is no evidence that Ms. Pacheco's (Barcena) receiving the DANC plea in 1997 at State court was a result of any cooperation she may have provided to federal authorities in the case against Ms. Veloria. There is no evidence of that.  I believe the DANC pleas occurred years before Ms. Veloria's 2003 trial and I doubt it was granted due to Ms. Veloria's case.

17.    In regards to Ms. Veloria's Claim No. 26, I reviewed the entries on Ms. Barcena's rap sheet and noted discrepancies and believed that these discrepancies were typographical errors and did not rise to the level of a conspiracy between the Hawaii Police Department, Ann Pacheco (Barcena) and federal government in prosecuting Ms. Veloria.

18.    In regards to Ms. Veloria's Claim No. 27, Ms. Pacheco's (Barcena) alleged misconduct (alleged deferral violations) occurred at least 5 years prior to Ms. Veloria's trial.  Ms. Barcena was initially not on probationary status, she was not "convicted" and was therefore on deferral status.  Further, Ms. Barcena's response was vague, I guess the prosecutor should have asked Ms. Barcena exactly when she last used drugs, a "long time" is relative, to a drug addict it

may be a "long time". She had been in treatment "everyday".

20.     In regards to Ms. Veloria's Claim No. 28, the State court may have allowed an amendment to the charge based on a plea agreement with witnesses testifying. Although there may not have been a trial, the court may have allowed witnesses to testify. A lot of times defendants don't know exactly how the criminal justice system works. Ms. Barcena evidently entered a change of plea to charges that were amended from felonies to misdemeanors and may have had people testifying regarding her character or the circumstances regarding sentencing. I did not see any inconsistency with Ms. Pacheco's (Barcena) testimony regarding her change of plea to misdemeanor trespassing.

20.     In regards to Ms. Veloria's Claim No. 29, I am not aware of any deal whereby Ms. Pacheco's (Barcena) Rule 35 in State court was related to any promise of cooperation against Ms. Veloria.

21.     In regards to Ms. Veloria's Claim No. 30, I am not aware of any unknown factors. Ms. Pacheco (Barcena) testified to the grand jury against her own interest, and there is no evidence of any deals with the government.

22.     In regards to Ms. Veloria's Claim No. 31, I was not aware of any offenses by Ms. Pacheco (Barcena) other than what was on her rap sheet.

23.     In regards to Ms. Veloria's Claim No. 32, I was not aware that Ms. Pacheco (Barcena) had a history of mental illness. There is no indication that this affected her testimonies and certainly not in her change of plea. I did point out during the trial and in closing argument of Ms. Pacheco's possible motivation to lie.

24.     In regards to Ms. Veloria's Claim No. 33, I believe that Ms. Veloria informed me that she lived at 69 Mauna Loa Street and that she lived in bedroom #2 and not in the bedroom #1 where the drugs were found. In fact that is what the evidence showed and that is what we had argued, in that she resided in bedroom #2 and not in bedroom #1. The jury is not stupid. Ms. Veloria did not reside in the basement/bottom apartment, she never told me that. She told me that her brother had resided at or was still residing at her residence but had left shortly before the raid occurred. I did not believe there were any valid issues regarding the canine search especially

when drugs were found. The jury would not like to see the defense counsel wasting their time and my credibility would be shot. I don't doubt Mr. Koge's testimony regarding his ability to lift fingerprints only "a very small percentage of time". I've done and seen enough trials (especially burglary and drug trials) where the police were not able to find evidence of fingerprints.

25.    In regards to Ms. Veloria's Claims No. 34 and 35, I believe that the court had made an adequate inquiry and I had spoken to Ms. Veloria regarding the matter and there was no issue by Ms. Veloria. My will was not "overborne", I felt the court adequately and accurately put on the record the contents of her conversation with Mr. Kuramoto and I had no objections to that. I did not want to aggravate Mr. Kuramoto further and cause a mistrial, at that point, I felt that if we had a second trial that the prosecution may be more adequately prepared.

26.    In regards to Ms. Veloria's Claim No. 36, I did not believe there was a valid issue regarding juror misconduct that would warrant filing for a new trial. As I previously stated, I had spoken to Ms. Veloria regarding the juror misconduct incident and we had agreed not to pursue it further during the trial.

27.    In regards to Ms. Veloria's Claim No. 37, we did not pursue an Allen charge because we were in agreement to keep the jury in deliberation. We did not want to have a mistrial, we felt that we had a good chance of prevailing. I conferred with Ms. Veloria regarding my decisions and she was in agreement.

28.    In regards to Ms. Veloria's Claim No. 38, I informed Ms. Veloria regarding all the issues in her case and she was aware of the issues and although at times she had concerns, we talked about it and resolved them. I did speak to her regarding waiving her presence regarding jury communications and she had no objections, it is a common practice for me to have permission from the Defendant regarding waiving their presence on jury communications.

29.    I believe that I had addressed all the issues that Ms. Veloria had alleged, if I had not then I would like to reserve the opportunity if necessary to address those issues. I believe some of her allegations were made during a previous hearing and should not be addressed again.

30.     I declare under penalty of law that the foregoing is true and correct to the best of my knowledge.

DATED:  Honolulu, Hawai'i, March 10, 2008.

_____

Winston D.M. Ling