```
 1              IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF HAWAII
 3
 4   _____
 5   UNITED STATES OF AMERICA,      )
 6              Plaintiff,          )  CR. NO. 00-00145 SOM
 7       vs.                        )
 8   ALICIA VELORIA,                )  VOLUME II
 9              Defendant.          )  (Pages 1 - 172)
10   _____)
11
12
13              TRANSCRIPT OF PROCEEDINGS
14
15       The above-entitled matter came on for
16   FURTHER JURY TRIAL commencing at 9:00 a.m. on
17   Wednesday, June 4, 2003, Honolulu, Hawaii,
18
19   BEFORE:   HONORABLE SUSAN OKI MOLLWAY
20             United States District Judge
21             District of Hawaii
22
23
24   REPORTED BY:   LISA J. GROULX, COURT REPORTER
25                  Notary Public, State of Hawaii
```

LISA GROULX & ASSOCIATES
(808) 225-5701

EXHIBIT "B"

1           THE COURT: Okay. We're on the same
2  page, because I think that is the essential element.
3  I'll tell you some of the things that I found.
4           MR. LING: Okay.
5           THE COURT: Okay. So the case that
6  everybody always looks at in this context it the
7  Seventh circuit case that Mr. Brady had been referring
8  to, which is United States vs. Krilich, K-r-i-l-i-c-h,
9  and that case goes right to the issue that we're
10 talking about. There was a proffer letter and it said
11 that whatever the defendant said in her debriefing
12 could not be used against her except that if she
13 testified contrary to what was in her debriefing, or
14 otherwise presented a position inconsistent with the
15 offer, which is language much broader than we have in
16 this letter, then nothing would prevent the government
17 from using her proffer at trial. Okay. It also had
18 "at sentencing," and so forth, but the main part we're
19 concerned with here was at trial.
20          And what happened was the defendant made the
21 very argument you're making. The defendant said that
22 the proffer letter had an exception that allowed the
23 government to use his debriefing statement only if he
24 or his witnesses that he presented in the defense case
25 in chief presented a contrary position, And the

1  cry from saying that waivers mean whatever the
2  defendants say they understood them to mean. No party
3  to a contract has Humpty Dumpty's power over language,
4  either directly or through the gambit that
5  unanticipated consequences render the agreement
6  involuntary."
7           I am reading from the Krilich case at 159
8  F.3d, which starts on page 1020, and I am reading, I
9  think, from page 1026. This is a Seventh Circuit 1998
10 case.
11          Okay. So it's not the case that you can say
12 an agreement is either unknowing or involuntary just
13 because I understood something different. So a waiver
14 is voluntary in the absence of coercion. It seems to
15 me there's no evidence of coercion here. So I'm more
16 focused on the knowing requirement. So Krilich says
17 that a waiver is knowing if made with a full awareness
18 of both the nature of the right being abandoned, the
19 right being the right not to have your negotiation
20 statements put into evidence, and the consequences of
21 the decision to abandon it, the decision to abandon
22 that right. The consequences being that they might be
23 used against you if indeed these conditions are met.
24          So, in the Krilich case, Krilich did not
25 contend that his consent was coerced and he offered no

```
 1              MR. LING:  I think a need a little bit
 2   more time.
 3              THE COURT:  Well, let me ask you this.
 4   Did you communicate with Mr. Brady about those three
 5   witnesses:  Zackary Smith, Ms. Barcena, and Mr. --
 6              MR. BRADY:  Wallace Iaukea.
 7              THE COURT:  Yeah, Iaukea.
 8              MR. LING:  Basically, Mr. Brady informed
 9   me yesterday that, not Wallace Iaukea, but Zackary
10   Smith and Barcena would not speak with me.
11              THE COURT:  Okay.
12              MR. LING:  Okay.  He related to me this
13   morning that he spoke to Wallace Iaukea and Mr. Iaukea
14   does not want to talk to me either.
15         The problem I have is, in this case, is --
16   and if I were to cross-examine these witnesses, I
17   don't know what they're going to say for sure.
18              THE COURT:  But that's --
19              MR. LING:  But what if -- I'll put the
20   scenario to the court -- what if they said something
21   that would basically support Ms. Veloria and then it
22   was contrary to what she was saying, that she had
23   related in the out briefing?  I mean, what if that
24   happens?  Then what?  Then do they open up the door to
25   the prosecutor entering this out-brief conference
```

```
 1   you tell me when you want me and I'll just be waiting.
 2   Okay?  But sit in this courtroom and talk to your
 3   client and one way or another I need to know what's
 4   happening.
 5              MR. LING:  Can I go to the law library
 6   downstairs on the third floor?
 7              THE COURT:  You certainly can, yes.
 8   Certainly.
 9          Okay.  So, I'll just be on call, I guess, and
10   you folks figure this out.  I don't know what to tell
11   you more than that.  You two can talk to each other
12   about how much time you need and let me know.
13              MR. LING:  Okay.
14          (Recess taken at 9:45 - 10:40 a.m.)
15              THE COURT:  Okay.  We came back on the
16   record, and I was hopeful that I would have volumes of
17   knowledge thrown at me by one or both of you.  Who
18   wants to start?
19              MR. BRADY:  Judge, I'd like to start.
20              THE COURT:  Okay.
21              MR. BRADY:  It is my understanding that
22   the issue is -- and please correct me if I'm wrong --
23   who has the burden of proof --
24              THE COURT:  Yes.
25              MR. BRADY:  -- in establishing whether
```

```
 1  level of the residence we served a search warrant on.
 2       Q.   Now once you got into this residence, what
 3  did you do?
 4       A.   I walked passed the two persons straight down
 5  the hallway.  I was making cursory checks of the other
 6  rooms for anyone else in the residence for security
 7  reasons, and I looked to my left, in the last bedroom
 8  I saw somebody on the floor.
 9       Q.   Now your responsibility then was to collect
10  evidence; is that correct?
11       A.   Yes.
12       Q.   Was there anybody else collecting evidence
13  besides yourself?
14       A.   No.
15       Q.   I'm going to ask that you take a look at
16  government's Exhibit 10 through 17 in that black
17  folder in front of you.
18       A.   (Witness complying.)
19       Q.   Do you recognize government's Exhibits 10
20  through 17?
21       A.   Yes, I do.
22       Q.   What are they?
23       A.   They are photographs of some of the evidence
24  which was recovered at 69 Mauna Loa Street.
25       Q.   Now, as part of your responsibilities, were
```

