RUSTAM A. BARBEE   #5655
Attorney at Law
1188 Bishop St., Suite 2606
Honolulu, Hawaii 96813
Telephone:  (808) 524-4406
Facsimile:   (808) 524-4306
Email: Rustam@HonoluluAttorney.com

Attorney for Defendant
ALICIA VELORIA

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 25 2008

at __ o'clock and __ min __ M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) CR. NO. 00-00145 SOM |
|---|---|
| Plaintiff, | ) MEMORANDUM OF LAW IN<br>) SUPPORT OF DEFENDANT'S |
| vs. | ) MOTION UNDER 18 U. S. C.<br>) SECTION 3582(c)(2) FOR |
| ALICIA VELORIA, | ) REDUCTION IN TERM OF<br>) IMPRISONMENT; |
| Defendant. | ) DEFENDANT'S EXHIBITS "1"-"2";<br>) CERTIFICATE OF SERVICE |
| | ) DATE:  March 31, 2008<br>) TIME:  10:00 a.m.<br>) JUDGE: Susan Oki Mollway |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION UNDER 18 U. S. C. SECTION 3582(c)(2)
<u>FOR REDUCTION IN TERM OF IMPRISONMENT</u>**

I.   **Introduction**

On November 3, 2003, Alicia Veloria was sentenced for the offense of Possession with Intent to Distribute Cocaine, to 97- months of imprisonment and 4-years of supervised release. This sentence was imposed under the sentencing guidelines before the Ninth Circuit's decision in United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) and the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), with a base offense level computed under § 2D1.1 of the sentencing guidelines for crack cocaine quantity of 22.6 grams and 539 grams of cocaine powder. The base offense level under the guidelines in effect at the time was 28. Combined with 2-level adjustment for obstruction of justice to level 30, it produced a guideline range of 97-121 months imprisonment. The sentence imposed by this Court was 97- months imprisonment, which was at the very low end of the range.

Veloria appealed her sentence and on December 7, 2005, the Ninth Circuit remanded her case for re-sentencing for the district court to determine if the sentence should be different in view of United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) holding that the sentencing guidelines are advisory.

On April 10, 2006 this Court re-sentenced Veloria to 97-months imprisonment, again at the low end of the advisory guideline range. In re-

sentencing Veloria, the Court noted that: "even the low [end] of the guidelines is a substantial sentence." [See Exhibit "2", transcript of re-sentencing hearing held on 4/10/2006, p. 28 which will be submitted prior to the hearing].

Subsequent to Veloria's sentencing, on November 1, 2007, an amendment to § 2D1.1 of the guidelines took effect, which, generally, reduces base offense levels for most quantities of crack cocaine by 2-levels and, specifically, reduces the base offense level in Veloria's case by 2-levels, to level 28. See U.S.S.G. § 2 D1.1. This amendment was adopted in response to studies which raised grave doubts about the fairness and rationale of the 100-to-1 crack/powder ratio incorporated into the sentencing guidelines. See generally United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy (May 2007) (hereinafter "2007 Sentencing Commission Report"); United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy (May 2002); United States Sentencing Commission, Special Report to Congress: Cocaine and Federal Sentencing Policy (April 1997); United States Sentencing Commission, Special Report to Congress: Cocaine and Federal Sentencing Policy (Feb.1995). See also Kimbrough v. United States, 128 S. Ct. 558, 568-69 (2007) (discussing history of crack cocaine guideline and various Sentencing Commission reports). Yet the amendment is

only a partial response, as the Sentencing Commission itself recognized. The Commission explained:

> The Commission, however, views the amendment only as a partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to these problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

2007 Sentencing Commission Report, supra, at p. 10.

Subsequent to the effective date of this amendment to § 2D1.1, the Sentencing Commission considered whether to make the amendment retroactive under the authority created by 18 U.S.C. § 3582(c)(2). It took that action on December 11, 2007 by including this amendment in the list of retroactive amendments in §1B1.10 of the guidelines. See 73 Fed. Reg. 217-01 (2008). Based on this retroactivity, the statutory authority underlying it, and the Supreme Court's decisions in United States v. Booker, 543 U.S. 220 (2005); Rita v. United States, 127 S. Ct. 2456 (2007); Gall v. United States, 128 S. Ct. 586 (2007); and Kimbrough v. United States, supra, Veloria brought the instant Motion for Reduction in her Term of Imprisonment.

