Alicia Veloria
Pro Se Petitioner
Honolulu Federal Detention Center
PO BOX 30080
Honolulu, HI 96820

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 3 1 2008

at ___ o'clock and ___ min. ___ M.
SUE BEITIA, CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALICIA VELORIA, | ) | CV. NO 08-00019 SOM/BMK |
|    Petitioner, | ) | CR. NO 00-00145 SOM |
| | ) | |
|      Vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | REPLY IN SUPPORT OF PETITIONER'S |
|    Respondent | ) | MOTION UNDER 28 USC §2255; |
| | ) | EXHIBITS 36-46; |
| | ) | CERTIFICATE OF SERVICE |

_____

"Our court is charged with ensuring equal justice
under the law for all who come within the walls of
our judicial system.  If we turn a blind eye to the
inequities that result from ineffective legal
representation, we jeopardize the integrity of
justice itself."

-Ballard v. United States, 400 F 3d at 411 (6th Cir 2005)

## TABLE OF CONTENTS

| | PAGE |
|---|---|
| AMBUSH OF UNCHARGED OFFENSES ..................................... | 2 |
| SACRIFICE OF MS. VELORIA'S STATUTORY RIGHT OF APPEAL .............. | 5 |
| ATTORNEY SILVERT'S AFFIDAVIT ...................................... | 5 |
| GOVERNMENT'S OPPOSITION IS IN ERROR ............................... | 7 |
| INEFFECTIVE REPRESENTATION – PREJUDICE TO MS. VELORIA ............. | 10 |
| 18 USC §2515 ..................................................... | 11 |
| HAMPERED LITIGATION .............................................. | 13 |
| WITHHELD EXCULPATORY POLICE REPORT ............................... | 15 |
| CROSS EXAMINATION OF GOVERNMENT WITNESSES ........................ | 19 |
| FAILURE TO TURN OVER AGENT'S NOTES OF INTERVIEW .................. | 20 |
| RELIEF FROM INEFFECTIVE ASSISTANCE OF COUNSEL .................... | 20 |
| UNPROFESSIONALISM OF APPELLATE COUNSEL ........................... | 21 |
| GOVERNMENT'S INABILITY TO COMPLY WITH DEADLINE ................... | 22 |
| CHALLENGES TO THE GOVERNMENT'S RESPONSE .......................... | 24 |
| PREJUDICE TO THE DEFENDANT ....................................... | 26 |
| CONCLUSION ....................................................... | 27 |

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALICIA VELORIA | ) | Crim. No. 00-00145 |
| DEFENDANT-MOVANT | ) | Civil No. 08-0019  SOM/BMK |
| | | HON.  SUSAN OKI MOLLWAY |
| Vs. | ) | |
| UNITED STATES OF AMERICA | ) | REPLY IN SUPPORT OF DEFENDANT- |
| Respondant | ) | MOVANT'S MOTION UNDER 28 USC |
| | ) | § 2255 TO VACATE HER CONVICTION |

\*   \*   \*   \*   \*   \*   \*   \*   \*

COMES NOW, THE DEFENDANT-MOVANT, ALICIA VELORIA, PRO SE, and submits the following Reply In Support of her Motion under 28 USC §2255.

Defendant-Movant reasserts every issue and argument in her §2255 Motion and Memorandum, and in every exhibit thereto, and does not waive or abandon any issue or argument in this reply brief, either expressed or implied.

Attached hereto are additional exhibits for the Court's consideration when evaluating the allegations of Ms. Veloria against the arguments and affidavits advanced and filed within the government's response.

## EXHIBITS

| NUMBER | DESCRIPTION |
|---|---|
| 36 | Affidavit of Alicia Veloria |
| 37 | Note from Jury #1 |
| 38 | Ignacio Andres interview |
| 39 | Wallace Iaukea Rap Sheet |
| 40 | Post trial letter to Ling (8/7/03) |
| 41 | Letter from Office of Disciplinary Counsel (8/11/03) |
| 42 | Letter from Office of Disciplinary Counsel (11/19/03) |
| 43 | Letter to Office of Disciplinary Counsel (11/26/03) |
| 44 | Affidavit of Rhonda Marcy |
| 45 | Declaration of Alicia Veloria (intended for submission to 9th Cir.) |
| 46 | Partial docket, US v. VELORIA (03-10626) |

## AMBUSH OF UNCHARGED OFFENSES

The record reflects that Ms. Veloria was ambushed during trial with testimony regarding uncharged offenses thereby launching an evidentiary harpoon that could not be overcome by the defendant.

Throughout the Government's entire case-in-chief, Ms. Veloria was ambushed with testimony about drug dealing of which she was never charged; allegations of tampering with a witness, or obstruction of justice, of which Ms. Veloria also was never charged with.  Ambush of uncharged offenses has been found to constitute "plain error" and mandates reversal of conviction.

This issue WAS raised in Ms. Veloria's proposed appeal brief. See AMBUSH OF UNCHARGED OFFENSES: CONSTRUCTIVE AMMENDMENT OF INDICTMENT, beginning on page 45 and continuing through page 55, that was sent to both Mr. Sam King, Mr. Shawn Luiz, appellate attorneys and is also included within Ms. Veloria's 2255 as Exhibit 35

Ms. Veloria herein urges this court to adopt the reasoning developed by the Second Circuit in <u>Baum</u> and <u>Kelly</u>.  "Ambush of evidence of uncharged offenses denies the defendant the fundamental fairness required by due process." In both cases the Second Circuit found the ambush of evidence of uncharged crimes was **Plain Error**.  See United States v. Kelly, 420 F.2d 26, 29 (2d Cir. 1969); see also United States v. Baum, 482 F.2d 1325 (2d Cir. 1973), see Ms. Veloria's proposed brief on pages 52 and 53.

Notice of 404(b) material is required so that a Defendant is not subjected to a "trial by ambush."  <u>See</u>, <u>United States v. Kelly</u>, 420 F.2d 26, 29 (2nd Cir. 1969).  This is intended to enable a defendant an opportunity to prevent introduction of such evidence, and to head off time-consuming and potentially prejudicial contests before the jury over the admissibility of such

evidence.  In federal criminal cases the courts encourage open file discovery.

