IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALICIA VELORIA, | ) | CRIM. NO. 00-00145 SOM |
| | ) | CIV. NO 08-00019 SOM/BMK |
| Petitioner, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | VACATE, SET ASIDE, OR CORRECT |
| | ) | A SENTENCE BY A PERSON IN |
| UNITED STATES OF AMERICA, | ) | FEDERAL CUSTODY UNDER 28 |
| | ) | U.S.C. § 2255 |
| Respondent. | ) | |
| _____ | ) | |

ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE
BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255

I.    INTRODUCTION.

Alicia Veloria is a convicted drug dealer.  She was convicted of possessing with intent to distribute in excess of five (5) grams of cocaine base and sentenced to 78 months in prison and 4 years of supervised release.  On December 26, 2007, Veloria filed the present Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.  Veloria's memorandum in support of her § 2255 petition is over 200 pages long and raises nearly 50 grounds of error.  This court scheduled an evidentiary hearing limited to exploring what, if any, prejudice Veloria had suffered by making a pretrial statement to the Government.  The court appointed counsel to represent Veloria in that hearing.

The Government was prepared to call witnesses at the evidentiary hearing but did not do so after learning that Veloria would present no live witnesses at the hearing.  Veloria herself

invoked her Fifth Amendment right to avoid being called as a witness by the Government.  This court informed Veloria that, if she failed to testify and subject herself to cross-examination, her own declaration would be disregarded, unlike declarations and affidavits of witnesses who, if called to the stand, would have been subject to cross-examination.  Indeed, any of the proposed Government witnesses (attorneys and one law enforcement agent) could presumably, with proper notice, have been called as witnesses by Veloria.  This court views Veloria's refusal to subject her sworn statements to cross-examination as akin to a witness's refusal to be cross-examined after giving direct testimony.  In the latter situation, this court would strike the witness's direct testimony and give it no weight.  Similarly, this court gives Veloria's sworn statements no weight because she is not subject to cross-examination.

This court also made it clear that unsworn statements Veloria made when representing herself would not be considered evidence.  Veloria did not challenge the veracity of the declarations submitted by the Government.  Accordingly, what was scheduled as an evidentiary hearing turned out to involve no live testimony at all.  Because none of the grounds raised in the petition justifies § 2255 relief, Veloria's § 2255 petition is denied.

II.      FACTUAL BACKGROUND.

Veloria was originally charged in Hawaii state court with drug-related offenses.  On May 20, 1998, the State of Hawaii filed a motion for nolle prosequi, which was granted by a state-court judge.

On April 11, 2000, a federal grand jury indicted Veloria, charging her in a two-count Indictment with possessing with intent to distribute in excess of five grams of cocaine base (Count 1), and with possessing with intent to distribute in excess of 500 grams of cocaine (Count 2).

On July 3, 2003, after a jury trial, Veloria was convicted on Count 1 of the Indictment--possessing with intent to distribute in excess of five grams of cocaine base.  She was acquitted of Count 2 of the Indictment--possessing with intent to distribute in excess of 500 grams of cocaine.  This court originally sentenced Veloria to 97 months in prison, 4 years of supervised release, and a $100 special assessment.  Veloria appealed.

On December 7, 2005, the Ninth Circuit filed a memorandum opinion remanding the case to this court in light of United States v. Ameline, 409 F.3d 1073 (9th Cir. 2005) (en banc), but affirmed this court in all other respects. Specifically, the Ninth Circuit rejected Veloria's arguments of juror misconduct, inadequate notice of two witnesses under Rule

404(b) of the Federal Rules of Evidence, and improper authentication of a letter.  On remand, this court imposed the same sentence--97 months in prison, 4 years of supervised release, and a $100 special assessment.  Veloria appealed again.

On December 12, 2006, the Ninth Circuit affirmed, rejecting Veloria's argument that her offense level had been improperly calculated based on drug amounts and an obstruction of justice finding by this court, rather than by a jury based on evidence beyond a reasonable doubt.  Veloria filed a petition for certiorari with the United States Supreme Court.  That petition was denied on or about April 16, 2007.  Veloria timely filed the present § 2255 petition.[1]

On March 31, 2008, this court reduced Veloria's sentence of imprisonment to 78 months, granting her motion under 18 U.S.C. § 3582(c)(2) for a reduction of her sentence based on amendments to § 2D1.1 of the United States Sentencing Guidelines.

---

[1]A federal prisoner must file a § 2255 petition within one year of "the date on which the judgment of conviction becomes final."  28 U.S.C. § 2255.  For purposes of a § 2255 petition, a judgment becomes final and the limitations period begins to run "upon the expiration of the time during which she could have sought review by direct appeal."  United States v. Schwartz, 274 F.3d 1220, 1223 (9th Cir. 2001).  When, as here, a defendant appeals her conviction to the Ninth Circuit, and then seeks certiorari from the United States Supreme Court, the judgment becomes final when the petition for certiorari is denied.  United States v. LaFromboise, 427 F.3d 680, 683 (9th Cir. 2005).  Veloria's petition is therefore timely.

This amendment was intended to reduce the federal sentencing disparity between crack cocaine and cocaine powder.

Before this court appointed counsel for the evidentiary hearing on the present petition, Veloria had been represented by five attorneys, one after the other.  She started with First Assistant Federal Public Defender Alexander Silvert.  Mr. Silvert was replaced by Emmanuel Guerrero, who was replaced by Winston D.M. Ling.  Mr. Ling tried the case and was replaced post-trial by Samuel P. King, Jr.  Mr. King was replaced by Shawn A. Luiz, who represented Veloria on appeal.  Throughout the federal court proceedings, Veloria urged her attorneys to make certain arguments.  Exercising their reasonable professional judgment, several attorneys declined to make many of Veloria's arguments.

On December 26, 2007, Veloria filed the present Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255.

III.      ANALYSIS.

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C.

§ 2255.  There are some general rules regarding what kinds of claims can and cannot be raised in a § 2255 petition.

For example, a § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.  As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

Even when a § 2255 petitioner has not raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error.  As the Court said in United States v. Frady, 456 U.S. 152, 167-68 (1982), "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains."  Id.; accord Davis v. United States, 411 U.S. 233, 242 (1973).  To show "actual prejudice," a § 2255 petitioner

"must shoulder the burden of showing, not merely that the errors
at [her] trial created a possibility of prejudice, but that they
worked to [her] actual and substantial disadvantage, infecting
[her] entire trial with error of constitutional dimensions."
Frady, 456 U.S. at 170.

Some of Veloria's claims are couched as ineffective
assistance of counsel claims, although most of those claims raise
issues that could have been raised earlier.  To establish
ineffective assistance of counsel, Veloria must show that (1) her
counsel's performance was deficient, and (2) the deficient
performance prejudiced her defense.  Strickland v. Washington,
466 U.S. 668, 687 (1984).  There is "a strong presumption" that
counsel's conduct was reasonable and that counsel's
representation did not fall below "an objective standard of
reasonableness" under "prevailing professional norms."  Id. at
688.  Even if a petitioner can overcome the presumption of
effectiveness, the petitioner must still demonstrate a
"reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
Id. at 694.  Because "[i]t is all too tempting for a defendant to
second-guess counsel's assistance after conviction," judicial

7

scrutiny of counsel's performance is highly deferential.  <u>Id.</u> at
689.

> A.   Veloria May Not Relitigate Claims Rejected by the
>      Ninth Circuit--Claims 15-17, 23-30, 34-36, 40, and
>      <u>45.</u>

At least sixteen of the alleged errors Veloria
identifies have already been disposed of by the Ninth Circuit and
so may not be relitigated here.

### 1.   <u>Claim Number 15.</u>

In Claim Number 15, Veloria argues that the
Government's trial counsel improperly misled the court about Rule
404(b) evidence.  <u>See</u> Memorandum in Support of Petition at 98.
This claim was already raised in the Ninth Circuit.  <u>See</u>
Appellant's Opening Brief, No. 03-10626, (Feb. 23, 2005) at 6-15.
On December 7, 2005, the Ninth Circuit rejected all of Veloria's
arguments, remanding only in light of <u>Ameline</u>.  <u>See</u> Memorandum,
No. 03-10626 (Dec. 7, 2005) at 2-3.  Because Veloria was
unsuccessful in arguing this issue in her direct appeal, she may
not now raise it in her § 2255 Petition.  <u>See</u> <u>Olney</u>, 433 F.2d at
162.

### 2.   <u>Claim Numbers 16 and 17.</u>

In Claim Numbers 16 and 17, Veloria asserts that her
trial attorney, Winston Ling, was ineffective.  She complains

that Ling had not interviewed two Government witnesses, Ann Barcena and Wallace Iaukea, with respect to Rule 404(b) evidence and did not file a motion prepared by someone other than Ling that sought to exclude that evidence.  This claim is foreclosed by the Ninth Circuit's December 7, 2005, decision, which ruled that the Rule 404(b) testimony was "properly admitted" because Ling "had access to the underlying evidence long before trial."  See Memorandum, No. 03-10626 (Dec. 7, 2005) at 2.  The Ninth Circuit ruled that, even if admitting the evidence was improper, such error was harmless because the Rule 404(b) testimony "was limited and vague, especially when contrasted with the extensive testimony that the jury heard regarding the police search of Veloria's house."  Id. at 2-3.  Accordingly, even if the court assumes that Ling's trial conduct fell below an objective standard of reasonableness--something that this court is not ruling--Veloria does not show that Ling's alleged conduct prejudiced her defense.  See Strickland, 466 U.S. at 687-88.

The court is not persuaded by Veloria's argument raised in Claim Number 17 that Ling was ineffective in failing to move for the exclusion of a letter on the ground that the letter "was signed by someone other than Alicia Katrina Lynn Veloria."  See Memorandum in Support of Petition at 103-04 and n.236.  In her

9

direct appeal, Veloria argued that this letter should not have been admitted because it was not properly authenticated.  See Appellant's Opening Brief, No. 03-10626 (Feb. 23, 2005) at 29-30. The Ninth Circuit rejected the argument, ruling that "the government properly authenticated the letter several different ways, including through the testimony of a witness with knowledge."  See Memorandum, No. 03-10626 (Dec. 7, 2005) at 3 (quotations omitted).