1    Q.   Who was he?

2    A.   My public defender that was assigned to me in
3    2000.

4    Q.   Okay.  And there was a time where there was
5    an out briefing by you and you were accompanied by Mr.
6    Silvert; is that correct?

7    A.   Yes.

8    Q.   And this operation was done in, what, the
9    presence of DEA?  Was it DEA?

10   A.   Jason Pa, DEA, and Bernadette Reaghi.  I'm
11   not sure who she is or what floor she represented.

12   Q.   Okay.  And in that -- it was that this out
13   briefing was based upon, I guess, a proffer or an
14   agreement between you and the federal government or
15   the U.S. Attorney's Office, Mr. Brady specifically,
16   for you to basically be out briefed under certain
17   conditions, right?

18   A.   Yes.

19   Q.   Okay.  And what did Mr. Silvert inform you
20   regarding those conditions?

21        THE COURT:  Hold on before you answer.
22   Let me say a couple of things.  First of all, of
23   course you know you have a right to keep your
24   conversations with your attorney totally confidential.
25   That is called attorney-client privilege.  You can

1  exercise that privilege. Any conversations with your
2  attorney cannot, without your consent, be revealed to
3  anyone else. So I need to know whether you are going
4  to waive your right to protection of that privilege
5  and keep those conversations confidential.
6      And before you answer that, I need to
7  understand this. What is the law under which a
8  defendant can selectively waive the privilege? In
9  other words, I'm a little concerned, more than a
10 little concerned, greatly concerned, about whether it
11 is appropriate to allow her to waive the privilege
12 with respect to things that she thinks are helpful to
13 her but then to maintain the privilege if Mr. Brady
14 then wants to inquire about other parts of her
15 conversations with Mr. Silvert before she went to
16 speak with government agents, which may in fact be
17 incriminating against her.
18      So what is the law that allows her to waive
19 the privilege in this selective manner? So before we
20 get into this, think about it and tell me what your
21 position is.
22      MR. LING: Well, Your Honor, I believe
23 that she can testify as to what was -- she can waive
24 her -- what was, I guess, the amount that you can
25 waive -- what you're saying is -- I think what the

```
 1  because he's giving his interpretation of a legal
 2  document.  This is his work product.  He's free to
 3  waive how he interprets a document.  And I'm talking
 4  about something different when it's coming from Ms.
 5  Veloria.  I think I'm talking about the possibility of
 6  privileged communication and --
 7              MR. LING:  Okay.
 8              THE COURT:  And, you know, you got no
 9  wilting violet over here in opposition.  I'm thinking
10  he sitting there rubbing his hands together in glee
11  thinking, oh, boy, now I've got open season.  That's
12  my guess on how he's reacting here.  And keep that in
13  mind, where you're going.  Think about the consequence
14  of where you're going to put your next step before you
15  do that.
16              MR. LING:  Well, Your Honor, do you want
17  to -- if you want to do this later, and I can go ahead
18  and do some research on this.  Because if you don't
19  know, you know, I would --
20              THE COURT:  It's okay with me, if,
21  knowing the risks, she wants to waive her privilege.
22  I just want to make sure it's a knowing waiver.
23  Because a knowing waiver is exactly what we're
24  discussing now.  So if there's going to be another
25  waiver of rights, I want to make darn sure it is
```