Veloria submits herein that the Court should reduce her guideline offense 2-levels to level 28 and impose a sentence, again at the low end of the guideline range, of 78-months imprisonment. Veloria further requests that the Court recommend to the Bureau of Prisons that she be designated to complete her sentence at a Community Correctional Center (hereinafter "CCC") and/or in home confinement.

## II. Argument

### A. VELORIA'S OFFENSE LEVEL SHOULD BE REDUCED FROM 30 TO 28, AND THE GUIDELINE RANGE REDUCED FROM 97-121 MONTHS TO 78-97 MONTHS BASED ON THE AMENDMENT TO § 2D1.1.

18. U.S.C. § 3582(c)(2) provides as follows:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant . . . the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Section 1B1.10 is the guideline policy statement which implements 18 U.S.C. § 3582(c)(2). Subsection (c) of the policy statement lists amendments

5

that are covered by the policy statement. And one of the amendments which is listed is amendment 711 to the guidelines.[1] That is the amendment which reduced the base offense level for crack cocaine offenses. See U.S.S.G., App. C, § 711. Application of this amendment to the crack cocaine guideline in the present case results in a decrease of the base offense level from 28 to 26, a decrease in the total offense level from 30 to 28, and a decrease in the resulting guideline imprisonment range from 97-121 months to 78-97 months.

### B. THE COURT SHOULD REDUCE VELORIA'S SENTENCE TO 78- MONTHS IMPRISONMENT.

Based on the amendment to § 2D1.1, this Court should reduce Veloria's sentence. It follows from the discussion in the preceding section that the amendment alone justifies a reduction of 19- months from 97 to 78- months imprisonment. 78- months imprisonment is not an unsubstantial term. Especially for a young woman such a Veloria who has no prior criminal history.

Since Veloria's re-sentencing, Booker and subsequent Supreme Court cases clarifying it, namely, Rita v. United States, supra; Gall v. United States, supra and Kimbrough v. United States, supra, have created a brave new

---

[1] This amendment is not listed in the November 1, 2007 guidelines Manual because the Sentencing Commission vote making it retroactive was on December 11, 2007. See United States Sentencing commission News Release dated December 11, 2007, available at **http://www.USSG.gov/PRESS/rel121107.htm**. See also 73 Fed. Reg. 217-01 (2008).

world, in which the guidelines are but one of several factors to be considered under § 3553(a). What the Supreme Court has described as the "overarching provision" in § 3553(a) is the requirement that courts "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." Kimbrough, 128 S. Ct. at 570.

Booker and its progeny apply to the imposition of a new sentence under 18 U.S.C. § 3582(c)(2). The Ninth Circuit considered this question in United States v. Hicks, 472 F.3d 1167 (9th Cir. 2007) and stated succinctly, that "Booker applies to § 3582(c)(2) proceedings." Hicks, 472 F.3d. at 1169. As the court explained in more depth:

> Booker explicitly stated that, "as by now should be clear, [a] mandatory system is no longer an open choice." Although the Court acknowledged that Congress had intended to create a mandatory guideline system, Booker stressed that this was not an option:"[W]e repeat, given today's constitutional holding, [a mandatory Guideline regime] is not a choice that remains open [W]e have concluded that today's holding is fundamentally inconsistent with the judge-based sentencing system that Congress enacted into law." The Court never qualified this statement, and never suggested, explicitly or implicitly, that the mandatory guideline regime survived in any context.
> In fact, the Court emphasized that the guidelines could not be construed as mandatory

>in one context and advisory in another. When the government Suggested, in <u>Booker</u>, that the Guidelines be considered advisory in certain, constitutionally—compelled cases, but mandatory in others, the Court quickly dismissed this notion, state, "we do not see how it is possible to leave the Guidelines as binding in other cases. . . . [W]e believe that Congress would not have authorized a mandatory system in some cases and a non-mandatory system in others, given the administrative complexities that such a system would create." In short, <u>Booker</u> expressly rejected the idea that the Guidelines might be advisory in certain contexts, but not in others, and Congress has done nothing to undermine this conclusion. Because the "mandatory system is no longer an open choice," district courts are necessarily endowed with the discretion to depart from the Guidelines when issuing new sentences under § 3582 ( c)(2).

<u>Hicks</u>, 472 F.3d at 1170 (citations omitted).