Under this concept it is not necessary for a defendant to seek pre-trial disclosure of the Government's intention to rely upon such troublesome evidence.

The right of the accused to be advised of such evidence prior to trial arises

from basic rights  under the Fifth and Sixth Amendments.  These include the

right to notice of the nature and cause of the accusation, the right to prepare a defense, the right to confrontation of witnesses, the right to effective

assistance of counsel, and the right to trial in accordance with due process

of law.  These guarantees will be hopelessly frustrated if a defendant does

not receive notice of such evidence until it is offered against him at trial.

United Staves v. Baum, 482 F.2d 1325 (2nd Cr. 1973).

In Baum, a conviction for possession of stolen goods was reversed

where such a motion had been denied.  The court stated:

> Confronted for the first time with the accusation of prior criminal
> conduct and the identity of the accuser, the defendant had little
> or no opportunity to meet the impact of this attack in the midst
> of trial.  This precarious predicament was precipitated by the
> prosecutor.

Id. at 1331.  Similarly, in Riggs v. United States, 280 F.2d 750, 753 (5th

Cir. 1960), the former Fifth Circuit strongly condemned nondisclosure of a

transaction not included in the indictment but "saved to be used as a surprise

knockout blow."  See also, United States v. Paone, 782 F.2d 386, 395 (2nd

Cir. 1986).

The trial court, and Ms. Veloria, had a stake in pretiral disclosure of the Government's intention to interject 404(b) evidence into the trial.

Admissibility of such evidence ordinarily poses serious questions of law that

may delay the proceeding  if litigated during the course of the trial.  More-

over, if the governement is allowed to admit such evidence during the trial,
mid-trial continuances may be necessary in the interest of justice to allow the
accused a fair opportunity to meet the evidence.  Finally, erroneous admission
of such evidence remains a common source of mistrials, appeals and retrials.

     The court's decision on Ms. Veloria's motion to rescind involuntary
waivers was based upon the loss of the same jury if a delay was granted for a
interlocutory appeal.  As such, the court likely would not have granted a conti-
nuance because of the ambush of uncharged crimes during the trial.

     Sound judicial administration required pre-trial notice of the
Governemnt's intention to use 404(b) evidence.  This pre-trial notice is
needed so that the question of admissibility can be resolved before the jury
is exposed to voir dire examination and opening statements.  See, United States
v. Gray, 730 F.2d 733 (11th Cir. 1984); see generally, 2 Weinstein's Evidence
404[1] at 404-13 - 404-14 (1980).  In fairness to Defendant and to the trial
court, the Government should have disclosed the intent to use the ambush of
uncharged wrongs, crimes or acts against Ms. Veloria during trial.  e.g.,
United States v. Stofsky  409 F.Supp. 609, 620 (S.D. N.Y. 1973); cf., United
States v. Solomon, 490 F.Supp. 373 (S.D. Ga. 1980) [Government voluntarily
gave defendant, under Rule 12(d)(1) of the Federal Rules of Criminal Procedure,
pre-trial notice of intention to use other crimes evidence].

     Additionally, to further enable Defendant and the Court to con-
sider the admissibility of any Rule 404(b) evidence in an orderly and intelli-
.gent manner, the Government should have provided Defendant, within a reson-
able  time, a list of all such contemplated Rule 404(b) evidence, including
names of witnesses, dates, summaries of expected testimony, and any related

documentary evidence, and all other material  that should have been requested

by Ms. Veloria's trial counsel, as it may relate to the Rule 404(b) evidence.

See, United States v. Kilroy, 523 F.Supp. 206, 216 (E.D. Wis. 1981).


## SACRIFICE OF MS. VELORIA'S STATUTORY RIGHT OF APPEAL

It is unclear whether Ms. Veloria's appeal attorney's intentional

sacrifice of her statutory right of appeal was to bury the errors of the trial

court, bury the errors of one or more court-appointed counsels, or further vin-

dictiveness exercised by Mr. Silvert through the court appointed appeal attorney.

The government attempts to get the Court to ignore the many issues

raised within Ms. Veloria's §2255, claiming they were raised by her appeal attor-

ney.  Exhibit 35 proves that the numerous errors identified within Ms. Veloria's

proposed opening appeal brief were NOT RAISED by the appellate attorney appoint-

ed to represent her.  These meritorious claims have never been addressed by the

Court.  The actions of Ms. Veloria's appeal attorney are more indicative of an

attorney having been appointed to intentionally sacrifice her satutory right

of appeal by ignoring all claims.

As a result of appellate attorney Shawn Luiz's decision to ignore

the numerous issues raised within Ms. Veloria's pro se opening appellate brief,

the errors of the trial court, and court appointed counsels, are very nearly

buried with the Ninth Circuit's remand for re-sentencing.


## ATTORNEY SILVERT'S AFFIDAVIT

In Paragraph Number 5. Mr. Silvert attempts to mislead the court

with artful deception.  A careful review indicates he intentionally tried

to undermine Claim #6 and #7, by intentionally misleading the court to believe

the proffer letter Ms. Veloria signed was the same one read in January, when he

knows this is not true, and at the same time try to inflame the passions and

prejudices of the court against Ms. Veloria with his reference to an "involvement

in a murder investigation."

Mr. Silvert does not state that a January 2001 proffer and September

2001 proffer are the same proffer. He tries to construe that they are with

a statement "Another but in all ways the same, proffer letter." He further

attempts to mislead the court with the statement "was not the first time Ms.

Veloria had seen and reviewed __such__ a proffer letter." (See Silvert Affidavit

p.4). A review of the proffer letter shows that it does _not_ contain any state-

ment regarding money laundering.