### 3.   Claim Numbers 23-30.

In Claim Numbers 23 through 30, Veloria asserts that her trial attorney, Winston Ling, was ineffective in failing to introduce evidence that tended to impeach Wallace Iaukea and Ann Barcena.  She specifically argues that Ling failed to introduce evidence regarding: criminal felony convictions demonstrating the dishonesty of Wallace Iaukea (Claim Number 23) and Ann Barcena (Claim Number 24); Barcena's deferred acceptance of guilty plea (Claim Number 25); suspicious dates on Barcena's "rap sheet" (Claim Number 26); alleged false testimony by Barcena to the Grand Jury about the last time she had used drugs (Claim Number 27); alleged false testimony to this court about why a felony charge was reduced to a misdemeanor (Claim Number 28); Veloria's speculation that Barcena had received favorable treatment from

10

the State of Hawaii in exchange for her testimony against Veloria

(Claim Number 29); and why Barcena would provide the Government

with a statement that implicated herself (Claim 30).  Even

assuming Ling's failure to introduce evidence tending to impeach

Iaukea and/or Barcena fell below an objective standard or

reasonableness, Veloria fails to demonstrate that this failure

prejudiced her defense.

       In her first direct appeal to the Ninth Circuit,

Veloria asserted that the Government improperly failed to give

her notice of Rule 404(b) testimony it intended to present

through Iaukea and Barcena.  As discussed above,  the Ninth

Circuit ruled that, if that were error, it was harmless because

Iaukea's and Barcena's testimony was "limited and vague,

especially when contrasted with the extensive testimony that the

jury heard regarding the police search of Veloria's house."  See

Memorandum, No. 03-10626 (Dec. 7, 2005) at 2-3.  This Ninth

Circuit ruling forecloses Veloria's attempt to establish

prejudice.

       Ample evidence linked Veloria to the drugs.  The

evidence was not limited to testimony by Iaukea and Barcena,

a.k.a. Ann Pacheco, that they bought drugs from Veloria and that

she lived in the house located on Mauna Loa Street in Hilo.  See

11

Transcript of Proceedings (June 4, 2003) at 80; Transcript of
Proceedings (June 5, 2003) at 99-100.  Captain Samuel Thomas
testified that, during the execution of the search warrant,
police found deposit slips and a cashier's check with Veloria's
name on it in the house, within a foot or two of the drugs.  See
Transcript of Proceedings (June 4, 2003) at 71.  Officers also
found a picture of Veloria, id. at 73, and found women's clothing
in the bedroom in which the drugs were found.  Id. at 71.
Detective Benton Bolos testified that, in executing the search
warrant, they found only women's clothing in the house.  See
Transcript of Proceedings (June 5, 2003) at 86.  He also
testified that the police found identification belonging to
Veloria in the house, as well as her checkbook.  Id. at 87.

### 4.   Claim Numbers 34 to 36.

In Claim Numbers 34 and 35, Veloria asserts that she
was denied the right to be tried by a fair and impartial jury
when the court did not interview a juror who had threatened
another juror during jury deliberations.  In Claim Number 36,
Veloria asserts that her counsel was ineffective in failing to
move for a mistrial based on the alleged jury misconduct.  On
December 7, 2005, the Ninth Circuit rejected this very argument,
determining that Veloria had expressly consented to the manner in

which the juror misconduct was handled and that this court had thoroughly investigated it and its effect.  See Memorandum, No. 03-10626 (Dec. 7, 2005) at 2.  Veloria may not relitigate the juror misconduct issue in this § 2255 petition.  See Olney, 433 F.2d at 162.  Even if she could raise it here, Veloria does not establish the necessary prejudice for her ineffective assistance of counsel claim.  See Strickland, 466 U.S. at 687.

### 5.   Claim Numbers 40 and 45.

In Claim Numbers 40 and 45, Veloria argues that her constitutional rights were violated by the imposition of a sentence based on conduct not found by the jury.  These claims were raised on appeal and rejected by the Ninth Circuit. Specifically, on December 12, 2006, the Ninth Circuit rejected Veloria's arguments that her offense level was improperly calculated based on drug amounts and obstruction of justice findings by this court, rather than by a jury based on evidence beyond a reasonable doubt.  See Memorandum, No. 06-10277 (Dec. 12, 2006) at 2.  Because Veloria was unsuccessful in arguing these points on appeal, she may not now raise them.  See Olney, 433 F.2d at 162.

B.    Veloria Procedurally Defaulted on Claim Numbers 1,
      3, 4, 6, 9-13, 31, 32, 38, 39, 41, 42 and 46.

Veloria procedurally defaulted on sixteen of the grounds she raises here.

1.    The Claims Veloria Did Not Appeal Because
      Appellate Counsel Refused to Press Them Are
      Procedurally Barred Because Veloria Fails to
      Establish Actual Prejudice (Claim Numbers 4,
      6, 9, 13, 31, 32, 38, 41, and 49).

a.    Claim Number 49.

Veloria attempts to establish cause for her failure to raise numerous issues on appeal based on her appellate counsel's refusal to raise arguments identified by Veloria in a proposed appellate brief that she herself prepared or had prepared by someone who was not an attorney.  Because this claim, Claim Number 49, colors many claims with lower claim numbers, the court starts with this part of the order by addressing this matter out of numerical order.

Veloria claims that her appellate counsel, Shawn Luiz, was ineffective in that regard and that her procedural default is excused by counsel's failure to make the requested arguments.  See, e.g., United States v. Ratigan, 351 F.3d 957, 964-65 (9th Cir. 2003) ("ineffective assistance of counsel constitutes cause sufficient to excuse a procedural default").

As an indigent defendant, Veloria did not have a
constitutional right to compel her appointed appellate counsel to
press nonfrivolous points requested by her when that counsel, as
a matter of professional judgment, decided not to present those
points.  See Jones v. Barnes, 463 U.S. 745, 751-54 (1983).  In
Jones, the Supreme Court noted that an experienced attorney knows
the importance of "winnowing out weaker arguments on appeal and
focusing on one central issue if possible, or at most on a few
key issues."  Id. at 752.  The Supreme Court stated that, in
today's appellate system, most cases are subject to page limits
and time limits on oral argument.  Accordingly, it noted that
"[a] brief that raises every colorable issue runs the risk of
burying good arguments."  Id. at 753.

This case presents the very problem highlighted in
Jones.  Veloria's appellate counsel says that, before filing
Veloria's appellate brief, he spent considerable time reviewing
the record to determine which issues to raise on appeal.  See
Declaration of Shawn A. Luiz (Apr. 25, 2008) ¶4.  Luiz reviewed
the brief proposed by Veloria and determined that it sought to
inject into her appeal "points that were either harmless,
unsupported factually by the record, unsupported by binding Ninth
Circuit case law or United States Supreme Court precedent or

nonsensical." Id. ¶ 5.  Luiz says that he "raised whatever points [he] believed had merit on appeal" and that he was able to procure Veloria a "limited remand pursuant to Booker."  Id. ¶ 14.

In Claim Number 49, Veloria makes the broad claim that Luiz was ineffective in failing to raise numerous issues that Veloria wanted him to raise.  Given Luiz's reasonable exercise of his professional judgment to raise the issues on appeal that he considered to be the most meritorious, this court is not persuaded.  The court notes that none of the issues Veloria sought to inject into her appeal had any merit.

The court is not persuaded by Veloria's citation of Ratliff v. United States, 999 F.2d 1023, 1026 (6th Cir. 1993), for the proposition that, when an appellate attorney fails to press an issue on appeal that a defendant wanted to pursue, cause is automatically established.  Ratliff does not stand for that proposition.  Rather, Ratliff holds that "cause" is established if a defendant asks appellate counsel to raise an issue that would have resulted in reversal, and appellate counsel fails to raise that issue.  Id.  None of the issues Veloria identified for Luiz would have resulted in reversal if raised.

b.    Claim Number 4.

Veloria's Claim Number 4 argues that the delay between the time she was arrested and the time she was indicted violated her Fifth Amendment due process rights because she was unable to raise certain arguments as a result of that delay.  To succeed on a claim of preindictment delay, Veloria must show that she suffered actual, nonspeculative prejudice from the delay and that the delay, when balanced against the prosecution's reasons for it, offends fundamental conceptions of justice.  See United States v. Sherlock, 962 F.2d 1349, 1353-54 (9th Cir. 1989).

Veloria did not raise the preindictment delay issue on appeal.  Under Frady, 456 U.S. at 167-68, to assert the claim in this § 2255 petition, Veloria must establish cause excusing her failure to assert the issue earlier, as well as actual prejudice. Even assuming Luiz's refusal to make the argument raised in Veloria's pro se draft brief constituted "cause" for her failure to assert this issue on appeal, Veloria fails to demonstrate that she was prejudiced by any preindictment delay.

Veloria says that she was prejudiced by the approximately four-year delay before indictment because Keau Miles, a potential trial witness, died in the interim.  See Memorandum in Support of Motion at 46, 48.  She says that,

17

because Miles could not testify, she could not meet her burden at the <u>Franks</u> hearing held on August 39, 2001, which pertained to events underlying Count 2 of the Indictment.

Veloria's pretrial counsel, Alexander Silvert, says that Keau Miles was a witness to the search of Veloria's truck. <u>See</u> Silvert Decl. ¶ 4.  As Count 2 asserted an allegation concerning drugs in Veloria's truck, Veloria presumably expected Miles to testify about events relating to Count 2.  Veloria was acquitted of Count 2.  She was thus not prejudiced by Miles's unavailability at trial.  Veloria's pure speculation that the jury returned a "compromise verdict" in convicting her on Count 1 while acquitting her of Count 2 does not justify an inference that, had Miles testified, she would have been acquitted of Count 1.  The evidence of Veloria's guilt as to Count 1 was overwhelming.  Veloria fails to establish the "actual prejudice" necessary to excuse her procedural default on this claim, as well as the prejudice necessary to succeed on the merits of this claim.  Moreover, Veloria's pretrial attorney states that he located three other witnesses who claimed to have been present when law enforcement officials allegedly recovered drugs from Veloria's truck.  <u>See</u> Silvert Aff. ¶ 4.  Accordingly, Veloria cannot establish that she was prejudiced by the delay.

18

c.   Claim Number 6.

Veloria made a pretrial statement to the Government pursuant to a proffer agreement.  In Claim Number 6, Veloria argues that she did not knowingly enter into the proffer agreement, having been misinformed by her attorney of the consequences of that agreement.  Even assuming Veloria establishes "cause" for her failure to raise the issue on appeal because her appellate counsel chose not to make the argument despite her instructions, see Ex. 35 to petition, she fails to establish that she was actually prejudiced.  See Frady, 456 U.S. at 167-68.