1  knowing and voluntarily then.  But, guess what?  I
2  think Mr. Brady is sitting here listening with his
3  ears wide open, and then we'll address that later when
4  it comes up.
5              MR. LING:  Okay.  What I can do
6  basically is ask her what is her understanding of the
7  conditions.
8              THE COURT:  You can do that.  You
9  understand that even an attorney who doesn't have as
10 much experience as Mr. Brady does would get up and
11 say, okay, what's the basis of your understanding?
12 Oh.  You heard it from your attorney.  Tell me exactly
13 what your attorney said and why were you talking about
14 this.  And, you know, did you ask him -- you know,
15 what about this and what about this, and so forth.  I
16 mean, I think that would probably be fair
17 cross-examination.  So that's why I'm asking:  Does
18 she have a right to selectively waive?  And if you
19 don't know, then tell me whether you want to go
20 forward with her on the witness stand.  It is up to
21 you.  I have no business telling her she should nor
22 should not waive the privilege, and I am not telling
23 her whether she should or not.  She's got to rely on
24 you.  You're her attorney.
25             MR. LING:  Can we take a time out?  Can

1   made in this courtroom was not knowing, okay. And so,
2   hey, you better make sure that you've got all of your
3   ducks in a row. Because whatever happens here I'm
4   going to make it really hard for you to challenge it
5   later, really hard.
6           MR. LING: I understand what you're
7   saying, Your Honor. And I disagree with what the
8   court is saying. But then could I have a few minutes
9   with my client?
10          THE COURT: Okay. You can step down.
11  We'll go off the record.
12          (Brief in-court recess taken from 3:25 - 3:29
13  p.m.)
14          MR. LING: Your Honor, is there some way
15  we can continue this hearing until tomorrow morning?
16  I mean, it shouldn't take long. Then I can do some
17  research into the boundaries of the waiver, how far
18  can you waive.
19          THE COURT: Well, I told the jury to
20  come in at 9:00.
21          MR. LING: 8:30 maybe.
22          THE COURT: I beg your pardon?
23          MR. LING: Can we do it at 8:30?
24          THE COURT: Let's go off the record for
25  a minute.

1  thing to do, because I always feel like these people
2  are giving up their private lives to do their civic
3  duty and if it is just waiting, it's terrible.  But
4  this is a pretty important issue.  I want to get it
5  right.  I want to make sure everybody is informed.  So
6  if we're not going to finish it today, tell me
7  everything that is going to happen.  Because then, if
8  I can think of other problems that counsel should be
9  looking into tonight, I want to research this again.
10         Okay.  So, my law clerk gave me -- you might
11 look at this case.  This is a civil case, Chevron
12 Corporation vs. Pennzoil Company, 974 F.2d 1156.  This
13 is a Ninth Circuit case from 1992.  And a stock
14 purchaser wanted to testify about a matter and the
15 issue of the scope of the waiver of the
16 attorney-client privilege came up and the Ninth
17 Circuit said that the stock purchaser had not waived
18 the attorney-client privilege as to all communications
19 concerning a particular issue by disclosing two
20 memoranda that involved other issues.
21         Well, that's okay.  So this basically seems
22 to support what I was expecting, which is just because
23 she testifies about one subject, she doesn't
24 necessarily waive the attorney-client privilege as to
25 all subjects, but she does seem to waive it as to that