Here, there are a number of non-guidelines factors that could justify a sentence below even the new guideline range and almost certainly at the extreme low end of the new range. Sentencing Courts may still give consideration to the remaining questionable provenance of the crack/powder ratio which was expressly recognized by the Supreme Court in <u>Kimbrough</u>, supra, as a ground for not following the guidelines. As the Government itself acknowledged in <u>Kimbrough</u>, "the Guidelines 'are now advisory' and . . . , as a general matter, 'courts may vary

[from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines.'" Kimbrough, 128 S. Ct. at 570 (quoting Brief for United State 16). While the government then tried to distinguish policy disagreement with the 100-to-1 crack/powder ratio from other policy disagreements, the Supreme Court squarely rejected that argument. See Kimbrough, 128 S. Ct. at 570-74.

Indeed, the Court suggested that policy disagreement in this area was even more defensible than in other areas. It noted that "in the ordinary case, the Commission's recommendation of a sentence will 'reflect a rough approximation of sentences that might achieve § 3553 (a)'s objectives,' id. at 574 (quoting Rita, 127 S. Ct. at 2465), and so "closer review may be in order when the sentencing judge varies from the Guidelines, based solely on the judge's view that the Guidelines range 'fails properly to reflect § 3553(a) considerations' even in a mine-run case." Kimbrough, 128 S. Ct. at 575. The Court then explained that this was not the case with the crack cocaine guidelines, however:

> The crack cocaine Guidelines, however, present no occasion for elaborative discussion of this matter because those Guidelines do not exemplify the Commission's exercise of its characteristic institutional role. In formulating Guidelines ranges for crack cocaine offenses, as we earlier noted, the Commission looked to the

> mandatory minimum sentences set in the 1986 Act, and did not take account of "empirical data and national experience." Indeed, the Commission itself has reported that the crack/powder disparity produces disproportionately harsh sanctions, i.e., **sentences for crack cocaine offenses "greater than the necessary" in light of the purposes of sentencing set forth in § 3553 (a)**. Given all this, it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence "greater than necessary" to achieve § 3553(a)'s purposes, even in mine-run case.

Kimbrough, 128 S. Ct. at 574 (emphasis added) (citations omitted).

These concerns are only <u>partially</u> assuaged by the recent amendment reducing crack cocaine offense levels. This fact also was clearly recognized by the Supreme court in <u>Kimbrough</u>:

> This modest amendment yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder. (Citation and footnote omitted.) Describing the amendment as "only. . .a partial remedy" for the problems generated by the crack/powder disparity, the Commission noted that "[a]ny comprehensive solution requires appropriate legislative action by Congress."

Kimbrough, 128 S. Ct. at 569 (quoting 2007 Sentencing Commission Report, supra, pp.3-4 at 10).

Kimbrough's rationale for varying from the crack guidelines therefore remains a legitimate concern even after the new guideline is applied. The fact remains that had Veloria been convicted and sentenced for possessing cocaine powder her guideline sentence range would have been between 63-78 months based on a base offense level 26 (562.4 total grams of cocaine) and total offense level 28. Thus, a sentence of 78-months imprisonment, at the low end of the new guideline range is wholly justified.

U.S.S.G. § 1B1.10(a) issued December 11, 2007 contains an application note which directs the court to "consider the nature and seriousness of the danger to any persons or the community that may be posed by a reduction in the defendant's term of imprisonment." App. Note 1 (B)(ii), § 1B1.10(a). Defendant Veloria does not pose any risk to the safety of others or the public. Neither during the prosecution of this offense, nor during the enforcement of the sentence, has any individual made allegations that Veloria posed a risk to the safety of the public. Therefore, this Court should find that no serious risk of danger is presented by a reduction of Veloria's sentence.

U.S.S.G. § 1B1.10(a) application note 1(B)(iii) notes that the district court, in applying a guideline amendment sentence reduction, may "consider post-sentencing conduct of the defendant that occurred after the imposition of the

original term of imprisonment." Here, Veloria clearly shows that she has been rehabilitated. Throughout the entire period of her incarceration Veloria has worked hard to better herself and assist her fellow inmates through educational, and other programs offered at her designated BOP facilities. [See Exhibit "1", approximately 57 certificates documenting Defendant's participation in and completion of BOP programs at three different BOP facilities].

Veloria has maintained a steady work detail while incarcerated, including having held the important positions of "Town Driver" as well as being a tutor for those seeking their GED certificates. Additionally, she served as a lead instructor and assistant instructor for several of the wellness classes offered at Carswell Federal Medical Facility. She recently completed the year-long "Choosing Healthy Alternatives and New Growth Experiences" ("CHANGE") program and voluntarily participates in available Adult Continuing Education (ACE) classes and oftentimes, assists the instructors with preparation and class lectures.

Defendant's offense dates back 11 plus years to July, 1996. She has done the best she can to redeem her life during the 57-months of incarceration she has served. Her post-sentencing conduct has been exemplary and militates in favor of the Court granting a significant reduction in her term of imprisonment.