Mr. Silvert appears to further mislead the court with his state-

ment on page 6, "As early as October of 2000, her Alaska Federal Public Defender,

Mary Geddes, had discussed with her (Ms. Veloria) that AUSA Brady was going

to charge her with money laundering counts." This misconstrues the issue entir-

ly. The issue was not whether a Public Defender told Ms. Veloria anything about

money laundering counts, or whether Ms. Veloria knew about the threats from

AUSA Brady in 2000 regarding money laundering counts. The issue is whether the

proffer statement was based upon a clear understanding of what the government

told Ms. Veloria that she would have to admit to **BEFORE THE PROFFER STATEMENT**.

The "shock" was at the government's insistence that Ms. Veloria plead to

money laundering; this was _not_ the understanding under which the profferred

statement was given.

The government engaged in misconduct regarding the proffer state-

ment because they misrepresented to Ms. Veloria that they would offer a deal

IF information was provided.  However, AFTER information was provided, of which

they admit was truthful, they forced Ms. Veloria to reject the deal because

they were requiring her to admit to something she was not charged with.  Addition-

ally, such an admission would have allowed the government to move to forfeit

everything owned by Ms. Veloria.  This misconduct is clearly evidenced by the

Government not charging Ms. Veloria with money laundering even after she rejected

their deceptive offer.


## GOVERNMENT'S OPPOSITION IS IN ERROR

The Government's 49 page opposition attempts to mislead the court

by repeatedly asserting Ms. Veloria cannot bring up things that have already

been addressed.  Ms. Veloria herein asserts that this is her FIRST opportunity

to be heard.  As evidenced by the exhibits submitted in support of her §2255

Motion, Ms. Veloria's claims were NEVER raised for review.

The judicially created doctrines of res judicata and collateral

estoppel, implied by the government, appear to misrepresent that the issues

raised were all previously adjudicated with a final judgement or order.  This

clearly misrepresents that Ms. Veloria's counsel raised all the issues in her

proposed opening brief which she sent to her appeal attorney, and submitted as

an exhibit to her 2255, and they were all decided against her.  Intentional

misrepresentation can be construed as contumacious deceptive behavior and

sanctionalble.

This court is requested to take judicial notice that Ms. Veloria's

repeated requests for counsel to prepare her 2255 were denied.  This court is

requested to take judicial notice that Ms. Veloria's repeated requests for

counsel to represent her on her 2255 were also denied.  Ms. Veloria is repre-

senting herself on her 2255, and does not have counsel to assist her in any way.

In the government's Procedural Background, the government apparently plays fast and loose with the facts. In a statement on page 2 of the government's opposition, the government states "VELORIA continued trial numerous times and sought and obtained new court appointed counsel." Footnot 1, that follows this statement, indicates "VELORIA's original attorney, First Assistant Federal Public Defender Alexander Silvert was replaced by Emmanuel Guerrero, who was replaced by trial counsel Winston M. Ling, who was replaced by Samuel F. King, who was subsequently replaced by Shawn A. Luiz."

This appears to be another intentional attempt to mislead the court First Assistant Federal Public Defender Alexander Silvert, after taking Ms. Veloria to Judge Kurren, leaving her to be instructed to cooperate with the government in an exparte meeting, withdrew on his own motion due to an ethical conflict. Emmanuel Guerrero withdrew, and Winston M. Ling was her only trial attorney.

Samuel F. King was appointed by the court as attorney for appeal because Mr. Ling did not have the time necessary to dedicate to Ms. Veloria's appeal. Mr. King withdrew on his own motion and Shawn A. Luiz, was appointed by the court and appears to have intentionally sacrificed Ms. Veloria's statutory right of appeal, based on issues in the proposed opening brief provided to him by Ms. Veloria in contrast to the only issues raised in the brief Shawn A. Luiz actually filed.

The Government continues with intentional misrepresentation of the proffer statement proceedings, on page 3. The Government neglects to mention the misconduct of the government, where they misrepresented to Ms. Veloria

that they would offer her a deal if she provided information, and after providing

information, which they admit was truthful, they forced her to reject the offer

because they wanted her to admit to something she was not charged with: money

laundering.  Such an admission would have permitted the government to move

to forfeit everything she owned.  This misconduct is clearly shown in not

charging her with money laundering after she rejected their deceptive offer.

Although the government intentinally ambushed her during trial with other un-

charged wrongs, crimes, or acts, intended to imply to the jury that she was

guilty of money laundering, by testimony about the purchase of money orders and

Sears credit card that was used to purchase a refrigerator, and many other acts.

Page 4 of the Government's response states that Ms. Veloria was

held accountable for 559.96 kilograms of marijuana, where in the sentence

just before that the government indicated cocaine.  However, the Government

admits that Ms. Veloria was also sentenced for conduct she was acquitted of.

And admitted she was also sentenced for other uncharged wrongs, crimes or

acts that she was ambushed with during trial.

The government's assertion that Ms. Veloria failed to show pre-

judice is blied by the documents in the record before this court.  The ambush

of other uncharged wrongs, crimes, or acts, has been held to constitute **Plain**

**Error** and mandates reversal.  Where plain error is found, prejudice is pre-

sumed, and need not be shown.  But a review of the documents in the record

would show that Ms. Veloria has demonstrated prejudice, contrary to the mis-

representations of the Government.

The Government admits that Ms. Veloria was re-sentenced to the

same sentence, to punish her for conduct she was acquitted of.

The Government appears to refer to the brief filed by Mr. Luiz in stating "Veloria appealed on several grounds including an argument that her sentence was unconstitutional." Page 5. The Government fails to address issues in the proposed appeal brief Ms. Veloria sent to Mr. LUiz, or Ms. Veloria's direction to Mr. Luiz NOT to file for re-sentencing under any circumstances. He was directed to move for the court to strike the illegal portion of the sentence, not to move for re-sentencing, and the resons for that direction. Mr. Luiz apparently requested re-sentencing intentionally so the court could re-sentence Ms. Veloria to the same sentence, to her prejudice.