The proffer agreement laid out the terms under which Veloria was to provide information to the Government.  The agreement stated that Veloria, in the presence of her attorney, would answer the Government's questions truthfully and completely, and that the prosecution would not offer Veloria's statements as part of its case-in-chief at trial or against Veloria at sentencing should she be found guilty.  The proffer agreement allowed the Government to use information supplied by Veloria to obtain and pursue leads to other evidence that could be used in the Government's case-in-chief against Veloria.

19

Paragraph four of the proffer agreement contained an exception to

the bar on the Government's use of her statement:

> [T]he prosecution may use statements made by
> VELORIA at said meetings, and all evidence
> obtained directly and indirectly from those
> statements, for the purpose of cross-
> examination should VELORIA testify in
> contradiction to information given during
> said meetings, or to rebut any evidence
> offered by or on behalf of VELORIA in
> connection with the trial of the above-
> captioned matter or at [her] sentencing
> following trial, should such evidence be
> contrary to the information given by VELORIA
> during said meetings[.]

See Proffer Agreement (Sept. 3, 2001) (attached as Exhibit A to

the Government's Opposition to Defendant's Motion to Suppress

Evidence (Nov. 19, 2002)).

In this § 2255 proceeding, it is undisputed that

Veloria's pretrial attorney, Silvert, incorrectly advised Veloria

that any inculpatory statements made pursuant to the proffer

agreement could only be used against her at trial if she herself

took the stand and testified contrary to her pretrial statement.

This court ruled that any defense evidence contrary to Veloria's

statement would open the door to presentation of the statement at

trial by the Government, even if contrary evidence was offered

through defense witnesses other than Veloria herself or through

cross-examination of Government witnesses.  Despite Silvert's
error, Veloria was not prejudiced.

Silvert told Veloria that, if she made a statement to
the Government, she could not prevail if she went to trial.  See
Silvert Aff. ¶ 5.  Silvert told her that, if she gave a statement
to the Government about her drug dealing, she would not be able
to take the stand, and that testimony contradicting her
statements could not be presented at trial because attorneys have
an ethical duty to refrain from presenting perjured testimony.
Id.  The effect of these statements by Silvert went beyond his
erroneous advice that only her own testimony would open the door
to the Government's use of her pretrial statement.  As Veloria
does not contest that Silvert did advise her that she could not
win at trial if she gave a pretrial statement and that he could
not ethically present perjured testimony, she certainly knew that
the limitations on her ability to present evidence at trial went
beyond the limitation on her own testimony.  She is therefore
unpersuasive in arguing that she was prejudiced by her appellate
counsel's failure to raise Silvert's error on appeal.

Moreover, Veloria fails to identify what any specific
witness would have testified about but for her pretrial statement
that would have changed the outcome of the case.  When the court

21

disregards unsworn "evidentiary statements" by Veloria and the affidavits she submitted that were not subject to cross-examination, the court is left with overwhelming evidence of her guilt that was presented to the jury.  Veloria has additionally chosen not to contest the veracity of any Government affidavit or declaration submitted in connection with this matter.

        d.   <u>Claim Number 9.</u>

In Claim Number 9, Veloria asserts that this court violated her Fifth Amendment right to a fair and impartial trial, as well as her Sixth Amendment right to confront witnesses against her.  Veloria complains that, when she filed her emergency motion to rescind the proffer agreement based on the alleged ineffective assistance of Alexander Silvert, this court ruled that she had to waive her attorney-client privilege with Silvert to pursue that claim.  Veloria says that she was improperly forced to make a choice between her right to have had effective assistance of counsel and her right to maintain her attorney-client privilege.  Even assuming Veloria establishes "cause" because her appellate counsel chose not to make this argument on appeal despite her instructions, <u>see</u> Ex. 35 to petition, Veloria fails to demonstrate "actual prejudice," as the claim is not meritorious.

22

It is well established that, when a defendant claims that his or her attorney was ineffective, the defendant waives the attorney-client privilege as to communications with the allegedly ineffective attorney.  See, e.g., Bittaker v. Woodford, 331 F.3d 715, 716 (9th Cir. 2003) (en banc) ("It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer.").  The Ninth Circuit explained that, "[i]n performing their constitutional duties, the federal courts have determined that claims of ineffective assistance of counsel cannot be fairly litigated unless the petitioner waives his privilege for purposes of resolving the dispute."  Id. at 722.  The waiver of the privilege is not categorical, but is limited in scope to that necessary to litigate the ineffective assistance of counsel claim.  Id.

Veloria's concern about waiving the privilege arose during trial, rather than in the habeas context discussed in Bittaker.  That distinction is irrelevant.  During trial, Veloria sought to waive the attorney-client privilege only selectively and to present only testimony favorable to her ineffective assistance of counsel claim, while preserving the privilege with

23

respect to evidence unfavorable to her ineffective assistance of counsel claim.  This court ruled that the privilege was waived with respect to all conversations Veloria had had with Silvert about the proffer letter.  <u>See</u> Transcript of Proceedings (June 4, 2003) at 153-56.  This ruling was consistent with the Ninth Circuit's <u>en banc</u> <u>Bittaker</u> decision about the scope of the waiver of the attorney-client privilege when a defendant asserts an ineffective assistance of counsel claim.  Veloria's ineffective assistance of counsel claim could not fairly be evaluated without having a full understanding of what her attorney had told her. Veloria therefore fails to demonstrate "actual prejudice."  That is, even if appellate counsel had raised the argument articulated in Claim Number 9, it would not have changed the result of this case.

e.   <u>Claim Number 13.</u>

In Claim Number 13, Veloria asserts that the Government violated its <u>Brady</u> obligation by failing to produce discovery pertaining to a diagram Detective Benton Bolos prepared.  <u>See</u> Ex. 7.  That diagram depicted a suspected drug distribution network, as well as a possible connection Veloria had to bank accounts, a safe deposit box, and what appear to be vehicles. <u>Id.</u>  Even assuming Veloria demonstrates "cause" for her failure

to make the argument raised in Claim Number 13 because her appellate attorney refused to file her draft brief raising the issue, see Ex. 35, she fails to demonstrate prejudice.  See Frady, 456 U.S. at 167-68.

There is nothing in the record indicating that the Government failed to produce evidence favorable to Veloria and material to her guilt or innocence.  Veloria only speculates that, because Detective Bolos prepared a diagram, Brady material must exist.  This diagram was never introduced into evidence.  At most, Veloria's counsel cross-examined Detective Bolos about it. See Transcript of Proceedings (June 5, 2003) at 93-94.  Veloria does not point to any support for her theory that the background information underlying the diagram was Brady material.  It is likelier that the background information was inculpatory and that Brady was therefore inapplicable.  Without more than her speculation, Veloria does not meet her burden of showing prejudice.

f.   Claim Numbers 31 and 32.

In Claim Numbers 31 and 32, Veloria asserts that the Government violated her due process rights when it provided her with an outdated copy of Barcena's "rap sheet" that did not include information about Barcena's arrests on December 12, 2002,

25

and May 18, 2003 (Claim Number 31), and when the Government

failed to disclose Barcena's alleged history of mental illness

(Claim Number 32).  It is not clear to this court that Veloria

asked her appellate counsel to raise these issues.  Veloria may

have had Barcena in mind in referring to an unidentified Brady

violation in her proposed appellate brief, see Ex. 35 to Petition

at 59-71, although the material might instead have been Giglio

material.  See Giglio v. United Stats, 405 U.S. 150 (1972).

Veloria fails to establish the "actual prejudice" necessary to

excuse her procedural default.  See Frady, 456 U.S. at 167-68.

As discussed above, the Ninth Circuit has already ruled

that Barcena's testimony was "limited and vague, especially when

contrasted with the extensive testimony that the jury heard

regarding the police search of Veloria's house."  See Memorandum,

No. 03-10626 (Dec. 7, 2005) at 2.  Even if Veloria had had the

alleged material to use at trial to impeach Barcena, the result

of the trial would have been unchanged.  Veloria concedes that

Barcena's testimony pertained to her prior purchase of cocaine

from Veloria and not to whether the cocaine base found in

Veloria's house belonged to Veloria.  See, e.g., Memorandum in

Support of Petition at 126.  Moreover, as discussed above,

extensive evidence linked Veloria to the cocaine base found in the upstairs bedroom of her house.

g.   Claim Number 38.

In Claim Number 38, Veloria asserts that her trial counsel waived her presence during discussions regarding jury questions without her knowledge or consent.  Even assuming Veloria establishes "cause" for her failure to assert this issue on appeal because she asked her appellate counsel to raise it but he failed to do so, Veloria does not establish prejudice.  See Frady, 456 U.S. at 167-68.

On June 6, 2003, just after the jury was sent to deliberate, the court had a discussion with the attorneys in Veloria's presence.  At that time, the court indicated:

> The next time we will convene is either if there is some question that requires all of us to be here or if there's a verdict.  For the most part, if questions do not require me to address the jurors orally, I will simply fax copies of the jury questions to both counsel and we will have a telephone conference, then I will write out the answer that I will send into the jury.  So there will not be a physical presence of the jury, unless there's some unusual circumstance where they want to, for example, view the drugs, or whatever it may be.

Transcript of Proceedings (June 6, 2003) at 142-43.

27

Veloria was therefore certainly aware of how jury questions would be handled.  Winston Ling, her trial counsel, says that he spoke to Veloria "regarding waiving her presence regarding jury communications and she had no objections" and that it "is a common practice for [him] to have permission from the Defendant regarding waiving their presence on jury communications."  Ling Decl. ¶ 28.  Had Veloria wanted to have input regarding answering jury questions, she could have remained at Ling's office.  Under these circumstances, Veloria cannot establish that Ling was ineffective in this regard.  As she shows no error by Ling, she does not show that she was prejudiced by her counsel's waiver of her presence with respect to answering each of the questions asked by the jury.  Any showing of prejudice, after all, must concern prejudice flowing from an error.

### h.   Claim Number 41.

In Claim Number 41, Veloria argues that the magistrate judge improperly participated in plea negotiations in violation of Rule 11 of the Federal Rules of Criminal Procedure.  Veloria says that, on August 28, 2001, her pretrial attorney, Silvert, took her to meet with the magistrate judge in chambers without an official record.  See Minutes (Aug. 28, 2001).  At trial, Veloria

represented to the court that the magistrate judge told her that Silvert was a good attorney and that, if Silvert was advising her to enter a change of plea, it would be in her best interest to do so.  See Transcript of Proceedings (June 5, 2003) at 41.   In her petition, Veloria expands on this description, saying that she met with the magistrate judge alone, and that the magistrate judge told her that her case would be difficult to win and that she should cooperate with the Government if Silvert advised that. Supp. Veloria Aff. ¶¶ 39-41.