The defense disagrees with the government's position that the Court should continue to hammer Veloria because in their view, she has not accepted responsibility the offense. (See Government's Response Memorandum, page 15). The defense submits that the defendant should not be punished for not accepting responsibility as suggested by the government.   Under our system of laws, a defendant may be awarded up to 3-levels downward from the offense level for accepting responsibility.  If a defendant doesn't accept responsibility in the view of the tribunal then no 3-level reduction will be given and the offense level will reflect that fact.  A defendant should not be further penalized for failure to accept responsibility beyond being disallowed a 3-level reduction of offense level.

At the time of hearing the instant Motion, scheduled for March 31, 2008, the defendant will have served over fifty-seven (57) months of her sentence, during which time she has been processed through and incarcerated in seven (7) different correctional facilities.  Upon calculation of Defendant's "good time credit," coupled with a sentence of seventy-eight (78) months, defendant will have only 13% of her sentence remaining to be served and will be eligible for release into a Community Correctional Center "CCC" near the beginning of August, 2008. This being the case, the defense requests that this Honorable Court  Recommend that the Bureau of Prisons place her in a CCC for the remainder of her sentence, or

in the alternative, to split the remaining sentence between a CCC and home confinement. Veloria's aunt, Ms. Betty Kauhane, of Midlothian, Texas is very supportive and would readily take Defendant into her home.

The Bureau of Prisons, relying on certain statutory provisions has, in the past, been reluctant to transfer inmates to CCC's prior to the inmate reaching the last 10 percent of their sentence. However, some Circuit courts support Defendant's opinion that inmates should be considered for transfer to a CCC before reaching the "10 percent date." In <u>Wedelstedt v. Wiley</u>, 477 F.3d 1160, (10th Cir. 2007), the court stated:

> Although 3624 (c) surely imposes an affirmative obligation on the Bureau of Prisons (BOP), whenever practicable, to place an inmate in a CCC or other form of community confinement as the inmate's release date nears, 3624 (c) has no bearing on whether a CCC may be considered as a place of imprisonment at some earlier point in a prisoner's period of incarceration.

In <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235, 237 (3d. Cir. 2005), the Third Circuit found that: "[Section] 3624 (c) does not determine when the BOP should consider CCC placement, but when it must provide it.". Thus, even though the BOP is obligated to consider CCC placement for an inmate during the last 10 percent of sentence, it is not limited to that time period. Instead, the

BOP is supposed to consider the five factors listed in 18 U.S.C. §3621 (b) when determining eligibility for a transfer.

In <u>Levine v. Apker</u>, 455 F.3d 71 (2nd Cir. 2006), the court stated:

> When the BOP selects among prisoners and decides which facilities are "appropriate and suitable" for a prisoner, it must do so "considering" or "having regard for" the statutory factors [in 3621 (b)]. The balance of the term to be served is not on this list. Furthermore, of the five statutory factors that must be considered, at least three –the nature and circumstances of a prisoner's offense, the history and characteristics of a prisoner, and any statement by the court that imposed the sentence – are specific to individual prisoners.

Further, in <u>Fults v Sanders</u>, 442 F.3d 1088 (8th Cir. 2006), the court stated:

> The BOP asserts that there is no temporal requirement in §3621 (b) and that §3624 (c) requires the consideration of a transfer to a CCC only in the last ten percent of an inmate's sentence. We disagree with this interpretation. A BOP decision to not transfer an inmate – or, as in this case, a group of inmates – requires the same consideration of the §3621 (b) factors as does the decision to transfer an inmate to a CCC. It is impossible for the BOP to consider all five factors on a categorical basis.

This Court's recommendation to the Bureau of Prisons that Veloria be designated to a CCC would make sense and may result in CCC placement before August, 2008.

### III. Conclusion

For all the above-stated reasons and in the interests of justice, the defendant respectfully requests that the Court apply a 2-level reduction to the offense level and, as it has done twice previously, sentence the defendant at the low end of the new guideline range to 78-months imprisonment and recommend that the Bureau of Prisons designate a CCC for the remaining 13% of Veloria's sentence, or, in the alternative, to split the remaining ten (10) months between a CCC and home confinement, so that Defendant, who has to a great degree rehabilitated herself, may re-enter and contribute positively to the community.

DATED: Honolulu, Hawaii, March 25, 2008.

*/s/ Rustam A. Barbee*

RUSTAM A. BARBEE
Attorney for Defendant
ALICIA VELORIA