The Government refers to the Ninth Circuit affirming Ms. Veloria's conviction on December 7, 2005, based on a brief submitted by Mr. Luiz, which appears intended to sacrifice her statutory right of appeal, and not preserve the errors on the record for Ms. Veloria that she raised in her proposed brief, where Mr. Luiz was made aware the Ninth Circuit had already reversed convictions based on the issues in the proposed brief, and accepted some of the issues as Plain Error, that mandated reversal.

## INEFFECTIVE REPRESENTATION -- PREJUDICE TO MS. VELORIA

Failure to file motions and memorandums. Several proposed motions and memorandums were provided to Mr. Ling by Ms. Veloria were intended to be filed on her behalf, and his affidavit indicates he filed some and not others. See Exhibits 19-21. Notwithstanding Mr. Ling's assertion that he was not required to file any of the motions or memorandums, he could not escape prejudice created by his failure to raise certain essential issues expected to be raised by any competent trial advocate.

The motions and memorandums prepared on behalf of Ms. Veloria, of which she wanted filed immediately "affirm or deny the occurance of (any such) alleged unlawful act [as defined in 18 USC 2510]" pursuant to 18 USC 3504(a)." This would have required admission that the house at 69 Mauna Loa Street was rented by the federal government for Marlene Anduha, and her daughter Carmen Anduha, to provide a safe house for two federally protected witnesses, and it was likely under constant electronic surveillance to ensure safety of the protected witnesses.

The prejudice is that illegally obtained evidence, and all other evidence derived therefrom, could not be introduced against Ms. Veloria under the prohibitions in 18 USC 2515, and under fruit of the poison tree doctrine. See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## 18 USC §2515

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

Evidence gathered by electronic surveillance could have been used by Ms. Veloria's defense to prove the Government knew every person that entered or exited the house, the person or persons that resided in the bed-room where the cocaine was found, the person or persons that brought the co-

caine into the house, and the person or persons that were dealing cocaine

from the house, with the implied knowledge of HPD and the federal government.

Additionally,  evidence gathered by electronic surveillance could also have

been used by the defense to show the jury that HPD was withholding exculpatory

evidence to wrongly convict Ms. Veloria to cover up the embarrassment that

cocaine had been found in a safe house rented by the federal government for

protected witnesses with tax payer dollars.

Ms. Veloria has demonstrated prejudice by the ineffective rep-

resentation of counsels, including the increase in reasonable doubt that could

have been developed with the withheld police report, that Myles Kurashige came

to the house at 69 Mauna Loa Street to see another female and not Ms. Veloria.

The motion to disclose the identity of the informant, and memoran-

dum, could have forced the Government's admission that the illegal electronic

surveillance, without a search warrant, from inside the house at 69 Muna Loa,

was illegally used under the pretext it had come from an informant, to conceal

the illegal electronic surveillance in violation of federal criminal statutes.

See 18 USC 2510 through 2521.

Contrary to the Government's assertions beginning on page 10,

Ms. Veloria has shown Pre-Trial, Trial and Appellate Counsels' performance

was ineffective and the ineffective performance created prejudice to Ms. Veloria.

It cannot be said with any degree of certainty that failure of any

attorney to locate and interview essential defense witnesses, failure to

require the Government to immediately admit or deny they illegally conducted

electronic surveillance, used illegally obtained evidence to get a search

warrant under the pretext it came from an informant, or raise issues that

demonstrated Plain Error and mandate reversal, is not the very definition of ineffective assistance of counsel, and that it demonstrates prejudice to Ms. Veloria.

Ms. Veloria has more than met her burden of proving both ineffective assistance of counsel and prejudice to Ms. Veloria's defense at trial. This court cannot overcome the gross miscarriage injustice in this case by the appointment of court-appointed counsel that intentionally sacrificed Ms. Veloria's statutory right of appeal. Compare all of the issues and arguments raised in the proposed brief sent to Mr. Luiz by Ms. Veloria and the issues in the brief actually filed by Mr. Luiz. Consider the directions to Mr. Luiz by Ms. Veloria, that if he did not intend to file her proposed brief, that he was to immediately withdraw and she would file it herself pro se.

Actions of counsels, or lack thereof, raised in Ms. Veloria's 2255, established that all of her counsels were ineffective and that it prejudiced Ms. Veloria, and denied her statutory right of appeal. This court must admit that no court has ever held that denial of a criminal defendant's statutory right of appeal was not prejudice.

### HAMPERED LITIGATION

The government's opposition on page 14 through 16 merely admits that Mr. Silvert failed to raise the unnecessary pre-indictment delay, which created prejudice by the loss of essential witnesses, and the denial of an opportunity to locate and present witnesses with the facts fresh in their mind. Over four years after the incident the facts become fuzzy in a witnesses' memory, and many witnesses were no longer available or were deceased. The

prejudice is demonstrated on the record by the failure of the court-appointed

counsels to perfrom their duties expected from any competent advocate.

### WITHHELD EXCULPATORY POLICE REPORT

With respect to Exhibit 28 (withheld police report,) Exhibit 1 clearly demonstrates to this Court that, contrary to the government's assertions within its Response, the nature and circumstances of Myles Kurashige's arrest were **NEVER** disclosed to the defense at any time, for any reason. There is nothing contained within Exhibit 1 that could be considered NOTICE of the police report's exculpatory contents.

The defense DID NOT KNOW that Steven Correia's police report in relation to the search of 69 Mauna Loa Street contained information indicating that Myles Kurashige was specifically asked if he was "looking for Alicia" to purchase drugs and then responsed with "No".

This information is EXCULPATORY material that was intentionally withheld by the government to secure an unfair advantage over Ms. Veloria during the prosecution of the criminal case against her.

Had this police report been disclosed, as required under **Brady**, the defense would have called Officer Steven Correia to testify at Ms. Veloria's trial. Officer Correia's testimony regarding the arrest of Myles Kurashige would have provided the jury with reasonable doubt as to whether Ms. Veloria was actually the OWNER of the drugs recovered from 69 Mauna Loa Street.