Even assuming Veloria is accurately recounting what happened (a matter this court need not decide), Veloria is not entitled to § 2255 relief based on this claim.  That is because, even if Veloria establishes "cause" based on her appellate counsel's refusal to pursue the issue, see Ex. 35, Veloria fails to demonstrate the prejudice necessary to overcome her procedural default.  See Frady, 456 U.S. at 167-68.

There is no dispute that Rule 11 requires the court to refrain from participation in plea negotiations.  See Fed. R. Crim. P. 11(c)(1) (Supp. 2008) ("An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement.  The court must not participate in these discussions.").  This rule, although amended, has been

substantially unchanged for many years.  See, e.g., Fed. R. Crim.
P. 11(e)(1) (1986) ("The attorney for the government and the
attorney for the defendant . . . may engage in discussions with a
view toward reaching an agreement . . . .  The court shall not
participate in any such discussions.").  The Ninth Circuit has
stated that this prohibition has three justifications.  First,
"such participation is prohibited because judicial involvement in
plea negotiations inevitably carries with it the high and
unacceptable risk of coercing a defendant to accept the proposed
agreement and plead guilty."  United States v. Bruce, 976 F.2d
552, 556 (9th Cir. 1992).  Second, the rule protects the
integrity of the judicial process.  Third, the rule preserves the
judge's impartiality after the negotiations.  Id. at 557.

     The Ninth Circuit, however, does not view the rule's
prohibition as applying to all judges, but instead only to the
sentencing judge.  United States v. Scolari, 72 F.3d 751, 753
(9th Cir. 1995) (noting that the Ninth Circuit had previously
approved of participation by a settlement judge in plea
negotiations so long as the sentencing judge did not participate
in any plea discussions); Bruce, 976 F.2d at 556 (noting that
the purpose and meaning of Rule 11 is "that the sentencing judge
should take no part whatever in any discussion or communication

30

regarding the sentence to be imposed prior to the entry of a plea
of guilty or conviction, or submission to him of a plea
agreement"); Fed. R. Crim. P. 11, 2002 cmts. ("Some courts
apparently believe that [Rule 11] acts as a limitation only upon
the judge taking the defendant's plea and thus permits other
judges to serve as facilitators for reaching a plea agreement
between the government and the defendant. . . . The Committee
decided to leave the Rule as it is with the understanding that
doing so was in no way intended either to approve or disapprove
the existing law interpreting that provision."). Veloria cannot
show prejudice because it is undisputed that the sentencing judge
did not participate in any plea discussion.

Even if the magistrate judge erred by participating in
the plea discussion process, Claim Number 41 fails. First,
Veloria did not plead guilty and therefore cannot be said to have
been coerced or otherwise influenced by the magistrate judge into
entering a guilty plea. Second, even if Veloria signed the
proffer letter based on what the magistrate judge told her
(again, a matter this court does not decide), Veloria does not
demonstrate that this affected the outcome of the case.

As discussed above, Veloria fails to identify what
evidence she would have introduced at trial had she not signed

31

the proffer letter.  When the court disregards "facts" submitted

by Veloria in unsworn statements or in affidavits not subject to

cross-examination,[2] the court is left with no evidence that could

have been offered but for the proffer letter.  Without an

explanation of what evidence she would have introduced in the

absence of the proffer letter, Veloria fails to show that she was

prejudiced by signing the proffer letter.

Clearly, Veloria had no right to introduce perjured

testimony.  See 18 U.S.C. § 1622 ("Whoever procures another to

commit any perjury is guilty of subornation of perjury.").  That

is, even if Veloria had not signed the proffer letter, she would

have had no right to put on testimony that materially differed

_____

[2]The court is thus disregarding Veloria's own
affidavits, as her invocation of her Fifth Amendment rights
precluded cross-examination.  The court would consider affidavits
of third parties who could have been subpoenaed by the
Government, but Veloria submits no such affidavit.

At most, Veloria submits the affidavit of Aunamarie
Veloria, her mother, stating that Richard Marble, Aunamarie
Veloria's son and Veloria's brother, had "confessed specific
facts to me regarding his drug distribution activities and his
influence on Alicia."  Aunamarie Veloria's affidavit further
states that Richard Marble "was willing to take full
responsibility for his actions and not only wanted but demanded
to testify on Alicia's behalf taking FULL responsibility for his
action."  See Ex. 22.  Not only are these statements by Aunamarie
Veloria hearsay, Richard Marble had died by the time Aunamarie
Veloria signed the affidavit on July 13, 2007.  Aunamarie Veloria
herself has since died.  The court declines to consider a
mother's sworn statement implicating her dead son while trying to
assist her imprisoned daughter, especially when the mother is
unavailable for cross-examination.

from her pretrial statement, assuming that statement was
truthful.  Nor would any of her attorneys have knowingly
introduced perjured testimony.  Haw. R. Prof'l Conduct 3.3(a)(4)
("A lawyer shall not knowingly . . . offer evidence that the
lawyer knows to be false.") and 3.3(c) ("A lawyer may refuse to
offer evidence that the lawyer reasonably believes is false.").

> 2.   Claims That Veloria Did Not Attempt to Raise
>      on Appeal (Claim Numbers 1, 3, 10-12, 39, 42,
>      46).

> a.   Claim Number 1.

In Claim Number 1, Veloria argues that the Government
improperly withheld a police report in violation of her Fifth
Amendment Due Process rights and her Sixth Amendment
Confrontation rights.  Veloria asserts that the Government failed
to turn over exculpatory evidence in violation of its obligation
under Brady v. Maryland, 373 U.S. 83 (1963).

The report at issue was prepared by Officer Steven A.
Correia on or about July 10, 1996.  See Ex. 28 to Petition (copy
of Report No. F-00940).  The report described the July 10, 1996,
execution of a search warrant on Veloria's residence.  That
search warrant led to the discovery of the cocaine base referred
to in Count 1, which Veloria was convicted of.  During the
execution of the search warrant, Myles Kurashige arrived, hoping

to purchase marijuana.  He went to an open door and told Officer
Correia that he was looking for "the tall skinny girl who lives
here."  Officer Correia replied: "Who are you looking for?
Alicia?"  Kurashige then said: "No, the other skinny girl that
lives here."  Id.  This report, as well as Kurashige's alleged
attempt to purchase marijuana, is referred to in Detective Samuel
Thomas's report, no. F-00877.  See Ex. 1.

Because Veloria did not raise the issue earlier with
this court or on appeal, Veloria's first claim is procedurally
barred unless she can satisfy Frady's "cause" and "actual
prejudice" requirements.  See Frady, 456 U.S. at 167-68.  Veloria
says that she first saw Correia's report in June 2007, after
submitting a Freedom of Information and Privacy Act ("FOIA")
request.  Veloria says that, had she had Correia's report during
her trial, she could have challenged the Government's contention
that the drugs found in the house pursuant to the search warrant
actually belonged to her.  Veloria says that she could have
argued that the drugs belonged to the "other skinny girl," and
that women's clothing found in the bedroom in which the cocaine
base was also found belonged to that person.

Veloria does not establish "cause" for her delay in
raising this argument.  Although Veloria says that she first saw

34

Correia's police report in June 2007, she knew about the existence of the report before trial.  She had Detective Samuel Thomas's report (Ex. 1 to Petition), which noted that Kurashige had attempted to buy marijuana during the execution of the search warrant on Veloria's home and that says details of the matter were contained in Correia's police report number F-00940. Knowing the report existed, she could have sought it earlier.

Even if Veloria's delay in raising this issue were excused, she does not establish prejudice.  Prejudice was addressed in detail in United States v. Mejia-Mesa, 153 F.3d 925 (9th Cir. 1998).  In that case, the Ninth Circuit stated that the Government's withholding, suppression, or destruction of exculpatory evidence in violation of Brady satisfies the "actual prejudice" requirement articulated in Frady.  Mejia-Mesa involved a defendant convicted of knowingly or intentionally manufacturing or distributing, or possessing with intent to manufacture or distribute, a controlled substance while "on board any vessel within the customs waters of the United States."  21 U.S.C. § 955(a) (West 1981).  The Government allegedly "suppressed" a page from a log book of a vessel.  This page allegedly showed that the vessel was not in United States waters on the date of the offense.  Id. at 927-28.

35

The Ninth Circuit determined that the defendant might have a meritorious <u>Brady</u> violation claim, as that evidence might have made the difference between a conviction and an acquittal. <u>Id.</u> at 928.  The Ninth Circuit ruled that, if true, the defendant's allegations that a page or pages of the log were "suppressed" would satisfy the "actual prejudice" prong because they would have tended to show that the Government could not prove one of the essential elements of the crime.  <u>Id.</u> at 929. The district court was directed to hold an evidentiary hearing to determine whether the page or pages had actually been "suppressed."  <u>Id.</u>

<u>Mejia-Mesa</u>, however, does not mandate a finding of prejudice here.  Kurashige wanted to buy marijuana, but Veloria's conviction concerned cocaine base.  Thus, the portion of Correia's police report that referred to Kurashige is arguably not exculpatory with respect to Veloria.  Even assuming the existence of another female allegedly selling marijuana was exculpatory and might have indicated the women's clothes in the bedroom with the cocaine base belonged to someone else, Veloria was not prejudiced by the Government's failure to turn over Correia's report.

In the first place, it is unlikely that evidence of another women selling marijuana would have outweighed the evidence that Veloria was selling cocaine base out of her home. Veloria appears to think that another person's drug dealing somehow diminishes the evidence against Veloria herself.  To the contrary, the involvement of someone else in drug dealing in no way negates Veloria's role.  Drug dealing is hardly a business that only one person can conduct.