In **Smith v. United States, 364 FSupp 1145 (1973, ED Va),** the Court found:

> Where government is found to have been in possession of evidence which is vital to defendant's case and defendant himself discovers existence of such evidence only after trial, absence of due dilligence to discover evidence before trial is no bar to relief under 28 USCS § 2255 and appropriate standard to be applied in determining whether evidence is of such vital importance that relief should be granted is whether introduction of such evidence at trial would have been likely to have affected result.

This police report was withheld by the government, and counsel charged to defend Ms. Veloria either ignored their responsibility to have sought this police report or admit that their "office did not aggressively pursue this particular police report" (See Affidavit of Alexander Silvert, p. 2).

To the extent that Mr. Silvert was relieved as counsel for Ms. Veloria approximately 16 months before the commencement of trial, the failure to obtain Steven Correia's police report should not be attributed to Mr. Silvert. However, Ms. Veloria has demonstrated by the submission of Exhibit 29A that her very first written communication to Mr. Silvert (on 11/1/00) specifically pointed out the absence of the report of Kurashige's arrest and the suggestion that it COULD contain exculpatory information. It seems unusual that the Federal Public Defender's Office spent numerous hours investigating this case and somehow overlooked the absence of this report, even though Ms. Veloria spe-cifically requested that Mr. Silvert "review this report." Clearly this police report should have been produced by the Government in the discovery or at the very least, sought during the "investigation" period by counsel. Ultimately, trial counsel Mr. Ling is responsible for the failure to obtain this report for the defendant's use at trial.

It was unreasonable for counsel representing Ms. Veloria to completely ignore her requests to obtain this report. The presence of numerous other peoples' property within the house coupled with the arrest of three other suspects that day at 69 Mauna Loa Street (see exhibit 38) gives reasonable doubt as to whether the drugs actually belonged to Ms. Veloria and not one of the others present.

Ms. Veloria was severly prejudiced during her trial by the intentional withholding of this exculpatory police report. The trial transcripts demonst-rate that even in the absence of Ms. Veloria presenting a defense, returning a guilty verdict was a difficult deceision for the jury panel. Ms. Veloria's jury spent more time deliberating their verdict than that which was spent sitting through the trial testimony and arguments. Additionally, they had numerous unanswered questions, as evidence by their submission of Jury Note

-16-

#1 containing seven (7) questions attached hereto as Exhibit 37.

The length of deliberations, the eight jury communications, and the note from the jurors indicating they were deadlocked (Jury Note #3, filed 6/10/03) all demonstrate that the decision to convict was not easily reached. The careful consideration put forth by Ms. Veloria's jury indicates that it is very likely that there may have been a different outcome if evidence had been presented to the jury which effectively suggested an alternative perpetrator for the crime Ms. Veloria was on trial for.

Therefore, it MUST be admitted that by withholding Steven Corriea's police report of Myles Kurashige's arrest, Ms. Veloria was denied the opportunity to impeach the Government's claim of ignorance regarding "other occupants" of the house on 69 Mauna Loa Street. This denial materially impacted the fairness of Ms. Veloria's trial. All evidence against Ms. Veloria was circumstantial. Ms. Veloria did not present a defense, and for the most part, counsel for Ms. Veloria did not confront the Government's often questionable testimony against Ms. Veloria. The record reflects that, even in the absence of presenting a defense for Ms. Veloria, the jury was not easily swayed by the Government's contentions.

By a review of all relevant transcripts, other police reports, and a Memorandum of Interview of one of the occupants of the hosue (See Exhibit 38 ) this Honorable Court should recognize the impact the contents of this  police report would have had on Ms. Veloria's jury. Ms.  Veloria was NEVER the sole occupant of the house on 69 Mauna Loa Street and testimony should have been elicited demonstrating this for Ms. Veloria's jury.

In Brady v. Maryland, the Supreme Court explained, "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly."  373 US. at 87.  Premised on this understanding of fairness and

-17-

prosecutorial responsibility, the Court held that the suppression of evidence favorable to any accused violates the due process of law, irrespective of whether the suppression is done in good faith or bad.  Id. at 87.

Withholding knowledge of a second suspect conflicts with the Supreme Court's directive that "the criminal trial, as distinct from the prosecutor's private deliberations, [be preserved] as the chosen forum for asertaining the truth about criminal accusations."  Kyles v. Whitley, 514 U.S. at 440.

Additionally, several well-established propositions guide a materiality analysis.  First, "a showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal."  Kyles v. Whitley, 514 U.S. 419, 434, (1995).  Instead, the court must determine whether, in the absence of the undisclosed evidence, the accused "received a fair trial, understood as a trial resulting in a verdict worthy of confidence."  Id. Second, the "defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict."  Id. at 434-435.  Third, "once a reviewing court ... has found constitutional error, there is not need for further harmless-error review."  Id. at 435.  Fourth, the reviewing court must consider the suppressed evidence "collectively, not item by item."  Id. at 436.

Ms. Veloria's conviction should be reversed, her sentence vacated and she should be granted immediate release.

## CROSS EXAMINATION OF GOVERNMENT WITNESSES

If trial counsel, Mr. Ling was providing effective assistance to Ms. Veloria during trial, and was in possession of the Federal Rules of Criminal Procedure at the time of Wallace Iaukea's testimony, then why did he fail to consult his rulebook to cite Exception 5 (prior witness statement) to Rule 803 regarding hearsay?

At the time of Iaukea's testimony in the government's case-in-chief he was serving asentence for SEXUAL ASSAULT in the THIRD DEGREE in addition to his PAROLE having been REVOKED. (see Exhibit 39). The record reflects that trial counsel Mr Ling advanced arguments to the court regarding Iaukea's present sentence being for "drugs" without so much as consulting the OBTS "rap sheet" provided to himclearly indicating otherwise. Counsel began this argument to the court because Ms. Veloria was insisting that he move to introduce Iaukea's many convictions for crimes of dishonesty for the jury's consideration. The whole discussion proved to be a waste of everyone's time because defense counsel was utterly unprepared and unfamiliar with the ways to attack credibility - all to Ms. Veloria's detriment.