In addition, had Veloria presented evidence that she was not dealing drugs out of her home, she would have opened the door to the introduction of her own pretrial statement.  <u>See</u> Proffer Agreement (Sept. 3, 2001) (attached as Ex. A to Government's Opposition to Defendant's Motion to Suppress Evidence (Nov. 19, 2002)).  Under the terms of her proffer agreement, Veloria discussed her drug distribution activities, including selling crack cocaine and cocaine.  She admitted that, in July 1996, she was "at home" when officers searched her Mauna Loa Street home.  This was the search warrant that formed the basis for Count 1, on which she was convicted.  Veloria also told the Government that, in 1996, she had sold crack cocaine to Ann Barcena from her Mauna Loa Street home.  <u>See</u> Memorandum of Interview (Sept. 3, 2001) (attached as Ex. B to Government's

Opposition to Defendant's Motion to Suppress Evidence (Nov. 19, 2002)).  This court ruled that, if Veloria introduced evidence contrary to her pretrial statement, the Government could introduce her statement into evidence pursuant to paragraph 4 of the Proffer Agreement.  That paragraph allowed such use to "rebut any evidence offered by or on behalf of VELORIA in connection with the trial of the above-captioned matter . . . , should such evidence be contrary to the information given by VELORIA during said meetings."  Had Veloria attempted to argue at trial that the cocaine base found at the Mauna Loa Street house belonged to another woman based on Correia's police report, this court would have allowed the Government to introduce Veloria's statement detailing her drug distribution activities from her Mauna Loa Street home.  With this evidence, there is no reasonable possibility that the outcome of the trial would have been more favorable to Veloria.

Because Veloria has failed to establish "cause" or "actual prejudice," she has procedurally defaulted on her claim that the Government should have provided her with the Correia police report.

b.   Claim Number 3.

Veloria's Claim Number 3 argues that she was
selectively prosecuted in violation of her equal protection
rights.  Veloria did not even attempt to raise this issue on
appeal.  See Ex. 35 to Petition.  She therefore fails to
establish "cause" for her failure to raise the issue earlier.
Nor does Veloria establish actual prejudice, as this claim is
meritless.

Veloria says that, of the people who could have been
charged based on the execution of the search warrant at her
house, she was the only one actually charged.  She says that this
was improper selective prosecution.  However, prosecutors are
afforded broad discretion in selecting whom to prosecute and what
charges to bring, subject to constitutional limits.  See In re
Morris, 363 F.3d 891, 895 (9th Cir. 2004) (the decision to
prosecute may not be based on an unjustifiable standard such as
race, religion, or other arbitrary classification).  To succeed
on a claim of selective prosecution, Veloria must show that other
similarly situated individuals have not been prosecuted and that
her prosecution was based on an impermissible motive.  See United
States v. Sutcliffe,  505 F.3d 944, 954 (9th Cir. 2007).  This
court evaluates Veloria's claim of selective prosecution

39

"according to ordinary equal protection standards." In re
Morris, 363 F.3d at 895.  Veloria fails to establish that she was
in a situation similar to that of any of the other individuals
who were not prosecuted.

Veloria identifies four men who were not charged with
the serious crimes she was charged with.

She points first to Zachery Smith, who was found by law
enforcement officers with Veloria asleep on the floor of the
bedroom in which drugs, a scale, and money were found.  See
Police Report of Detective Samuel Thomas (Nov. 12, 1996) (Ex. 1
to Petition).  Veloria argues that she and Smith were therefore
similarly situated.  However, Smith told officers that he had
spent the night at Veloria's house.  Id.  By contrast, Veloria
appeared to live in the house.  As discussed above, ample
evidence connected Veloria to ownership of the drugs found in the
room.  Such evidence was lacking with respect to Smith.  At best,
Veloria says that papers for a Ford Bronco, a picture, and a
state identification were found on the kitchen counter, all
relating to Smith.  See Memorandum in Support of Petition at 39
n.65.  This evidence may have shown that Smith had ties to the
house, but not to the drugs located in the bedroom.  Accordingly,
Smith was not similarly situated to Veloria.

While executing the search warrant, officers found Joseph Ignacio Andres in a closet in a portion of the house that appeared to be unoccupied. He had a crack pipe with what appeared to be cocaine residue in it. He was arrested for promoting a dangerous drug and having drug paraphernalia. See Police Report of Detective Samuel Thomas (Nov. 12, 1996) (Ex. 1 to Petition). No evidence connected Andres to the cocaine base or cocaine found in the upstairs bedroom.

Kurashige, who was also arrested during the Government's execution of the search warrant, is not similarly situated to Veloria. He was arrested when he told Officer Correia that he wanted to purchase marijuana from the skinny girl. See Police Report of Officer Steven A. Correia (July 13, 1996) (Ex. 2 to Petition). No evidence connected Kurashige to the cocaine base or cocaine found in the upstairs bedroom.

Veloria also claims selective prosecution with respect to Count 2 of the Indictment--the charge that she was acquitted of. On November 22, 1996, Veloria and Wallace Iaukea were found in Veloria's truck at the Keaau Ballpark. A drug-detection dog allegedly alerted on the car, indicating the presence of drugs in it. Veloria says that she was selectively prosecuted because she was charged, but Iaukea was not. Veloria does not demonstrate

that she and Iaukea were similarly situated.  Veloria owned the truck in which the drugs were allegedly found.  Officer Marshall Kanehailua testified that he saw Iaukea walk from his car to the passenger side door of Veloria's car, get in, and sit down.  <u>See</u> Transcript of Proceedings (June 5, 2003) at 207.  Iaukea simply did not have the same connection to the drugs in the car that Veloria did.  Moreover, Veloria was acquitted of the charges asserted in Count 2.  Even if she were able to establish that, with respect to Count 2, she was selectively prosecuted, that selective prosecution would afford her no relief on her conviction on Count 1 of the Indictment.

c.   <u>Claim Number 10.</u>

In Claim Number 10, Veloria complains that this court violated her due process rights by refusing to rule on her emergency motion to rescind her proffer agreement.  This claim could have been raised on direct appeal, but was not.  Accordingly, under <u>Frady</u>, 456 U.S. at 167-68, to pursue the claim in this § 2255 petition, Veloria must establish cause excusing her failure to assert the issue earlier and actual prejudice.  She establishes neither.

Veloria fails to explain why this issue was not raised in her direct appeal to the Ninth Circuit.  What is even more

42

striking is Veloria's failure to establish a factual basis for Claim Number 10.  Absent evidence that the court refused to rule, Veloria cannot show prejudice flowing from a refusal to rule.

The court's discussions with Veloria's counsel at the end of the first day of trial, June 3, 2003, made Veloria aware of the court's position with respect to the scope of the proffer agreement, if Veloria had not understood that earlier.  See, e.g., Transcript of Proceedings (June 3, 2003) at 192-200. Veloria filed the emergency motion to rescind the proffer agreement based on ineffective assistance of counsel in open court at 10:40 a.m. on the second day of trial, June 4, 2003. Veloria's attorney raised the issue at the start of that morning's proceedings.  See Transcript of Proceedings (June 4, 2003) at 6-40.  After further discussion, the court decided not to keep the jury waiting and directed the Government to put on a witness who was not affected by the issue.  See id. at 40-57.  At 3:00 p.m. that day, the court discussed the emergency motion with the parties again and eventually decided to continue discussion of the motion to the following morning, June 5, 2003.  See id. at 144-171.

The following day, June 5, 2003, the court began by discussing the emergency motion with the parties.  See Transcript

43

of Proceedings (June 5, 2003) at 5-76.  Veloria filed a

memorandum in support of her motion at 9:59 a.m., as the

discussion progressed.  The court advised Veloria about her right

to testify or not testify, determined that Veloria was unwilling

to waive the attorney-client privilege in connection with the

ineffective assistance of counsel claim asserted in the emergency

motion, and denied the emergency motion by 10:40 a.m. that same

day.  Id.  Veloria is simply incorrect in asserting that this

court refused to rule on her emergency motion until the end of

trial.

### d.   Claim Numbers 11 and 12.

In Claim Number 11, Veloria asserts that her due

process rights were violated when the Government failed to

produce Special Agent Jason Pa's notes of his September 3, 2001,

interview of Veloria.  In Claim Number 12, Veloria asserts that

Agent Pa's Memorandum of Interview, a partial copy of which is

attached to the Petition as Exhibit 30C, contains numerous

mistakes.  Veloria procedurally defaulted on these claims

because she fails to establish "cause" for her failure to raise

or attempt to raise them to the Ninth Circuit.  Veloria also

fails to establish "actual prejudice."

Veloria says that Special Agent Pa must have had notes because, at the end of his Memorandum of Interview, he wrote: "I prepared this memorandum on September 3, 2001, after refreshing by memory from notes made during and immediately after the interview with Alicia Veloria."  See Ex. 30C to Petition. Veloria says that the Government did not turn Special Agent Pa's notes over to her; instead, she says, the Government claimed that it did not have any such notes.  Even assuming that the notes exist, Veloria does not show that the Government had a duty to produce the notes or that she was prejudiced by her inability to see the notes.  Veloria knew what she had stated during her interview and knew what the alleged inaccuracies were in Special Agent Pa's memorandum of interview.  Veloria does not even speculate as to how she would have used the notes had they been given to her.  Special Agent Pa did not testify at trial, and his memorandum of interview was not introduced as evidence at trial. His notes of the interview were therefore irrelevant.

The alleged mistakes in the memorandum of interview are, moreover, immaterial.  Veloria says, for example, that her parents were divorced in 1986, not, as stated in the memorandum, in 2001.  She says that, when she was arrested in July 1996, she was released pending further investigation, rather than, as

45

stated in the memorandum, on bail.  She says that Special Agent
Pa inaccurately described part of the search of her truck when he
wrote that Veloria and Iaukea were stopped at Mountain View Park,
rather than at Keaau Park.  She says that he inaccurately wrote
that she rented the house on Mauna Loa Street, when, in fact, it
was rented by Marlene Anduha.  She says that Special Agent Pa was
contradictory in describing both Smith and Peres as her
boyfriends.  Because the memorandum of interview was not
introduced into evidence, the alleged mistakes could not have
prejudiced Veloria.

### e.   Claim Number 39.

In Claim Number 39, Veloria argues that, because this
court gave erroneous citations to two cases, she was somehow
deprived of her due process rights.  This court orally referred
to the cases at the start of proceedings on June 5, 2003.  This
was part of a continuing discussion of Veloria's emergency motion
to rescind her proffer agreement in light of her attorney's
alleged ineffective assistance of counsel.  This claim is
procedurally barred because it was not raised on direct appeal.
See Frady, 456 U.S. at 167-68.

Veloria attempts to demonstrate "cause" for her failure
to directly appeal this issue by arguing that she did not find

out the real citations to those cases until after her appeal was denied.  However, Veloria was represented by counsel at trial and on appeal.  Had Veloria wanted to receive copies of those cases, her attorneys could have located those cases using a Westlaw or Lexis search.  This court had no trouble locating those cases to send to Veloria when she asked for copies of them.