The behavior and actions of trial counsel with regard to cross-examination and failure to impeach BOTH government witnesses CANNOT under any circumstances be considered sound trial strategy.

Ms. Veloria was prejudiced by counsels errors because if Iaukea's propensity toward dishonesty had been revealed for the jury, they may have arrived at a different verdict. Iaukea was one of two key government witnesses whose testimony actually linked Ms. Veloria with alleged drug dealing activities. All other evidence was circumstantial and could

reasonably have been attributed to one of the two males arrested within the house on 69 Mauna Loa Street that day.

The record demonstrates that Ms. Veloria's jury <u>DID</u> <u>NOT</u> have enough information with which to base their decision (See Exhibit 37, Jury Note #1). This is a direct result of defense counsel Mr Ling's ineffectiveness.

## FAILURE TO TURN OVER AGENT'S NOTES OF INTERVIEW

IRS Agent Pa and AUSA Brady expect that this Honorable Court will believe that a 14 page MEMORANDUM OF INTERVIEW was written without utilizing notes, despite the unambiguous declaration at the end of the document acknowledging that in fact, notes WERE used to type up this memorandum.

In addition, Ms. Veloria immediately notified her counsel of the glaring errors contained within this Memorandum, and still, all errors were unchallenged by defense counsel Ling, even though counsel was well aware of the ensuing prejudice that would undoubtedly accompany a trial. The record demonstrates for this court by Mr. Ling's repeated assertion regarding the ways in which the defense was hampered.

## RELIEF FROM INEFFECTIVE ASSISTANCE OF COUNSEL

Ms. Veloria has submitted Exhibits 40-43 herein to demonstrate to this Honorable Court that her great dissapointment with trial counsel is not something that has developed in some last-ditch effort on the part of a convicted defendant seeking post-conviction relief.   Ms. Veloria is in possession of numerous documents that would highlight for anyone reviewing the countless ways in which trial counsel Mr. Ling failed to act; failures which significantly increased Ms. Veloria's likelihood of conviction.

The declaration of Winston Ling, counsel who represented  Ms. Veloria

during trial, contains much information which is contradicted by both the record
of the trial itself as well as the numerous exhibits submitted by Ms. Veloria
with repsect to the issues raise for review.  This Court should evaluate the
contents and declarations of counsel to detrmine whether, in addition to his
ineffective representation of Ms. Veloria, he is also intentionally misleading
this Court regarding several aspects in attempt to deflect attention from his
failures.

### UNPROFESSIONALISM OF APPELLATE COUNSEL

It appears, as of the date of the preparation of this REPLY, that Shawn
Luiz, Ms. Veloria's appointed appellate counsel, has not prepared an affidavit
on behalf of the government.   In preparation for the filing of a §2255 Motion,
Ms. Veloria contacted Mr. Luiz and requested that he prepare an affidavit
acknowledging his receipt of Ms. Veloria's pro se appeal brief, months before
the due date, also on computer disk, and subsequently ignored ALL of the issues
contained therein.  Mr. Luiz declined her 'invitation'.

However, the facts remain the same, Ms. Veloria expended a significant
amount of energy and effort into the preparation of her pro se brief and
counsel completely ignored the research and Ms. Veloria's specific directions
regarding her wish to file it pro se if he did not agree with the issues.  Ms.
Veloria has not been declared incompetent by this Court and thereby believes
that she has a fundamental right to make decisions affecting her life.   The
exhibits submitted within this §2255 demonstrate  to this Honorable Court
that Ms. Veloria was very specific in her communications to appellate attorneys
regarding her desire to raise certain issues for review.  Shawn Luiz's blantant
disregard towards Ms. Veloria's research conveys the idea that a criminal

-21-

defendant has no more right to involvement in her case than a ping-pong ball has in its journey through the obstacles of a ping-pong machine.

Shawn Luiz's indifference towards Ms. Veloria and her wishes as the individual who will ultimately pay the consequences should be unconscionable to this court.  Mr. Luiz never once contacted Ms. Veloria or even asked for her input although he received neumerous communications urging him to do so. As such, the issues within Ms. Veloria's pro se appeal brief should be considered by this Court.  (see Exhibit 35.)  "This constitutional error excuses Mr. Skurdal's procedural default..."  **United States v. Skurdal, 341 F3d 921, 925 (9th Cir. 2003).**

## GOVERNMENT'S INABILITY TO COMPLY WITH DEADLINE

This court should take judicial notice and seriously consider the government's reason for having to request 2nd extension in order to prepare their response.  With respect to AUSA Brady's significant difficulties in contacting Mr. Ling and Mr. Luiz, this court should consider the difficulties Ms. Veloria encountered when trying to contact both of these attorneys who were, at the time, appointed to represent her and defend her liberty.

If, AUSA Brady, with all of his power, influence and pursuasive tactics, was not able to get Mr. Luiz and Mr. Ling to submit timely affidavits regarding Ms. Veloria's case, this court should imagine what Ms. Veloria dealt with on a daily basis with her life hanging in the balance.

Additionally, Ms. Veloria herein objects to the submission of a DECLARATION of Winston Ling rather than an affidavit as the information contained therein should be sworn to under oath so that Ms. Veloria may utilize said document to pursue additional relief (see Exhibit 44, regarding conduct of

Winston Ling.)

Exhibit 44 effectively demonstrates to this court that Ms. Veloria expressed, on numerous occasions to Mr. Ling, her desire to be involved in all aspects of her case. Defense counsel Ling's intentional disregard of Ms. Veloria's explicit desire to be present at all stages of her trial should be viewed in terms of his eithical obligations and Ms. Veloria's constitutional right to be present at all proceedings against her.

Exhibit 36, coupled with Exhibit 44 and the trial record indicating Ms. Veloria obviously invloved herself with all apsects of her trial, can all be considered in determining whether Ms. Veloria actually agreed to have her presence waived as Mr. Ling states in his declaration.   Additionally, Exhibit 24 also demonstrates that Ms. Veloria, indeed, anticipated being called in the event her case was called, although, the record reflects that defense counsel Ling, against the known wishes of a defendant, waived her presence without her knowledge and is now attempting to lie about it to this court.