Even if Veloria could be said to have demonstrated "cause," she certainly suffered no prejudice as a result.  As noted above, this court denied her emergency motion to rescind her proffer agreement because that motion asserted ineffective assistance of counsel and because Veloria refused to waive the attorney-client privilege with respect to that claim.  Veloria does not show how having had correct citations to the cases would have caused the court to grant her motion in the face of her refusal to waive the privilege.

f.   Claim No. 42.

In Claim Number 42, Veloria asserts that her trial counsel's performance was so deficient that this court should have somehow intervened.  This argument is meritless.  Moreover, Veloria procedurally defaulted on it, as she did not raise this issue on appeal or even try to raise it on appeal.  See Ex. 35. This is not the typical ineffective assistance of counsel claim,

47

as it does not require an inquiry into privileged communications.

When a claim requires inquiry into privileged communications, a

defendant often refrains from raising the issue before or during

sentencing.  In that event, the appellate court has no record to

review with respect to the claim.  Here, however, Veloria is

arguing that this court erred in not reacting to matters that are

in the trial record.  Veloria could have asked this court to

intervene during trial, but did not.  On appeal, whether this

court had erred was not a matter implicating privileged

communications and was reviewable by the Ninth Circuit.  Veloria

establishes no "cause" for her failure to raise the issue

earlier.  See Frady, 456 U.S. at 167-68.

        Even if Veloria's proposed brief to the Ninth Circuit

could somehow be read as asserting this argument, Veloria fails

to show prejudice.  Id.  Veloria cites to a few instances in a

multiple-day trial in which the court admonished Veloria's trial

counsel for not having advocated a position to the court.  In

some of those instances, trial counsel had simply identified a

problem and asked the court for guidance, causing this court to

remind him that it was his job to present a proposal for the

court to rule on.  This did not mean that this court considered

48

Veloria's counsel's performance to have been constitutionally
deficient.  Indeed, that was not this court's impression at all.

g.   Claim Number 46.

In Claim Number 46, Veloria argues that she was
unlawfully denied application of the safety valve when she was
sentenced by this court.  This argument pertains to Veloria's
sentence and could have easily been raised on appeal.  It was not
among the issues Veloria sought to have raised to the Ninth
Circuit in her proposed pro se brief.  See Ex. 35 to Petition
(Veloria's proposed pro se Brief to the Ninth Circuit).  Veloria
therefore fails to demonstrate "cause" for her procedural
default.  Even if Veloria showed "cause" for her failure to raise
this argument earlier, she fails to demonstrate "actual
prejudice," as she fails to demonstrate that she was eligible for
the safety valve, 18 U.S.C. § 3553(f).  Veloria has not
demonstrated that she truthfully provided to the Government all
information and evidence she had concerning the offense or
offenses that were part of the same course of conduct or of a
common scheme or plan.  See id.

Veloria says that, on November 26, 2002, AUSA Thomas
Brady stated that he believed that Veloria had been truthful when
she gave her September 1, 2001, statement.  Veloria's focus on

the truthfulness of her statement is ironic in light of her recent attempts to undercut that statement.  In any event, 18 U.S.C. § 3553(f) requires more than a truthful statement.  It requires Veloria to provide all information and evidence she has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.  Veloria's § 2255 petition concedes that she was not willing to implicate a close family member (presumably her brother) in her illegal drug dealing activities.  <u>See</u> Memorandum in Support of Petition (Jan. 9, 2008) at 53.  Veloria thus could not be said to have provided, by the time of her sentencing hearing, all information and evidence she had, as required for eligibility under the safety valve.

The court notes that, at a March 31, 2008, hearing, Veloria informed the court very clearly that she was not asserting an ineffective assistance of counsel claim against her counsel at sentencing, Samuel King, Jr.  Any ineffective assistance of counsel claim that Veloria may have had relating to the safety valve would have had to have been made against Samuel King, Jr.

C.   Pretrial Counsel, Alexander Silvert, Was Not
     Ineffective.

1.   Claim Number 2.

In Claim Number 2, Veloria asserts that her pretrial counsel, Alexander Silvert, was ineffective in failing to obtain Officer Correia's Report, which, as discussed earlier, Veloria obtained through a FOIA request.  Veloria has not shown that Silvert's failure to obtain Officer Correia's report fell below "an objective standard of reasonableness."  See Strickland, 466 U.S. at 688.  Although Veloria may have asked Silvert to obtain a copy of that report in November 2000 and to review it for exculpatory evidence, Silvert did not do so.  Silvert says that his office did not aggressively pursue the report because his office's investigation determined that "Veloria did, indeed, live at the residence where the drugs were found as charged by the government and was dealing drugs from that apartment."  See Affidavit of Alexander Silvert (March 14, 2008) ¶ 3.  Silvert also noted that he was relieved as counsel long before trial. Id.

In Strickland, 466 U.S. at 691, the Supreme Court noted that attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a

51

particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."  Here, Silvert's office's investigation determined that Veloria was, in fact, selling drugs from her house.  Silvert's decision not to pursue evidence related to Kurashige's attempt to purchase marijuana was not unreasonable.  See also United States v. Carr, 80 F.3d 413, 418 (10th Cir. 1996) (an attorney's decision not to pursue or investigate every potentially exculpatory lead may be within the "sphere of decision making as an attorney," so that the attorney is not ineffective in failing to pursue or investigate such a lead).

Moreover, as discussed above, Silvert's failure to obtain the police report did not prejudice Veloria.  Even if Veloria had had the report at trial, had she introduced evidence that "the other skinny girl" was selling marijuana from the house in an attempt to argue that "the other skinny girl" owned the cocaine base, the Government would have been allowed to use Veloria's incriminating pretrial statement that she was a drug dealer who had been selling crack cocaine and cocaine out of the house.

2.   <u>Claim Number 7.</u>

In Claim Number 7, Veloria asserts that Silvert was ineffective in advising her to make a statement pursuant to the September 3, 2001, proffer agreement.  It is undisputed that Silvert told her that, pursuant to the proffer agreement, Veloria's pretrial statement could only be used against her at trial if she herself took the stand and testified differently.

On November 27, 2002, this court ruled that Silvert's understanding of the proffer agreement's scope was incorrect. The court held that the plain language of paragraph 4 of the proffer agreement indicated that Veloria's statement of her drug distribution activities could be used against her if she testified to something different at trial or if she presented evidence (even through someone else) of something different at trial.  <u>See</u> Order Denying Motion to Suppress Evidence (Nov. 27, 2002).

Silvert said the entire Office of the Federal Public Defender for the District of Hawaii interpreted the proffer agreement's language as he did.  <u>See</u> Transcript of Proceedings (June 4, 2003) at 38-39.  Even assuming that this interpretation rendered Silvert's advice deficient, Veloria fails to establish

53

"prejudice" such that Silvert could be said to have been ineffective.  See Strickland, 466 U.S. at 687-88.

Veloria says that she was unable to introduce evidence at trial because of the proffer agreement and her inculpatory statement.  It appears, for example, that Veloria considered calling Darryl Wisniewski, but did not because her trial attorney, Winston Ling, feared that Wisniewski's testimony would have, under the terms of the proffer agreement, allowed the Government to introduce Veloria's inculpatory statement.  See, e.g., Transcript of Proceedings (June 4, 2003) at 34.  Veloria, however, does not identify what Wisniewski would have testified to.  She therefore fails to demonstrate that she was prejudiced by her attorney's failure to tell her that her statement could be used against her if she presented contrary testimony by someone else like Wisniewski.

Even assuming Veloria could not introduce favorable evidence because the language of the proffer agreement would have allowed the introduction of her inculpatory statement into evidence, the record establishes that Veloria was not, in fact, prejudiced by Silvert's advice.  Silvert says that, "for days and weeks prior to the debriefing session, [he] discussed with Ms. Veloria the possibility of pleading guilty."  See Affidavit of

54

Alexander Silvert (March 14, 2008) ¶ 5.  Silvert says that,

during those discussions,

> counsel repeatedly advised Ms. Veloria
> that[,] if she agreed to be debriefed, there
> would be, effectively no possibility of
> proceeding to trial.  Counsel repeatedly
> advised Ms. Veloria that[,] should she choose
> to be debriefed, she was making a decision to
> plead guilty and could not realistically
> proceed to trial under any circumstances.
> Ms. Veloria was well aware that[,] if she
> elected to be debriefed and to cooperate with
> the government, that counsel was advising her
> that there would be no trial and that she was
> agreeing to enter a plea of guilty.  Counsel
> advised Ms. Veloria that this was true for
> two reasons.  First, she could not testify
> because her debriefing statement would be
> used against her and, because it appeared
> likely that she would have to testify on her
> own behalf if she wished to have any real
> possibility of winning this case, being
> debriefed effectively ended her ability to go
> to trial.  Second, once she was debriefed and
> made inculpatory statements regarding her
> drug dealings as alleged in this case,
> counsel could not put her on the stand to
> proclaim her innocence because that would
> amount to putting on perjured testimony.
> Moreover, I informed Ms. Veloria that I could
> not put on other witnesses whose testimony
> would directly contradict
> statements/admissions made by her during her
> proffer because that also would amount to
> putting on perjured testimony.  Ms. Veloria
> was well aware of the choice she was making
> when she agreed to be debriefed, despite
> counsel not fully informing her as to all of
> the ways her proffered statement could be
> used against her.

Silvert Aff. ¶ 5 (emphasis added).

In her Reply in Support of her § 2255 petition, Veloria does not dispute Silvert's account of what he told her. Regardless of Silvert's error in interpreting the proffer agreement, Veloria suffered no prejudice because Silvert also told her that, if she made an inculpatory statement, ethical rules would prohibit her attorney from introducing evidence of her innocence.

Because this court may supplement the record with affidavits of counsel before determining whether an evidentiary hearing is necessary for Veloria's § 2255 petition, and because Silvert's unchallenged affidavit conclusively demonstrates that he was not ineffective, even assuming the facts as alleged by Veloria are true, this court need not conduct an evidentiary hearing on this claim.  See Shah v. United States, 878 F.2d 1156, 1160 (9th Cir. 1989) ("The court may expand the record with other documentary evidence prior to determining the need for an evidentiary hearing" on a § 2255 petition).  Nevertheless, the court afforded Veloria a chance to present evidence establishing any prejudice she suffered in this regard.  With the advice of newly appointed counsel, she declined to add to the record.  She certainly did not rebut Silvert's sworn statement or even seek to

56

examine Silvert.  To the contrary, she accepted the veracity of
it.