CHALLENGES TO THE GOVERNMENT'S RESPONSE

The government repeatedly refers to the house on 69 Mauna Loa Street as Ms. Veloria's 'residence'. There is nothing introduced at trial to indicate that the house on 69 Mauna Loa Street was rented, owned or otherwise listed as the residence of Ms. Veloria. If the Court is to assume that because Ms. Veloria was located within the house at the time of the search warrant, then it also should consider the other occupants of the house as suspect as well. However, the government, although it was in possesion of numerous documents seized as evidence, chose ONLY to consider Ms. Veloria as a suspect and to completely disregard all other evidence with regard to this search.

First of all, Ms. Veloria was not listed as the owner of the residence in the search warrant; it lists her only as an occupant. Additionally, the search warrant itself notes the likely presence of other 'unknown occupants', of which several were found, although none charge, and none produced by the government at trial to testify against Ms. Veloria. As evidenced at trial, Hawaii Police Department officers entered the UNLOCKED front door of 69 Mauna Loa Street and immediately encountered Ms. Veloria asleep on the floor next to ZACHARY SMITH. Both Veloria and Smith were arrested and taken to the police station. Approximately 45 mintutes later, somehow, Ignacio Andres was arrested in the lower portion of the house. Accoring to the police report (see Exhibit 1) he was discovered sleeping with a crack pipe in his hand. The obvious questions regarding this discovery should have been probed during trial: How did this happen? What kind of search warrant procedure does this sound like? When a search warrant is served, one of the main objectives is to secure evidence and to ensure the safety of the searching officers. Neither of those goals were attained during the search on 7/10/96 at 69 Mauna Loa Street. Not to mention that the "Master Report" and others were suspiciously written over <u>four</u> months later, on the same day, 11/12/96. Although, Steven Correia's EXCULPATORY police report showing the true nature of this search was written in an acceptable time frame, three days later, on 7/13/96. However, counsel for Ms. Veloria did not confront the chief investigator, Samuel Thomas, with the obvious implications of his officers failing to discover Andres until 45 mintues after initial entry into a simple area of 1,450 sq. ft. (combined). Additionally, consel should have confronted Samuel Thomas regarding his four month delay in

writing the preliminary police report regarding the search for the house on 69 Mauna Loa Street.

The evidence introduced at trial showed that Ms. Veloria was arrested the day of the search warrant on 69 Mauna Loa Street, along with three other males. The government was NOT able to produce any direct evidence that would implicate Ms. Veloria as the owner of the drugs, other than two career criminals who testified that they previously purchased crack from Ms Veloria. Both of these government witnesses would have fingered either or both additional occupants of the house if HPD officers or the government would have indicated that is what they wanted to hear.

The government's repeated assertion that they 'had substantial evidence against Veloria' is particularly questionable when compared with the record. With the exception of the witnesses (whose testimony did not bear directly on the drugs found on 7/10/96) ALL evidence gathered and seized that day could have culminated in charges against the two others rather than Ms. Veloria. Both Zachary smith and Ignacio Andres had personal property located within the house that was recovered and inventoried. Trial counsel representing Ms. Veloria should have moved to enter these various items of property to create reasonable doubt. However, even without the defense actually entering these items into evidence, effective cross-examination of the seizing officers would have allowed Ms. Veloria's jury to evaluate the true facts for themselves. Instead, they were left with many unanswered questions (see Exhibit 37) and in the absence of having been presented with any evidence or testimony showing the TRUE nature regarding the many occupants of the house on 69 Mauna Loa Street, Ms. Veloria's jury was forced to rely on their collective memories of the evidence presented on behalf of the government.

## PREJUDICE TO THE DEFENDANT

Ms. Veloria was significantly prejudiced by the numerous constitutional violations she raised for review under 28 USC § 2255. Throughout its response, the Government repeatedly asserts that Ms. Veloria has failed to affirmatively prove prejudice as a result of the claimed constitutional violations. These allegations of failure to prove prejudice are in direct contradiction with the trial record in Ms. Veloria's case. In fact, most of the individual claims contain arguments outlining prejudice to the defendant. However, even if a few individual claims do not contain such arguments, the vast majority do and the facts remian the same and should be applied to all issues. Ms. Veloria's jury spent more time in deliberations than they did listenting to trial test-imony. There were eight jury communications, one of which indicate they were deadlocked (Jury Note #3, filed 6/10/03). The responses to the various ques-tions submitted by the jurors could not have assisted them in their fact find-int quest because of the utter lack of a defense presented on behalf of Ms. Veloria. (See exhibit 37, Jury Note #1). The jury was instructed not to consider anything for which evidence was not presented. Look at Court's response to Jury Note # 1.

Further complicating the jurors' task was a heated argument whereby one juror reportedly threatened another. Although the threatened juror indicated to the Court that he would be able to remain impartial, the record reflects that the juror who did the actual threatening was NEVER questioned regarding his impartiality and ability to continue deliberations without compromising his vote on the verdict. Obviously, the decision to convict Ms. Veloria was a difficult one for the jury to reach. IF the jurors had been given more informa-tion, or even ANY exculpatory evidence available to the government or the counsel for the defense, they may have arrived at a different verdict.

The words and actions of Ms. Veloria's jury panel alone speaks volumes with respect to the prejudice suffered by the defendant. This Honorable Court should exercise its vast authority and grant petitioner the requested relief in the interest of justice.

## CONCLUSION

Ms. Veloria has more than met her burden in demonstrating the various ways in which her court-appointed counsel proved themselves to be ineffective in their representation of her. Both prongs set forth in **Strickland v. Washington** have been met. The numerous errors raised for review CANNOT be considered to be part of a sound trial strategy undertaken in the best interest of Ms. Veloria.