The court notes that, in her affidavit filed in
conjunction with her Reply in this matter, Veloria states, "At no
time did I understand that participating in this interview would
preclude me from proceeding to trial."  Supp. Veloria Aff. ¶ 9.
She says that she "understood that the statement would be used
against [her] if [she] took the stand and testified differently."
Id.  She says that she "never intended on testifying, at any
time, anywhere, and so [she] did not view participation in this
interview as a significant impediment to [her] ability to put the
government to its burden and proceed to trial."  Id.  The court
does not give Veloria's affidavit any weight, given the
Government's inability to cross-examine her on it.

Moreover, Veloria submitted as an exhibit her own
letter to her trial counsel, Winston Ling, in which she directly
contradicts the statement in her affidavit that she "never
intended on testifying, at any time, anywhere."  In her letter to
Ling, she wrote: "I am considering testifying at trial, in the
event that we have no other choice and need to explain my
reasoning behind doing the debriefing to avoid the potential
maximum 40-year sentence.  At some point I will need you to help

57

me to get prepared to testify." See Exhibit 14, ¶ 3.  Veloria's
shifting positions strengthen this court's decision to disregard
her affidavit.

D.   Trial Counsel, Winston Ling, Was Not Ineffective.

1.   Claim Number 8.

In Claim Number 8, Veloria argues that her trial
counsel, Winston Ling, was ineffective when he failed to obtain
an order from this court limiting the Government's use of her
inculpatory statement to impeachment of her only if she herself
testified.  Veloria says that Ling was ineffective because he
filed a motion seeking "suppression" of the statement, rather
than limitation of its use.  This argument is meritless.

Regardless of what the motion was called or what relief
it sought, this court determined that the plain language of the
proffer agreement allowed the Government to use Veloria's
inculpatory statements at trial if she testified differently or
if she presented other evidence that differed from her statement.
Veloria was simply not entitled to an order by this court that
limited the Government to use of her inculpatory statement only
if she herself testified differently.  Veloria therefore fails to
demonstrate that, in failing to limit the use of her statement,
Ling fell below an objective standard of reasonableness.

To the extent Veloria is arguing that Ling was ineffective in not raising the proffer agreement's effect on Veloria's ability to introduce evidence at trial, Veloria shows no ineffective assistance of counsel. Given this court's November 27, 2002, order, Ling's professional conduct did not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 687-88. The issue was raised and decided before trial. At trial, Ling was frustrated by being limited in the evidence he could offer. He feared that certain evidence would open the door to the Government's introduction of Veloria's inculpatory statement. He therefore filed the emergency motion to rescind the proffer agreement. See Emergency Motion to Rescind Involuntary Waivers (June 4, 2003). After discussions throughout June 4 and a continued discussion on June 5, 2003, the court denied that motion, given Veloria's decision not to waive the attorney-client privilege with respect to Silvert's representation of her during the proffer agreement process. Veloria shows no ineffectiveness by Ling with respect to the proffer agreement.

2.   Claim Number 14.

In Claim Number 14, Veloria asserts that Ling was ineffective in failing to file a memorandum prepared by a non-

59

lawyer at Veloria's request.  This memorandum sought to have this court require the Government to state whether it had violated any local, state, or federal law while investigating this case.  <u>See</u> Ex. 21.  Veloria asserts that the Government must have had her under illegal electronic surveillance because it was able to prepare a diagram.  The diagram to which she is referring, Exhibit 7 to her petition, was discussed earlier in this order. It was apparently prepared by Detective Bolos in June 1996.  <u>See</u> Ex. 7; Transcript of Proceedings (June 5, 2003) at 93 (indicating that Detective Bolos prepared a diagram in June 1996).  Detective Bolos testified that electronic surveillance of Veloria was not conducted.  <u>See</u> Transcript of Proceedings (June 5, 2003) at 94. Veloria's mere speculation that the Government must have had her under electronic surveillance to prepare the diagram does not demonstrate ineffectiveness by Ling.

        Bolos could have prepared the diagram based on a number of investigative techniques other than electronic surveillance. Ling was not deficient in declining to request a response to a matter addressed by testimony.  Even assuming Ling's representation of Veloria was deficient in this respect, Veloria shows no resulting prejudice.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

60

3.    Claim Numbers 18 and 33.

In Claim Numbers 18 and 33, Veloria asserts that Ling was ineffective in failing to object to, cross-examine, and/or introduce certain evidence.  These claims are simply meritless.

Veloria says that Ling should have introduced evidence regarding a rent receipt, her truck, and the jewelry contained in the truck.  She contends that Ling should have objected to testimony about food stamps, and that Ling should have cross-examined a witness who testified about his ability to retrieve fingerprints only a small percentage of the time and about his memory of whether he had tested various items for fingerprints.  None of these evidence-based challenges demonstrates that Ling's representation was deficient.  See Strickland, 466 U.S. at 687.  More importantly, the jury was presented with ample evidence to convict Veloria of her drug crime.  Ling was not ineffective because none of the so-called evidentiary errors prejudiced Veloria.  Id.  That is, she fails to show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.

Nor was Ling ineffective in having posed a question that indicated that Veloria was the owner of the house in which the drugs were located.  As ample evidence linked Veloria to the

61

house and to the drugs found in the house, Ling's question did
not prejudice her.  See Strickland, 466 U.S. at 687.

Finally, to the extent Claim Number 18 is complaining
that Ling failed to inspect a rent receipt and failed to
introduce the receipt at trial, Veloria procedurally defaulted on
this matter.  See Frady, 456 U.S. at 167-68.  Even assuming
Veloria could show cause because her attorney refused to press on
appeal an issue she included in her proposed pro se brief,
Veloria fails to show prejudice.  Veloria asserts that the
receipt would have suggested that someone else rented the house.
But there was ample evidence connecting Veloria with the house in
which the drugs were found, regardless of who paid the rent bill.
Veloria's speculation that introduction of the rent receipt at
trial might have made a difference is not sufficient to
demonstrate the necessary prejudice.  Under Frady, a defendant
must "shoulder the burden of showing, not merely that the errors
at [her] trial created a possibility of prejudice, but that they
worked to [her] actual and substantial disadvantage, infecting
[her] entire trial with error of constitutional dimensions."
Frady, 456 U.S. at 170.

Veloria's trial attorney argued in closing argument
that the police found a rent receipt in Marlene Anduha's name,

not Veloria's.  See Transcript of Proceedings (June 6, 2003) at

104.  The absence of the actual receipt as a trial exhibit

appears minor, at best, under the circumstances.  Moreover,

Veloria's trial counsel says that Veloria told him that she owned

the house in which the drugs were found and that she bought the

house through someone else.  See Ling Decl. ¶ 9.  Given these

circumstances, Veloria was not prejudiced by her counsel's

failure to introduce the rent receipt at trial.

                    4.   Claim Number 19.

          Veloria says that, well in advance of trial, she asked

Ling to be prepared to call her brother, Richard Marble, as a

witness at her trial.  See Exs. 13, 14.  In Claim Number 19,

Veloria asserts that Ling was ineffective when he failed to speak

with her brother and call him as a witness.

          Ling agrees that Veloria initially asked him to look

into whether her brother should testify at trial, but states that

Veloria then changed her mind and told Ling not to involve her

brother:

               In regards to Ms. Veloria's Claim No.
          19, it was her decision not to involve her
          brother[.]  I wanted to involve her brother,
          in part because he may be a possible
          explanation/source of the drugs found in the
          bedroom and it would add to Ms. Veloria's
          reasonable doubt.  Ms. Veloria initially
          agreed to have her brother testify, but she

                              63

> then changed her mind and instructed me not
> to involve her brother.  She made it very
> clear to me not to involve her brother[.]  I
> suspected that she didn't want her brother
> [to] get indicted.

Ling Decl. ¶ 10.

If Veloria told her counsel not to involve her brother,

counsel could hardly be said to have been deficient in following

his client's wishes.  See Strickland, 466 U.S. at 687-88.  On

this point, Ling is undisputed, as the court disregards Veloria's

affidavit, given her unavailability for cross-examination.

Even if the court assumed that Veloria told Ling to

contact her brother, see [Supplemental] Affidavit of Alicia

Veloria (March 26, 2008) ¶ 17-18, she fails to establish

ineffective assistance of counsel.  That is so because she fails

to demonstrate a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different."  Id. at 694.  Veloria does not say exactly what

her brother would have testified to, only implying that, had he

testified, she could have attacked the Government's theory that

she owned the house in which the drugs were found.  This is

insufficient to meet the Strickland standard for demonstrating

ineffective assistance of counsel, especially in light of the

ample evidence linking Veloria to the drugs.

64

As this court noted earlier in this order, Veloria's brother is now dead.  It is certainly not lost on this court that it is easy and cost-free for a defendant to pass blame to a dead relative.  Veloria tries to bolster her brother's role in the crime with an affidavit of Aunamarie Veloria, her mother.  As also noted earlier in this order, Aunamarie Veloria is also dead.

Notably, Aunamarie Veloria's affidavit, even if considered, would not establish that Veloria has been prejudiced by Ling's failure to call Veloria's brother as a trial witness.  Aunamarie Veloria says that her son "was willing to take full responsibility for <u>his</u> actions and not only wanted but demanded to testify on Alicia's behalf taking FULL responsibility for <u>his</u> actions."  Affidavit of Aunamarie Veloria (July 13, 2007) ¶ 11 (emphasis added).  Nowhere does Veloria's mother state that Veloria's brother would have testified that Veloria had nothing to do with the cocaine found in the house.  The brother may have implicated himself without exonerating Veloria, as drug trafficking is not necessarily confined to a single person.  Accordingly, Veloria's mother's affidavit, even if considered, is insufficient to establish prejudice.

5.   <u>Claim Number 20.</u>

In Claim Number 20, Veloria asserts that Ling was
ineffective in failing to file a motion seeking the identity of
the confidential informant whose information supported the search
warrant application.  Veloria submitted to Ling a motion prepared
by a person who was not an attorney, possibly herself.  Ling says
that he reviewed a number of motions prepared on behalf of
Veloria, but decided not to file them.  <u>See</u> Ling Decl. ¶ 11.
Veloria fails to show a "reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding
would have been different."  <u>Id.</u> at 694.  She merely speculates
that, had she known who supplied information to the Government,
she might have had witnesses who would testify favorably to her.
It is unlikely that someone cooperating with the Government would
have been a favorable defense witness.  And Veloria cannot even
suggest what favorable information existed, or why she could not
present it without knowing who acted as a confidential informant.
Her pure speculation is insufficient to establish the prejudice
necessary to establish ineffective assistance of counsel.