The government has filed a 49 page response citing numerous caselaw arguing that Ms. Veloria is not entitled to relief for any of the issues raised for review in her §2255 motion. However, a careful review of the entire trial transcripts would demonstrate to this court that on many occasions during Ms. Veloria's trial, AUSA Brady argued to the court that errors arising throughout the trial  should be waived as they should have been brought up BEFORE trial commenced and a jury was sworn. AUSA Brady also stated on occasion, "Whether this triggers other remedies for the defendant is not before this court".

It seems that the government is free to argue things one way during trial and then change their position to suit their objective at a later date. Just as AUSA Brady stated that Ms. Veloria was TRUTHFULL at the debriefing session and then after Ms. Veloria's trial, changed his position during the preparation of the PSI to ensure that Ms. Veloria would not qualify for "Safety Valve".

Even the documents filed in support of the government's Response to Ms. Veloria's §2255 can be viewed as contradictory. For example:

In Winston Ling's Declaration, with respect to testimony from the key government witnesses, the following sentence appears: "I knew what they would be testifying about and there are a lot of cases where I don't want to speak with the prosecution witnesses in part because they will be prepared to what

I will be asking." (See Ling Declaration Document 266-3, Entry #8.)

However, a very different position can be see in the transcripts of Ms. Veloria's trial in discussions about the testimoney of the two key government witnesses: "...The problem I have is, in this case, is -- and if I were to cross-examine these witnesses, I don't know what they are going to say for sure." (Tr. 6/4/03, p. 29, L.15.)

The bottom line is that trial counsel Ling did not even attempt to interview or locate ANY of the government witnesses because he was hoping that Ms. Veloria would "accept the deal" being offerred by AUSA Brady in this case. The very day BEFORE the start of Ms. Veloria's trial, defense counsel Ling, once again brought up the subject of Ms. Veloria entering a plea even though he was well aware that she had flown in for the commencement of trial, as did several of her friends and family members.

Defense counsel Ling's declaration is contradicted, in many ways, by the files and records in this case, in addition to the many exhibits filed by Ms. Veloria regarding his representation of her during trial. (See Exhibits 8-21, 23, 29A, 29B, 31A, 31B, 36, 37, 38, 39, and 44.)

This court is respectfully requested to carefully scrutinize Winston Ling's Declaration against the transcripts as well as the above mentioned Exhibits submitted in support of Ms. Veloria's consitutional claims.

With respect to the government's blanket statement the Ms. Veloria received effective assistance at all stages of her trial, one need only read further into his response to find areas where, by default, it must be admitted that 1) the errors raised for review did, in fact, occur during trial and 2) Court appointed trial counsel was not able to effectively

argue the merits utilizing the appropriate, or any methods.

The government's response cites numerous caselaw in support of arguments, however, upon a review of these cases, this court will see that these cases, in fact, have little or no similarities with the facts in Ms. Veloria's case. The only inference one could reasonably make regarding this is that the government is attempting to reach into cases that have nothing to do with Ms. Veloria's in hopes of confusing both Ms. Veloria and this court.

Furthermore, with respect to many of the issues raised for review, caselaw is clear, many times issued by the Supreme Court, and this court should adopt the reasoning located therein and reverse Ms. Veloria's conviction as it is violative of the rights guaranteed to her through the United States Constitution.

Ms. Veloria submits that the record of her trial cannot and does not "conclusively" demonstrate "strategic reasons" for her court appointed attorneys many failures and thus, this court should hold an evidentiary hearing if it believes that Ms. Veloria has not submitted enough proof within her §2255 and Exhibits to warrant reversal of her conviction.

It must be admitted that this case was a close one for the jury. The record reflects that Ms. Veloria's jury panel spent more time in deliberations than they actually spent listening to testimony. The amount of time spent in deliberations as well as the numerous Jury Notes submitted throughout the deliberation period demonstrate to this court that but for counsel's unprofessional errors there may have been a different verdict in this case. The very first jury communication clearly demonstrates the difficulty, at the outset, that Ms. Veloria's jury was having in their fact-finding quest. (see Exhibit 37, Jury Note #1.) To further illustrate prejudice to Ms. Veloria, see the Court's response to Jury Note #1, informing the jurors that evidence

-29-

was not presented regarding these questions and that they were not to rely to

anything not in the record.  And WHY was evidence not presented regarding the

many critical areas (of which the jury correctly iquired into - see Exhibit 37)?

Evidence was not submitted, either by cross-examination or on behalf of Ms.

Veloria, because defense counsel Mr. Ling was unprepared, unqualified and

unprofessional in his representation of Ms. Veloria.

Ms. Veloria was acquitted of one count against her, and she may very

well have secured an acquittal on both counts had Mr. Ling prepared for her

defense accordingly, as was his duty.

Additionally, even IF counsel had been effective, the government

deceptively engaged in misconduct by withholding exculpatory material from the

defense, of which greatly prejudiced even the possibility of presenting a

defense.  This withholding of exculpatory material was perpetrated against

Ms. Veloria with the express purpose of hampering any ability she may have had at

being acquitted of the offenses she was on trial for.

The government should be sanctioned for their egregrious and violative

behavior with respect to the prosecution of Ms. Veloria's case.

Once again, Ms. Veloria reasserts every issue and argument in her

Pro Se § 2255 Motion to Vacate, Set aside, or Correct a Sentence by a Person

in Federal Custody, and every exhibit thereto, and does not waive or abandon

any issue or argument in this Reply brief, either expressed or implied.

## CONCLUSION

In light of the numerous constitutional violations raised under **28 USC §2255** for review, Ms. Veloria respectfully requests that this Honorable Court

**ORDER** that her conviction be reversed

**ORDER** the immediate release of Alicia Veloria

**ORDER** the return of Ms. Veloria's property seized on 11/22/96

**And/or ORDER** any other remedies of the Court deems appropriate

**Dated:** March 31, 2008, at Honolulu, Hawaii.

I have written the forgoing and state that the facts are set forth upon personal knowledge and are true and correct to the best of my knowledge.

Signed under penalty of perjury under 28 U.S.C. 1746, this ___31 st___ day of ___March___, 2008.

Alicia Veloria
P.O. Box 30080
Honolulu, HI 96820