6.   <u>Claim Number 21.</u>

In Claim Number 21, Veloria asserts that her counsel
was ineffective in failing to object to and correct testimony by

66

Detective Bolos that falsely indicated that a third person had
been found upstairs during the execution of the search warrant.
However, Veloria admits that this testimony "could not have
affected the verdict."  See Memorandum in Support of Motion (Jan.
9, 2008) at 117.

To the extent Veloria is arguing that the Government
violated her right to a fair trial by failing to correct
Detective Bolos's misstatement, Veloria procedurally defaulted on
the argument.  Veloria shows no cause for having failed to raise
this issue to the Ninth Circuit in her direct appeal and
certainly has shown no prejudice as a result.  See Frady, 456
U.S. at 167-68.

### 7.   Claim Number 22.

In Claim Number 22, Veloria asserts that her trial
counsel was ineffective when he could not overcome a hearsay
objection made by the Government.  When Ling was cross-examining
Wallace Iaukea about conversations Iaukea had had with Kristine
Pagan, an investigator with the Office of the Federal Public
Defender, Government counsel raised a hearsay objection.  Ling's
question appeared to ask whether Iaukea had told the investigator
(1) that he remembered being told that the drugs in the truck
belonged to Veloria and (2) that Iaukea needed to talk with the

police because he would have ended up doing a lot of jail time if Veloria were to say that the drugs belonged to him.  Ling was not ineffective because these were, in fact, hearsay statements.  Ling's performance was therefore not deficient.  See Strickland, 466 U.S. at 687.  Moreover, Veloria suffered no prejudice as a result.  Id.

Veloria contends that these statements were hearsay exceptions under Rule 803(5) of the Federal Rules of Evidence.  This court disagrees.  Nothing in the record indicates that the statements made by Iaukea concerned matters about which he once knew but at trial lacked recollection to testify fully and accurately about.  Nothing in the record indicates that the statements were made when the matter was fresh in his memory.  Veloria's citation of Rule 803(5) is thus unavailing.

### 8.   Claim Number 37.

In Claim Number 37, Veloria asserts that Ling was ineffective in failing to request an Allen charge, which the Ninth Circuit has characterized as "an instruction to consider the point of view of others when the jury has reached an impasse in its deliberations."  United States v. Willis, 88 F.3d 704, 716 (9th Cir. 1996).

68

At the time the jury sent Note #3, it was in only its second day of jury deliberations.  Note #3 said that the jurors had voted and were not unanimous.  The jury asked, "Do you want us to continue deliberating?"  The jury did not say that it was hopelessly deadlocked.  As this court recognized that <u>Allen</u> charges have a potential for being overly coercive, <u>see</u> Ninth Circuit Model Jury Instructions (Criminal) 7.7 and comments, this court answered the jury's question by stating only, "Yes, please continue deliberating."  Even had Ling requested an <u>Allen</u> charge, this court would not have given the charge in response to Note #3.  Ling's conduct with respect to Note #3 simply did not fall below a level of professional competence such that he can be said to have been ineffective.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

E.    <u>Some of Veloria's Claims are Moot.</u>

1.    <u>Claim Number 5.</u>

Veloria argues in Claim Number 5 that her attorneys were ineffective in failing to seek suppression of evidence seized from her truck on November 22, 1996.  That evidence formed the basis for Count 2 of the Indictment.  Because Veloria was acquitted of that charge, this claim is moot.  Veloria's attorneys could not possibly have been ineffective in failing to seek suppression of that evidence because, even assuming that

69

their conduct fell below an objective standard of reasonableness, the failure did not end up prejudicing Veloria.  See Strickland, 466 U.S. at 687.

2.   Claim Number 44.

In Claim Number 44, Veloria argues that she is entitled to a reduction in her sentence based on Kimbrough v. United States, 128 S. Ct. 558, 568-69 (2007).  Veloria says that, because there is a disparity between federal sentences for crack cocaine and for cocaine powder, she should receive a lower sentence because she was convicted of a "cocaine base" offense, which is a "crack cocaine" offense.

After the crack cocaine sentencing guidelines were amended and the amendments were made retroactive, Veloria filed a motion for a reduction of her sentence under 18 U.S.C. § 3582. See Memorandum of Law in Support of Defendant's Motion Under 18 U.S.C. § 3582(c)(2) For Reduction in Term of Imprisonment (March 25, 2008).  That motion sought to reduce Veloria's term of imprisonment from 97 months to 78 months.  On March 31, 2007, this court granted that motion, reducing Veloria's term of imprisonment to 78 months.  Accordingly, Veloria appears to have obtained the relief she seeks in Claim Number 44.

Even if Veloria seeks further relief under Claim Number 44, <u>Kimbrough</u> does not support further relief.  When, on remand, the court resentenced Veloria in early 2006 to the same prison term imposed at the original sentencing hearing, this court determined that the sentence was reasonable.  This court was fully aware at the time of that resentencing that the sentencing guidelines were advisory only.  While <u>Kimbrough</u> allows a sentencing court to consider the sentencing disparity in crack cocaine and crack powder cases, <u>Kimbrough</u> does not require a lower sentence based on that disparity.  <u>See</u> <u>Kimbrough</u>, 128 S. Ct. at 575 (stating that the guidelines for crack cocaine, like all other guidelines, are advisory only and that "it would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes").

F.   Veloria's Forfeiture Claim (Claim Number 43) Is
     <u>Barred By the Rooker-Feldman Doctrine.</u>

In Claim Number 43, Veloria asserts that various constitutional rights were violated when she forfeited her truck. Veloria's truck was not forfeited as part of this case.  It instead appears that the alleged forfeiture was part of state court proceedings.  <u>See</u> Memorandum in Support of § 2255 Petition

71

at 188 ("In determination of the forfeiture of Ms. Veloria's

property, the Attorney General for the State of Hawaii failed to

consider certain extenuating circumstances as required by law."),

at 189 ("State of Hawaii authorities were well aware of the fact

that Ms. Veloria was represented by Attorney Brian J. Delima."),

and at 189, n.480 (arguing that federal forfeiture law should

have preempted Hawaii law regarding the forfeiture of Veloria's

property).  Veloria may not appeal a state-court decision

regarding the forfeiture of her truck to this court.  See

District of Columbia Court of Appeals v. Feldman, 460 U.S. 462,

482-86 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16

(1923).  This rule, commonly known as the Rooker-Feldman

doctrine, provides:

> a losing party in state court is barred from
> seeking what in substance would be appellate
> review of the state judgment in a United
> States District Court, based on the losing
> party's claim that the state judgment itself
> violates the loser's federal rights.

Bennett v. Yoshina, 140 F.3d 1218, 1223 (9th Cir. 1998) (quoting

Johnson v. DeGrandy, 512 U.S. 997, 1005 (1994)).

Under the Rooker-Feldman doctrine, federal district

courts lack jurisdiction to conduct direct reviews of state court

judgments even when federal questions are presented.   Allah v.

Superior Ct. of State of Cal., 871 F.2d 887, 891 (9th Cir. 1989).

Accord Mackay v. Pfeil, 827 F.2d 540, 543 (9th Cir. 1987)
("Federal district courts, as courts of original jurisdiction,
may not serve as appellate tribunals to review errors allegedly
committed by state courts.").  Jurisdiction is lacking even if
the state court decision is challenged as unconstitutional.
Feldman, 460 U.S. at 486; Branson v. Nott, 62 F.3d 287, 291 (9th
Cir. 1995) ("As courts of original jurisdiction, federal district
courts have no authority to review the final determinations of a
state court in judicial proceedings.  This is true even when the
challenge to a state court decision involves federal
constitutional issues.") (citations omitted).  Litigants who
believe that a state judicial proceeding has violated their
constitutional rights must appeal that decision through their
state courts and may seek review by the United States Supreme
Court.  See Feldman, 460 U.S. at 482-483; Bennett, 140 F.3d at
1223 (noting that the rationale behind the Rooker-Feldman
doctrine "is that the only federal court with the power to hear
appeals from state courts is the United States Supreme Court").

     Accordingly, Veloria may not challenge here the
constitutionality of a state-court decision ordering forfeiture
of her property.

G.   Veloria's General Claims of Ineffective Assistance
     of Counsel (Claim Numbers 47 and 48) are Meritless.

In Claim Numbers 47 and 48, Veloria argues that her
pretrial, trial, and appellate attorneys were ineffective based
on the totality of their conduct and that she suffered prejudice
as a result.  These general and amorphous claims do not justify
§ 2255 relief.  For the reasons set forth above, this court
rejects Veloria's ineffective assistance of counsel claims and
rules that she has failed to establish that she suffered
prejudice as a result of her attorneys' conduct.

IV.      CONCLUSION.

For the foregoing reasons, Veloria's § 2255 Petition is
denied.  Given the breadth and number of issues raised by Veloria
in her § 2255 Petition, the court will not enter judgment in
favor of the Government until at least September 16, 2008.  If
Veloria feels that the court has neglected to rule on any issue
raised by her § 2255 Petition, Veloria must so inform the court
no later than September 16, 2008.  This means that the court must
receive from Veloria no later than September 16, 2008, a written
document describing what issue was not ruled on and the exact
page of her petition on which the issue was raised.  This written
document must be 600 words or less.  If the court does not
receive such a written filing by September 16, 2008, the court

will enter judgment in favor of the Government after that date. Court-appointed counsel may submit this document even if it raises issues beyond those for which an evidentiary hearing was offered.

      If Veloria seeks reconsideration of or modification to this order or any judgment pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure, any such motion shall be no longer than either 30 pages or 9,000 words.  Such a motion has no bearing on the deadline of September 16, 2008, for identifying issues raised in the § 2255 petition that this court has not determined.

      IT IS SO ORDERED.

      DATED: Honolulu, Hawaii, August 28, 2008.



                /s/ Susan Oki Mollway
                Susan Oki Mollway
                United States District Judge

Veloria v. United States, CRIM. NO. 00-00145 SOM; CIV. NO 08-00019 SOM/BMK; ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY UNDER 28 U.S.C. § 2255